**EXHIBIT D  to NOTICE OF REMOVAL**

1  | **Matthew Righetti, SBN 121012**
2  | **John Glugoski, SBN 191551**
   | **RIGHETTI GLUGOSKI, P.C.**
3  | 456 Montgomery Street, Suite 1400
   | San Francisco, CA 94104
4  | Telephone: (415) 983-0900
   | Facsimile: (415) 397-9005

5

6

7  |        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8  |              **FOR THE COUNTY OF STANISLAUS**

9

| | |
|---|---|
| JOSEPH JOSHUA DAVIS, PENNY SCHOONOVER, LEON GIBSON, DUSTIN WAYNE HAGENS, RAYMOND AGUNDEZ, RAFAEL BARAJAS, JR. | **Case No.: 2011900** |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT** |
| vs. | **Date: March 27, 2015**<br>**Time: 8:30 a.m.**<br>**Dept: 21** |
| COMCAST CORPORATION, a Pennsylvania Corporation; COMCAST OF CONTRA COSTA, INC., a Washington Corporation; and DOES 1 through 50, Inclusive, | *Hon. William A. Mayhew* |
| Defendants. | **Complaint filed October 27, 2014** |

1

# TABLE OF CONTENTS

2   TABLE OF AUTHORITIES..............................................................................................ii

3   INTRODUCTION.........................................................................................................2

4       A.      PROCEDURAL HISTORY ..............................................................................4

5       B.      DEFENDANT'S CANNOT RELITIGATE THE TOLLING ISSUES AND
                COLLATERAL ESTOPPEL EFFECT OF *FAYERWEATHER* AS THEY
6               HAVE ALREADY BEEN DECIDED AGAINST THEM.............................5

7       C.      CLASS CERTIFICATION PROCEEDINGS IS A PROCEDURAL
                DEVICE, NOT A RULING ON THE MERITS................................................6

8
        D.      ONE WAY INTERVENTION ALSO COMPELS A FINDING THAT
9               DECISIONS IN *FAYERWEATHER* ARE NOT BINDING ON THE
                NAMED PLAINTIFFS.....................................................................................8

10
        E.      DEFENDANT'S RELIANCE ON *CROWN, CORK & SEAL V. PARKER*
11              *ETC*...IS MISPLACED AS THE CASES ARISE UNDER FEDERAL
                LAW WHERE DENIAL OF CERTIFICATION IS A FINAL NON-
12              APPEALABLE ORDER- UNLIKE CALIFORNIA LAW WHERE
                ORDER DOES NOT BECOME FINAL UNTIL APPEAL HAS RUN ITS
13              COURSE..........................................................................................................8

14      F.      THE UNITED STATES SUPREME COURT REJECTS DEFENDANTS
                ARGUMENT THAT THERE IS NO TOLLING...............................................10
15
                1.      American Pipe Sets Foth The Two Criteria For The Court to
16                      Evaluate In Deciding Whether Tolling Applies...............................13

17              2.      Tolling Is Appropriate As Defendant Has Been On Notice
                        Of The Individuals And Their Claims From The Inception
18                      of The *Fayerweather* Lawsuit.........................................................14

19                      a.      Not Only Is Comcast On Notice, Comcast Has
                                Preserved And Produced To Plaintiffs Counsel All
20                              Evidence For All Class Members Including The Named
                                Plaintiffs................................................................................14
21

22      G.      COMCAST'S RELIANCE ON THE HALL CASE IS
                DISTINGUISHABLE........................................................................................16
23

24   CONCLUSION..............................................................................................................16

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

3

*American Pipe & Construction Co. v. Utah*
4   (1974) 414 U.S. 538...............................................................2, 5, 10, 11, 12, 13

5   *Carnegie v. Household Int'l, Inc.*
(2004) 376 F.3d 656.............................................................................................7
6

7   *Catholic Soc. Services, Inc. v. I.N.S*
(2000) 232 F.3d 1139.................................................................................15, 16
8

*Crown, Cork & Seal Co., Inc. v. Parker*
9   (1983) 462 U.S. 345.............................................................2, 8, 10, 11, 12, 13

10  *Deposit Guaranty Nat. Bank v. Roper*
11  (1980) 445 U.S. 326............................................................................................6

12  *Hall v. Variable Annuity Life Ins. Co.*
(5th Cir. 2013) 727 F.3d 372.............................................................................2
13

14  *In re Hanford*
(2008) 521 F.3d at 1053...................................................................................12

15  *In re Worldcom Sec. Litig.*
16  (2007) 496 F.3d at 256.....................................................................................12

17  *Oshana v. Coca-Cola Bottling Co.*
(2005) 225 F.R.D. 575.........................................................................................7
18

19  **Supreme Court Cases**

20  *Smith v. Bayer Corp.*
(2011) 131 S.Ct. 2368..........................................................................................7
21

22  **State Cases**

23  *Bernhard v. Bank of America Nat'l Trust & Sav. Ass'n*
(1942) 19 Cal.2d 807...........................................................................................5
24

25  *Becker v. McMillan Construction Co.*
(1991) 226 Cal.App.3d 1493.................................................................3, 11, 12

26  *Brinker Restaurant Corp. v. Superior Court*
27  (2012) 53 Cal.4th 1004..................................................................................5, 14

28

ii

*Bridgestone/Firestone v. Superior Court*
(1992) 7 Cal.App.4th 1384..............................................................7

*Cortez v. Purolator Air Filtration Products Co.*
(2000) 23 Cal. 4th 163..................................................................13

*Duran v. U.S. Bank Nat. Assn.*
(2014) 59 Cal.4th 1.....................................................................6, 7

*Fireside Bank v. Superior Court*
(2007) 40 Cal.4th 1069..............................................................3, 8

*Hall v. Rite Aid Corporation*
(2014) 226 Cal.App.4th 278.................................................2, 4, 7, 16

*Home Sav. & Loan Ass'n v. Sup.Ct.*
(1974) 42 Cal.App.3d 1006...........................................................8

*Jolly v. Eli Lilly & Co.*
(1988) 44 Cal. 3d 1103.......................................................3, 5, 11, 12, 15

*Long Beach Unified School Dist. v. State of Calif.*
(1990) 225 Cal. 3d 155................................................................9

*Lucido v. Superior Court*
(1990) 51 Cal.3d 335...................................................................6

*Sindell v. Abbott Laboratories*
(1980) 26 Cal. 3d 588.................................................................11

*Sky Sports, Inc. Superior Court*
(2011) 201 Cal.App.4th 1363.........................................................6

*Stephen v. Enter. Rent-A-Car*
(1991) 235 Cal. App. 3d 806......................................................3, 9

## OTHER AUTHORITIES

*Class Actions and Statutes of Limitations*
(1981) 48 U. Chi. L.Rev. 106........................................................13

# INTRODUCTION

This motion should be denied on the grounds that Defendant is collaterally estopped from raising the arguments in this case as these arguments have already been ruled upon in two separate courts. Defendant has filed the same motion in twenty counties in California. **The Superior Court for Sutter County in *McBride et al v. Comcast Corporation*, Sutter County Superior Court Case No.: CVCS 14-199 and the San Mateo Superior Court in *Lamberto Valencia et al v. Comcast Corporation* San Mateo County Superior Court Case No.: CIV531049, have already ruled on the issues and found against Defendant on the following issues, Tolling and the Collateral estoppel effect of the decertification ruling in the Fayeweather Class Action.** On <u>February 3, 2015</u>, the San Mateo Superior Court ruling on this very issue held:

> The motion is DENIED as to the remaining allegations Comcast seeks to strike. With respect to the allegations that Comcast had unlawful "policies, patterns, or practices" resulting in the denial of meal and rest breaks to its employees, such allegations are not precluded by collateral estoppel based on any findings made by the Contra Costa Superior Court in its December 15, 2012 Decertification Order. "The certification question is essentially a procedural one that does not ask whether an action is legally or factually meritorious." [ *Hall v. Rite Aid Corporation* (2014) 226 Cal.App.4th 278, 286].
>
> As for the allegation that any applicable statute of limitations has been tolled "to the present" (Complaint ¶ 8), the motion to strike is DENIED on the ground that pursuant to the guidelines set forth in *American Pipe & Construction Co. v. Utah*(1974) 414 U.S. 538 and *Crown, Cork& Seal Co., Inc. v. Parker* (1983) 462 U.S. 345, tolling appears appropriate. The Court notes that unlike the plaintiffs in *Hall v. Variable Annuity Life Ins. Co.* (5th Cir. 2013) 727 F.3d 372, Plaintiffs in this case filed the instant action promptly after their avenues for appeal were exhausted. Tolling would serve the dual purpose of avoiding "needless multiplicity of actions" and "to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights." [*Crown, supra* at 351-52].

See Request for Judicial Notice Ex. 2.

The day before, the Sutter County Superior Court denied the same motion seeking the same relief in San Mateo County and this Court. See Request for Judicial Notice Ex. 3.

Defendant should not be allowed to relitigate the issue once again as it is 1) the same defendant, 2) the exact same arguments, 3) an incentive to fully litigate the decision in the other cases, 4) a community of interests and 5) a final decision on the merits. California has long

recognized the doctrine set forth in the *Home Savings* case of "One-Way Intervention." *Fireside Bank v. Superior Court* (2007) 40 Cal.4[th] 1069. The Courts have repeatedly opined on the dangers facing Defendants who seek merits determinations as to individuials rather than on a classwide basis and the impact those rulings have.  The consequence for defendants is that any decision is categorically only binding as to the plaintiff.  In contrast, an unfavorable decision against defendant would be binding on the losing defendant as well as to all other individuals.

Even if defendant was not collaterally estopped from litigating this matter again – which they are -- the law is well settled that the filing of a class action complaint tolls the statute of limitations for the claims and the persons encompassed by the class proceedings through the denial of class certification.  Although taken from federal jurisprudence, California state courts have adopted and followed this rule.  *Jolly v. Eli Lilly & Co.* (1988) 44 Cal. 3d 1103; *Becker v. McMillan Construction Co.* (1991) 226 Cal.App.3d 1493.  Defendant acknowledges tolling but contends that it should stop at the time of the decertification order and should not extend through the appeal (i.e., up to the point where the trial court's order becomes final).

In support of its position, Defendant relies on principles of Federal law (denial of class certification are non-appealable final orders per FRCP Rule 23(f)) that are inconsistent with California state law (i.e., denials of class certification are automatically appealable and do not become final until the appeal process has run its course). Until the order becomes final, it is not binding and tolling applies. *Stephen v. Enter. Rent-A-Car*, 235 Cal. App. 3d 806, confirmed that the until the appeal runs its course, the order is not final nor binding.

> An order denying class certification does not finally dispose of an action since it leaves it intact as to the *individual* plaintiff. However, the order is appealable if it effectively terminates the entire action as to the class, in legal effect being "tantamount to a dismissal of the action as to all members of the class other than plaintiff. [Citations.]" (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699, 63 Cal.Rptr. 724, 433 P.2d 732; *Richmond v. Dart Industries, Inc., supra,* 29 Cal.3d 462, 470, 174 Cal.Rptr. 515, 629 P.2d 23.) The appeal is allowed, as a matter of state law policy, because the order has "the 'death knell' effect of making further proceedings in the action impractical...." (*General Motors Corp. v. Superior Court* (1988) 199 Cal.App.3d 247, 251, 244 Cal.Rptr. 776.) Federal law, by contrast, while acknowledging death-knell consequences, denies a right of direct appeal in any circumstances. (*Ibid.; Coopers & Lybrand v. Livesay* (1978) 437 U.S. 463, 469–470, 98 S.Ct. 2454, 2458–2459, 57 L.Ed.2d 351.)Because California allows direct appeals of death-knell orders, a plaintiff who fails to appeal from one loses forever the right to attack it. The order becomes final and binding.

*Stephen v. Enter. Rent-A-Car*, 235 Cal. App. 3d 806, 811-12 (Ct. App. 1991)

The claims at issue in this case were first alleged by Gabriel Fayerweather in a class action filed in Contra Costa County Superior Court in 2008, entitled *Fayerweather v. Comcast*. Unlike any of the authorities cited by Comcast, the *Fayerweather* case was <u>certified</u> as a class action in April 2010. The claims certified as a class action in *Fayerweather* are the same claims asserted in this case. Plaintiffs in this case, along with hundreds of of other class members, were required to file separate actions when the *Fayerweather* court decertified the class action in December 2012 and that decision was subsequently upheld by the First District Court of Appeal.

Defendants' motion to strike makes little mention of the fact that *Fayerweather* was a certified class action and, more importantly, ignores basic fundamental principles of class action law grounded in strong public policies (e.g. one way intervention, the procedural nature of the class certification device, considerations for applying tolling) that serve to protect the rights of putative class members while, at the same time, protecting defendants where a defendant can show that tolling is demonstrably prejudicial. Rather than focus on California law, Comcast seeks to import the reasoning of the 5th Circuit in inapposite circumstances. In *Hall*, the court, on the eve of trial, decertified the case because trial counsel failed to disclose experts, fact witnesses and disclose any expert reports pursuant to the federal court deadline that would address the issue of classwide damages. The court found counsel's conduct inexcusable and refused to allow trial counsel's attempt to remedy the matter with an untimely disclosure. After waiting five (5) years after the court dismissed the class allegations for counsel's inexcusable conduct, two members of the putative class filed a new class action. The *Hall* plaintiffs sought tolling after inexplicably waiting five (5) years to re-file their claims. In contrast, Plaintiffs here have promptly filed their claims and have only pursued *individual* claims within days of the decertification order becoming final. Nor does, or can, Comcast claim any prejudice *vis-à-vis* tolling since the claims asserted here are not only the same claims originally certified in *Fayerweather*, but are being made by former absent class members in *Fayerweather*.

## A. PROCEDURAL HISTORY

Plaintiffs L Joseph Joshua Davis, Penny Schoonover, Leon Gibson, Dustin Wayne Hagens, Raymond Agundez and Rafael Barajas, Jr. filed this action on October 27, 2014. The class action in which they were absent class members was filed by Plaintiff Gabriel Fayerweather on May 27, 2008. The class action was filed in Contra Costa County and assigned to Judge Goode. Judge Goode issued an order certifying the *Fayerweather* class action on April

12, 2010. Exhibit 1.[1]  The order certified claims for causes of action based on failure to provide meal breaks, failure to authorize and permit rest breaks and failure to pay wages for all hours worked (off-the-clock).

Following the Supreme Court's decision in *Brinker*, Judge Goode decertified the *Fayerweather* case.

To be sure, Comcast cannot claim any prejudice from tolling since, prior to decertification and in preparation for a class certification trial, Comcast produced in the *Fayerweather* case all time records and data for the entire class period for the entire class in its possession. In any event, Comcast's motion appears to ask this Court to *presume* that Comcast would be prejudiced.  The pretense that Comcast was ignorant, blindsided or unable to take any steps to preserve evidence or prepare defenses is a self-serving litigation tactic and cannot be credited in the least.  The application of *American Pipe*, adopted by the Supreme Court in *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, is not barred because a defendant chooses, as a matter of tactics, not to put on evidence in order to gild a claim of prejudice.  Moreover, Comcast blithely ignores the fact that much of the evidence on which Plaintiffs will substantiate their claims was actually produced during trial preparation in the *Fayerweather* action.

On February 8, 2013, Mr. Fayerweather filed an appeal challenging the legal validity of the trial court's decertification order on the grounds that the decision is rooted in both legal error and an abuse of discretion. The First District Court of Appeal issued its decision on August 28, 2014, affirming the trial court's order decertifying the class. On October 7, 2014, Mr. Fayerweather filed a Petition for Review with the California Supreme Court. On November 25, 2014, the Supreme Court denied the petition.

**B. DEFENDANT'S CANNOT RELITIGATE THE TOLLING ISSUES AND COLLATERAL ESTOPPEL EFFECT OF *FAYERWEATHER* AS THEY HAVE ALREADY BEEN DECIDED AGAINST THEM.**

Collateral estoppel bars a party from relitigating in a later lawsuit on a *different* cause of action *issues actually litigated* in an earlier proceeding that were *essential* to the earlier adjudication. [*Bernhard v. Bank of America Nat'l Trust & Sav. Ass'n* (1942) 19 C2d 807, 813,].

---

[1]    All the *Fayerweather* information referenced herein is supported by the RJN provided by Comcast and/or the RJN supplied with this opposition.

Issue preclusion prevents a party from relitigating an issue that has already been adjudicated. The doctrine applies when: (1) the issue sought to be precluded is identical to that decided in a prior proceeding; (2) the issue is actually litigated in the prior proceeding;(3) the issue was necessarily decided in the prior proceeding; (4) the decision in the prior proceeding was final and on the merits; and (5) the party against whom preclusion is sought is the same as, or in privity with the party to the former proceeding. *Lucido v. Superior Court,* 51 Cal.3d 335, 341 (Cal. 1990).

Here, Defendants seek to relitigate the identical issue regarding tolling and the collateral estoppel effect of the Fayerweather decertification order, against plaintiffs, and that were considered and rejected by Judge Joseph Scott of the San Mateo Superior Court and Judge Perry Parker of the Sutter County Superior Court on February 2 and 3, 2015. The orders are final and Defendants are not only the same but represented by the same counsel. Accordingly, this Court should impose issue preclusion against Defendant and deny the motion as to the issues of Tolling and the collateral estoppel effect of the Fayerweather decision. See Declaration of John Glugoski and Request for Judicial Notice Ex. 2-5, the briefing and the final orders confirming that the issue has been already been litigated.

## C. CLASS CERTIFICATION PROCEEDINGS IS A PROCEDURAL DEVICE, NOT A RULING ON THE MERITS.

The first misconception with Comcast's motion is the assertion that the plaintiffs here could possibly be bound by any rulings in the *Fayerweather* case. Comcast's request to strike certain allegations is based on the notion that certain issues were decided in the procedural certification order and that all absent class members must be bound. Comcast does not bother with explaining how absent class members – not parties to the *Fayerweather* case – could possibly be bound without violating due process principles. The only theories to bind these plaintiffs would be collateral estoppel or res judicata. Neither of those theories are even discussed by Comcast because Comcast cannot meet the strict elements of either rule.

Moreover, it is well known that class certification is not a decision on the merits. Comcast's argument to the contrary is a misstatement of class certification law. Class certification is a procedural device. (See *Deposit Guaranty Nat. Bank v. Roper* (1980) 445 U.S. 326, 331 [class certification is a "procedural device"]; *Duran v. U.S. Bank Nat. Assn.* (2014) 59 Cal.4th 1, 34–35; *Sky Sports, Inc. Superior Court* (2011) 201 Cal.App.4th 1363, 1369 ["[a] class action is a procedural device"].) There can be little question but that class certification decisions

are procedural in nature. In *Duran* the California Supreme Court recently juxtaposed the difference between class certification as compared to substantive rights.

> We have long observed that the class action procedural device may not be used to abridge a party's substantive rights. "Class actions are provided only as a means to enforce substantive law. Altering the substantive law to accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going." (*City of San Jose v. Superior Court, supra,* 12 Cal.3d at p. 462.)

*Duran v. U.S. Bank Nat. Assn.,* 59 Cal.4th 1, 34 (Cal.,2014)

In *Hall v. Rite Aid Corporation*, 226 Cal.App.4th 278, 286, (Cal.App. 4 Dist.2014), the Court of Appeal explained.

> The certification question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 439–440. "A trial court ruling on a certification motion determines 'whether ... the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.'" (*Sav–On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326).

*Hall v. Rite Aid Corporation*, 226 Cal.App.4th 278, 286, (Cal.App. 4 Dist.2014).

Comcast's false assumption that the doctrine of collateral estoppel precludes plaintiffs from making any allegation, on any theory, following rulings in *Fayerweather* due to the denial of certification in *Fayerweather*, is incorrect. See, *Smith v. Bayer Corp.* 131 S.Ct. 2368 (2011); *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 579 (N.D.Ill.,2005) ["While *Bridgestone/Firestone* holds that in some circumstances denial of class certification may be given estoppel effect, courts are cautioned not to read the case as holding any ruling denying class certification is binding in future litigation. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 662–63 (7th Cir.2004). This court has previously held that the principles of collateral estoppel do not apply here because different facts and a different plaintiff are before the court."]. If the plaintiff here sought to file this case as a class action then there is no rule of law that would prevent them from doing so. It is a well-settled principle of class action law that class certification is not a merits-based analysis. Yet, Comcast asks this court to commit legal error by treating it as such. There can be no adjudication nor has there been any adjudication on the merits at the class certification stage and there can be neither res judicata nor collateral estoppel applied to any of the plaintiffs here who were not parties to the *Fayerweather* action.

**D. ONE WAY INTERVENTION ALSO COMPELS A FINDING THAT DECISIONS IN *FAYERWEATHER* ARE NOT BINDING ON THE NAMED PLAINTIFFS.**

California has also long recognized the doctrine set forth in the *Home Savings* case of "One-Way Intervention." *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069. The Courts have repeatedly opined on the dangers facing Defendants who race to have merits determinations heard before affording class members notice and a right to opt-out. The consequence for defendants is that any decision is categorically only binding as to the plaintiff. In contrast, an unfavorable decision against defendant would be binding on the losing defendant as to all putative class members even before they were given a right to opt-out. Because collateral estoppel may be invoked only against a party to the prior lawsuit in which the issue was determined, and because in this example the defendant would be a party to every lawsuit while each of the various plaintiffs would be a party in only one lawsuit, the defendant would in later lawsuits be bound by any adverse determination of the common issues, while none of the plaintiffs would be similarly bound by prior determinations in the defendant's favor. Thus, under this principle, "'[o]ne plaintiff could sue and lose; another could sue and lose; and another and another, until one finally prevailed; then everyone else would ride on that single success.'" (*Fireside Bank v. Superior Court, supra,* 40 Cal.4th at p. 1078.

There is no inkling from anything in *Fayerweather* that any merits decisions were made. Assuming, *arguendo*, that *Fayerweather* adjudicated merits issues, any such resolution would not bind absent class members who were not provided notice or an opportunity to opt-out. *Fireside Bank v. Sup.Ct. (Gonzalez)* (2007) 40 C4th 1069, 1087; *Home Sav. & Loan Ass'n v. Sup.Ct. (Deutsch I)* (1974) 42 Cal.App.3d 1006, 1010–1011].

In *Fayerweather*, although class certification was granted, the putative class members were never afforded an opportunity to "opt out," following class certification. Providing the absent class members (i.e., the plaintiffs here) with a right to"opt out" is mandatory before any court can apply the principles of collateral estoppel or res judicata against class members. Thus, Comcast's motion fails.

**E.    DEFENDANT'S RELIANCE ON *CROWN, CORK & SEAL v. PARKER, ETC...* IS MISPLACED AS THE CASES ARISE UNDER FEDERAL LAW WHERE DENIAL OF CERTIFICATION IS A FINAL NON-APPEALABLE ORDER- UNLIKE CALIFORNIA LAW WHERE ORDER DOES NOT BECOME FINAL UNTIL APPEAL HAS RUN ITS COURSE.**

FRC Rule 23(f) confirms that a denial of class certification is not an appealable order. This is complete opposite of California law.

> We hold, first, that no policy in the law allowed Stephen to "renew" a class certification motion which had been denied on the merits by a final, appealable order. The one-final-judgment rule generally precludes piecemeal litigation through appeals from orders which dispose of less than an entire action. (9 Witkin, Cal.Procedure (3d ed. 1985) Appeal, § 43, pp. 66–67; *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 806, 94 Cal.Rptr. 796, 484 P.2d 964 (*Vasquez* ).) An order denying class certification does not finally dispose of an action since it leaves it intact as to the *individual* plaintiff. However, the order is appealable if it effectively terminates the entire action as to the class, in legal effect being "tantamount to a dismissal of the action as to all members of the class other than plaintiff. [Citations.]" (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699, 63 Cal.Rptr. 724, 433 P.2d 732; *Richmond v. Dart Industries, Inc., supra,* 29 Cal.3d 462, 470, 174 Cal.Rptr. 515, 629 P.2d 23.) The appeal is allowed, as a matter of state law policy, because the order has "the 'death knell' effect of making further proceedings in the action impractical...." (*General Motors Corp. v. Superior Court* (1988) 199 Cal.App.3d 247, 251, 244 Cal.Rptr. 776.) Federal law, by contrast, while acknowledging death-knell consequences, denies a right of direct appeal in any circumstances. (*Ibid.; Coopers & Lybrand v. Livesay* (1978) 437 U.S. 463, 469–470, 98 S.Ct. 2454, 2458–2459, 57 L.Ed.2d 351.) Because California allows direct appeals of death-knell orders, a plaintiff who fails to appeal from one loses forever the right to attack it. The order becomes final and binding. Two cases from this district illustrate the concept, holding that plaintiffs could not, on appeal from final judgments on the merits of their cases, attack final orders denying class certification. (*Guenter v. Lomas & Nettleton Co.* (1983) 140 Cal.App.3d 460, 465, 189 Cal.Rptr. 470; *Morrissey v. City and County of San Francisco* (1977) 75 Cal.App.3d 903, 906–908, 142 Cal.Rptr. 527.) This, of course, is the reverse of federal law, which makes certification orders reviewable *only* on appeal *812 from the final judgment. (*General Motors Corp. v. Superior Court, supra,* 199 Cal.App.3d 247, 251, 244 Cal.Rptr. 776.)

*Stephen v. Enter. Rent-A-Car,* 235 Cal. App. 3d 806, 811-12 (Ct. App. 1991)

In cases relied upon by Defendant, the courts were dealing with denials of class certification under Rule 23. At the time of denial of certification, the order became final and binding. Conversly, in state court the *decision is not final if the deadline for appeal has not passed.* [*Long Beach Unified School Dist. v. State of Calif.* (1990) 225 CA3d 155, 168-169, 275]. Here, the order did not become final until the appeal ran its course. The trial court issued an order decertifying the class on December 15, 2012. On February 8 2013, Mr. Fayerweather filed an appeal challenging the legal validity of the trial court's decertification order on the grounds that

the decision is rooted in both legal error and an abuse of discretion. The First District Court of Appeal issued its decision on August 28, 2014, affirming the trial court's order decertifying the class. On October 7, 2014, Mr. Fayerweather filed a Petition for Review with the California Supreme Court. On November 25, 2014, the Supreme Court denied the petition. This matter was filed on November 7, 2014. Accordingly, tolling applies to the entire period.

## F.   THE UNITED STATES SUPREME COURT REJECTS DEFENDANT'S ARGUMENT THAT THERE IS NO TOLLING.

In *American Pipe & Constr. Co. v. Utah* (1974) 414 U.S. 538, the United States Supreme Court held statutory limitation periods are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. . . .The policies of ensuring essential fairness to defendants and of barring a plaintiff who "has slept on his rights," are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.* at 554-55. Almost ten years after *American Pipe*, the Court handed down its decision in *Crown, Cork & Seal Co., Inc. v. Parker* (1983) 462 U.S. 345 holding that the extension of *American Pipe* to individuals who institute separate actions following denial of certification does not frustrate the policies behind a statute of limitations: "Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification." *Id.* at 353.

> To hold to the contrary would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitations period would be to file earlier individual motions to join or intervene as parties – precisely the multiplicity of activity which Rule 23 was designed to avoid in those cases where a class action is found "superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3).

*American Pipe & Construction Co. v. Utah* 414 U.S. 538, 550-51.

In *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345 (1983), the Court extended *American Pipe* to allow tolling not only where plaintiffs sought to intervene in a continuing action, but also

where they sought to file an entirely new action. According to the Court, "[t]he filing of a class action tolls the statute of limitations as to all asserted members of the class ... not just as to interveners." *Id.* at 350, 103 S.Ct. 2392 (internal quotations omitted). Again, the Court relied upon the dual purposes of class actions and statutes of limitations. In order both to avoid "needless multiplicity of actions" and "to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights," tolling was appropriate.*Id.* at 351–52, "[T]olling the statute of limitations...creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification." *Id.* at 353.

Tolling under *American Pipe* is recognized in this State:

> "The policies of ensuring essential fairness to defendants and of barring a plaintiff who has 'slept on his rights,' . . . are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. [Citation.]"
> *Becker v. McMillan Constr. Co.* (1991) 226 Cal.App.3d 1493, 1498 quoting *Jolly*, 44 Cal.3d at 1121.

> Most of the Supreme Court's discussion in *Jolly, supra*, 44 Cal.3d 1103, of the rationale in *American Pipe, supra*, 414 U.S. 538, focused on this requirement in the tolling doctrine, adequate notice to the defendant. The court pointed out a potential danger of abuse of the "generous" [*Crown, Cork & Seal Co., supra*, 462 U.S. 345, 354 [76 L.Ed.2d at pp. 636-637] (Powell, J., conc.)] rule of *American Pipe*: Class actions might be filed merely to evade limitations periods. ( *Jolly, supra*, 44 Cal.3d at p. 1124.)   To avoid such abuse, tolling is to be allowed only where the class action and the later individual action or intervention are based on the same claims and subject matter and similar evidence. (*Ibid.*)

*Becker*, 226 Cal.App.3d at 1499.

Plaintiffs allege the *identical* claims made in the *Fayerweather* complaint for and are brought by persons in the identical job positions *i.e.*, Techs. In contrast is *Jolly*, for there the Court declined application of tolling because it concluded that the inconsistency of the claims meant there was no way that a defendant could have properly been on notice: "The discrepancies between the nature of the relief sought in *Sindell* and *Jolly* (declaratory relief and damages, respectively) and the factual and legal issues in the two actions (causation of injury and damages) were too great for any notice to be presumed.  Considerations of protecting the class

action device gave way to the stronger consideration under the circumstances: protecting the defendant from unfair claims." *Becker*, 226 Cal.App.3d at 1499. The *Jolly* Court also noted the potential for abuse where a class action is filed *purposely* to evade the statute of limitations (*Jolly*, 44 Cal.3d at 1124) and so held, "To avoid such abuse, tolling is to be allowed only where the class action and the later individual action or intervention are based on the same claims and subject matter and similar evidence." *Id.* Again, the claims in each of these related cases are identical and all brought by persons in the same job titles, an identity of claims and persons which Comcast admits.

As the Ninth Circuit has explained, statutes of limitation are intended to protect defendants by giving them notice of a claim before the evidence becomes stale. *In re Hanford*, 521 F.3d at 1053. Comcast has been on notice of the nature of the claims and the evidence and has preserved and produced much of the evidence for these plaintiffs in the *Fayerweather* action. In *In re Worldcom*, the Sixth Circuit also rejected the same argument made by Defendants here:

> The district court may be correct that its conception of the *American Pipe* rule would reduce the number of individual suits filed by class members. But this is beside the point. While reduction in the number of suits may be an incidental benefit of the *American Pipe* doctrine, it was not the purpose of *American Pipe* either to reduce the number of suits filed, or to force individual plaintiffs to make an early decision whether to proceed by individual suit or rely on a class representative. Nor was the purpose of *American Pipe* to protect the desire of a defendant "not to defend against multiple actions in multiple forums." *Crown*, 462 U.S. at 353. The *American Pipe* tolling doctrine was created to protect class members from being forced to file individual suits in order to preserve their claims. It was not meant to induce class members to forgo their right to sue individually.

*In re Worldcom,* 496 F.3d at 256.

This latter point is precisely what Comcast wishes to accomplish, that is to both induce individuals to forgo their right to sue and then to cut off the rights of those that seek to enforce their rights by filing suit.

Having argued in *Fayerweather* that class treatment was not necessary because the employees could bring individual suits, Comcast should now be estopped from taking a contrary position by asking this Court to ignore that assertion *and* the settled law and instead bar the very individual claims which Comcast argued it would prefer.

"[I]t is axiomatic that one who seeks equity must be willing to do equity. (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal. App. 4th 445, 453 [61 Cal. Rptr.

2d 707].) . . . This maxim stems from the paramount principle that equity is, peculiarly, a forum of conscience. (*Couts v. Cornell* (1905) 147 Cal. 560, 563 [82 P. 194].)" (*In re Marriage of Plescia* (1997) 59 Cal. App. 4th 252, 257-258 [69 Cal. Rptr. 2d 120].)

*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal. 4th 163, 180.

### 1. American Pipe Sets Forth The Two Criteria For The Court to Evaluate In Deciding Whether Tolling Applies.

Underlying the tolling rule of *American Pipe, supra*, 414 U.S. 538 were two major policy considerations. The first was the protection of the class action device. In cases where class certification is denied for what the high court characterized as "subtle factors," unforeseeable by class members, a rule that failed to protect putative class members from the statute of limitations after denial of certification would induce potential class members to "file protective motions to intervene or to join in the event that a class was later found unsuitable," depriving class actions "of the efficiency and economy of litigation which is a principal purpose of the procedure." (*American Pipe, supra*, 414 U.S. at p. 553; see also *Crown, Cork & Seal Co.* v. *Parker, supra*, 462 U.S. at pp. 350-351).

The second consideration involved the effectuation of the purposes of the statute of limitations. "The policies of ensuring essential fairness to defendants and of barring a plaintiff who has 'slept on his rights,' the high court stated, "are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." (414 U.S. at pp. 554-555]). In these circumstances, the court concluded, the purposes of the statute of limitations would not be violated by a decision to toll. (*Ibid.*; see, generally, Comment, *Class Actions and Statutes of Limitations* (1981) 48 U. Chi. L.Rev. 106, 108-109.)

Here, the two factors that the court must consider weigh in favor of tolling for the Named Plaintiffs. The *Fayerweather* case was filed to remedy the same rights that are now being adjudicated through these individual actions. Comcast concedes this fact in trying to strike allegations that mirror those contained in the *Fayerweather* complaint. The denial of tolling would undermine the primary purpose behind tolling (i.e., protecting putative class members from the statute of limitations to ensure the efficiency and economy of litigation which is a

principal purpose of the class action procedure).

To recap, the individuals who have filed suit were class members of the certified *Fayerweather* class that remained certified for close to three (3) years. When the California Supreme Court rendered its decision in *Brinker*, Plaintiffs counsel were required to submit further briefing on certification. The trial court decertified the class following further briefing and Plaintiffs immediately appealed the decertification. This case was filed on the heels of the appellate decision affirming the finality of the decertification order. Requiring these putative class members of a previously certified class to file individual lawsuits when the issue of class status remained an open question – and before the decertification order became final -- would undermine the purpose behind the class action device. Comcast's motion fails to address the fact that for more than two (2) years, the class was certified. It is more than reasonable and in fact prudent for the plaintiffs, who were part of a certified class for more than two (2) years, to wait to see if the certification order would be reinstated.  Had the appeal been successful, judicial economy would not have been served by having the plaintiffs lawsuit coexist with a separate class action covering their same rights pending in another forum. Avoiding multiplicity of lawsuits while preventing prejudice to defendants are the key public policies behind tolling.

### 2. Tolling Is Appropriate As Defendant Has Been On Notice Of The Individuals And Their Claims From The Inception of The *Fayerweather* Lawsuit.

Since Comcast must concede the existence of the doctrine of tolling, the crux of Comcast's argument is that the court should apply only *partial* tolling. In other words, Comcast concedes it was on notice of the claims and individuals involved. Yet for some unsupported reason, Comcast asks the court to ignore this factor and excuse Comcast from substantial liability for claims.  This, without any suggestion that Comcast could otherwise be prejudiced. Comcast cannot assert prejudice since it has been on notice of these claims for years. Comcast was both on notice of the claims and knew the individuals involved.

### a. Not Only Is Comcast On Notice, Comcast Has Preserved And Produced To Plaintiffs Counsel All Evidence For All Class Members Including The Named Plaintiffs

Class actions promote "efficiency and economy of litigation" by consolidating numerous individual suits into a single suit. *Id.* Statutes of limitations "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories faded and witnesses

disappeared." *Id.* at 554. The Court accommodated both purposes by formulating a "rule ... that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.*

*Catholic Soc. Services, Inc. v. I.N.S.*, 232 F.3d 1139, 1146-47 (9th Cir. 2000)

Where the class action complaint provided defendant with *notice* of the nature and number of all potential claims, the statute will be tolled. [*Jolly v. Eli Lilly & Co.* (1988) 44 C3d 1103, 1122]. Comcast has been on notice from "day one" of the claims and the putative class members (which include the claims encompassed in this litigation) on whose behalf the case has been brought.

As part of the extended class certification and decertification proceeding and preparations for trial (close to four years), massive amounts of data for all class members, including the plaintiffs, in the form of time sheets, time records, electronic data for each class member for each work day, payroll data, work days, lengths of shifts, jobs performed, etc. was produced by Comcast to Plaintiffs counsel in the *Fayerweather* action. All evidence that existed has been produced and thus the concern of surprise is non-existent.

Further, noticeably absent from Comcast's motion is any suggestion that it has been prejudiced in anyway by the filing of this action, that Plaintiff is alleging new and previously unknown claims or that Comcast was ignorant of the individuals whose claims were at issue in *Fayerweather*. Does Comcast seriously expect this court to accept that it was not on notice about the claims of these individuals? And, how is a court to make that adjudication based on the pleadings alone? The claims were laid out on numerous occasions and Comcast has known both the nature of the claims and who the individuals are. It was Comcast who actually identified them in the lawsuit. Comcast cannot suggest it has not been on notice of the claims in this lawsuit, or the individuals involved. In summary, statutes of repose apply to those who have slept on their rights to the prejudice of the other side. Plaintiffs neither slept on their rights nor was Comcast ignorant of the claims alleged or the individuals on whose behalf the *Fayerweather* class action was brought.

//
//
//

### G.    COMCAST'S RELIANCE ON THE HALL CASE IS DISTINGUISHABLE.

Comcast relies on a federal case from the 5th circuit to support its argument. Again, this case dealt with a federal denial of class certification, which is a non-appealable final order. Further, in *Hall*, putative class members waited a whopping five (5) years to bring a subsequent class action lawsuit after the trial court struck class allegations due to trial counsel's violation of expert and fact witness disclosures. In light of the two policy considerations involved and a decertification based on trial counsel's inexcusable conduct, it is understandable why the court found no tolling. Unlike the Plaintiffs here, the *Hall* Plaintiffs <u>were</u> sleeping on their rights by not taking action in light of trial counsel's disclosure abuses and the court was understandably not willing to revive those claims – and certainly not on a class basis.

### CONCLUSION

Class actions promote efficiency and economy of litigation by consolidating numerous individual suits into a single suit. Statutes of limitations promote justice by preventing surprises and demonstrable prejudice. "In order to both avoid needless multiplicity of actions and to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights, tolling is appropriate." See *Catholic Soc. Services, Inc. v. I.N.S* 232 F.3d 1139, 1147-48 (9th Cir. 2000). The benefits and purpose for tolling are present here. Comcast does not even suggest, nor could it seriously contend, that it will be prejudiced if tolling is allowed because it has known full well about the existence and scope of these claims since inception of the *Fayerweather* case. For the foregoing reasons, Comcast's motion to strike should be denied.

Respectfully submitted

Dated: March 10, 2015

**RIGHETTI GLUGOSKI , P.C.**

John Glugoski, Esq.
Attorneys for Plaintiff

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT

1   Matthew Righetti, SBN 121012
    John Glugoski, SBN 191551
2   RIGHETTI GLUGOSKI, P.C.
    456 Montgomery Street, Suite 1400
3   San Francisco, CA 94104
    Telephone: (415) 983-0900
4   Facsimile: (415) 397-9005

5
    Attorneys for Plaintiffs
6

7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA
                FOR THE COUNTY OF STANISLAUS
9

10

11  JOSEPH   JOSHUA   DAVIS,   PENNY         Case No.: 2011900
    SCHOONOVER, LEON GIBSON, DUSTIN
12  WAYNE HAGENS, RAYMOND AGUNDEZ,           DECLARATION OF JOHN GLUGOSKI
    RAFAEL BARAJAS, JR.                      IN SUPPORT OF PLAINTIFFS'
13                                           REQUEST FOR JUDICIAL NOTICE IN
            Plaintiffs,                      OPPOSITION TO DEFENDANT'S
14                                           MOTION TO STRIKE PORTIONS OF
                                             THE COMPLAINT
15      vs.

16  COMCAST CORPORATION, a Pennsylvania      Date: March 27, 2015
    Corporation;  COMCAST  OF  CONTRA        Time: 8:30 a.m.
17  COSTA, INC., a Washington Corporation; and   Dept.: 21
    DOES 1 through 50, Inclusive,
18                                           Hon. William A. Mayhew
            Defendants.
19                                           Complaint filed October 27, 2014

20

21

22

23

24

25

26

27

28
                                    1
    DECLARATION OF JOHN GLUGOSKI IN SUPPORT OF PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN
        OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT

# DECLARATION OF JOHN GLUGOSKI

I, JOHN GLUGOSKI, declare that:

1.      I am an attorney duly licensed to practice law in the State of California and am admitted to practice in this Court. I am an attorney at Righetti Glugoski, P.C., and counsel of record for the Plaintiff herein. I have personal knowledge of the matters set forth herein, and would and could testify thereto if called as a witness herein.

2.      A true and correct copy of the Order Granting Plaintiff's Motion for Class Certification dated April 12, 2010 in *Fayerweather* is marked and attached hereto as Exhibit 1.

3.      Attached as Exhibit 2 is the Order from the Honorable Joseph Scott of the San Mateo Superior Court, rejecting the tolling arguments and collateral estoppel arguments raised once again in this motion.

4.      Attached as Exhibit 3 is the Order from the Honorable Perry Parker of the Sutter County Superior Court, rejecting the tolling arguments and collateral estoppel arguments raised once again in this motion.

5.      Attached as Exhibit 4 is a true and correct copy of the identical Motion to Strike filed by Defendant in the San Mateo County Superior Court and the Opposition and Reply briefs that resulted in the Order from the Honorable Joseph Scott of the San Mateo Superior Court, rejecting the tolling arguments and collateral estoppel arguments raised once again in this motion.

6.      Attached as Exhibit 5 is a true and correct copy of the identical Motion to Strike filed by Defendant in the Sutter County Superior Court and the Opposition and Reply briefs that resulted in the Order from the Honorable Perry Parker of the Sutter County Superior Court, rejecting the tolling arguments and collateral estoppel arguments raised once again in this motion.

DECLARATION OF JOHN GLUGOSKI IN SUPPORT OF PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN
OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT

1       I declare under penalty of perjury under the laws of the State of California that the

2   foregoing is true and correct.   Executed this 10th day of March 2015, at San Francisco,

3   California.

4

5

6   JOHN GLUGOSKI

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

3

DECLARATION OF JOHN GLUGOSKI IN SUPPORT OF PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN
OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT

# EXHIBIT 1

ELECTRONICALLY
FILED
04/12/2010

K. TORRE, CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA – MARTINE
BY: L. BANDOMA, DEPUTY CLERK

1    **Superior Court of the State of California**

2    **In and for the County of Contra Costa**

3

4

5    GABRIEL FAYERWEATHER, as an individual and on

6    behalf of others similarly situated, Plaintiff                    No. C-08-01470

7    v.                                                                ORDER

8    COMCAST CORPORATION, et al, Defendants

9

10    On March 10, 2010 plaintiff moved for class certification. Defendants opposed

11    the motion. The matter came on for hearing on April 7, 2010. Plaintiff was represented

12    by his attorneys, Jennifer Kramer and Arlo Garcia Uriarte; defendants were represented

13    by their attorneys, Fred W. Alvarez and Troy A. Valdez.

14    The Court has considered the arguments presented, the evidence properly before it

15    and the authorities cited by the parties.

16    <u>Evidentiary Rulings</u>

17    As an initial matter, the Court addresses the evidentiary issues raised by

18    defendants.

19    *The declaration of Arlo Uriarte:* Defendants objected to the declaration of Arlo

20    Uriarte. Their objections fall into two categories.

21    (1) The first category consists of those objections that are stated in the form

22    "Paragraph 11(_), Exhibit _" , (*e.g.* "Paragraph 11(a), Exhibit B" or "Paragraph 11(b),

23    Exhibit C") on pages 1-25 of the "[Proposed] Order on Defendants' Objections to

1    Evidence Submitted by Plaintiff in Support of His Motion For Class Certification"

2    (referred to below as "the proposed order"). They are each overruled as being

3    insufficiently specific. The Court is unable to discern specifically what objection is being

4    made to what part of each of those (lengthy) paragraphs. Indeed, each is followed by a

5    more specific objection each of which is addressed next.

6        (2) The second category of objections are those that cite a specific conclusion by

7    Mr. Uriarte on pages 1-25 of the proposed order, such as on page 2 of the proposed order.

8    The objection as to each of the conclusionary statements quoted in the left hand column

9    is sustained. The Court does not receive it as evidence. Instead, the Court considers it

10    merely argument based on the business records as to which the objection is overruled.

11        *The declaration of Jennifer Kramer:* Defendants' objections to the declaration of

12    Jennifer Kramer are overruled. The declaration avers that the attached documents are

13    business records produced by defendants. The Court does not receive them now for the

14    truth of the matter asserted; but only to assess the kind and quality of the records that

15    have been exchanged in discovery so it can assess how best to manage this case given the

16    issues raised by this motion.

17        *The declaration of Gabriel Fayerweather:* The Court sustains defendnats'

18    objections as to paragraph 14:20-21 and paragraph 19:19. All other objections are

19    overruled.

20        *Defendants' Request for Judicial Notice:* Defendants' request is granted.

21    <u>The Motion for Class Certification</u>

22        The proper legal criterion for deciding whether to certify a class under CCP § 382

23    is whether plaintiff has established by a preponderance of the evidence that a class action

1    is superior to alternative means for a fair and efficient adjudication of the litigation. *Sav-*

2    *on Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 332. The certification

3    question is essentially a procedural one that does not ask whether an action is legally or

4    factually meritorious. *Id.* at p. 326; *Linder v. Thrifty Oil Co.* (2000) 23 Cal. 4th 429. (The

5    Court notes that a considerable amount of briefing seems directed towards the merits of

6    the claims. As explained in *Linder*, this is not the time to determine "whether an action is

7    legally or factually meritorious." *Id.* At 439–440.)

8       The party seeking class certification under CCP § 382 has the burden of

9    establishing (1) the existence of an ascertainable class, (2) a well-defined community of

10   interest among the class members, and (3) that substantial benefit to litigants and the

11   court would result from class certification. *City of San Jose v. Superior Court* (1974) 12

12   Cal.3d 447, 458.

13      A. Ascertainable class

14      Whether a class is "ascertainable" within the meaning of CCP § 382 is determined

15   by examining (a) the class definition, (b) the size of the class, and (c) the means available

16   for identifying the class members. *Reyes v. San Diego County Board of Supervisors*

17   (1987) 196 Cal.App.3d 1263, 1271.

18      *The class definition:* In this case, plaintiff proposes to define the class as "all

19   individuals who have been employed or are currently employed by defendants as

20   Communication Technicians Levels I, II, III and IV, Installer, Advanced Installer,

21   Service Technician, System Technician, Field Service Representatives Levels I, II, III,

22   IV, V, and VI, or in other similar positions who were employed by defendants from May

23   27, 2004 up to the time that class certification is granted."

3

1    With one exception, this class definition is precise, objective and ascertainable.

2    The exception is the phrase "or in other similar positions". At oral argument plaintiff

3    raised a concern about whether certain other job titles used in the declarations proffered

4    by defendants (such as "floater" and "lead tech" and "field technician") were included in

5    the precise job classifications identified in the proposed definition of the class.

6    Defendants said they were and plaintiff accepted that representation. Thus, the phrase

7    "or in other similar positions" will not be used.

8    The class is defined as "all individuals who have been employed or are currently

9    employed by defendants as Communication Technicians Levels I, II, III and IV, Installer,

10   Advanced Installer, Service Technician, System Technician, Field Service

11   Representatives Levels I, II, III, IV, V, and VI, who were employed by defendants from

12   May 27, 2004 to April 7, 2010."

13   *The size of the class:* The numerosity requirement is satisfied where the class

14   members are so numerous that it is impracticable to bring them all before the court. (CCP

15   § 382.) There is no predetermined minimum number of class members necessary as a

16   matter of law for the maintenance of a class action. See *Hebbard v. Colgrove* (1972) 28

17   Cal.App.3d 1017, 1030 (not inappropriate to certify class involving a minimum of 28

18   members). In this case, plaintiffs have established that there are at least 1,891 class

19   members, satisfying the numerosity requirement, as it would be impracticable to bring all

20   of these individuals before the court.

21   *Identification of class members:* Although the class must be ascertainable, its

22   members need not be identified to bind them by a class action judgment. See *Lazar v.*

23   *Hertz Corp.* (1983) 143 Cal.App.3d 128, 138 (all persons who rented cars from Hertz in

4

1    California during a 4-year period, held an ascertainable class). In this case, plaintiffs

2    have established, and defendants do not dispute, that the class members are identifiable

3    from defendant's employment records.

4         B. Community of interest

5         Community of interest is comprised of three elements: (a) predominant common

6    questions of law or fact; (b) class representatives with claims or defenses typical of the

7    class; and (c) class representatives who can adequately represent the class. *Richmond v.*

8    *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470.

9         *Predominance of common questions:* means that each member must not be

10   required to litigate individually numerous and substantial questions to determine his or

11   her right to recover following the class judgment; and the issues which may be jointly

12   tried, when compared with those requiring separate adjudication, must be sufficiently

13   numerous and substantial to make the class action advantageous to the judicial process

14   and to the litigants. *Washington Mutual Bank, FA v. Superior Court* (2001) 24 Cal.4th

15   906, 913-914.

16        Here, the predominance question is the most critical one. The parties have

17   sharply divergent views on that. Defendants cite the federal cases that hold that common

18   questions do not predominate in this type of litigation and provide the report of an expert

19   that tends to support that position. Plaintiff cites *Jaimez v. DAIOHS, USA* (2010) 181

20   Cal. App. 4th 1286 that holds to the contrary.

21        The Court believes this is a close case. However, ultimately, it is required to

22   consider whether "the theory of recovery advanced by the plaintiff is likely to prove

23   amenable to class treatment." *Id.* At 1298 quoting *Ghazaryan v. Diva Limousine, Ltd.*

5

1    (2008) 169 Cal. App. 4th 1524, 1531. Here, it appears to be plaintiff's theory that

2    Comcast has adopted a policy of understaffing (or overscheduling) that makes it unlikely

3    that Com-Techs can have their required breaks each day. Given that theory of the case,

4    some of the common issues of fact and law include:

5        1.   Whether Comcast's policies, practices and procedures provide Com-Techs

6             with lawful breaks.

7        2.   Whether Comcast has a policy of not compensating Com-Techs under Labor

8             Code 226.7 for missed breaks.

9        3.   Whether Comcast's policies, practices and procedures provide Com-Techs a

10            meal period for every 5 hours worked in compliance with Labor Code 512.

11       4.   Whether Comcast has a policy of not compensating Com-Techs under Labor

12            Code 226.7 for missed breaks.

13       5.   Whether Comcast's policies, practices and procedures result in keeping

14            accurate records as required by the Labor Code.

15       6.   Whether Comcast has a policy of requiring Com-Techs to execute a statement

16            of hours worked during a pay period which Comcast knows to be false.

17    In phrasing the questions this way, the Court does not, of course, presume to

18    determine how the Supreme Court will rule in *Brinker Restaurant v. Superior Court*.

19    But regardless of how the Supreme Court rules, these questions (however phrased) raise

20    common issues about Comcast's policies, practices and procedures. See, *Bibo v. Federal*

21    *Express*, 2009 WL 1068880, 14 Wage & Hour Cas. 2d (BNA) 1360 (N.D.Cal. 2009).

22    Of course these common questions have to be weighed against the individual

23    questions. The individual questions of fact include:

6

1        1.  Whether and when each individual class member missed meal/rest breaks.

2        2.  Whether and when class members worked 'off-the clock'.

3        3.  Whether class members are owed unpaid wages for the time recorded as

4            breaks when no break was provided and/or time worked off the clock at the

5            start or end of shifts.

6        4.  Other individual class members' damages.

7          Defendants point to these issues and, to sharpen the point, argue that each

8    Comcast region is different, each route may be different, each day may be different, and

9    each supervisor may act differently. Therefore, they argue, there can be *no* common

10   questions.

11         Defendants submitted the declaration of John H. Johnson, IV, Ph.D.   He

12   concludes:

13       "To determine whether any class member had adequate time to take meal or rest

14       breaks, an individual review for each class member on each day would have to be

15       conducted using the available time databases.

16       "The available data alone cannot be used to determine with a reasonable degree of

17       certainty whether any individual in fact took a meal or rest break, and if so, for

18       how long. Ultimately, review of paper timesheets and individual recollection will

19       be required as supplements to determine the fact of whether any individual

20       actually took a meal or rest break.

21       "Mr. Fayerweather's experience at Comcast cannot be used to extrapolate the

22       experiences of other class members for the purpose of calculating missed meal

23       breaks, rest breaks, or damages." (Declaration of Troy A. Valdez In Support of

1    Defendants' Opposition to Plaintiff's Motion for Class Certification, Exhibit D,

2    paragraph 10.)

3        Dr. Johnson's report gives pause.  But on analysis, it can be seen that it addresses

4    only part of the question.  Dr. Johnson says he was "asked by counsel for Comcast to (1)

5    *review the available data sets* provided in discovery in this litigation, (2) to assess

6    whether a common methodology exists *using the available data* to determine whether

7    meal or rest breaks occurred or adequate time was given for mean or rest breaks, and (3)

8    to analyze, *based on available data*, the extent to which experiences of the named

9    plaintiff Mr. Gabriel Fayerweather with respect to his meal and rest breaks can be used to

10   extrapolate to the experiences of other putative class members." (*Id.* at paragraph 7.)

11       In other words, Dr. Johnson was asked to focuses on the *data* that has been

12   produced in discovery.  Thus, he pursues what might be called a microanalysis of the

13   case.  He posits one way in which plaintiff might seek to prove his case – by looking at

14   the data regarding each of the individual workers.  From that view of the case, he reaches

15   the conclusions quoted above.

16       But that is not *plaintiff's* theory of the case.  Plaintiff seeks to prove there are

17   systemic *policies and procedures* that result in violations of the law; they argue that the

18   *staffing levels* are fundamentally inadequate.  They seek to prove their case by focusing

19   on staffing levels, time and motion studies conducted by defendants and other similar

20   macroanalyses.[1]

21       On that view of the case, the common issues do predominate; the individual issues

22   become a matter of individual damages.  The Court acknowledges defendants' argument

---

[1] They also suggest that the data may usefully be sampled.  That may or may not be possible given Dr. Johnson's declaration.

1   that plaintiff has not proved these claims.  But, as noted above, a class certification

2   motion is not the time to test the validity of the claims; only to determine how best to

3   manage them.

4        Individualized proof of damages is not per se an obstacle to class treatment, so

5   long as the issues which may be jointly tried, when compared to those requiring separate

6   adjudication, justify the maintenance of the suit as a class action. *Sav-On Drug Stores v.*

7   *Superior Court* (2004) 34 Cal.4th 319, 334-335.  If unanticipated or unmanageable

8   individual issues do arise, the trial court retains the option of decertification. *Id.* at p. 335.

9        *Typicality:* The "adequacy" and "typicality" test examines whether the class

10  representative's claims arise from the same nucleus of operative facts as those of class

11  members and whether the class representatives are free of irreconcilable conflicts. *La*

12  *Sala v. American Savings & Loan Assn.,* (1971) 5 Cal.3d 864, 871.  The purported class

13  representative's claim must be typical but not necessarily identical to the claims of other

14  class members; it is sufficient that the representative is similarly situated so that he or she

15  will have the motive to litigate on behalf of all class members. *Classen v. Weller* (1983)

16  145 Cal.App.3d 27, 45. It is not necessary that the class representative have personally

17  incurred all of the damages suffered by each of the other class members. *Wershba v.*

18  *Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 228.

19       In this case, the named plaintiff's claims appear to be the same as the claims of the

20  absent members of the putative class.  Here, the named plaintiff performed the same job

21  duties as the putative class members and alleges that he, like the other class members

22  worked through his meal and rest breaks and performed work 'off-the-clock.'  As with

23  the other class members, plaintiff alleges that he was not compensated for all hours he

1  worked. Because plaintiff and the putative class members performed similar duties and

2  were subject to the same allegedly illegal employment policies, his claims are typical of

3  the class.

4      *Adequacy:* As for adequacy of the class representative, he or she must be capable,

5  through qualified counsel, of vigorously and tenaciously protecting the interests of the

6  class members. *Simons v. Horowitz* (1984) 151 Cal.App.3d 834, 846. If he or she seeks

7  only partial relief, the adequacy of representation requirement is not met, and a class

8  action therefore will not be allowed. *City of San Jose v. Superior Court* (1974) 12 Cal.3d

9  447, 464.

10      In this case, the named plaintiff has actively participated in the litigation thus far

11  including giving his deposition. He appears adequate to represent the interests of the

12  class members. Indeed, there seems to be little dispute about that.

13      The Court also has an obligation to scrutinize closely the qualifications of counsel

14  to assure that all interests, including those of as yet unnamed plaintiffs are adequately

15  represented, because in certifying a class action, the Court confers on absent persons the

16  status of litigants and creates an attorney-client relationship between those persons and a

17  lawyer or group of lawyers. *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997)

18  52 Cal.App.4th 1, 12. In this case, the qualifications of counsel are not disputed and the

19  adequacy of class counsel has been established. See Declarations of Jennifer Kramer and

20  Arlo Garcia Uriarte.

21      C. Substantial benefit

22      Certifying a class action requires demonstrated substantial benefits to litigants and

23  the court. *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 657. Also, plaintiff

10

1    must establish more than a reasonable probability that class action treatment is

2    appropriate. *Hamwi v. Citinational-Buckeye* (1977) 72 Cal.App.3d 462, 471-472.

3        Because a class should not be certified unless substantial benefits accrue both to

4    litigants and the courts, the question arises as to whether a class action would be superior

5    to individual lawsuits. *Basurco v. 21st Century Ins. Co.* (2003) 108 Cal.App.4th 110,

6    120.

7        In this case, class adjudication presents a substantial benefit to the class members.

8    Their individual claims are relatively small, making individual litigation more difficult

9    and less likely. In general, a class action is proper where it provides small claimants with

10    a method of obtaining redress and when numerous parties suffer injury of insufficient

11    size to warrant individual action. *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435.

12        Defendants contend that this case presents too many individual issues to be the

13    superior method of adjudication. Defendants assert that a better method for adjudication

14    is for individuals to submit claims to the California Labor Commissioner. The Court

15    concludes that class adjudication presents a substantial benefit to the court, promoting the

16    efficient use of judicial resources, avoiding duplicative discovery and pretrial motions,

17    and multiple trials on predominantly common issues.

18        It appears that the common issues can be litigated in a manageable way and the

19    case need not be overwhelmed by individual issues. The Court will be alert to managing

20    the case to promote that.

21        Accordingly, plaintiff's motion for class certification is granted. A class is

22    certified as described above.

1    A case management conference will be held on June 17, 2010 at 9:00 a.m. The

2 parties shall submit case management conference statements two weeks prior to that date.

3

4    Dated: April 12, 2010

Digitally signed by Barry Goode
Reason: I am the author of this
document
Location: Martinez, CA
Date: 2010.04.12 10:02:39
-07'00'

5

6

7                                    Judge, Superior Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

12

**EXHIBIT 2**



RECEIVED

FEB – 5 2015

CLERK OF THE SUPERIOR COURT
SAN MATEO COUNTY

1

2

3

4

5

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         FOR THE COUNTY OF SAN MATEO

10

11   LAMBERTO VALENCIA, MARK A          CASE NO  CIV531049
     PERDUE, PHILIP RICHARD MARTIN
12   and ESTATE OF EFREN AGANANA,       [PROPOSED] ORDER GRANTING AND
                                        DENYING DEFENDANT'S MOTION TO
13              Plaintiffs,             STRIKE PORTIONS OF THE
                                        COMPLAINT
14        v
15   COMCAST CORPORATION, a
     Pennsylvania Corporation, COMCAST OF   Date    January 23, 2015
16   CONTRA COSTA, INC , a Washington       Time    9 00 AM
     Corporation, and DOES 1 through 50,    Dept    LM (Law & Motion)
17   Inclusive,                             Complaint filed October 27, 2014
18              Defendants

19

20        The Motion to Strike by Defendant Comcast Cable Communications Management LL

21   GRANTED as to the first sentence of Paragraph 44 of the Complaint which reads, "Defendan

22   failed in their affirmative obligation to ensure that all of their employees, including Plaintiffs,

23   were actually relieved of all duties, not performing any work, and free to leave the premises

24   during meal periods." This allegation is at odds with the Supreme Court's ruling in *Brinker*

25   *Restaurant Corp  v  Superior Court* (2012) 53 Cal  4th 1004, which states that "an employer's

26   obligation is to relieve its employee of all duty, with the employee thereafter at liberty to use

27   meal period for whatever purposes he or she desires, but the employer need not ensure that no

28   work is done " [*Id* at 1017 ]  Plaintiffs have not opposed this portion of Comcast's motion

1    The motion is DENIED as to the remaining allegations Comcast seeks to strike.  With

2    respect to the allegations that Comcast had unlawful "policies, patterns, or practices" resulting i

3    the denial of meal and rest breaks to its employees, such allegations are not precluded by

4    collateral estoppels based on any findings made by the Contra Costa Superior Court in its

5    December 15, 2012 Decertification Order  "The certification question is essentially a procedur

6    one that does not ask whether an action is legally or factually meritorious "  [*Hall v  Rite Aid*

7    *Corporation* (2014) 226 Cal App 4th 278, 286 ]

8        As for the allegations that any applicable statute of limitations has been tolled "to the

9    present" (Complaint ¶ 8), the motion to strike is DENIED on the ground that pursuant to the

10   guidelines set forth in *American Pipe & Construction Co  v  Utah* (1974) 414 U S  538 and

11   *Crown, Cork & Seal Co , Inc  v  Parker* (1983) 462 U S  345, tolling appears appropriate  The

12   Court notes that unlike the plaintiffs in *Hall v  Variable Annuity Life Ins  Co* (5th Cir 2013) 72

13   F 3d 372, Plaintiffs in this case filed the instant action promptly after their avenues for appeal

14   were exhausted  Tolling would serve the dual purpose of avoiding "needless multiplicity of

15   actions" and "to put defendants on notice of adverse claims and to prevent plaintiffs from

16   sleeping on their rights "  [*Crown*, supra at 351-352 ]

17       The Court grants Comcast's Request for Judicial Notice of Exhibits D and E, and grants

18   judicial notice of the remainder of its exhibits only to the extent that they were filed or were par

19   of the record in *Fayerweather v  Comcast*, Contra Costa Superior Court Case No  MSC-08-014

20   but not as to the truth of any matters asserted therein  The Court grants Plaintiffs' Request for

21   Judicial Notice of Exhibit A

22

23       **IT IS SO ORDERED.**

24

25   Dated _____, 2015

26                                      _____

27                                      Honorable Judge of the Superior Court

28                                      JOSEPH C. SCOTT

                                      2

## PROOF OF SERVICE

I, Margarita M. Lopez, declare

I am a citizen of the United States and employed in Santa Clara County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Silicon Valley Office, 1755 Embarcadero Road, Palo Alto, California 94303. On February 2015, I served a copy of the within document(s)

**[PROPOSED] ORDER GRANTING AND DENYING DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT**

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) forth below on this date before 5 00 p m

☒    by placing the document(s) listed above in a sealed envelope with postage there fully prepaid, in the United States mail at Palo Alto, California addressed as set forth below

☐    by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a            agent for delivery

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below

☐    by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Matthew Righetti (SBN 121012)
John Glugoski (SBN 191551)
RIGHETTI GLUGOSKI, P C
456 Montgomery Street, Suite 1400
San Francisco, CA 94104

*Attorneys for Plaintiffs*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U S Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

I declare under penalty of perjury under the laws of the State of California that the above

---

PROOF OF SERVICE - CASE NO. CIV531049

1   is true and correct

2       Executed on February 5, 2015, at Palo Alto, California.

3

4                                                  _____
5                                                      Margarita M. Lopez
6   SVI-780159873v1

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**PROOF OF SERVICE - CASE NO. CIV531049**

**EXHIBIT 3**

1  Matthew Righetti, SBN 121012
2  John Glugoski, SBN 191551
   RIGHETTI GLUGOSKI, P.C.
3  456 Montgomery Street, Suite 1400
   San Francisco, CA 94104
4  Telephone: (415) 983-0900
   Facsimile: (415) 397-9005
5

**FILED**

FEB - 9 2015

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SUTTER
CLERK OF THE COURT

6

7           SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                    FOR THE COUNTY OF SUTTER

9

10  STEPHEN McBRIDE, MARTIN PULIDO and      Case No.: CVCS 14-1995
11  BRANDON GLAUNERT,
                                            [PROPOSED] ORDER DENYING
12           Plaintiffs,                    DEFENDANTS' MOTION TO STRIKE
                                            PORTIONS OF THE FIRST AMENDED
13       vs.                                COMPLAINT

14
    COMCAST CORPORATION, a Pennsylvania
15  Corporation; COMCAST OF CONTRA
    COSTA, INC., a Washington Corporation; and
16  DOES 1 through 50, Inclusive,
17
             Defendants.
18

19

20

21       On February 2, 2015, Defendants' Motion to Strike Portions of the First Amended

22  Complaint came on for hearing before the Honorable Perry Parker in Department B of the Sutter

23  County Superior Court. John Glugoski appeared for Plaintiffs. Troy Valdez appeared for

24  Defendants. The Court having read the papers, considered the papers and all evidence submitted

25  and having held oral argument in open court;

26

27

28

                                        -1-
                    ORDER DENYING DEFENDANT'S MOTION TO STRIKE
                    PORTIONS OF THE FIRST AMENDED COMPLAINT

1    IT IS HEREBY ORDERED: Defendant's Motion To Strike Portions of the First

2  Amended Complaint is denied. Defendants have ten (10) days from the date of this Order to file

3  an Answer to the First Amended Complaint.

4

5  Dated: February ___, 2015

6                                                    Honorable Perry Parker

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-
ORDER DENYING DEFENDANT'S MOTION TO STRIKE
PORTIONS OF THE FIRST AMENDED COMPLAINT

**EXHIBIT 4**

1   FRED W. ALVAREZ, State Bar No. 68115
    ALLISON B. MOSER, State Bar No. 223065
2   JONES DAY
    Silicon Valley Office
3   1755 Embarcadero Rd.
    Palo Alto, CA 94303
4   Telephone: (650) 739-3939
    Facsimile: (650) 739-3900
5   Email: falvarez@jonesday.com
    Email: amoser@jonesday.com
6
    TROY A. VALDEZ, State Bar No. 191478
7   ERIN M. DOYLE, State Bar No. 233113
    VALDEZ TODD & DOYLE LLP
8   1901 Harrison Street, Suite 1450
    Oakland, California 94612
9   Telephone: (415) 202-5950
    Facsimile: (415) 202-5951
10  Email: tvaldez@vtdlaw.com
    Email: edoyle@vtdlaw.com
11
    Attorneys for Defendant
12  COMCAST CABLE COMMUNICATIONS
    MANAGEMENT, LLC, erroneously sued as
13  COMCAST CORPORATION and COMCAST OF
    CONTRA COSTA, INC.
14
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
15
                        FOR THE COUNTY OF SAN MATEO
16

17
    LAMBERTO VALENCIA, MARK A.            CASE NO. CIV531049
18  PERDUE, PHILIP RICHARD MARTIN
    and ESTATE OF EFREN AGANANA,          DEFENDANT'S NOTICE OF MOTION
19                                        AND MOTION TO STRIKE PORTIONS
                    Plaintiffs,           OF THE COMPLAINT
20
             v.                           Date:  January 23, 2015
21                                        Time:  9:00 AM
    COMCAST CORPORATION, a                Dept.: LM (Law & Motion)
22  Pennsylvania Corporation; COMCAST OF
    CONTRA COSTA, INC., a Washington      Complaint filed October 27, 2014
23  Corporation; and DOES 1 through 50,
    Inclusive,
24
                    Defendants.
25

26

27

28

        DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF THE
                         COMPLAINT - CASE NO. CIV531049

1    TO EACH PARTY AND TO THE COUNSEL OF RECORD FOR EACH PARTY:

2        PLEASE TAKE NOTICE that on January 23, 2015 at 9:00 a.m., or as soon thereafter

3    may be heard, in Department LM of the above-entitled Court, located at 400 County Center,

4    Redwood City, CA 94063, Defendant Comcast Cable Communications Management, LLC,

5    erroneously sued as Comcast Corporation and Comcast of Contra Costa, Inc., will and hereby

6    does move this Court for an order striking the following portions of the Complaint filed Octo

7    27, 2014 by Plaintiffs Lamberto Valencia, Mark A. Perdue, Philip Richard Martin, and Estate

8    Efren Aganana (collectively, "Plaintiffs") pursuant to California Code of Civil Procedure § 4

9    seq.:

10    1.    This complaint challenges Defendants' systemic illegal employment practices

11          resulting in violations of the California Labor Code, Business and Professions

12          Code and applicable IWC wage orders against employees of Defendants. Pag

13          ¶ 2.

14    2.    Plaintiffs are informed and believe and based thereon allege Defendants, joint

15          severally have acted intentionally and with deliberate indifference and conscic

16          disregard to the rights of all employees in receiving all wages due and lawful r

17          and rest periods. Page 2, ¶ 3.

18    3.    Plaintiffs are informed and believe and based thereon allege Defendants have

19          engaged in, among other things, a system of willful violations of the Californi

20          Labor Code, Business and Professions Code and applicable IWC wage orders

21          creating and maintaining policies, practices and customs that knowingly deny

22          employees (a) all wages due, (b) the opportunity to take meal and rest periods,

23          (c) accurate, itemized wage statements. Page 2, ¶ 4.

24    4.    The policies, practices and customs of defendants described above and below l

25          resulted in unjust enrichment of Defendants and an unfair business advantage (

26          businesses that routinely adhere to the strictures of the California Labor Code,

27          Business and Professions Code and applicable IWC wage orders. Page 2, ¶ 5.

28    5.    . . . to the present. Page 3, ¶ 8 at line 8.

                                          2

1  6.  Plaintiffs are and were victims of the policies, practices and customs of Defe

2      complained of in this action in ways that have deprived them of the rights

3      guaranteed them by California Labor Code § 204, 226.7, 1194, 1198, and 512

4      California Business and Professions Code § 17200, et seq., (Unfair Practices

5      and the applicable wage order(s) issued by the Industrial Welfare Commissio

6      including IWC Wage Order No. 4 §§ 11 and 12. Page 3, ¶ 8 at lines 8-13.

7  7.  Defendant had a uniform policy and practice of contacting Plaintiffs through

8      Nextel devices at all times of the day including interrupting Plaintiffs during

9      would otherwise be meal periods and rest breaks. Page 5, ¶ 21 at lines 22-24.

10 8.  . . . and the uniform policy of being "on duty" at all times . . . Page 6, ¶ 24 a

11     18-19.

12 9.  . . . and the uniform policy of being "on duty" at all times . . . Page 6, ¶ 25 a

13     21-22.

14 10. As a pattern and practice, Defendants relied on punch data/time sheets in man

15     instances filed [sic] out before the work day commenced to compensate Plain

16     for hours worked rather than relying on the actual records that reflect hours

17     worked and meal periods, i.e. the CSG records that were kept in real time. As

18     result, Plaintiffs were not compensated for all hours they were subject to the

19     control of Defendants, including all time they were suffered or permitted to w

20     Page 7, ¶ 30.

21 11. Plaintiffs are informed and believe and based theron allege Defendants uniforn

22     administered a corporate policy concerning staffing levels, duties, and

23     responsibilities which required Plaintiffs to work without appropriate pay. Th

24     included a uniform corporate pattern and practice of allocating and authorizing

25     inadequate staffing levels. The inadequate staffing levels were enforced and

26     ensured through the uniform and mandated corporate policy of a minimal labo

27     budget. This corporate conduct is accomplished with the advance knowledge a

28     designed intent to save labor costs by required [sic] Plaintiffs to work without

3

1    proper compensation because they were unable to take the meal periods which

2    were automatically deducted from their time records. Page 7, ¶ 31.

3    12.    As a pattern and practice, in violation of the aforementioned labor laws and w

4    orders, Plaintiffs are informed and believe and based thereon allege Defendan

5    did not properly maintain records pertaining to when Plaintiffs began and end

6    each work period, meal period, the total daily hours worked, and the total hou

7    worked per pay period and applicable rates of pay in violation of California L

8    Code § 1174. Page 8, ¶ 32.

9    13.    Plaintiffs are informed and believe and based thereon allege Defendants willf

10    failed to pay employees proper compensation for all hours worked. Plaintiffs

11    informed and believe and based thereon allege Defendants' willful failure to

12    provide wages due and owing them upon separation from employment results

13    continued payment of wages up to thirty (30) days from the time the wages w

14    due. Therefore, Plaintiffs who have separated from employment are entitled t

15    compensation pursuant to Labor Code § 203. Page 8, ¶ 34.

16    14.    Such a pattern, practice and uniform administration of corporate policy regard

17    illegal employee compensation as described herein is unlawful and creates an

18    entitlement to recovery by Plaintiff [sic] in a civil action, for the unpaid balan

19    the full amount of straight time compensation and overtime premiums owing,

20    including interest thereon, penalties, reasonable attorneys' fees, and costs of s

21    according to Labor Code § 1194, et seq. Page 8, ¶ 35.

22    15.    By failing to properly compensate hourly-paid employees for off-the-clock w

23    Defendants breached their employment contracts with Plaintiffs. Page 9, ¶ 41

24    16.    Defendants failed in their affirmative obligation to ensure that all of their

25    employees, including Plaintiffs, were actually relieved of all duties, not perfor

26    any work, and free to leave the premises during meal periods. Plaintiffs were

27    suffered and permitted to work through legally required meal breaks. As such

28    Defendant is responsible for paying premium compensation for missed meal

4

1    periods pursuant to <u>Labor Code</u> § 226.7 and IWC Wage Order No. 4 § 11(B).

2    Defendants shall pay the [sic] each affected employee one (1) hour of pay at the

3    employee's regular rate of compensation for each workday that the meal break

4    not provided. Page 9, ¶ 44.

5    17.    As a pattern and practice, Defendants regularly required employees to work

6        through their meal periods without proper compensation. Defendants did staf

7        schedule employees in such a manner and at such posts that would make it

8        impossible for these employees to take their meal period as required under

9        California law. This policy of requiring employees to work through their lega

10       mandated meal periods is a violation of California law. Indeed, Defendants'

11       records, i.e. the CSG data, confirms whether an employee used the Nextel dev

12       to clock out for a meal period lasting not less than thirty minutes. For those

13       instances where the CSG data shows a meal period lasting less than 30 minute

14       Defendants did not compensate Plaintiff with an extra hour of pay. Page 10, ¶

15   18.    Plaintiffs are informed and believe and based thereon allege Defendants willf

16       failed to pay employees who were not provided the opportunity to take meal

17       breaks the premium compensation set out in <u>Labor Code</u> § 226.7 and IWC Wa

18       Order No 4 § 11(B). Plaintiffs are informed and believe and based thereon all

19       Defendants' willful failure to provide Plaintiffs the wages due and owing them

20       upon separation from employment results in a continued payment of wages up

21       thirty (30) days from the time the wages were due. Therefore, Plaintiffs who

22       separated from employment are entitled to compensation pursuant to <u>Labor Co</u>

23       § 203. Page 11-12, ¶ 49.

24   19.    As a pattern and practice, in violation of the aforementioned labor laws and w

25       orders, Plaintiffs are informed and believe and based thereon allege Defendant

26       did not properly maintain records pertaining to when Plaintiffs began and ende

27       each meal period in violation of California <u>Labor Code</u> § 1174 and § 4 of the

28       applicable IWC Wage Order(s). This, despite the fact that Defendant knew the

5

1   CSG data was an accurate record of meal periods taken and the length of each

2   meal period. Page 11, ¶ 50.

3   20.   Such a pattern, practice and uniform administration of corporate policy as

4         described herein is unlawful and creates an entitlement to recovery by the Plai

5         [sic] identified herein, in a civil action, for the unpaid balance of the unpaid

6         premium compensation pursuant to Labor Code § 226.7 and IWC Wage Order

7         4 § 11(B), including interest thereon, penalties, reasonable attorneys' fees, and

8         costs of suit according to the mandate of California Labor Code §§ 218.5 or 11

9         Page 11, ¶ 51.

10  21.   Plaintiff regularly worked in excess of three and half (3 ½) hours per day

11        Defendants' policies and practices prevented Plaintiff [sic] from enjoying their

12        right to a ten (10) minute rest period in the middle of each four (4) hour work

13        period. Page 12, ¶ 55.

14  22.   As a pattern and practice, Defendants regularly required employees to work

15        through rest periods. Defendants and Defendants' supervisors assigned work,

16        scheduled shifts, and staffed worksites in a manner that did not allow Plaintiff

17        to regularly take rest periods. Page 12, ¶ 56.

18  23.   Plaintiffs are informed and believes [sic] and based thereon alleges [sic]

19        Defendants willfully failed to pay employees who were not provided the

20        opportunity to take rest breaks the premium compensation set out in Labor Coc

21        226.7 and IWC Wage Order No 4 § 11(B). Plaintiffs are informed and believe

22        based thereon alleges [sic] Defendants' willful failure to provide Plaintiffs the

23        wages due and owing them upon separation from employment results in a

24        continued payment of wages up to thirty (30) days from the time the wages wei

25        due. Therefore, Plaintiffs who have separated from employment are entitled to

26        compensation pursuant to Labor Code § 203. Page 12, ¶ 58.

27  24.   Such a pattern, practice and uniform administration of corporate policy as

28        described herein is unlawful and creates an entitlement to recovery by the

6

1            Plaintiffs identified herein, in a civil action, for the unpaid balance of the unpa

2            premium compensation pursuant to Labor Code § 226.7 and IWC Wage Orde

3            4 § 12(B), including interest thereon, penalties, reasonable attorney's [sic] fee

4            and costs of suit according to the mandate of California <u>Labor Code</u> §§ 218.5

5            1194. Pages 12-13, ¶ 59.

6      25.    Defendants, and each of them, have engaged and continue to engage in unfair

7            business practices in California by practicing, employing and utilizing the

8            employment practices outlined above, inclusive, to wit, (a) not compensate

9            employees for all hours worked, and (b) to require employees to work through

10           meal and rest periods. Page 13, ¶ 62.

11      26.    As a pattern and practice, Defendant failed to furnish Plaintiffs, either

12           semimonthly or at the time of each payment of wages, either as a detachable p

13           of the check or separately, an accurate, itemized statement in writing showing

14           gross wages earned, total hours worked, and the applicable hourly rates and

15           corresponding number of hours worked by Plaintiffs at each rate. Page 14, ¶

16     This motion is based upon sections 435 through 437 of the California Code of Civil

17 Procedure and California Rule of Court 3.1322; this Notice; the Memorandum of Points and

18 Authorities, the Request for Judicial Notice, and the Proposed Order filed herewith; the plead

19 on file in this case; and such further evidence and argument as may be presented at or before

20 hearing on this matter.

21 Dated: December 15, 2014              JONES DAY

22

23                            By: _____

24                              Fred W. Alvarez

                               Allison B. Moser

25                             Attorney for Defendant

26                             COMCAST CABLE COMMUNICATIONS

                            MANAGEMENT, LLC

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF THE
COMPLAINT - CASE NO. CIV531049

1    FRED W. ALVAREZ, State Bar No. 68115
       ALLISON B. MOSER, State Bar No. 223065
2    JONES DAY
       Silicon Valley Office
3    1755 Embarcadero Rd.
       Palo Alto, CA 94303
4    Telephone: (650) 739-3939
       Facsimile: (650) 739-3900
5    Email: falvarez@jonesday.com
       Email: amoser@jonesday.com
6
       TROY A. VALDEZ, State Bar No. 191478
7    ERIN M. DOYLE, State Bar No. 233113
       VALDEZ TODD & DOYLE LLP
8    1901 Harrison Street, Suite 1450
       Oakland, California 94612
9    Telephone: (415) 202-5950
       Facsimile: (415) 202-5951
10   Email: tvaldez@vtdlaw.com
       Email: edoyle@vtdlaw.com
11
       Attorneys for Defendant
12   COMCAST CABLE COMMUNICATIONS
       MANAGEMENT, LLC
13
14             SUPERIOR COURT OF THE STATE OF CALIFORNIA
15                FOR THE COUNTY OF SAN MATEO
16

| | |
|---|---|
| 17  LAMBERTO VALENCIA, MARK A. PERDUE, PHILIP RICHARD MARTIN and ESTATE OF EFREN AGANANA, | CASE NO. CIV531049 |
| 18 | **DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF THE COMPLAINT** |
| 19         Plaintiffs, | |
| 20      v. | |
| 21  COMCAST CORPORATION, a Pennsylvania Corporation; COMCAST OF | Date:   January 23, 2015 |
| 22  CONTRA COSTA, INC., a Washington Corporation; and DOES 1 through 50, | Time:  9:00 AM<br>Dept.:  LM (Law & Motion) |
| 23  Inclusive, | Complaint filed October 27, 2014 |
| 24        Defendants. | |

25

26

27

28

1

**TABLE OF CONTENTS**

2

3    I.    INTRODUCTION ........................................................................................

4    II.   FACTUAL AND PROCEDURAL BACKGROUND ....................................

     III.  ARGUMENT ...............................................................................................
5
           A.    Plaintiffs Misstate the Law Regarding Equitable Tolling and Meal Breaks......
6
                 1.    To the Extent Equitable Tolling Applies, the Statute of Limitations
                       is Tolled Only to the Date of the Fayerweather Decertification
7                      Order ........................................................................................

8                2.    Comcast Has No Affirmative Obligation to Ensure Employees Take
                       Meal Breaks ..............................................................................
9
           B.    Plaintiffs Cannot Relitigate the Issue of Whether Comcast has Unlawful
                 Policies, Patterns, or Practices that Prevented Employees from Taking Off-
10               Duty Meal and Rest Breaks and Required Employees to Work Off the
                 Clock ................................................................................................
11
                 1.    Plaintiffs' Policy, Pattern, and Practice Allegations Are Identical to
                       Those at Issue in the Fayerweather Action .................................
12
                 2.    Plaintiffs' Policy, Pattern, and Practice Allegations were Actually
13                     Litigated in the Fayerweather Action...........................................

14               3.    The Decertification Order Necessarily Decided that Comcast's
                       Policies, Patterns, and Practices are Not Unlawful in a Final
                       Decision on the Merits ...............................................................
15
                 4.    Plaintiffs are Bound by the Decision in the Fayerweather
16                     Decertification Order ..................................................................

17               5.    Applying Collateral Estoppel to Plaintiffs' Claims Promotes Public
                       Policy .......................................................................................
18
           C.    Plaintiffs' Understaffing Theory Is Also Precluded Because It Was
                 Abandoned In The Prior Proceeding................................................
19
     IV.   CONCLUSION............................................................................................
20

21

22

23

24

25

26

27

28

i

1

## TABLE OF AUTHORITIES

2

3    CASES

4    *Alvarez v. May Department Stores Co.,*
         143 Cal. App. 4th 1223 (2006).............................................................

5
     *American Pipe v. Utah,*
6        414 U.S. 538 (1974)......................................................................

7    *Brinker Restaurant Corp. v. Superior Court,*
         53 Cal. 4th 1004 (Cal. 2012)..............................................................
8
     *Castillo v. City of Los Angeles,*
9        92 Cal. App. 4th 477 (Cal. App. 2d Dist. 2001) ...........................................

10   *Fayerweather v. Comcast Corp.,*
         No. S221245, Dkt No. 8 (Cal. Nov. 25, 2014)................................................
11
     *Fayerweather v. Comcast Corporation,*
12       Docket No. CIVMSC08-01470...........................................................pa

13   *Hall v. Variable Annuity Life Ins. Co.,*
         727 F.3d 372 (5th Cir. 2013)..............................................................
14
     *Hernandez v. City of Pomona,*
15       46 Cal. 4th 501 (Cal. 2009)...............................................................

16   *Jolly v. Eli Lilly & Co.,*
         44 Cal. 3d 1103 (1988)...................................................................
17
     *Lucido v. Superior Court,*
18       51 Cal. 3d 335 (Cal. 1990)..............................................................pa

19   *Lumpkin v. Jordan,*
         49 Cal. App. 4th 1511 (1995)............................................................
20
     *Martin v. County of L.A.,*
21       51 Cal. App. 4th 688 (Cal. App. 2d Dist. 1996)..........................................10

22   *PH II, Inc. v. Superior Court,*
         33 Cal. App. 4th 1680 (Cal. Ct. App. 1995)..............................................
23
     *Rose v. Superior Court of Imperial County,*
24       80 Cal. App. 739 (Cal. Ct. App. 1927)..................................................

25   *Younan v. Caruso,*
         51 Cal. App. 4th 401 (1996)............................................................8
26

STATUTES
27
     California Code of Civil Procedure § 436..................................................
28

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In their operative Complaint, filed on October 27, 2014 (the "Complaint"), Plaintiffs Lamberto Valencia, Mark A. Perdue, Philip Richard Martin, and Estate of Efren Agana (collectively, "Plaintiffs") allege virtually identical causes of action to those previously litig in the class decertification proceedings before the Contra Costa Superior Court in a related lawsuit, captioned as *Fayerweather v. Comcast Corporation*, Docket No. CIVMSC08-0147( The Plaintiffs here are represented by the same law firm that represented the purported class *Fayerweather*. Inexplicably, Plaintiffs' counsel attempts to relitigate several key findings th *Fayerweather* court squarely decided against them and that were affirmed by the Court of Appeals. Plaintiffs' counsel also makes several incorrect statements of the law, such as citir wrong standard with respect to meal breaks per the California Supreme Court's decision in *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1017 (Cal. 2012).

This motion seeks to strike specific allegations of the Complaint because Plaintiffs ca proceed in this litigation as if the prior (and extensive) *Fayerweather* case never occurred or existed or as if *Brinker* was never decided. Accordingly, Comcast moves to strike the portic the Complaint that (1) purport to extend the tolling period of the statute of limitations beyonc date Judge Goode ordered the *Fayerweather* class decertified, (2) are inconsistent with Calif law regarding meal breaks, and (3) attempt to relitigate the lawfulness of Comcast's policies patterns, or practices. Such allegations must be stricken for the following reasons:

- A pending class action may toll the running of the statute of limitations for purported class members only until class certification is denied;

- Comcast need not ensure that employees are off duty during meal periods;

- The Class Decertification Order forecloses Plaintiffs' argument that Comcast policy, pattern, or practice of failing to pay wages or denying employees meal rest breaks; and

1      •     Plaintiffs are precluded from asserting the same "understaffing" theory that w

2            abandoned in the Fayerweather class action when the Fayerweather class coul

3            present an acceptable trial plan.

4    **II.    FACTUAL AND PROCEDURAL BACKGROUND**

5           On May 27, 2008, Gabriel Fayerweather filed a class action on behalf of himself and

6    similarly situated current and former service technicians, communications technicians, and ot

7    non-exempt hourly employees ("CommTechs") of Defendant Comcast Cable Communicatio

8    Management, LLC, erroneously sued as Comcast Corporation and Comcast of Contra Costa,

9    (hereinafter, "Comcast").  See Request for Judicial Notice ("RJN"), Exhibit A (hereinafter, th

10   "*Fayerweather* Complaint").  Fayerweather moved for and obtained class certification on Ap

11   2010 on the theory that Comcast maintained a corporate practice of understaffing with respec

12   the CommTech positions, which prevented them from being able to take meal and rest breaks

13   certifying the class, Judge Goode noted that it was a "close case" and expressed concern over

14   the case would be tried.  In subsequent hearings, after being pressed for a trial plan, the

15   *Fayerweather* class abandoned the understaffing theory.  Instead, the *Fayerweather* class alle

16   that CommTechs were never truly off-duty because they were required to carry a handheld

17   communication tool.  This changed theory drew concern from the court as to "whether there h

18   been a bait and switch," but the court allowed the *Fayerweather* class to present a trial plan o

19   new theory.  When the *Fayerweather* class could not produce a satisfactory trial plan, the cou

20   issued an Order to Show Cause as to why the class should not be decertified.  See RJN, Exhib

21   at 38:6-11.

22        After substantial discovery and extensive briefing, a lengthy hearing on the Order to S

23   Cause took place on October 26, 2012.  *See* RJN, Exhibit C.  On December 15, 2012, Judge

24   Goode issued an order decertifying the class.  *See* RJN, Exhibit D (hereinafter, the

25   "Decertification Order").  In concluding that the class must be decertified, Judge Goode made

26   several crucial factual findings that bear on the present case.  First, the Decertification Order

27   notes that "plaintiff abandoned his claim that Comcast has a 'policy of understaffing or over-

28   scheduling.'"  Decertification Order at 3:10-12.  Judge Goode also considered the *Fayerweath*

2

1   class's new allegations that Comcast has (i) a policy or practice that requires CommTechs to k

2   their phones on, preventing them from being relieved of all duty during their meal and rest

3   breaks, and (ii) a policy or practice that requires CommTechs to record 60 minute meal period

4   although other company records show shorter lunch periods, resulting in uncompensated off-t

5   clock time. Specifically, with regard to whether Comcast has a policy, pattern, or practice of

6   preventing employees from taking off-duty meal and rest breaks the trial court concluded:

- It is clear that Comcast has not adopted a 'policy' of requiring Com-Techs to remain on duty during their meal breaks. Decertification Order at 12:19-20.

- Comcast's policy is clear. When Com-Techs are on break or at lunch, they are be relieved of all duty. *Id.* at 14:5-6.

- A careful analysis of the parties' positions shows there is really no dispute abo Comcast's policy: Com-Techs are to do no work during their breaks. *Id.* at 18:

- As discussed below, the practices engaged in by dispatchers and technicians ar from consistent. *Id.* at 21:13-16.

- In short, there is not a consistent practice that violates the company's stated po *Id.* at 24:5.

17  Similarly, the Judge Goode found no unlawful policies, patterns, or practices in support of the

18  *Fayerweather* class's "off the clock" theory of liability. Instead, the court found:

- Plaintiff says that employees are pressured into filling out what are, in effect, fictitious timesheets. Plaintiff cites no common evidence of a central direction this be done. Instead, plaintiff contrasts the time sheets with something called CSG data. *Id.* at 26:10-12.

- [Plaintiff's expert] relies on the CSG data as if they were more accurate than th time records. But there are serious questions about their accuracy. *Id.* at 28:4-

25  These findings in *Fayerweather* were appealed, and the Court of Appeals affirmed the

26  findings of the trial court. RJN, Exhibit E. *Fayerweather* then filed a Petition for Review with

27  the California Supreme Court, which was denied. *Fayerweather v. Comcast Corp.*, No. S221:

28  Dkt No. 8 (Cal. Nov. 25, 2014).

3

1    Despite the clear language in the Decertification Order finding no unlawful policies,

2  patterns, or practices, Plaintiffs included these same exact allegations in their Complaint. Fo

3  example, Plaintiffs' causes of action for failure to pay wages, failure to provide meal breaks,

4  failure to provide rest breaks allege that Plaintiffs are entitled to recovery as a result of Como

5  "*pattern, practice and uniform administration of corporate policy.*" Complaint at ¶¶ 35, 51

6  (emphasis added); *see also Fayerweather* Complaint at ¶¶ 48, 63, 71. Substantively, each of

7  these claims is plead in a nearly identical manner to those in the *Fayerweather* Complaint.[1]

8  **III.    ARGUMENT**

9    Under California Code of Civil Procedure section 436, a court may strike out any

10  "irrelevant, false, or improper matter inserted in any pleading." Cal. Code Civ. Proc. § 436.

11  includes "a substantive defect [that] is clear from the face of a complaint, such as . . . a purpo

12  claim of right which is legally invalid." *PH II, Inc. v. Superior Court*, 33 Cal. App. 4th 1680

13  1682-83 (Cal. Ct. App. 1995); *see also Rose v. Superior Court of Imperial County*, 80 Cal. A

14  739, 745 (Cal. Ct. App. 1927) ("It has been the practice to raise the issues of law by a demun

15  motion to strike and we see nothing improper in this method of confining and defining the

16  issues.").

17    Here, the provisions of Plaintiffs' Complaint regarding equitable tolling and requirem

18  regarding meal and rest breaks should be stricken because they misstate the law. Further,

19  Plaintiffs' allegations that the purported violations are caused by Comcast's systematic unlaw

20  policies, patterns, or practices are also legally invalid and should be stricken because collater

21  estoppel prevents Plaintiffs from relitigating these claims.

22

23

24

25

26

27    [1] In fact, the same attorneys who represented Fayerweather in the class case have filed

28  least 15 separate cases in 15 separate counties utilizing the exact same complaint that Plaintiff
      used to initiate this lawsuit.

4

1    **A.    Plaintiffs Misstate the Law Regarding Equitable Tolling and Meal Break**

2         **1.    To the Extent Equitable Tolling Applies, the Statute of**
          **Limitations is Tolled Only to the Date of the**
3         ***Fayerweather* Decertification Order.**

4         Under California law, the filing of a class action complaint may toll "the running of t

5    statute of limitations for all members of the purported class until class certification [is] denie

6    *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1120 (1988) (citing *American Pipe v. Utah*, 414 U.S

7    538 (1974)) (emphasis added). The purpose of the tolling doctrine is to protect a plaintiff wh

8    both knew of and had been reasonably relying on the class action as a vehicle for their claim

9    *Jolly*, 44 Cal. 3d at 1119. Such reasonable reliance ends when decertification is granted, eve

10   an appeal is pending. *Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 375–376 (5th Cir

11   2013) (holding that the statute of limitations resumes running when a trial court decertifies a

12   and **is not extended** by an unsuccessful appeal).

13        In the Complaint, Plaintiffs misstate the law in an attempt to improperly extend the to

14   period. Plaintiffs assert that "[t]he filing of the *Fayerweather* class action complaint on May

15   2008 tolled the statute of limitations for the named Plaintiffs from four years from the filing

16   *Fayerweather* class action complaint **to the present**." Complaint at ¶ 8 (emphasis added). O

17   the trial court decertified the class in *Fayerweather*, it was no longer reasonable for plaintiffs

18   rely on the class action as a vehicle for their claims. *See Hall*, 727 F.3d at 375–376. Therefo

19   assuming equitable tolling applies, the statute of limitations is tolled only until December 15,

20   2012, the date the Decertification Order was filed. Accordingly, this Court should strike the

21   phrase "to the present" at line 8 on page 3 of Plaintiffs' Complaint.

22        **2.    Comcast Has No Affirmative Obligation to Ensure Employees Ta**
          **Meal Breaks.**
23

24        Plaintiffs' Third Cause of Action alleging denial of meal periods relies on an incorrec

25   statement of law. The California Supreme Court has made clear that "an employer's obligati

26   to relieve its employee of all duty, with the employee thereafter at liberty to use the meal peri

27   for whatever purpose he or she desires, but the employer need not ensure that no work is don

28

5

1  *Brinker*, 53 Cal. 4th at 1017.  An employer is "not obligated to police meal breaks and ensure

2  work thereafter is performed." *Id.* at 1055.

3      Plaintiffs allege that Comcast "failed in [its] affirmative obligation to ensure that all of

4  their employees, including Plaintiffs, were actually relieved of all duties, not performing any

5  work, and free to leave the premises during meal periods." Complaint at ¶ 44.  As the trial co

6  noted in its Decertification Order, this "theory of liability is not consistent with the California

7  Supreme Court's decision in *Brinker*." Decertification Order at 30:23-24.  Because Comcast

8  no "affirmative obligation" beyond providing employees with an opportunity to take a meal

9  break, Plaintiffs' improper statement of law should be stricken from the Complaint.

10  **B.    Plaintiffs Cannot Relitigate the Issue of Whether Comcast has Unlawful
        Policies, Patterns, or Practices that Prevented Employees from Taking Of**

11  **Duty Meal and Rest Breaks and Required Employees to Work Off the Clo**

12      Issue preclusion prevents a party from relitigating an issue that has already been

13  adjudicated.  The doctrine applies when: (1) the issue sought to be precluded is identical to th

14  decided in a prior proceeding; (2) the issue is actually litigated in the prior proceeding; (3) the

15  issue was necessarily decided in the prior proceeding; (4) the decision in the prior proceeding

16  final and on the merits; and (5) the party against whom preclusion is sought is the same as, or

17  privity with, the party to the former proceeding. *Lucido v. Superior Court*, 51 Cal. 3d 335, 34

18  (Cal. 1990).

19      Here, Plaintiffs seek to relitigate <u>identical allegations</u> regarding unlawful policies, patt

20  and practices, against the same defendants, and that were considered and rejected in Judge

21  Goode's Decertification Order.  These findings were affirmed on appeal, and Plaintiffs are

22  represented by the same law firm involved in the *Fayerweather* case.  Accordingly, this Court

23  should strike language in the Complaint that is inconsistent with the findings in the

24  Decertification Order.

25      **1.    <u>Plaintiffs' Policy, Pattern, and Practice Allegations Are Identical to
           Those at Issue in the *Fayerweather* Action.</u>**

26

27      The Decertification Order considered identical issues to those alleged in Plaintiffs'

28  Complaint.  To determine whether the issues are identical, courts look to the factual allegation

6

1    stake, not whether the ultimate issues or dispositions are the same. *Lucido*, 51 Cal. 3d at 341

2    *also Lumpkin v. Jordan*, 49 Cal. App. 4th 1511, 1516 (1995) ("[T]he doctrine of collateral

3    estoppel depends on what issues were adjudicated, not the nature of the proceeding or the rel

4    requested.").

5          The policy, pattern, and practice allegations at issue in Plaintiffs' Complaint are

6    substantively identical to those alleged in the *Fayerweather* Complaint. *Compare, e.g.,*

7    Complaint ¶¶ 32, 41, 46, 55 with *Fayerweather* Complaint ¶¶ 45, 54, 59, 67.[2] Further, Judge

8    Goode reiterated the issues that were litigated in the hearing preceding the Decertification Or

9    "Now plaintiff's theories are: "Comcast has adopted a <u>policy or practice</u> that requires Com-T

10   to (a) keep their phones on and (b) remain logged-on to the TechNet network, so that they ar

11   relieved of all duty during their meal and rest breaks; [and] (2) Comcast has adopted a <u>policy</u>

12   <u>practice</u> that requires Com-Techs to record a 60 minute meal period on their timecards even

13   though other company records show shorter lunch periods, making it likely that employees ar

14   required to work off-the-clock." Decertification Order at 3:13-20 (emphasis added). In

15   determining that class treatment was not appropriate in *Fayerweather*, Judge Goode specifica

16   considered whether Comcast maintained unlawful policies, patterns, or practices regarding m

17   and rest breaks and off-the-clock work and concluded that it did not.

18         Judge Goode reached the following relevant findings and conclusions:

19   •     Comcast's policy is clear. When Com-Techs are on break or at lunch, they are

20         be relieved of all duty. Decertification Order at 14:5-6.

21   •     A careful analysis of the parties' positions shows there is really no dispute abo

22         Comcast's policy: Com-Techs are to do no work during their breaks. *Id.* at 18

23   •     Testimony submitted by Comcast shows that, while dispatchers may have sent

24         messages to Com-Techs during break periods, there was not necessarily an

25   _____

26   ² This list is not exhaustive. All of the identical policy, pattern, and practice allegation
     from the *Fayerweather* Complaint that Comcast seeks to strike are articulated in Comcast's
27   Notice of Motion to Strike filed concurrently herewith. Additionally, Comcast seeks to strike
     policy, pattern, and practice allegations that are derivative of Plaintiffs' invalid claims, includi
28   Paragraph 71 of the Complaint.

7

1    expectation that a Com-Tech would read or respond to the message if he or sh

2    were on a break. *Id.* at 18:21-19:2

3    • As discussed below, the practices engaged in by dispatchers and technicians a

4    from consistent. *Id.* at 21:15-16

5    • In short, there is not a consistent practice that violates the company's stated po

6    *Id.* at 24:5

7    • Plaintiff says that employees are pressured into filling out what are, in effect,

8    fictitious time sheets. Plaintiff cites no common evidence of a central directio

9    that this be done. *Id.* at 26:10-12

10   • Accordingly, to succeed in showing the case should be litigated as a class actio

11   plaintiff must show there is a company-wide practice that undermines this for

12   policy. *Id.* at 32:15-17

13   These factual findings are directly at odds with the allegations in Plaintiffs' Complaint. *See,*

14   Complaint at ¶¶ 30 ("As a pattern and practice, Defendants relied on punch data/time sheets i

15   many instances filed [sic] out before the work day commenced . . ."); 46 ("As a pattern and

16   practice, Defendants regularly required employees to work through their meal periods withou

17   proper compensation."); 56 ("As a pattern and practice, Defendants regularly required employ

18   to work through rest periods.").[3] Because Plaintiffs seek to re-litigate the precise issues that th

19   Decertification Order adjudicated, the first *Lucido* factor is met.

20          2.    **Plaintiffs' Policy, Pattern, and Practice Allegations were Actually**

21                **Litigated in the *Fayerweather* Action.**

22          The second *Lucido* factor, that the issue be actually litigated, is satisfied when the issue

23   has been properly raised by the pleadings, is submitted for determination, and is actually

24   determined. *Younan v. Caruso*, 51 Cal. App. 4th 401, 407 (1996). A determination may be ba

25   on failure of proof. *Id.* Further, to determine what issues were actually litigated in the underly

26   _____

27        [3] A complete list of the language in Plaintiffs' Complaint that is inconsistent with Judg
     Goode's conclusions is included in Comcast's Notice of Motion to Strike filed concurrently

28   herewith.

8

1    action, a court should "look carefully at the entire record from the prior proceeding," includin

2    the evidence presented and the pleadings. *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511

3    (Cal. 2009).

4         In addition to Judge Goode's specific determinations finding no unlawful policies,

5    patterns, or practices, discussed above, the briefing and hearing transcript in the *Fayerweathe*

6    decertification proceedings provide further confirmation that Comcast's policies, patterns, an

7    practices were thoroughly briefed and actually litigated in the prior case. At the October 26, 2

8    hearing on the Order to Show Cause as to why the class should not be decertified, the parties

9    submitted 103 pages of briefing and 4556 pages of evidence and objections thereto. The

10   predominant issue litigated at the hearing was whether the *Fayerweather* class could establish

11   Comcast had unlawful policies, patterns, or practices, as alleged in the *Fayerweather* Compla

12        Following Judge Goode's Decertification Order, these issues were appealed and re-arg

13   before the California Court of Appeal. RJN, <u>Exhibit E</u>. Affirming the Decertification Order,

14   Court of Appeal held that there was "no evidence suggesting a general policy or practice

15   precluding second breaks . . . or the assignment of so much work that technicians had no time

16   a break." *Id.* at 11-12. Further, the Court of Appeal held that the *Fayerweather* class provide

17   "no direct proof" of a policy requiring technicians to report round-number lunch breaks of 30

18   60 minutes or of any "widespread pressure on technicians by their supervisors to underreport

19   working hours." *Id.* at 15. The policy, pattern, or practice issue was raised by the pleadings,

20   submitted for determination, and actually determined in the *Fayerweather* proceedings.

21        3.    <u>The Decertification Order Necessarily Decided that Comcast's</u>
                <u>Policies, Patterns, and Practices are Not Unlawful in a Final Decisi</u>
22              <u>on the Merits.</u>

23        The Decertification Order also satisfies the third and fourth *Lucido* factors, that an issu

24   be necessarily decided and that the prior decision is a final judgment on the merits. An issue i

25   "necessarily decided" when it is not entirely unnecessary to the judgment in the prior proceedi

26   *Lucido*, 51 Cal. 3d at 342. A judgment is final when it is not open to direct attack. *Id.*

27        The conclusions in the Decertification Order turned on whether the *Fayerweather* class

28   could establish that Comcast maintained unlawful policies, patterns, or practices. The issue w

9

1    necessarily decided on the merits by Judge Goode's conclusion that no such uniform policy,

2    pattern, or practice exists. Further, the *Fayerweather* class has exhausted the available direct

3    attacks to the Decertification Order. The Court of Appeal affirmed Judge Goode's opinion, a

4    the Supreme Court of California denied review. *See* RJN, <u>Exhibit E</u>: *Fayerweather v. Comca*

5    *Corp.*, No. S221245, Dkt No. 8. Thus, the Decertification Order is a final decision.

6        **4.    Plaintiffs are Bound by the Decision in the *Fayerweather***

7             **Decertification Order**

8          To meet the fifth *Lucido* factor, issue preclusion must be sought against a person who

9    a party or was in privity with a party in the earlier proceeding. *Lucido*, 51 Cal. 3d at 341. Pri

10    requires "some relationship or connection with the party which makes it proper to hold 'privi

11    bound with the actual parties." *Martin v. County of L.A.*, 51 Cal. App. 4th 688, 700 (Cal. App

12    Dist. 1996). Privity exists where a nonparty for whom the unsuccessful party in the first actio

13    acted in a representative capacity. For example, in *Alvarez v. May Department Stores Co.*, 14

14    Cal. App. 4th 1223, 1238 (2006), the court held that plaintiffs in a prior class action certificati

15    were "virtual representatives" of the plaintiffs (who were putative class members but not name

16    plaintiffs in the class action) in a subsequent individual action before the court. The court

17    considered the fact that the parties, claims, and counsel were the same in both actions and

18    concluded that denial of class certification in the first case precluded plaintiffs from certifying

19    class in the second case. *Id.* The *Alvarez* court concluded that denial of class certification can

20    establish collateral estoppel against absent putative class members on issues that were actually

21    decided in connection with the denial. *See id.* at 1236.

22          Here, Fayerweather acted as a "virtual representative" for Plaintiffs, who were member

23    of the certified *Fayerweather* class until the Decertification Order was issued. Like in *Alvarez*

24    both the claims asserted and the plaintiffs' counsel are identical in both the *Fayerweather* matt

25    and the present case. Through a representative, Plaintiffs had the opportunity and motive to ful

26    litigate the issue of whether Comcast has a policy, pattern, or practice that resulted in on-duty

27    meal and rest breaks and uncompensated off-the-clock work. Because Plaintiffs fall within the

28    scope of the *Fayerweather* class, Plaintiffs' interests were adequately represented in the prior

10

1  proceeding.  Further, the judgment in *Fayerweather* was based on the same arguments and

2  evidence presented by the same counsel that would be considered in the present case.  There

3  Plaintiffs are in privity with the *Fayerweather* class and it is fair to bind Plaintiffs to the fina

4  decision in that case.

5          **5.**    **Applying Collateral Estoppel to Plaintiffs' Claims Promotes Publ**

6                  **Policy.**

7        In determining whether to apply collateral estoppel, courts also consider the public

8  policies of "preservation of the integrity of the judicial system, promotion of judicial econon

9  and protection of litigants from harassment by vexatious litigation." *See Castillo v. City of L*

10  *Angeles*, 92 Cal. App. 4th 477, 481 (Cal. App. 2d Dist. 2001); *Martin*, 51 Cal. App 4th at 70.

11  All three policy considerations weigh in favor of precluding Plaintiffs' claims.

12        Following the decertification of the 1,800-member *Fayerweather* class, Comcast

13  acknowledges that each class member is entitled to assert individual claims alleging wage an

14  hour violations as applied to that individual.  This Court, however, should not provide a

15  duplicative forum for plaintiffs to have a "redo" of allegations they made and lost.  Further,

16  Comcast should not be forced to re-litigate the same class action allegations of company-wid

17  policies, patterns, and practices in each individual case.  Rather, each individual plaintiff's ca

18  should rise or fall on the merits of each plaintiff's individual claims.  First, applying collatera

19  estoppel will preserve the integrity of the judicial system by preventing inconsistent judgmen

20  an identical issue.  Second, application of collateral estoppel will promote judicial economy b

21  preventing Plaintiffs from relitigating the same issues that were previously adjudicated, follov

22  extensive discovery and briefing, in *Fayerweather*.[4]  Finally, applying collateral estoppel prot

23  Comcast from vexatious litigation in which Comcast must repeatedly defend the same policie

24  patterns, and practices in each individual claim.

25

26          [4] Comcast has already participated in years of expensive and time consuming discover

27  regarding Fayerweather's allegations of systematic unlawful policies and practices, and as Jud
Goode found, Fayerweather and his counsel could not present any evidence to support their

28  allegations.  Comcast should not be made to relive this experience yet again.

                        11

C.    **Plaintiffs' Understaffing Theory Is Also Precluded Because It Was Abandoned In The Prior Proceeding.**

Plaintiffs are also collaterally estopped from bringing the same claims that the *Fayerweather* class abandoned after failing to provide adequate proof. The *Fayerweather* cl was certified based on the same understaffing theory alleged in Plaintiffs' First and Second Causes of Action. Plaintiffs allege that "Defendants uniformly administered a corporate poli concerning staffing levels, duties and responsibilities which required Plaintiffs to work with appropriate pay. This included a uniform corporate pattern and practice of allocating and authorizing inadequate staffing levels. The inadequate staffing levels were enforced and ens through the uniform and mandated corporate policy of a minimal labor budget." Complaint ¶ 31. Paragraph 44 of the *Fayerweather* Complaint contains identical language, substituting "Plaintiff and the class members" for "Plaintiffs." *Fayerweather* Complaint at ¶ 44. The *Fayerweather* class abandoned this theory, however, because it was unable to produce an acceptable trial plan for how the matter could be tried.

Plaintiffs' understaffing theory should be precluded because it meets all five *Lucido* factors. First, as evidenced by the identical language in the complaints, Plaintiffs in the pres case are asserting the exact same claim that was at issue in *Fayerweather*. Second, the understaffing issue was actually litigated in *Fayerweather*. After the trial court provided the *Fayerweather* class with an opportunity to provide support for their understaffing theory, the *Fayerweather* class abandoned the theory. In the Decertification Order, Judge Goode notes the plaintiffs "discarded" the understaffing theory. Decertification Order at 3:11. The *Fayerweather* class's inability to prove understaffing is sufficient to show a determination or merits. *See Younan*, 51 Cal. App. 4th at 407 (holding that a determination may be based on failure of proof). As to the third factor, the understaffing theory was necessarily determined Judge Goode's Decertification Order. *See* Decertification Order at 3:10-11 ("Essentially, pla abandoned his claim that Comcast has a "policy of understaffing or over-scheduling"). As discussed above, the fourth and fifth factors are also satisfied because the Decertification Ord a final judgment, and Plaintiffs are in privity with Fayerweather and are therefore properly bo

12

1    by the decision. Accordingly, Plaintiffs' understaffing theory should be stricken from the

2    Complaint.

3    **IV.    CONCLUSION**

4        For the foregoing reasons, Comcast requests that the Court strike (1) the portions of

5    Plaintiffs' Complaint that misstate the law regarding equitable tolling and Comcast's obligat

6    regarding meal breaks and (2) the portions of Plaintiffs' Complaint alleging violations cause

7    Comcast's unlawful policies, patterns, or practices that are subject to collateral estoppel.

8    Dated: December 15, 2014                          JONES DAY

9

10                                                    By: _chambers_

11                                                        Fred W. Alvarez
                                                          Allison B. Moser
12
                                                    Attorneys for Defendant
13                                                  COMCAST CABLE COMMUNICATIONS
                                                    MANAGEMENT, LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        13

Matthew Righetti, SBN 121012
John Glugoski, SBN 191551
Michael Righetti, SBN 258541
**RIGHETTI GLUGOSKI, P.C.**
456 Montgomery Street, Suite 1400
San Francisco, CA 94104
Telephone: (415) 983-0900
Facsimile: (415) 397-9005

Attorneys for Plaintiffs

**ENDORSED FILED**
SAN MATEO COUNTY

JAN - 9 2015

Clerk of the Superior Court
By *Ashmika Segran-Teo*
DEPUTY CLERK

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| LAMBERTO VALENCIA, MARK A. PERDUE, PHILIP RICHARD MARTIN and ESTATE OF EFREN AGANA<br><br>Plaintiffs,<br><br>vs.<br><br>COMCAST CORPORATION, a Pennsylvania Corporation; COMCAST OF CONTRA COSTA, INC., a Washington Corporation; and DOES 1 through 50, Inclusive,<br><br>Defendants. | Case No.: CIV531049<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT**<br><br>**Date: January 23, 2015**<br>**Time: 9:00 a.m.**<br>**Dept. 7**<br><br>**Judge: Steven Dylina**<br><br>**Complaint Filed on October 27, 2014** |

## INTRODUCTION

The law is well settled that the filing of a class action complaint tolls the statute of limitations for the claims and the persons encompassed by the class proceedings through the denial of class certification. Although taken from federal jurisprudence, California state courts have adopted and followed this rule. *Jolly v. Eli Lilly & Co.* (1988) 44 Cal. 3d 1103; *Becker v. McMillan Construction Co.* (1991) 226 Cal.App.3d 1493. Defendant acknowledges tolling but

1

**TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES.................................................................................

3  I.  INTRODUCTION.................................................................................

4      A.  PROCEDURAL HISTORY ...................................................

5      B.  CLASS CERTIFICATION PROCEEDINGS IS A PROCEDURAL
           DEVICE, NOT A RULING ON THE MERITS..................................

6
7      C.  ONE WAY INTERVENTION ALSO COMPELS A FINDING THAT
           DECISIONS IN *FAYERWEATHER* ARE NOT BINDING ON THE
           NAMED PLAINTIFFS..........................................................

8
9      D.  THE UNITED STATES SUPREME COURT REJECTS DEFENDANTS
           ARGUMENT THAT THERE IS NO TOLLING...............................

10         1.  American Pipe Sets Forth The Two Criteria For The Court to
               Evaluate In Deciding Whether Tolling Applies.........................

11
12         2.  Tolling Is Appropriate As Defendant Has Been On Notice
               Of The Individuals And Their Claims From The Inception
               of The Fayerweather Lawsuit.............................................

13
14             a.  Not Only Is Comcast On Notice, Comcast Has
                   Preserved And Produced To Plaintiffs Counsel All
15                 Evidence For All Class Members Including The Named
                   Plaintiffs.............................................................

16
17     E.  COMCAST'S RELIANCE ON THE HALL CASE IS
           DISTINGUISHABLE..........................................................

18  II.  CONCLUSION.................................................................................

19

20

21

22

23

24

25

26

27

28

i

1

### TABLE OF AUTHORITIES

2

**Federal Cases**

3

*American Pipe & Construction Co. v. Utah*

4

(1974) 414 U.S. 538.................................................................7, 8, 10, 11

5

*Carnegie v. Household Int'l, Inc.*

6

(2004) 376 F.3d 656.................................................................5

7

*Catholic Soc. Services, Inc. v. I.N.S*

(2000) 232 F.3d 1139.................................................................13, 14

8

*Crown, Cork & Seal Co., Inc. v. Parker*

9

(1983) 462 U.S. 345.................................................................8, 9

10

*Guaranty Nat. Bank v. Roper*

11

(1980) 445 U.S. 326, 331.................................................................4

12

*In re Worldcom Sec. Litig.*

(2007) 496 F.3d at 256.................................................................10

13

*Oshana v. Coca-Cola Bottling Co.*

14

(2005) 225 F.R.D. 575.................................................................5

15

**Supreme Court Cases**

16

*Smith v. Bayer Corp.*

17

(2011) 131 S.Ct. 2368.................................................................5

18

**State Cases**

19

*Becker v. McMillan Construction Co.*

20

(1991) 226 Cal.App.3d 1493.................................................................1, 8, 9

21

*Cortez v. Purolator Air Filtration Products Co.*

22

(2000) 23 Cal. 4th 163.................................................................10

23

*Duran v. U.S. Bank Nat. Assn.*

(2014) 59 Cal.4th 1.................................................................4, 5

24

*Fireside Bank v. Superior Court*

25

(2007) 40 Cal.4th 1069.................................................................5, 6

26

*Hall v. Rite Aid Corporation*

27

(2014) 226 Cal.App.4th 278.................................................................5

28

*Home Sav. & Loan Ass'n v. Sup.Ct.*
(1974) 42 Cal.App.3d 1006.................................................6

*Jolly v. Eli Lilly & Co.*
(1988) 44 Cal. 3d 1103.........................................1, 3, 8, 9, 13

*Sky Sports, Inc. Superior Court*
(2011) 201 Cal.App.4th 1363...............................................4

## **OTHER AUTHORITIES**

*Class Actions and Statutes of Limitations*
(1981) 48 U. Chi. L.Rev. 106............................................11

1    contends that it should stop at the time of the decertification order and should not extend through
2    the appeal (i.e., up to the point where the trial court's order becomes final).
3        The claims at issue in this case were first alleged by Gabriel Fayerweather in a class
4    action filed in Contra Costa County Superior Court in 2008, entitled *Fayerweather v. Comcast.*
5    Unlike any of the authorities cited by Comcast, the *Fayerweather* case was <u>certified</u> as a class
6    action in April 2010. The claims certified as a class action in *Fayerweather* are the same claims
7    asserted in this case. Plaintiffs in this case, along with hundreds of of other class members, were
8    required to file separate actions when the *Fayerweather* court decertified the class action in
9    December 2012 and that decision was subsequently upheld by the First District Court of Appeal.
10        Defendants' motion to strike makes little mention of the fact that *Fayerweather* was a
11    certified class action and, more importantly, ignores basic fundamental principles of class action
12    law grounded in strong public policies (e.g. one way intervention, the procedural nature of the
13    class certification device, considerations for applying tolling) that serve to protect the rights of
14    putative class members while, at the same time, protecting defendants where a defendant can
15    show that tolling is demonstrably prejudicial. Rather than focus on California law, Comcast
16    seeks to import the reasoning of the 5th Circuit in inapposite circumstances. In Hall, the court, on
17    the eve of trial, decertified the case because trial counsel failed to disclose experts, fact witnesses
18    and disclose any expert reports pursuant to the federal court deadline that would address the
19    issue of classwide damages. The court found counsel's conduct inexcusable and refused to allow
20    trial counsel's attempt to remedy the matter with an untimely disclosure. After waiting five (5)
21    years after the court dismissed the class allegations for counsel's inexcusable conduct, two
22    members of the putative class filed a new class action. The Hall plaintiffs sought tolling after
23    inexplicably waiting five (5) years to re-file their claims. In contrast, Plaintiffs here have
24    promptly filed their claims and have only pursued *individual* claims within days of the
25    decertification order becoming final. Nor does, or can, Comcast claim any prejudice *vis-à-vis*
26    tolling since the claims asserted here are not only the same claims originally certified in
27    *Fayerweather*, but being made by former absent class members in *Fayerweather*.
28

## A. PROCEDURAL HISTORY

Plaintiffs Valencia, Perdue, Martin and Agana filed this action on October 27, 2014. The class action in which they were absent class members was filed by Plaintiff Gabriel Fayerweather on May 27, 2008. The class action was filed in Contra Costa County and assigned to Judge Goode. Judge Goode issued an order certifying the *Fayerweather* class action on April 12, 2010. Exhibit I.[1] The order certified claims for causes of action based on failure to provide meal breaks, failure to authorize and permit rest breaks and failure to pay wages for all hours worked (off-the-clock).

Following the Supreme Court's decision in *Brinker*, Judge Goode decertified the *Fayerweather* case.

To be sure, Comcast cannot claim any prejudice from tolling since, prior to decertification and in preparation for a class certification trial, Comcast produced in the *Fayerweather* case all time records and data for the entire class period for the entire class in its possession. In any event, Comcast's motion appears to ask this Court to *presume* that Comcast would be prejudiced. The pretense that Comcast was ignorant, blindsided or unable to take any steps to preserve evidence or prepare defenses is a self-serving litigation tactic and cannot be credited in the least. The application of *American Pipe*, adopted by the Supreme Court in *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, is not barred because a defendant chooses, as a matter of tactics, not to put on evidence in order to gild a claim of prejudice. Moreover, Comcast blithely ignores the fact that much of the evidence on which Plaintiffs will substantiate their claims was actually produced during trial preparation in the *Fayerweather* action.

---

[1] All the *Fayerweather* information referenced herein is supported by the RJN provided by Comcast and/or the RJN supplied with this opposition.

On February 8 2013, Mr. Fayerweather filed an appeal challenging the legal validity of the trial court's decertification order on the grounds that the decision is rooted in both legal error and an abuse of discretion. The First District Court of Appeal issued its decision on August 28, 2014, affirming the trial court's order decertifying the class. On October 7, 2014, Mr. Fayerweather filed a Petition for Review with the California Supreme Court. On November 25, 2014, the Supreme Court denied the petition.

**B. CLASS CERTIFICATION PROCEEDINGS IS A PROCEDURAL DEVICE, NOT A RULING ON THE MERITS.**

The first misconception with Comcast's motion is the assertion that the plaintiffs here could possibly be bound by any rulings in the *Fayerweather* case. Comcast's request to strike certain allegations is based on the notion that certain issues were decided in the procedural certification order and that all absent class members must be bound. Comcast does not bother with explaining how absent class members – not parties to the *Fayerweather* case – could possibly be bound without violating due process principles. The only theories to bind these plaintiffs would be collateral estoppel or res judicata. Neither of those theories are even discussed by Comcast because Comcast cannot meet the strict elements of either rule.

Moreover, it is well known that class certification is not a decision on the merits. Comcast's argument to the contrary is a misstatement of class certification law. Class certification is a procedural device. (See *Deposit Guaranty Nat. Bank v. Roper* (1980) 445 U.S. 326, 331 [class certification is a "procedural device"]; *Duran v. U.S. Bank Nat. Assn.* (2014) 59 Cal.4th 1, 34–35; *Sky Sports, Inc. Superior Court* (2011) 201 Cal.App.4th 1363, 1369 ["[a] class action is a procedural device"].) There can be little question but that class certification decisions are procedural in nature. In *Duran* the California Supreme Court recently juxtaposed the difference between class certification as compared to substantive rights.

We have long observed that the class action procedural device may not be used to abridge a party's substantive rights. "Class actions are provided only as a means to

1    enforce substantive law. Altering the substantive law to accommodate procedure
     would be to confuse the means with the ends—to sacrifice the goal for the going."
2    (*City of San Jose v. Superior Court, supra,* 12 Cal.3d at p. 462.)

3    *Duran v. U.S. Bank Nat. Assn.,* 59 Cal.4th 1, 34 (Cal.,2014)

4        In *Hall v. Rite Aid Corporation,* 226 Cal.App.4th 278, 286, (Cal.App. 4 Dist.2014), the
5
     Court of Appeal explained.
6
           The certification question is "essentially a procedural one that does not ask
7          whether an action is legally or factually meritorious." (*Linder v. Thrifty Oil Co.*
8          (2000) 23 Cal.4th 429, 439–440. "A trial court ruling on a certification motion
           determines 'whether ... the issues which may be jointly tried, when compared with
9          those requiring separate adjudication, are so numerous or substantial that the
           maintenance of a class action would be advantageous to the judicial process and
10         to the litigants.'" (*Sav–On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th
11         319, 326).

12   *Hall v. Rite Aid Corporation,* 226 Cal.App.4th 278, 286, (Cal.App. 4 Dist.2014).

13
14       Comcast's false assumption that the doctrine of collateral estoppel precludes plaintiffs
15   from making any allegation, on any theory, following rulings in *Fayerweather* due to the denial
     of certification in *Fayerweather,* is incorrect. See, *Smith v. Bayer Corp.* 131 S.Ct. 2368 (2011);
16   *Oshana v. Coca-Cola Bottling Co.,* 225 F.R.D. 575, 579 (N.D.Ill.2005) ["While
17   *Bridgestone/Firestone* holds that in some circumstances denial of class certification may be
18   given estoppel effect, courts are cautioned not to read the case as holding any ruling denying
19   class certification is binding in future litigation. *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656,
20   662–63 (7th Cir.2004). This court has previously held that the principles of collateral estoppel do
21   not apply here because different facts and a different plaintiff are before the court."]. If the
22   plaintiff here sought to file this case as a class action then there is no rule of law that would
23   prevent them from doing so.  It is a well-settled principle of class action law that class
24   certification is not a merits-based analysis. Yet, Comcast asks this court to commit legal error by
25   treating it as such. There can be no adjudication nor has there been any adjudication on the
26   merits at the class certification stage and there can be neither res judicata nor collateral estoppel
27   applied to any of the plaintiffs here who were not parties to the *Fayerweather* action.
28

## C. ONE WAY INTERVENTION ALSO COMPELS A FINDING THAT DECISIONS IN *FAYERWEATHER* ARE NOT BINDING ON THE NAMED PLAINTIFFS.

California has also long recognized the doctrine set forth in the *Home Savings* case of "One-Way Intervention." *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069. The Courts have repeatedly opined on the dangers facing Defendants who race to have merits determinations heard before affording class members notice and a right to opt-out. The consequence for defendants is that any decision is categorically only binding as to the plaintiff. In contrast, an unfavorable decision against defendant would be binding on the losing defendant as to all putative class members even before they were given a right to opt-out. Because collateral estoppel may be invoked only against a party to the prior lawsuit in which the issue was determined, and because in this example the defendant would be a party to every lawsuit while each of the various plaintiffs would be a party in only one lawsuit, the defendant would in later lawsuits be bound by any adverse determination of the common issues, while none of the plaintiffs would be similarly bound by prior determinations in the defendant's favor. Thus, under this principle, "'[o]ne plaintiff could sue and lose; another could sue and lose; and another and another, until one finally prevailed; then everyone else would ride on that single success.'" (*Fireside Bank v. Superior Court, supra*, 40 Cal.4th at p. 1078.

There is no inkling from anything in *Fayerweather* that any merits decisions were made. Assuming, *arguendo*, that *Fayerweather* adjudicated merits issues, any such resolution would not bind absent class members who were not provided notice or an opportunity to opt-out. *Fireside Bank v. Sup. Ct. (Gonzalez)* (2007) 40 C4th 1069, 1087; *Home Sav. & Loan Ass'n v. Sup. Ct. (Deutsch I)* (1974) 42 Cal.App.3d 1006, 1010–1011].

In *Fayerweather*, although class certification was granted, the putative class members were never afforded an opportunity to "opt out," following class certification. Providing the

---

6

1    absent class members (i.e., the plaintiffs here) with a right to "opt out" is mandatory before any

2    court can apply the principles of collateral estoppel or res judicata against class members. Thus,

3    Comcast's motion fails.

4    **D. THE UNITED STATES SUPREME COURT REJECTS DEFENDANT'S**

5    **ARGUMENT THAT THERE IS NO TOLLING.**

6    In *American Pipe & Constr. Co. v. Utah* (1974) 414 U.S. 538, the United States Supreme

7    Court held statutory limitation periods are "designed to promote justice by preventing surprises

8    through the revival of claims that have been allowed to slumber until evidence has been lost,

9    memories have faded, and witnesses have disappeared. . . . The policies of ensuring essential

10   fairness to defendants and of barring a plaintiff who "has slept on his rights," are satisfied when,

11   as here, a named plaintiff who is found to be representative of a class commences a suit and

12   thereby notifies the defendants not only of the substantive claims being brought against them, but

13   also of the number and generic identities of the potential plaintiffs who may participate in the

14   judgment." *Id.* at 554–55 (internal citations omitted). Almost ten years after *American Pipe*, the

15   Court handed down its decision in *Crown, Cork & Seal Co., Inc. v. Parker* (1983) 462 U.S. 345

16   holding that the extension of *American Pipe* to individuals who institute separate actions

17   following denial of certification does not frustrate the policies behind a statute of limitations:

18   "Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the

19   method class members choose to enforce their rights upon denial of class certification." *Id.* at

20   353.

21   > To hold to the contrary would frustrate the principal function of a class suit,
22   > because then the sole means by which members of the class could assure their
     > participation in the judgment if notice of the class suit did not reach them until
23   > after the running of the limitations period would be to file earlier individual
     > motions to join or intervene as parties – precisely the multiplicity of activity
24   > which Rule 23 was designed to avoid in those cases where a class action is found
     > "superior to other available methods for the fair and efficient adjudication of the
25   > controversy." Rule 23(b)(3).

26   *American Pipe & Construction Co. v. Utah* 414 U.S. 538, 550-51.

27

28

---

7

In *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), the Court extended *American Pipe* to allow tolling not only where plaintiffs sought to intervene in a continuing action, but also where they sought to file an entirely new action. According to the Court, "[t]he filing of a class action tolls the statute of limitations as to all asserted members of the class ... not just as to interveners." *Id.* at 350, 103 S.Ct. 2392 (internal quotations omitted). Again, the Court relied upon the dual purposes of class actions and statutes of limitations. In order both to avoid "needless multiplicity of actions" and "to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights," tolling was appropriate. *Id.* at 351–52. "[T]olling the statute of limitations ... creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification." *Id.* at 353.

Tolling under *American Pipe* is recognized in this State:

"The policies of ensuring essential fairness to defendants and of barring a plaintiff who has 'slept on his rights,' . . . are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. [Citation.]"

*Becker v. McMillin Constr. Co.* (1991) 226 Cal.App.3d 1493, 1498 quoting *Jolly*, 44 Cal.3d at 1121.

Most of the Supreme Court's discussion in *Jolly, supra*, 44 Cal.3d 1103, of the rationale in *American Pipe, supra*, 414 U.S. 538, focused on this requirement in the tolling doctrine, adequate notice to the defendant. The court pointed out a potential danger of abuse of the "generous" [*Crown, Cork & Seal Co., supra*, 462 U.S. 345, 354 [76 L.Ed.2d at pp. 636–637] (Powell, J., conc.)] rule of *American Pipe*: Class actions might be filed merely to evade limitations periods. ( *Jolly, supra*, 44 Cal.3d at p. 1124.)  To avoid such abuse, tolling is to be allowed only where the class action and the later individual action or

intervention are based on the same claims and subject matter and similar evidence. (*Ibid.*)

*Becker*, 226 Cal.App.3d at 1499.

Plaintiffs allege the *identical* claims made in the *Fayerweather* complaint for and are brought by persons in the identical job positions *i.e.*, Techs. In contrast is *Jolly*, for there the Court declined application of tolling because it concluded that the inconsistency of the claims meant there was no way that a defendant could have properly been on notice: "The discrepancies between the nature of the relief sought in *Sindell* and *Jolly* (declaratory relief and damages, respectively) and the factual and legal issues in the two actions (causation of injury and damages) were too great for any notice to be presumed. Considerations of protecting the class action device gave way to the stronger consideration under the circumstances: protecting the defendant from unfair claims." *Becker*, 226 Cal.App.3d at 1499. The *Jolly* Court also noted the potential for abuse where a class action is filed *purposely* to evade the statute of limitations (*Jolly*, 44 Cal.3d at 1124) and so held, "To avoid such abuse, tolling is to be allowed only where the class action and the later individual action or intervention are based on the same claims and subject matter and similar evidence." *Id.* Again, the claims in each of these related cases are identical and all brought by persons in the same job titles, an identity of claims and persons which Comcast admits.

As the Ninth Circuit has explained, statutes of limitation are intended to protect defendants by giving them notice of a claim before the evidence becomes stale. *In re Hanford*, 521 F.3d at 1053. Comcast has been on notice of the nature of the claims and the evidence and has preserved and produced much of the evidence for these plaintiffs in the *Fayerweather* action. In *In re Worldcom*, the Sixth Circuit also rejected the same argument made by Defendants here:

> The district court may be correct that its conception of the *American Pipe* rule would reduce the number of individual suits filed by class members. But this is beside the point. While reduction in the number of suits may be an incidental benefit of the *American Pipe* doctrine, it was not the purpose of *American Pipe* either to reduce the number of suits filed, or to force individual plaintiffs to make an early decision whether to proceed by individual suit or rely on a class representative. Nor was the purpose of *American Pipe* to protect the desire of a defendant "not to defend against multiple actions in multiple forums." *Crown*,

462 U.S. at 353.  The *American Pipe* tolling doctrine was created to protect class members from being forced to file individual suits in order to preserve their claims.  It was not meant to induce class members to forgo their right to sue individually.

*In re Worldcom*, 496 F.3d at 256.

This latter point is precisely what Comcast wishes to accomplish, that is to both induce individuals to forgo their right to sue and then to cut off the rights of those that seek to enforce their rights by filing suit.

Having argued in *Fayerweather* that class treatment was not necessary because the employees could bring individual suits, Comcast should now be estopped from taking a contrary position by asking this Court to ignore that assertion *and* the settled law and instead bar the very individual claims which Comcast argued it would prefer.

"[I]t is axiomatic that one who seeks equity must be willing to do equity. (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal. App. 4th 445, 453 [61 Cal. Rptr. 2d 707].) . . . This maxim stems from the paramount principle that equity is, peculiarly, a forum of conscience.  (*Couts v. Cornell* (1905) 147 Cal. 560, 563 [82 P. 194].)"  (*In re Marriage of Plescia* (1997) 59 Cal. App. 4th 252, 257-258 [69 Cal. Rptr. 2d 120].)

*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal. 4th 163, 180.

1.   **American Pipe Sets Forth The Two Criteria For The Court to Evaluate In Deciding Whether Tolling Applies.**

Underlying the tolling rule of *American Pipe, supra,* 414 U.S. 538 were two major policy considerations. The first was the protection of the class action device. In cases where class certification is denied for what the high court characterized as "subtle factors," unforeseeable by class members, a rule that failed to protect putative class members from the statute of limitations after denial of certification would induce potential class members to "file protective motions to intervene or to join in the event that a class was later found unsuitable," depriving class actions

"of the efficiency and economy of litigation which is a principal purpose of the procedure." (*American Pipe, supra,* 414 U.S. at p. 553; see also *Crown, Cork & Seal Co.* v. *Parker, supra,* 462 U.S. at pp. 350-351).

The second consideration involved the effectuation of the purposes of the statute of limitations. "The policies of ensuring essential fairness to defendants and of barring a plaintiff who has 'slept on his rights,' the high court stated, "are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." (414 U.S. at pp. 554-555]). In these circumstances, the court concluded, the purposes of the statute of limitations would not be violated by a decision to toll. (*Ibid.*; see, generally, Comment, *Class Actions and Statutes of Limitations* (1981) 48 U. Chi. L.Rev. 106, 108-109.)

Here, the two factors that the court must consider weigh in favor of tolling for the Named Plaintiffs. The *Fayerweather* case was filed to remedy the same rights that are now being adjudicated through these individual actions. Comcast concedes this fact in trying to strike allegations that mirror those contained in the *Fayerweather* complaint. The denial of tolling would undermine the primary purpose behind tolling (i.e., protecting putative class members from the statute of limitations to ensure the efficiency and economy of litigation which is a principal purpose of the class action procedure).

To recap, the individuals who have filed suit were class members of the certified *Fayerweather* class that remained certified for close to three (3) years. When the California Supreme Court rendered its decision in *Brinker*, Plaintiffs counsel were required to submit further briefing on certification. The trial court decertified the class following further briefing

and Plaintiffs immediately appealed the decertification. This case was filed on the heels of the appellate decision affirming the finality of the decertification order. Requiring these putative class members of a previously certified class to file individual lawsuits when the issue of class status remained an open question — and before the decertification order became final — would undermine the purpose behind the class action device. Comcast's motion fails to address the fact that for more than two (2) years, the class was certified. It is more than reasonable and in fact prudent for the plaintiffs, who were part of a certified class for more than two (2) years, to wait to see if the certification order would be reinstated. Had the appeal been successful, judicial economy would not have been served by having the plaintiffs lawsuit coexist with a separate class action covering their same rights pending in another forum. Avoiding multiplicity of lawsuits while preventing prejudice to defendants are the key public policies behind tolling.

### 2. Tolling Is Appropriate As Defendant Has Been On Notice Of The Individuals And Their Claims From The Inception of The *Fayerweather* Lawsuit.

Since Comcast must concede the existence of the doctrine of tolling, the crux of Comcast's argument is that the court should apply only *partial* tolling. In other words, Comcast concedes it was on notice of the claims and individuals involved. Yet for some unsupported reason, Comcast asks the court to ignore this factor and excuse Comcast from substantial liability for claims. This, without any suggestion that Comcast could otherwise be prejudiced. Comcast cannot assert prejudice since it has been on notice of these claims for years. Comcast was both on notice of the claims and knew the individuals involved.

### a. Not Only Is Comcast On Notice, Comcast Has Preserved And Produced To Plaintiffs Counsel All Evidence For All Class Members Including The Named Plaintiffs

Class actions promote "efficiency and economy of litigation" by consolidating numerous individual suits into a single suit. *Id.* Statutes of limitations "promote justice by preventing surprises through the revival of claims that have been

allowed to slumber until evidence has been lost, memories faded and witnesses disappeared." *Id.* at 554. The Court accommodated both purposes by formulating a "rule … that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.*

*Catholic Soc. Services, Inc. v. I.N.S.*, 232 F.3d 1139, 1146–47 (9th Cir. 2000)

Where the class action complaint provided defendant with *notice* of the nature and number of all potential claims, the statute will be tolled. [*Jolly v. Eli Lilly & Co.* (1988) 44 C3d 1103, 1122]. Comcast has been on notice from "day one" of the claims and the putative class members (which include the claims encompassed in this litigation) on whose behalf the case has been brought.

As part of the extended class certification and decertification proceeding and preparations for trial (close to four years), massive amounts of data for all class members, including the plaintiffs, in the form of time sheets, time records, electronic data for each class member for each work day, payroll data, work days, lengths of shifts, jobs performed, etc. was produced by Comcast to Plaintiffs counsel in the *Fayerweather* action. All evidence that existed has been produced and thus the concern of surprise is non-existent.

Further, noticeably absent from Comcast's motion is any suggestion that it has been prejudiced in anyway by the filing of this action, that Plaintiff is alleging new and previously unknown claims or that Comcast was ignorant of the individuals whose claims were at issue in *Fayerweather*. Does Comcast seriously expect this court to accept that it was not on notice about the claims of these individuals? And, how is a court to make that adjudication based on the pleadings alone? The claims were laid out on numerous occasions and Comcast has known both the nature of the claims and who the individuals are. It was Comcast who actually identified

them in the lawsuit. Comcast cannot suggest it has not been on notice of the claims in this lawsuit, or the individuals involved.

In summary, statutes of repose apply to those who have slept on their rights to the prejudice of the other side. Plaintiffs neither slept on their rights nor was Comcast ignorant of the claims alleged or the individuals on whose behalf the *Fayerweather* class action was brought.

## E.  COMCAST'S RELIANCE ON THE HALL CASE IS DISTINGUISHABLE.

Comcast relies on a federal case from the 5th circuit to support its argument. In *Hall*, putative class members waited a whopping five (5) years to bring a subsequent class action lawsuit after the trial court struck class allegations due to trial counsel's violation of expert and fact witness disclosures. In light of the two policy considerations involved and a decertification based on trial counsel's inexcusable conduct, it is understandable why the court found no tolling. Unlike the Plaintiffs here, the *Hall* Plaintiffs <u>were</u> sleeping on their rights by not taking action in light of trial counsel's disclosure abuses and the court was understandably not willing to revive those claims – and certainly not on a class basis.

## CONCLUSION

Class actions promote efficiency and economy of litigation by consolidating numerous individual suits into a single suit. Statutes of limitations promote justice by preventing surprises and demonstrable prejudice. "In order to both avoid needless multiplicity of actions and to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights, tolling is appropriate." See *Catholic Soc. Services, Inc. v. I.N.S* 232 F.3d 1139, 1147-48 (9th Cir. 2000). The benefits and purpose for tolling are present here. In fact, Comcast does not even suggest, nor could it seriously contend, that it will be prejudiced if tolling is allowed because it

has known full well about the existence and scope of these claims since inception of the

*Fayerweather* case. For the foregoing reasons, Comcast's motion to strike should be denied.

Dated: January 9, 2015

Respectfully submitted
**RIGHETTI GLUGOSKI , P.C.**

John Glugoski, Esq.
Attorneys for Plaintiff

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT

**EXHIBIT 1**

ELECTRONICALLY
FILED

K. TORRE, CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA - MARTINEZ
BY: L BANDOMA, DEPUTY CLERK

1    **Superior Court of the State of California**

2    **In and for the County of Contra Costa**

3

4

5    GABRIEL FAYERWEATHER, as an individual and on

6    behalf of others similarly situated, Plaintiff    No. C-08-01470

7    v.    ORDER

8    COMCAST CORPORATION, et al, Defendants

9

10    On March 10, 2010 plaintiff moved for class certification. Defendants opposed

11    the motion. The matter came on for hearing on April 7, 2010. Plaintiff was represented

12    by his attorneys, Jennifer Kramer and Arlo Garcia Uriarte; defendants were represented

13    by their attorneys, Fred W. Alvarez and Troy A. Valdez.

14    The Court has considered the arguments presented, the evidence properly before it

15    and the authorities cited by the parties.

16    <u>Evidentiary Rulings</u>

17    As an initial matter, the Court addresses the evidentiary issues raised by

18    defendants.

19    *The declaration of Arlo Uriarte:* Defendants objected to the declaration of Arlo

20    Uriarte. Their objections fall into two categories.

21    (1) The first category consists of those objections that are stated in the form

22    "Paragraph 11(_), Exhibit _" , (*e.g.* "Paragraph 11(a), Exhibit B" or "Paragraph 11(b),

23    Exhibit C") on pages 1-25 of the "[Proposed] Order on Defendants' Objections to

1    Evidence Submitted by Plaintiff in Support of His Motion For Class Certification"

2    (referred to below as "the proposed order"). They are each overruled as being

3    insufficiently specific. The Court is unable to discern specifically what objection is being

4    made to what part of each of those (lengthy) paragraphs. Indeed, each is followed by a

5    more specific objection each of which is addressed next.

6         (2) The second category of objections are those that cite a specific conclusion by

7    Mr. Uriarte on pages 1-25 of the proposed order, such as on page 2 of the proposed order.

8    The objection as to each of the conclusionary statements quoted in the left hand column

9    is sustained. The Court does not receive it as evidence. Instead, the Court considers it

10   merely argument based on the business records as to which the objection is overruled.

11        *The declaration of Jennifer Kramer:* Defendants' objections to the declaration of

12   Jennifer Kramer are overruled. The declaration avers that the attached documents are

13   business records produced by defendants. The Court does not receive them now for the

14   truth of the matter asserted; but only to assess the kind and quality of the records that

15   have been exchanged in discovery so it can assess how best to manage this case given the

16   issues raised by this motion.

17        *The declaration of Gabriel Fayerweather:* The Court sustains defendnats'

18   objections as to paragraph 14:20-21 and paragraph 19:19. All other objections are

19   overruled.

20        *Defendants' Request for Judicial Notice:* Defendants' request is granted.

21   <u>The Motion for Class Certification</u>

22        The proper legal criterion for deciding whether to certify a class under CCP § 382

23   is whether plaintiff has established by a preponderance of the evidence that a class action

1   is superior to alternative means for a fair and efficient adjudication of the litigation. *Sav-*

2   *on Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 332. The certification

3   question is essentially a procedural one that does not ask whether an action is legally or

4   factually meritorious. *Id.* at p. 326; *Linder v. Thrifty Oil Co.* (2000) 23 Cal. 4th 429. (The

5   Court notes that a considerable amount of briefing seems directed towards the merits of

6   the claims.  As explained in *Linder*, this is not the time to determine "whether an action is

7   legally or factually meritorious." *Id.* At 439-440.)

8           The party seeking class certification under CCP § 382 has the burden of

9   establishing (1) the existence of an ascertainable class, (2) a well-defined community of

10  interest among the class members, and (3) that substantial benefit to litigants and the

11  court would result from class certification. *City of San Jose v. Superior Court* (1974) 12

12  Cal.3d 447, 458.

13          A. Ascertainable class

14          Whether a class is "ascertainable" within the meaning of CCP § 382 is determined

15  by examining (a) the class definition, (b) the size of the class, and (c) the means available

16  for identifying the class members. *Reyes v. San Diego County Board of Supervisors*

17  (1987) 196 Cal.App.3d 1263, 1271.

18          *The class definition:*  In this case, plaintiff proposes to define the class as "all

19  individuals who have been employed or are currently employed by defendants as

20  Communication Technicians Levels I, II, III and IV, Installer, Advanced Installer,

21  Service Technician, System Technician, Field Service Representatives Levels I, II, III,

22  IV, V, and VI, or in other similar positions who were employed by defendants from May

23  27, 2004 up to the time that class certification is granted."

1        With one exception, this class definition is precise, objective and ascertainable.

2    The exception is the phrase "or in other similar positions". At oral argument plaintiff

3    raised a concern about whether certain other job titles used in the declarations proffered

4    by defendants (such as "floater" and "lead tech" and "field technician") were included in

5    the precise job classifications identified in the proposed definition of the class.

6    Defendants said they were and plaintiff accepted that representation. Thus, the phrase

7    "or in other similar positions" will not be used.

8        The class is defined as "all individuals who have been employed or are currently

9    employed by defendants as Communication Technicians Levels I, II, III and IV, Installer,

10    Advanced Installer, Service Technician, System Technician, Field Service

11    Representatives Levels I, II, III, IV, V, and VI, who were employed by defendants from

12    May 27, 2004 to April 7, 2010."

13        *The size of the class:*  The numerosity requirement is satisfied where the class

14    members are so numerous that it is impracticable to bring them all before the court. (CCP

15    § 382.)  There is no predetermined minimum number of class members necessary as a

16    matter of law for the maintenance of a class action. See *Hebbard v. Colgrove* (1972) 28

17    Cal.App.3d 1017, 1030 (not inappropriate to certify class involving a minimum of 28

18    members). In this case, plaintiffs have established that there are at least 1,891 class

19    members, satisfying the numerosity requirement, as it would be impracticable to bring all

20    of these individuals before the court.

21        *Identification of class members:*  Although the class must be ascertainable, its

22    members need not be identified to bind them by a class action judgment. See *Lazar v.*

23    *Hertz Corp.* (1983) 143 Cal.App.3d 128, 138 (all persons who rented cars from Hertz in

1    California during a 4-year period, held an ascertainable class). In this case, plaintiffs

2    have established, and defendants do not dispute, that the class members are identifiable

3    from defendant's employment records.

4        B. Community of interest

5        Community of interest is comprised of three elements: (a) predominant common

6    questions of law or fact; (b) class representatives with claims or defenses typical of the

7    class; and (c) class representatives who can adequately represent the class. *Richmond v.*

8    *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470.

9        *Predominance of common questions:* means that each member must not be

10   required to litigate individually numerous and substantial questions to determine his or

11   her right to recover following the class judgment; and the issues which may be jointly

12   tried, when compared with those requiring separate adjudication, must be sufficiently

13   numerous and substantial to make the class action advantageous to the judicial process

14   and to the litigants. *Washington Mutual Bank, FA v. Superior Court* (2001) 24 Cal.4th

15   906, 913-914.

16       Here, the predominance question is the most critical one. The parties have

17   sharply divergent views on that. Defendants cite the federal cases that hold that common

18   questions do not predominate in this type of litigation and provide the report of an expert

19   that tends to support that position. Plaintiff cites *Jaimez v. DAIOHS, USA* (2010) 181

20   Cal. App. 4th 1286 that holds to the contrary.

21       The Court believes this is a close case. However, ultimately, it is required to

22   consider whether "the theory of recovery advanced by the plaintiff is likely to prove

23   amenable to class treatment." *Id.* At 1298 quoting *Ghazaryan v. Diva Limousine, Ltd.*

1   (2008) 169 Cal. App. 4th 1524, 1531. Here, it appears to be plaintiff's theory that

2   Comcast has adopted a policy of understaffing (or overscheduling) that makes it unlikely

3   that Com-Techs can have their required breaks each day. Given that theory of the case,

4   some of the common issues of fact and law include:

5       1.  Whether Comcast's policies, practices and procedures provide Com-Techs

6           with lawful breaks.

7       2.  Whether Comcast has a policy of not compensating Com-Techs under Labor

8           Code 226.7 for missed breaks.

9       3.  Whether Comcast's policies, practices and procedures provide Com-Techs a

10          meal period for every 5 hours worked in compliance with Labor Code 512.

11       4.  Whether Comcast has a policy of not compensating Com-Techs under Labor

12          Code 226.7 for missed breaks.

13       5.  Whether Comcast's policies, practices and procedures result in keeping

14          accurate records as required by the Labor Code.

15       6.  Whether Comcast has a policy of requiring Com-Techs to execute a statement

16          of hours worked during a pay period which Comcast knows to be false.

17      In phrasing the questions this way, the Court does not, of course, presume to

18   determine how the Supreme Court will rule in *Brinker Restaurant v. Superior Court.*

19   But regardless of how the Supreme Court rules, these questions (however phrased) raise

20   common issues about Comcast's policies, practices and procedures. See, *Bibo v. Federal*

21   *Express*, 2009 WL 1068880, 14 Wage & Hour Cas. 2d (BNA) 1360 (N.D.Cal. 2009).

22      Of course these common questions have to be weighed against the individual

23   questions. The individual questions of fact include:

1    1. Whether and when each individual class member missed meal/rest breaks.

2    2. Whether and when class members worked 'off-the-clock'.

3    3. Whether class members are owed unpaid wages for the time recorded as

4        breaks when no break was provided and/or time worked off the clock at the

5        start or end of shifts.

6    4. Other individual class members' damages.

7        Defendants point to these issues and, to sharpen the point, argue that each

8    Comcast region is different, each route may be different, each day may be different, and

9    each supervisor may act differently.  Therefore, they argue, there can be *no* common

10   questions.

11       Defendants submitted the declaration of John H. Johnson, IV, Ph.D.   He

12   concludes:

13       "To determine whether any class member had adequate time to take meal or rest

14       breaks, an individual review for each class member on each day would have to be

15       conducted using the available time databases.

16       "The available data alone cannot be used to determine with a reasonable degree of

17       certainty whether any individual in fact took a meal or rest break, and if so, for

18       how long.  Ultimately, review of paper timesheets and individual recollection will

19       be required as supplements to determine the fact of whether any individual

20       actually took a meal or rest break.

21       "Mr. Fayerweather's experience at Comcast cannot be used to extrapolate the

22       experiences of other class members for the purpose of calculating missed meal

23       breaks, rest breaks, or damages." (Declaration of Troy A. Valdez In Support of

1      Defendants' Opposition to Plaintiff's Motion for Class Certification, Exhibit D,

2      paragraph 10.)

3          Dr. Johnson's report gives pause. But on analysis, it can be seen that it addresses

4   only part of the question. Dr. Johnson says he was "asked by counsel for Comcast to (1)

5   *review the available data sets* provided in discovery in this litigation, (2) to assess

6   whether a common methodology exists *using the available data* to determine whether

7   meal or rest breaks occurred or adequate time was given for mean or rest breaks, and (3)

8   to analyze, *based on available data*, the extent to which experiences of the named

9   plaintiff Mr. Gabriel Fayerweather with respect to his meal and rest breaks can be used to

10  extrapolate to the experiences of other putative class members." (*Id.* at paragraph 7.)

11         In other words, Dr. Johnson was asked to focuses on the *data* that has been

12  produced in discovery. Thus, he pursues what might be called a microanalysis of the

13  case. He posits one way in which plaintiff might seek to prove his case – by looking at

14  the data regarding each of the individual workers. From that view of the case, he reaches

15  the conclusions quoted above.

16         But that is not *plaintiff's* theory of the case. Plaintiff seeks to prove there are

17  systemic *policies and procedures* that result in violations of the law; they argue that the

18  *staffing levels* are fundamentally inadequate. They seek to prove their case by focusing

19  on staffing levels, time and motion studies conducted by defendants and other similar

20  macroanalyses.[1]

21         On that view of the case, the common issues do predominate; the individual issues

22  become a matter of individual damages. The Court acknowledges defendants' argument

---

[1] They also suggest that the data may usefully be sampled. That may or may not be possible given Dr. Johnson's declaration.

8

1    that plaintiff has not proved these claims.  But, as noted above, a class certification

2    motion is not the time to test the validity of the claims; only to determine how best to

3    manage them.

4         Individualized proof of damages is not per se an obstacle to class treatment, so

5    long as the issues which may be jointly tried, when compared to those requiring separate

6    adjudication, justify the maintenance of the suit as a class action. *Sav-On Drug Stores v.*

7    *Superior Court* (2004) 34 Cal.4th 319, 334-335.  If unanticipated or unmanageable

8    individual issues do arise, the trial court retains the option of decertification. *Id.* at p. 335.

9         *Typicality:*  The "adequacy" and "typicality" test examines whether the class

10   representative's claims arise from the same nucleus of operative facts as those of class

11   members and whether the class representatives are free of irreconcilable conflicts. *La*

12   *Sala v. American Savings & Loan Assn.,* (1971) 5 Cal.3d 864, 871.  The purported class

13   representative's claim must be typical but not necessarily identical to the claims of other

14   class members; it is sufficient that the representative is similarly situated so that he or she

15   will have the motive to litigate on behalf of all class members. *Classen v. Weller* (1983)

16   145 Cal.App.3d 27, 45. It is not necessary that the class representative have personally

17   incurred all of the damages suffered by each of the other class members. *Wershba v.*

18   *Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 228.

19        In this case, the named plaintiff's claims appear to be the same as the claims of the

20   absent members of the putative class.  Here, the named plaintiff performed the same job

21   duties as the putative class members and alleges that he, like the other class members

22   worked through his meal and rest breaks and performed work 'off-the clock.'  As with

23   the other class members, plaintiff alleges that he was not compensated for all hours he

1    worked.  Because plaintiff and the putative class members performed similar duties and

2    were subject to the same allegedly illegal employment policies, his claims are typical of

3    the class.

4         *Adequacy:* As for adequacy of the class representative, he or she must be capable,

5    through qualified counsel, of vigorously and tenaciously protecting the interests of the

6    class members. *Simons v. Horowitz* (1984) 151 Cal.App.3d 834, 846. If he or she seeks

7    only partial relief, the adequacy of representation requirement is not met, and a class

8    action therefore will not be allowed. *City of San Jose v. Superior Court* (1974) 12 Cal.3d

9    447, 464.

10        In this case, the named plaintiff has actively participated in the litigation thus far

11   including giving his deposition.  He appears adequate to represent the interests of the

12   class members. Indeed, there seems to be little dispute about that.

13        The Court also has an obligation to scrutinize closely the qualifications of counsel

14   to assure that all interests, including those of as yet unnamed plaintiffs are adequately

15   represented, because in certifying a class action, the Court confers on absent persons the

16   status of litigants and creates an attorney-client relationship between those persons and a

17   lawyer or group of lawyers. *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997)

18   52 Cal.App.4th 1, 12.  In this case, the qualifications of counsel are not disputed and the

19   adequacy of class counsel has been established.  See Declarations of Jennifer Kramer and

20   Arlo Garcia Uriarte.

21        C. Substantial benefit

22        Certifying a class action requires demonstrated substantial benefits to litigants and

23   the court. *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 657. Also, plaintiff

10

1   must establish more than a reasonable probability that class action treatment is

2   appropriate. *Hamwi v. Citinational-Buckeye* (1977) 72 Cal.App.3d 462, 471-472.

3        Because a class should not be certified unless substantial benefits accrue both to

4   litigants and the courts, the question arises as to whether a class action would be superior

5   to individual lawsuits. *Basurco v. 21st Century Ins. Co.* (2003) 108 Cal.App.4th 110,

6   120.

7        In this case, class adjudication presents a substantial benefit to the class members.

8   Their individual claims are relatively small, making individual litigation more difficult

9   and less likely.  In general, a class action is proper where it provides small claimants with

10  a method of obtaining redress and when numerous parties suffer injury of insufficient

11  size to warrant individual action. *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435.

12       Defendants contend that this case presents too many individual issues to be the

13  superior method of adjudication. Defendants assert that a better method for adjudication

14  is for individuals to submit claims to the California Labor Commissioner. The Court

15  concludes that class adjudication presents a substantial benefit to the court, promoting the

16  efficient use of judicial resources, avoiding duplicative discovery and pretrial motions,

17  and multiple trials on predominantly common issues.

18       It appears that the common issues can be litigated in a manageable way and the

19  case need not be overwhelmed by individual issues.  The Court will be alert to managing

20  the case to promote that.

21       Accordingly, plaintiff's motion for class certification is granted.   A class is

22  certified as described above.

1    A case management conference will be held on June 17, 2010 at 9:00 a.m. The

2    parties shall submit case management conference statements two weeks prior to that date.

3

4    Dated: April 12, 2010

5    Digitally signed by Barry Goode
     Reason: I am the author of this
     document
     Location: Martinez, CA
     Date: 2010.04.12 14:02:39
     -07'00'

6    _____

7                    Judge, Superior Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

12

1   FRED W. ALVAREZ, State Bar No. 68115
    ALLISON B. MOSER, State Bar No. 223065
2   JONES DAY
    Silicon Valley Office
3   1755 Embarcadero Rd.
    Palo Alto, CA 94303
4   Telephone: (650) 739-3939
    Facsimile: (650) 739-3900
5   Email: falvarez@jonesday.com
    Email: amoser@jonesday.com
6
    TROY A. VALDEZ, State Bar No. 191478
7   ERIN M. DOYLE, State Bar No. 233113
    VALDEZ TODD & DOYLE LLP
8   1901 Harrison Street, Suite 1450
    Oakland, California 94612
9   Telephone: (415) 202-5950
    Facsimile: (415) 202-5951
10  Email: tvaldez@vtdlaw.com
    Email: edoyle@vtdlaw.com
11
    Attorneys for Defendant
12  COMCAST CABLE COMMUNICATIONS
    MANAGEMENT, LLC
13

**F I L E D**
**SAN MATEO COUNTY**

JAN 1 5 2015

Clerk of the Superior Court
By _____
         DEPUTY CLERK

14              SUPERIOR COURT OF THE STATE OF CALIFORNIA

15                      FOR THE COUNTY OF SAN MATEO

16

17   LAMBERTO VALENCIA, MARK A.              CASE NO. CIV531049
     PERDUE, PHILIP RICHARD MARTIN
18   and ESTATE OF EFREN AGANA,              **DEFENDANT'S REPLY IN SUPPORT**
                                             **OF ITS MOTION TO STRIKE**
19               Plaintiffs,                 **PORTIONS OF THE COMPLAINT**

20        v.                                 Date:  January 23, 2015
                                             Time:  9:00 AM
21   COMCAST CORPORATION, a                  Dept.: LM (Law & Motion)
     Pennsylvania Corporation; COMCAST OF
22   CONTRA COSTA, INC., a Washington        Complaint filed October 27, 2014
     Corporation; and DOES 1 through 50,
23   Inclusive,

24               Defendants.

25

26

27

28

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE - CASE NO. CIV531049

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................

III.   ARGUMENT ........................................................................................

    A.    Plaintiffs Improperly Attempt to Extend the Period of Equitable Tolling
        Beyond the Date of the Decertification Order. ..........................................

    B.    Collateral Estoppel Precludes Plaintiffs' Policy, Pattern and Practice
        Claims, Which Were Necessarily Adjudicated on the Merits in the
        *Fayerweather* Action and Are Binding on Plaintiffs. ...............................

        1.    The *Fayerweather* Decertification Order Considered and Rejected
            Policy, Pattern, and Practice Claims Identical to Those Brought by
            Plaintiffs. ...........................................................................

        2.    Applying Collateral Estoppel in This Case Satisfies Due Process
            Because Plaintiffs Are in Privity with Fayerweather. .....................

    C.    Plaintiffs Concede That Their Complaint Misstates the Law Regarding
        Meal Breaks. ...............................................................................

IV.   CONCLUSION .....................................................................................

i

1

## TABLE OF AUTHORITIES

2

3

CASES

4

5
*Alvarez v. May Department Stores,*
   143 Cal. App. 4th 1223 (2006)..........................................................

6

7
*American Pipe & Construction Company v. Utah,*
   414 U.S. 538 (1974) ....................................................................

8

9
*Becker v. McMillin Constr. Co.,*
   226 Cal. App. 3d 1493 (1991)..........................................................

10

11
*Carnegie v. Household International, Inc.,*
   376 F.3d 656 (7th Cir. 2004) ...............................................................

12

13
*Catholic Soc. Services, Inc. v. I.N.S.,*
   232 F.3d 1139 (9th Cir. 2000)..........................................................

14

15
*Crown, Cork & Seal Co., Inc. v. Parker,*
   462 U.S. 345 (1983) ....................................................................

16
*Dynamex Operations West, Inc. v. Superior Court,*
   230 Cal. App. 4th 718 (Cal. App. 2d Dist. 2014) ...............................

17

18
*Giovanniello v. ALM Media, LLC,*
   726 F.3d 106 (2nd Cir. 2013)..........................................................

19

20
*Global Minerals & Metals Corp. v. Superior Court,*
   113 Cal. App. 4th 836 (Cal. App. 4th Dist. 2003) ...............................

21
*Hall v. Variable Annuity Life Ins. Co ,*
   727 F.3d 372 (5th Cir. 2013)..........................................................

22

23
*Johnson v. GlaxoSmithKline, Inc.,*
   166 Cal. App. 4th 1497 (Cal. App. 2d Dist. 2008) ...............................

24

25
*Jolly v. Eli Lilly & Co.,*
   44 Cal. 3d 1103 (Cal. 1988)..........................................................

26

27
*Lucido v. Superior Court,*
   51 Cal 3d 335 (Cal. 1990) .................................................................

28

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE - CASE NO. CIV531049

*Oshana v. Coca-Cola Bottling Co.,*
  225 F.R.D. 575 (N.D. Ill. 2005) ..................................................................

*Smith v. Bayer Corporation,*
  131 S. Ct. 2368 (2011) .............................................................................

**OTHER AUTHORITIES**

Defendant's Supplemental Request for Judicial Notice, Exhibits 1 and 2 .........................

rule 23 of the Federal Rules of Civil Procedure ..............................................

RJN, Exhibit E at 11-12, 15 .....................................................................

Rule 23 ...........................................................................................

iii

## I.      INTRODUCTION

Plaintiffs' Opposition to Comcast's Motion to Strike ("Opposition") provides no persuasive reason that this Court should deviate from consistent precedent holding that equitable tolling applies only until a class is decertified—not through the appeals process. This Court should hold, consistent with the United States Supreme Court's opinion in *American Pipe*, that Plaintiffs' claims may be tolled only until the Decertification Order in the *Fayerweather* lawsuit was issued on December 15, 2010.

Further, Plaintiffs ignore the factual conclusions underlying the Decertification Order finding that Comcast's policies, patterns, and practices are not unlawful. Because these policies, patterns, and practices were fully litigated at the *Fayerweather* class decertification hearing and because the parties, claims, and counsel were identical in that case, collateral estoppel prevents Plaintiffs from relitigating these issues. Importantly, Comcast does not seek to prevent Plaintiffs from bringing individual claims alleging that they suffered harm on an individual basis; however, Comcast should not be required to repeatedly defend the same policies, patterns, or practices that have been extensively briefed, fully litigated, and finally adjudicated.

Finally, Plaintiffs fail to contest, and therefore concede, that Plaintiffs' Third Cause of Action relies on an improper statement of law regarding meal break policy. Therefore, this incorrect statement of law should be stricken from Plaintiffs' Complaint.

## II.     ARGUMENT

### A.      Plaintiffs Improperly Attempt to Extend the Period of Equitable Tolling Beyond the Date of the Decertification Order.

This Court should deny Plaintiffs attempts to further expand the already "generous" equitable tolling doctrine set forth in *American Pipe & Construction Company v. Utah*, 414 U.S. 538 (1974). *See* Opposition at page 8, line 25 (citing the court's concern in *Becker v. McMillan Constr. Co.*, 226 Cal. App. 3d 1493 (1991), regarding the danger of abuse of the "generous" rule of *American Pipe*). Plaintiffs' interpretation of *American Pipe* is at odds with the language of the case itself as well as the interpretation of every Circuit Court of Appeals that has considered whether tolling extends through the appeals process.

1

1    Under *American Pipe*, a pending class action may toll the statute of limitations "only

2    during the pendency of the motion to strip the suit of its class action character."[1] *American*

3    414 U.S. at 561. Plaintiffs fail to cite a single case supporting their interpretation that the

4    equitable tolling doctrine extends through the entire appeals process. To the contrary, every

5    that Plaintiffs cite has held, consistent with Comcast's position, that equitable tolling applies

6    "until class certification is denied." *See, e.g., American Pipe*, 414 U.S. at 552-553; *Crown, C*

7    *& Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983); *Becker*, 226 Cal. App. 3d at 1498; *Cat*

8    *Soc. Services, Inc. v. I.N.S.*, 232 F.3d 1139, 1147 (9th Cir. 2000).

9    While no California state court has considered the precise issue of whether the appea

10   decertification order extends the tolling period, this Court need not start with a blank slate.

11   Instead, pursuant to the California Supreme Court's guidance in *Jolly v. Eli Lilly & Co.*, 44 C

12   3d 1103, 1118 (Cal. 1988), "in the absence of controlling state authority, California courts sh

13   utilize the procedures of rule 23 of the Federal Rules of Civil Procedure." Numerous federal

14   courts that have considered whether *American Pipe*'s tolling doctrine extends past the denial

15   class certification through the appeal process and have ultimately held that it does not. *See l*

16   *Variable Annuity Life Ins. Co.*, 727 F.3d 372 (5th Cir. 2013); *Giovanniello v. ALM Media, L*

17   726 F.3d 106 (2nd Cir. 2013) (citing cases from the First, Third, Fourth, Fifth, Sixth, Seventh

18   Eleventh, and Federal Circuits). As the Second Circuit in *Giovanniello* recognized, "[s]uch a

19   is consistent with—if not compelled by—the decisions of the Supreme Court." *Id.* (citing

20   language from *American Pipe* stating that the tolling period applies "only during the pendenc

21   the motion to strip the suit of its class action character" and from *Crown, Cork & Seal* stating

22   tolling applies "until class certification is denied").

23   Although Plaintiffs point out factual differences in *Hall*, they fail to provide any

24   persuasive justification that the reasoning in *Hall* should not apply here and fail to cite any le

25   authority in their favor. Contrary to Plaintiffs' argument, federal courts' refusal to extend

26

27   [1] At this stage in the case, before any discovery has been completed, it is premature to

28   determine whether Plaintiffs are entitled to equitable tolling.

2

1    equitable tolling through the appeals process makes logical sense because, once a class is

2    decertified, reliance on the class action is no longer reasonable. Following an order denying

3    certification or decertifying a class, the named plaintiff is under no obligation to protect non-

4    named plaintiffs. *Giovanniello*, 726 F.3d at 117. Further, even where the named plaintiff d

5    seek review, reliance is not objectively reasonable because "reconsideration and appeal rare

6    result in a reversal of the district court decision." *Id.* A "remote possibility of reversal" doe

7    provide a basis for objectively reasonable reliance on the class action as required for *Americ*

8    *Pipe* tolling to apply. *Id.* Thus, to the extent equitable tolling applies, Plaintiffs claims can

9    tolled only to December 15, 2010, the date the Decertification Order was issued, and all

10   allegations in the Complaint suggesting otherwise should be stricken.

11          **B.    Collateral Estoppel Precludes Plaintiffs' Policy, Pattern and Practice Cl**
                    **Which Were Necessarily Adjudicated on the Merits in the *Fayerweather***
12                  **Action and Are Binding on Plaintiffs.**

13          Contrary to Plaintiffs' blanket assertion that "neither [collateral estoppel or res judica

14   are even discussed by Comcast," Comcast's Motion to Strike analyzes in detail each elemen

15   required to apply the doctrine of collateral estoppel, also referred to as issue preclusion. *See*

16   Defendant's Memorandum of Points and Authorities in Support of Its Motion to Strike Porti

17   of the Complaint (the "Motion"), § III.B; *Johnson v. GlaxoSmithKline, Inc*, 166 Cal. App. 4

18   1497, 1507 n.5 (Cal. App. 2d Dist. 2008) (recognizing that the terms "collateral estoppel" an

19   "issue preclusion" refer to the same doctrine). In their Opposition, Plaintiffs dispute only tw

20   issues: (1) that the prior ruling was on the merits and (2) that Plaintiffs are properly bound by

21   prior decision. Because the Decertification Order necessarily determined that Comcast does

22   have unlawful policies, patterns, or practices and because Plaintiffs are in privity with the

23   *Fayerweather* plaintiff, collateral estoppel precludes Plaintiffs from relitigating identical issu

24   the present case.

25          1.    <u>The *Fayerweather* Decertification Order Considered and Rejected</u>
                  <u>Policy, Pattern, and Practice Claims Identical to Those Brought by</u>
26                <u>Plaintiffs.</u>

27          Plaintiffs rely heavily on the fact that class certification is a procedural device. The la

28   California is clear, however, that the applicability of collateral estoppel depends on the issues

                                            3

1   decided in the prior ruling, not the form by which they were decided. *Lucido v. Superior Co*

2   51 Cal. 3d 335, 341 (Cal. 1990). Although courts generally do not adjudicate the merits of a

3   claim at the class certification stage, where class certification depends on the existence of

4   common policies, patterns, or practices, this threshold issue is necessarily decided

5   contemporaneously with the ruling on certification. In fact, California courts have noted tha

6   while class certification is generally a procedural question, the "issue of community interest

7   determined on the merits and the plaintiff must establish the community as a matter of fact."

8   *Global Minerals & Metals Corp. v. Superior Court*, 113 Cal. App. 4th 836, 849 (Cal. App. 4

9   Dist. 2003) (internal citation omitted); *see also Dynamex Operations West, Inc. v. Superior (*

10  230 Cal. App. 4th 718, 725 (Cal. App. 2d Dist. 2014) (holding that a court may "consider[] b

11  various claims and defenses relate and may affect the course of the litigation" even though su

12  'considerations ... may overlap the case's merits").

13        Here, the community interest in the *Fayerweather* action was predicated on Comcast

14  allegedly unlawful policies, patterns, and practices. Plaintiffs admit that Comcast produced

15  relevant evidence applicable to them in *Fayerweather*. *See* Opposition at page 12, like 25

16  ("Comcast has . . . produced to Plaintiffs' counsel all evidence for all class members, includi

17  the named Plaintiffs"); page 13, line 16-17 ("All evidence that existed has been produced . .

18  And, after considering this evidence, Judge Goode determined that the *Fayerweather* class fi

19  to prove that Comcast had a policy, pattern or practice of requiring on-duty meal periods, rel

20  on inaccurate CSG records, or automatically deducting an hour for lunch.

21        In arguing that there is "no inkling" that the Decertification Order made any ruling on

22  merits, Plaintiffs ignore key factual findings made by Judge Goode. For example, Judge Go

23  concluded that, "it is clear that Comcast has not adopted a 'policy' of requiring Com-Techs 1

24  remain on duty during their meal breaks." Decertification Order at 12:19-20. Further, he fo

25  that "there is not a consistent practice that violates the company's stated policy" and that

26  Plaintiffs cited "no common evidence of a central direction" that Comcast directed class mer

27

28

1   to fill out fictitious time sheets.[2] *Id.* at 24:5, 26:10-12. These factual findings were affirm

2   appeal. The Court of Appeal agreed that there was "no evidence suggesting a general polic

3   practice precluding second breaks . . . or the assignment of so much work that technicians l

4   time for a break" and found "no direct proof" of any "widespread pressure on technicians b

5   supervisors to underreport their working hours." RJN, Exhibit E at 11-12, 15. Because the

6   pattern, and practice claims that Plaintiffs assert in this action were necessarily decided in t

7   *Fayerweather* decertification order, these issues are properly subject to the doctrine of colla

8   estoppel.

9        Plaintiffs' reliance on *Smith v. Bayer Corporation*, 131 S. Ct. 2368 (2011), *Oshana*

10   *Coca-Cola Bottling Co.*, 225 F.R.D. 575, 579 (N.D. Ill. 2005), and *Carnegie v. Household*

11   *International, Inc.*, 376 F.3d 656 (7th Cir. 2004) is misplaced. *Smith* considered whether de

12   of a federal class action precluded plaintiffs from filing a subsequent action in state court. 1

13   Ct. at 349. Because the state Supreme Court had made clear that the standard for certificatio

14   state court involved a different factual inquiry than that required under Rule 23, the United

15   Supreme Court held collateral estoppel did not apply. *Id.* at 351-52. Similarly, *Oshana* hel

16   collateral estoppel did not apply where the court was faced with different facts *and* a differe

17   plaintiff. *Oshana*, 225 F.R.D. at 579 (holding that collateral estoppel did not apply to a

18   subsequent class certification motion when the bases for certification were not the same). F

19   *Carnegie* held that a decision certifying a class for settlement purposes did not preclude

20   relitigation of whether the class should be certified for litigation purposes because the inquir

21   involve separate factual considerations. 376 F.3d at 660-61. In contrast to each of these cas

22   admitted by Plaintiffs, the factual assertions in the instant Complaint are identical to the issu

23   litigated in the *Fayerweather*. Opposition at page 2, lines 3-4 ("The claims at issue in this c

24   were first alleged by Gabriel Fayerweather in a class action . . ."); page 11, lines 16-17 (Cor

25   concedes [that the *Fayerweather* case was filed to remedy the same rights that are now being

26   adjudicated] in trying to strike allegations that mirror those contained in the *Fayerweather*

27

28   ───────────────

      [2] Additional factual findings are listed in Comcast's Motion at pages 3 and 7-8.

                                    5

1    complaint."); page 14, line 27 – page 15, line 1 ("Comcast . . . has known full well about th

2    existence and scope of these claims since inception of the *Fayerweather* case."). Therefore

3    collateral estoppel is properly applied in this case.

4

5        2.    **Applying Collateral Estoppel in This Case Satisfies Due Process**

6              **Because Plaintiffs Are in Privity with Fayerweather.**

7        Plaintiffs fail to address the rule set forth in *Alvarez v. May Department Stores*, 143

8    App. 4th 1223, 1226 (2006), holding that collateral estoppel can properly apply to absent p

9    class members in a subsequent action. In so holding, the court in *Alvarez* recognized that

10   determining whether parties are in privity requires consideration of the practical situation,

11   including "whether the non-party is sufficiently close to the original case to afford applicati

12   the principle of preclusion." *Id.* at 1236-37. Where the parties' claims, counsel, and intere

13   the same, and the parties in the first case has a strong motive and full opportunity to present

14   case, the *Alvarez* court held that application of collateral estoppel does not lead to an unfair

15   *Id.* at 1238.

16       The facts of the present case weigh heavily in favor of privity between the *Fayerwe*

17   class and Plaintiffs in this case. As Plaintiffs concede, their Complaint alleges "*identical* cl

18   to those brought in *Fayerweather* and is brought by persons in "identical job positions" who

19   actually members of the *Fayerweather* class. Opposition at page 9, lines 3-4. Counsel for t

20   *Fayerweather* class represents Plaintiffs in the current case. Like in *Alvarez*, the parties' cla

21   counsel, and interests are identical. Further, the *Fayerweather* class had a strong motive an

22   opportunity to present evidence regarding Comcast's policies, patterns, or practices at the

23   decertification hearing. *See* Opposition at page 12, like 25 ("Comcast has . . . produced to

24   Plaintiffs' counsel all evidence for all class members, including the named Plaintiffs"); page

25   line 16-17 ("All evidence that existed has been produced . . . ."). On top of these factors, the

26   in *Fayerweather* was certified prior to the issuance of the Decertification Order, unlike the

27   putative class in *Alvarez*. Thus, Fayerweather was representing class members, including

28   Plaintiffs, at the time Comcast's policies, patterns, and practices were litigated. Further, co

1   to Plaintiffs' argument, the *Fayerweather* class received notice and had the opportunity to o

2   of the class prior to the Decertification Order.  See Defendant's Supplemental Request for J

3   Notice, <u>Exhibits 1 and 2</u> (reflecting that class notices would be sent out no later than 10 day

4   the order was signed on April 18, 2011).  Accordingly, Plaintiffs in the present case were

5   adequately represented in *Fayerweather* and are appropriately bound by the factual finding

6   Decertification Order.

7         Plaintiffs attempt to invoke the policy against "one-way intervention" set forth in *F*

8   *Bank* and *Home Savings*.  These cases set forth the proper sequence of class action proceedi

9   (i.e., that class certification should be adjudicated before the underlying merits of the case)

10  have no bearing on whether members of a certified class are bound by factual determination

11  made regarding class claims.  Further, the policy considerations underlying the "one-way

12  intervention" doctrine weigh in favor of applying collateral estoppel in this case.  Where th

13  *Fayerweather* court has evaluated all available evidence and found no support for claims id

14  to the policy, pattern, and practice claims Plaintiffs assert in the present action, Plaintiffs sh

15  not be afforded a second opportunity to litigate these issues.

16  **C.    Plaintiffs Concede That Their Complaint Misstates the Law Regarding**
17       **Breaks.**

18        Plaintiffs do not dispute that their Third Cause of Action alleging denial of meal pe

19  relies on an incorrect statement of law.  Therefore, Comcast respectfully requests that this C

20  strike paragraph 44 of Plaintiffs' Complaint.

21  **III.   <u>CONCLUSION</u>**

22        For the foregoing reasons, Comcast requests that the Court strike (1) the improper

23  equitable tolling period, (2) the allegations of unlawful policies, patterns, or practices, whic

24  been adjudicated by a prior action to which Plaintiffs are bound, and (3) the undisputedly

25  incorrect statements of law regarding meal breaks.

26

27

28

7

1  Dated: January 15, 2015

2

3

4

JONES DAY

By: _____
     Fred W. Alvarez
     Allison B. Moser

5

6

Attorneys for Defendant
COMCAST CABLE COMMUNICATION
MANAGEMENT, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

**EXHIBIT 5**

1  FRED W. ALVAREZ, State Bar No. 68115
   ALLISON B. MOSER, State Bar No. 223065
2  JONES DAY
   Silicon Valley Office
3  1755 Embarcadero Rd.
   Palo Alto, CA 94303
4  Telephone: (650) 739-3939
   Facsimile: (650) 739-3900
5  Email: falvarez@jonesday.com
   Email: amoser@jonesday.com
6
   TROY A. VALDEZ, State Bar No. 191478
7  ERIN M. DOYLE, State Bar No. 233113
   VALDEZ TODD & DOYLE LLP
8  1901 Harrison Street, Suite 1450
   Oakland, California 94612
9  Telephone: (415) 202-5950
   Facsimile: (415) 202-5951
10 Email: tvaldez@vtdlaw.com
   Email: edoyle@vtdlaw.com
11
   Attorneys for Defendants
12 COMCAST CABLE COMMUNICATIONS
   MANAGEMENT, LLC, erroneously sued as
13 COMCAST CORPORATION and
   COMCAST OF CONTRA COSTA, INC.
14

15              SUPERIOR COURT OF THE STATE OF CALIFORNIA

16                      FOR THE COUNTY OF SUTTER

17
18 STEPHEN MCBRIDE, JEREMY              CASE NO. CVCS 14-1995
   WALKER, MARTIN PULIDO and
19 BRANDON GLAUNERT,
                                        DEFENDANT'S NOTICE OF MOTION
20              Plaintiffs,             AND MOTION TO STRIKE PORTIONS
                                        OF THE COMPLAINT
21      v.                             Date:       February 2, 2015
                                        Time:       9:00 AM
22 COMCAST CORPORATION, a
   Pennsylvania Corporation; COMCAST OF  Complaint filed October 27, 2014
23 CONTRA COSTA, INC., a Washington
   Corporation; and DOES 1 through 50,
24 Inclusive,

25              Defendants.

26
27
28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF THE
COMPLAINT - CASE NO. CVCS 14-1995

1    TO EACH PARTY AND TO THE COUNSEL OF RECORD FOR EACH PARTY:

2    PLEASE TAKE NOTICE that on February 2, 2015 at 9:00 a.m., or as soon thereafter

3    may be heard, before the above-entitled Court, located at 463 Second Street #211, Yuba City

4    95991, Defendant Comcast Cable Communications Management, LLC, erroneously sued as

5    Comcast Corporation and Comcast of Contra Costa, Inc., will and hereby does move this Co

6    for an order striking the following portions of the Complaint filed November 12, 2014 by

7    Plaintiffs Stephen McBride, Jeremy Walker, Martin Pulido and Brandon Glaunert (collective

8    "Plaintiffs") pursuant to California Code of Civil Procedure § 435 *et seq.*:

9        1.    This complaint challenges Defendants' systemic illegal employment practices

10           resulting in violations of the California Labor Code, Business and Professions

11           Code and applicable IWC wage orders against employees of Defendants.  Page

12           ¶ 2.

13       2.    Plaintiffs are informed and believe and based thereon allege Defendants, joint

14           severally have acted intentionally and with deliberate indifference and conscio

15           disregard to the rights of all employees in receiving all wages due and lawful n

16           and rest periods.  Page 2, ¶ 3.

17       3.    Plaintiffs are informed and believe and based thereon allege Defendants have

18           engaged in, among other things, a system of willful violations of the California

19           Labor Code, Business and Professions Code and applicable IWC wage orders b

20           creating and maintaining policies, practices and customs that knowingly deny

21           employees (a) all wages due, (b) the opportunity to take meal and rest periods,

22           (c) accurate, itemized wage statements.  Page 2, ¶ 4.

23       4.    The policies, practices and customs of defendants described above and below ha

24           resulted in unjust enrichment of Defendants and an unfair business advantage o

25           businesses that routinely adhere to the strictures of the California Labor Code,

26           Business and Professions Code and applicable IWC wage orders.  Page 2, ¶ 5.

27       5.    . . . to the present.  Page 3, ¶ 8 at line 7.

28       6.    Plaintiffs are and were victims of the policies, practices and customs of Defenda

2

1    complained of in this action in ways that have deprived them of the rights

2    guaranteed them by California Labor Code § 204, 226.7, 1194, 1198, and 512

3    California Business and Professions Code § 17200, et seq., (Unfair Practices A

4    and the applicable wage order(s) issued by the Industrial Welfare Commission

5    including IWC Wage Order No. 4 §§ 11 and 12. Page 3, ¶ 8 at lines 7-12.

6    7.   Defendant had a uniform policy and practice of contacting Plaintiffs through t

7    Nextel devices at all times of the day including interrupting Plaintiffs during v

8    would otherwise be meal periods and rest breaks. Page 5, ¶ 21 at lines 21-23.

9    8.   . . . and the uniform policy of being "on duty" at all times . . . Page 6, ¶ 24 at

10    17-18.

11    9.   . . . and the uniform policy of being "on duty" at all times . . . Page 6, ¶ 25 at

12    20-21.

13    10.   As a pattern and practice, Defendants relied on punch data/time sheets in many

14    instances filed [sic] out before the work day commenced to compensate Plainti

15    for hours worked rather than relying on the actual records that reflect hours

16    worked and meal periods, i.e. the CSG records that were kept in real time. As a

17    result, Plaintiffs were not compensated for all hours they were subject to the

18    control of Defendants, including all time they were suffered or permitted to wo

19    Page 7, ¶ 30.

20    11.   Plaintiffs are informed and believe and based theron allege Defendants uniform

21    administered a corporate policy concerning staffing levels, duties, and

22    responsibilities which required Plaintiffs to work without appropriate pay. This

23    included a uniform corporate pattern and practice of allocating and authorizing

24    inadequate staffing levels. The inadequate staffing levels were enforced and

25    ensured through the uniform and mandated corporate policy of a minimal labor

26    budget. This corporate conduct is accomplished with the advance knowledge an

27    designed intent to save labor costs by required [sic] Plaintiffs to work without

28    proper compensation because they were unable to take the meal periods which

1    were automatically deducted from their time records. Page 7, ¶ 31.

2    12.    As a pattern and practice, in violation of the aforementioned labor laws and v

3    orders, Plaintiffs are informed and believe and based thereon allege Defendar

4    did not properly maintain records pertaining to when Plaintiffs began and end

5    each work period, meal period, the total daily hours worked, and the total hou

6    worked per pay period and applicable rates of pay in violation of California L

7    Code § 1174. Page 7-8, ¶ 32.

8    13.    Plaintiffs are informed and believe and based thereon allege Defendants willf

9    failed to pay employees proper compensation for all hours worked. Plaintiffs

10    informed and believe and based thereon allege Defendants' willful failure to

11    provide wages due and owing them upon separation from employment results

12    continued payment of wages up to thirty (30) days from the time the wages we

13    due. Therefore, Plaintiffs who have separated from employment are entitled to

14    compensation pursuant to Labor Code § 203. Page 8, ¶ 34.

15    14.    Such a pattern, practice and uniform administration of corporate policy regardi

16    illegal employee compensation as described herein is unlawful and creates an

17    entitlement to recovery by Plaintiff [sic] in a civil action, for the unpaid balanc

18    the full amount of straight time compensation and overtime premiums owing,

19    including interest thereon, penalties, reasonable attorneys' fees, and costs of su

20    according to Labor Code § 1194, et seq. Page 8, ¶ 35.

21    15.    By failing to properly compensate hourly-paid employees for off-the-clock wor

22    Defendants breached their employment contracts with Plaintiffs. Page 9, ¶ 41.

23    16.    Defendants failed in their affirmative obligation to ensure that all of their

24    employees, including Plaintiffs, were actually relieved of all duties, not perform

25    any work, and free to leave the premises during meal periods. Plaintiffs were

26    suffered and permitted to work through legally required meal breaks. As such,

27    Defendant is responsible for paying premium compensation for missed meal

28    periods pursuant to Labor Code § 226.7 and IWC Wage Order No. 4 § 11(B).

4

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF THE COMPLAINT – CVCS 14-1995**

1  Defendants shall pay the [sic] each affected employee one (1) hour of pay at

2  employee's regular rate of compensation for each workday that the meal brea

3  not provided. Page 9, ¶ 44.

4  17.  As a pattern and practice, Defendants regularly required employees to work

5  through their meal periods without proper compensation. Defendants did staf

6  schedule employees in such a manner and at such posts that would make it

7  impossible for these employees to take their meal period as required under

8  California law. This policy of requiring employees to work through their lega

9  mandated meal periods is a violation of California law. Indeed, Defendants' o

10  records, i.e. the CSG data, confirms whether an employee used the Nextel devi

11  to clock out for a meal period lasting not less than thirty minutes. For those

12  instances where the CSG data shows a meal period lasting less than 30 minutes

13  Defendants did not compensate Plaintiff with an extra hour of pay. Page 10, ¶

14  18.  Plaintiffs are informed and believe and based thereon allege Defendants willful

15  failed to pay employees who were not provided the opportunity to take meal

16  breaks the premium compensation set out in Labor Code § 226.7 and IWC Wag

17  Order No 4 § 11(B). Plaintiffs are informed and believe and based thereon alle

18  Defendants' willful failure to provide Plaintiffs the wages due and owing them

19  upon separation from employment results in a continued payment of wages up t

20  thirty (30) days from the time the wages were due. Therefore, Plaintiffs who ha

21  separated from employment are entitled to compensation pursuant to Labor Cod

22  203. Page 10, ¶ 49.

23  19.  As a pattern and practice, in violation of the aforementioned labor laws and wag

24  orders, Plaintiffs are informed and believe and based thereon allege Defendants

25  did not properly maintain records pertaining to when Plaintiffs began and ended

26  each meal period in violation of California Labor Code § 1174 and § 4 of the

27  applicable IWC Wage Order(s). This, despite the fact that Defendant knew the

28  CSG data was an accurate record of meal periods taken and the length of each

5

meal period. Page 10-11, ¶ 50.

20.   Such a pattern, practice and uniform administration of corporate policy as described herein is unlawful and creates an entitlement to recovery by the Plain [sic] identified herein, in a civil action, for the unpaid balance of the unpaid premium compensation pursuant to Labor Code § 226.7 and IWC Wage Order 4 § 11(B), including interest thereon, penalties, reasonable attorney's [sic] fees and costs of suit according to the mandate of California Labor Code §§ 218.5 o 1194. Page 11, ¶ 51.

21.   Plaintiff regularly worked in excess of three and half (3 ½) hours per day Defendants' policies and practices prevented Plaintiff [sic] from enjoying their right to a ten (10) minute rest period in the middle of each four (4) hour work period. Page 12, ¶ 55.

22.   As a pattern and practice, Defendants regularly required employees to work through rest periods. Defendants and Defendants' supervisors assigned work, scheduled shifts, and staffed worksites in a manner that did not allow Plaintiff [ to regularly take rest periods. Page 12, ¶ 56.

23.   Plaintiffs are informed and believes [sic] and based thereon alleges [sic] Defendants willfully failed to pay employees who were not provided the opportunity to take rest breaks the premium compensation set out in Labor Code 226.7 and IWC Wage Order No 4 § 12(B). Plaintiffs are informed and believes and based thereon alleges [sic] Defendants' willful failure to provide Plaintiffs th wages due and owing them upon separation from employment results in a continued payment of wages up to thirty (30) days from the time the wages were due. Therefore, Plaintiffs who have separated from employment are entitled to compensation pursuant to Labor Code § 203. Page 12, ¶ 58.

24.   Such a pattern, practice and uniform administration of corporate policy as described herein is unlawful and creates an entitlement to recovery by the Plaintiffs identified herein, in a civil action, for the unpaid balance of the unpaid

6

premium compensation pursuant to Labor Code § 226.7 and IWC Wage Order

4 § 12(B), including interest thereon, penalties, reasonable attorney's [sic] fees

and costs of suit according to the mandate of California Labor Code §§ 218.5

1194. Page 12, ¶ 59.

25. Defendants, and each of them, have engaged and continue to engage in unfair

business practices in California by practicing, employing and utilizing the

employment practices outlined above, inclusive, to wit, (a) not compensate

employees for all hours worked, and (b) to require employees to work through

meal and rest periods. Page 13, ¶ 62.

26. As a pattern and practice, Defendant failed to furnish Plaintiffs, either

semimonthly or at the time of each payment of wages, either as a detachable pa

of the check or separately, an accurate, itemized statement in writing showing

gross wages earned, total hours worked, and the applicable hourly rates and

corresponding number of hours worked by Plaintiffs at each rate. Page 14, ¶ 71

This motion is based upon sections 435 through 437 of the California Code of Civil

Procedure and California Rule of Court 3.1322; this Notice; the Memorandum of Points and

Authorities, the Request for Judicial Notice, and the Proposed Order filed herewith; the pleadi

on file in this case; and such further evidence and argument as may be presented at or before th

hearing on this matter.

Dated: December 23, 2014                    JONES DAY

By: _____
Fred W. Alvarez
Allison B. Moser

Attorney for Defendants
COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC, erroneously sued as
COMCAST CORPORATION and
COMCAST OF CONTRA COSTA, INC.

7

DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF THE
COMPLAINT - CVCS 14-1995