**EXHIBIT D1  to NOTICE OF REMOVAL**

1  Matthew Righetti, SBN 121012
   John Glugoski, SBN 191551
2  RIGHETTI GLUGOSKI, P.C.
   456 Montgomery Street, Suite 1400
3  San Francisco, CA 94104
   Telephone: (415) 983-0900
4  Facsimile: (415) 397-9005

ENDORSED FILED

JAN 16 2015

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SUTTER
CLERK OF THE COURT
By_____BRENDA JOHNSON_____Deputy

5

6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                      FOR THE COUNTY OF SUTTER

9

10  STEPHEN McBRIDE, MARTIN PULIDO and      Case No.: CVCS 14-1995
11  BRANDON GLAUNERT

12                                          PLAINTIFFS' OPPOSITION TO
          Plaintiffs,                       DEFENDANT'S MOTION TO STRIKE
13                                          PORTIONS OF THE COMPLAINT

14      vs.

15                                          Date: February 2, 2015
16  COMCAST CORPORATION, a Pennsylvania     Time: 9:00 a.m.
    Corporation; COMCAST OF CONTRA          Dept. B
17  COSTA, INC., a Washington Corporation; and
    DOES 1 through 50, Inclusive,
18                                                          BY FAX
19          Defendants.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................................................

I.  INTRODUCTION........................................................................................

    A.  PROCEDURAL HISTORY ........................................................................

    B.  CLASS CERTIFICATION PROCEEDINGS IS A PROCEDURAL
        DEVICE, NOT A RULING ON THE MERITS..........................................

    C.  ONE WAY INTERVENTION ALSO COMPELS A FINDING THAT
        DECISIONS IN *FAYERWEATHER* ARE NOT BINDING ON THE
        NAMED PLAINTIFFS..................................................................................

    D.  THE UNITED STATES SUPREME COURT REJECTS DEFENDANTS
        ARGUMENT THAT THERE IS NO TOLLING..........................................

        1.  American Pipe Sets Forth The Two Criteria For The Court to
            Evaluate In Deciding Whether Tolling Applies................................

        2.  Tolling Is Appropriate As Defendant Has Been On Notice
            Of The Individuals And Their Claims From The Inception
            of The Fayerweather Lawsuit............................................................

            a.  Not Only Is Comcast On Notice, Comcast Has
                Preserved And Produced To Plaintiffs Counsel All
                Evidence For All Class Members Including The Named
                Plaintiffs..........................................................................

    E.  COMCAST'S RELIANCE ON THE HALL CASE IS
        DISTINGUISHABLE....................................................................................

II.  CONCLUSION........................................................................................

1

## TABLE OF AUTHORITIES

2
**Federal Cases**

3
*American Pipe & Construction Co. v. Utah*

4
(1974) 414 U.S. 538......................................................................4, 7, 8, 9, 10, 1

5
*Carnegie v. Household Int'l, Inc.*

6
(2004) 376 F.3d 656.......................................................................

7
*Catholic Soc. Services, Inc. v. I.N.S*
(2000) 232 F.3d 1139......................................................................13, 1

8

9
*Crown, Cork & Seal Co., Inc. v. Parker*
(1983) 462 U.S. 345......................................................................7, 8, 9, 10, 1

10
*Guaranty Nat. Bank v. Roper*

11
(1980) 445 U.S. 326, 331.............................................................

12
*In re Worldcom Sec. Litig.*

13
(2007) 496 F.3d at 256.................................................................9, 10

14
*Oshana v. Coca-Cola Bottling Co.*
(2005) 225 F.R.D. 575...................................................................5

15
**Supreme Court Cases**

16

17
*Smith v. Bayer Corp.*
(2011) 131 S.Ct. 2368...................................................................5

18
**State Cases**

19
*Becker v. McMillan Construction Co.*

20
(1991) 226 Cal.App.3d 1493..........................................................2, 8, 9

21
*Cortez v. Purolator Air Filtration Products Co.*

22
(2000) 23 Cal. 4th 163..................................................................10

23
*Duran v. U.S. Bank Nat. Assn.*
(2014) 59 Cal.4th 1.......................................................................4, 5

24

25
*Fireside Bank v. Superior Court*
(2007) 40 Cal.4th 1069.................................................................6, 7

26

27
*Hall v. Rite Aid Corporation*
(2014) 226 Cal.App.4th 278.........................................................2, 5, 14

28

*Home Sav. & Loan Ass'n v. Sup.Ct.*
(1974) 42 Cal.App.3d 1006.................................................................................6,

*Jolly v. Eli Lilly & Co.*
(1988) 44 Cal. 3d 1103................................................................2, 4, 8, 9, 1

*Sky Sports, Inc. Superior Court*
(2011) 201 Cal.App.4th 1363.......................................................................

## OTHER AUTHORITIES

*Class Actions and Statutes of Limitations*
(1981) 48 U. Chi. L.Rev. 106......................................................................1

# INTRODUCTION

The law is well settled that the filing of a class action complaint tolls the statute of limitations for the claims and the persons encompassed by the class proceedings through the denial of class certification. Although taken from federal jurisprudence, California state courts have adopted and followed this rule. *Jolly v. Eli Lilly & Co.* (1988) 44 Cal. 3d 1103; *Becker v. McMillan Construction Co.* (1991) 226 Cal.App.3d 1493. Defendant acknowledges tolling but contends that it should stop at the time of the decertification order and should not extend through the appeal (i.e., up to the point where the trial court's order becomes final).

The claims at issue in this case were first alleged by Gabriel Fayerweather in a class action filed in Contra Costa County Superior Court in 2008, entitled *Fayerweather v. Comcast.* Unlike any of the authorities cited by Comcast, the *Fayerweather* case was <u>certified</u> as a class action in April 2010. The claims certified as a class action in *Fayerweather* are the same claims asserted in this case. Plaintiffs in this case, along with hundreds of of other class members, were required to file separate actions when the *Fayerweather* court decertified the class action in December 2012 and that decision was subsequently upheld by the First District Court of Appeal.

Defendants' motion to strike makes little mention of the fact that *Fayerweather* was a certified class action and, more importantly, ignores basic fundamental principles of class action law grounded in strong public policies (e.g. one way intervention, the procedural nature of the class certification device, considerations for applying tolling) that serve to protect the rights of putative class members while, at the same time, protecting defendants where a defendant can show that tolling is demonstrably prejudicial. Rather than focus on California law, Comcast seeks to import the reasoning of the 5th Circuit in inapposite circumstances. In *Hall*, the court, on the eve of trial, decertified the case because trial counsel failed to disclose experts, fact witnesses and disclose any expert reports pursuant to the federal court deadline that would address the issue of classwide damages. The court found counsel's conduct inexcusable and refused to allow trial counsel's attempt to remedy the matter with an untimely disclosure. After waiting five (5) years after the court dismissed the class allegations for counsel's inexcusable conduct, two members of the putative class filed a new class action. The *Hall* plaintiffs sought tolling after

inexplicably waiting five (5) years to re-file their claims. In contrast, Plaintiffs here have promptly filed their claims and have only pursued *individual* claims within days of the decertification order becoming final. Nor does, or can, Comcast claim any prejudice *vis-à-vis* tolling since the claims asserted here are not only the same claims originally certified in *Fayerweather*, but are being made by former absent class members in *Fayerweather*.

## A. PROCEDURAL HISTORY

Plaintiffs Stephen Mcbride, Martin Pulido and Brandon Glaunert filed this action on October 27, 2014. The class action in which they were absent class members was filed by Plaintiff Gabriel Fayerweather on May 27, 2008. The class action was filed in Contra Costa County and assigned to Judge Goode. Judge Goode issued an order certifying the *Fayerweather* class action on April 12, 2010. Exhibit 1.[1] The order certified claims for causes of action based on failure to provide meal breaks, failure to authorize and permit rest breaks and failure to pay wages for all hours worked (off-the-clock).

Following the Supreme Court's decision in *Brinker*, Judge Goode decertified the *Fayerweather* case.

To be sure, Comcast cannot claim any prejudice from tolling since, prior to decertification and in preparation for a class certification trial, Comcast produced in the *Fayerweather* case all time records and data for the entire class period for the entire class in its possession. In any event, Comcast's motion appears to ask this Court to *presume* that Comcast would be prejudiced. The pretense that Comcast was ignorant, blindsided or unable to take any steps to preserve evidence or prepare defenses is a self-serving litigation tactic and cannot be

---

[1]    All the *Fayerweather* information referenced herein is supported by the RJN provided by Comcast and/or the RJN supplied with this opposition.

1   credited in the least. The application of *American Pipe*, adopted by the Supreme Court in *Jolly v.*

2   *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, is not barred because a defendant chooses, as a matter of

3   tactics, not to put on evidence in order to gild a claim of prejudice. Moreover, Comcast blithely

4   ignores the fact that much of the evidence on which Plaintiffs will substantiate their claims was

5   actually produced during trial preparation in the *Fayerweather* action.

6        On February 8 2013, Mr. Fayerweather filed an appeal challenging the legal validity of

7   the trial court's decertification order on the grounds that the decision is rooted in both legal error

8   and an abuse of discretion. The First District Court of Appeal issued its decision on August 28,

9   2014, affirming the trial court's order decertifying the class. On October 7, 2014, Mr.

10   Fayerweather filed a Petition for Review with the California Supreme Court. On November 25,

11   2014, the Supreme Court denied the petition.

12

13   **B. CLASS CERTIFICATION PROCEEDINGS IS A PROCEDURAL DEVICE, NOT A RULING ON THE MERITS.**

14

15        The first misconception with Comcast's motion is the assertion that the plaintiffs here

16   could possibly be bound by any rulings in the *Fayerweather* case. Comcast's request to strike

17   certain allegations is based on the notion that certain issues were decided in the procedural

18   certification order and that all absent class members must be bound. Comcast does not bother

19   with explaining how absent class members – not parties to the *Fayerweather* case – could

20   possibly be bound without violating due process principles. The only theories to bind these

21   plaintiffs would be collateral estoppel or res judicata. Neither of those theories are even

22

23   discussed by Comcast because Comcast cannot meet the strict elements of either rule.

24        Moreover, it is well known that class certification is not a decision on the merits.

25   Comcast's argument to the contrary is a misstatement of class certification law. Class

26   certification is a procedural device. (See *Deposit Guaranty Nat. Bank v. Roper* (1980) 445 U.S.

27

28   326, 331 [class certification is a "procedural device"]; *Duran v. U.S. Bank Nat. Assn.* (2014) 59

Cal.4th 1, 34–35; *Sky Sports, Inc. Superior Court* (2011) 201 Cal.App.4th 1363, 1369 ["[a] class action is a procedural device"].)   There can be little question but that class certification decisions are procedural in nature.   In *Duran* the California Supreme Court recently juxtaposed the difference between class certification as compared to underlined substantive rights.

> We have long observed that the class action procedural device may not be used to abridge a party's substantive rights. "Class actions are provided only as a means to enforce substantive law. Altering the substantive law to accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going." (*City of San Jose v. Superior Court, supra,* 12 Cal.3d at p. 462.)

*Duran v. U.S. Bank Nat. Assn.*, 59 Cal.4th 1, 34 (Cal.,2014)

In *Hall v. Rite Aid Corporation*, 226 Cal.App.4th 278, 286, (Cal.App. 4 Dist.2014), the Court of Appeal explained.

> The certification question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 439–440. "A trial court ruling on a certification motion determines 'whether ... the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.'" (*Sav–On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326).

*Hall v. Rite Aid Corporation*, 226 Cal.App.4th 278, 286, (Cal.App. 4 Dist.2014).

Comcast's false assumption that the doctrine of collateral estoppel precludes plaintiffs from making any allegation, on any theory, following rulings in *Fayerweather* due to the denial of certification in *Fayerweather*, is incorrect.  See, *Smith v. Bayer Corp.* 131 S.Ct. 2368 (2011); *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 579 (N.D.Ill.,2005) ["While *Bridgestone/Firestone* holds that in some circumstances denial of class certification may be given estoppel effect, courts are cautioned not to read the case as holding any ruling denying class certification is binding in future litigation. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 662–63 (7th Cir.2004). This court has previously held that the principles of collateral estoppel do not apply here because different facts and a different plaintiff are before the court."].  If the

plaintiff here sought to file this case as a class action then there is no rule of law that would prevent them from doing so. It is a well-settled principle of class action law that class certification is not a merits-based analysis. Yet, Comcast asks this court to commit legal error by treating it as such. There can be no adjudication nor has there been any adjudication on the merits at the class certification stage and there can be neither res judicata nor collateral estoppel applied to any of the plaintiffs here who were not parties to the *Fayerweather* action.

## C. ONE WAY INTERVENTION ALSO COMPELS A FINDING THAT DECISIONS IN *FAYERWEATHER* ARE NOT BINDING ON THE NAMED PLAINTIFFS.

California has also long recognized the doctrine set forth in the *Home Savings* case of "One-Way Intervention." *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069. The Courts have repeatedly opined on the dangers facing Defendants who race to have merits determinations heard before affording class members notice and a right to opt-out. The consequence for defendants is that any decision is categorically only binding as to the plaintiff. In contrast, an unfavorable decision against defendant would be binding on the losing defendant as to all putative class members even before they were given a right to opt-out. Because collateral estoppel may be invoked only against a party to the prior lawsuit in which the issue was determined, and because in this example the defendant would be a party to every lawsuit while each of the various plaintiffs would be a party in only one lawsuit, the defendant would in later lawsuits be bound by any adverse determination of the common issues, while none of the plaintiffs would be similarly bound by prior determinations in the defendant's favor. Thus, under this principle, "'[o]ne plaintiff could sue and lose; another could sue and lose; and another and another, until one finally prevailed; then everyone else would ride on that single success.'" (*Fireside Bank v. Superior Court, supra,* 40 Cal.4th at p. 1078.

There is no inkling from anything in *Fayerweather* that any merits decisions were made. Assuming, *arguendo*, that *Fayerweather* adjudicated merits issues, any such resolution would

not bind absent class members who were not provided notice or an opportunity to opt-out. *Fireside Bank v. Sup.Ct. (Gonzalez)* (2007) 40 C4th 1069, 1087; *Home Sav. & Loan Ass'n v. Sup.Ct. (Deutsch I)* (1974) 42 Cal.App.3d 1006, 1010–1011].

In *Fayerweather*, although class certification was granted, the putative class members were never afforded an opportunity to "opt out," following class certification. Providing the absent class members (i.e., the plaintiffs here) with a right to "opt out" is mandatory before any court can apply the principles of collateral estoppel or res judicata against class members. Thus, Comcast's motion fails.

### D.  THE UNITED STATES SUPREME COURT REJECTS DEFENDANT'S ARGUMENT THAT THERE IS NO TOLLING.

In *American Pipe & Constr. Co. v. Utah* (1974) 414 U.S. 538, the United States Supreme Court held statutory limitation periods are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. . . . The policies of ensuring essential fairness to defendants and of barring a plaintiff who "has slept on his rights," are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.* at 554-55 (internal citations omitted). Almost ten years after *American Pipe,* the Court handed down its decision in *Crown, Cork & Seal Co., Inc. v. Parker* (1983) 462 U.S. 345 holding that the extension of *American Pipe* to individuals who institute separate actions following denial of certification does not frustrate the policies behind a statute of limitations: "Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification." *Id.* at 353.

> To hold to the contrary would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until

after the running of the limitations period would be to file earlier individual motions to join or intervene as parties — precisely the multiplicity of activity which Rule 23 was designed to avoid in those cases where a class action is found "superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3).

*American Pipe & Construction Co. v. Utah* 414 U.S. 538, 550-51.

In *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), the Court extended *American Pipe* to allow tolling not only where plaintiffs sought to intervene in a continuing action, but also where they sought to file an entirely new action. According to the Court, "[t]he filing of a class action tolls the statute of limitations as to all asserted members of the class ... not just as to interveners." *Id.* at 350, 103 S.Ct. 2392 (internal quotations omitted). Again, the Court relied upon the dual purposes of class actions and statutes of limitations. In order both to avoid "needless multiplicity of actions" and "to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights," tolling was appropriate. *Id.* at 351–52, "[T]olling the statute of limitations ... creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification." *Id.* at 353.

Tolling under *American Pipe* is recognized in this State:

"The policies of ensuring essential fairness to defendants and of barring a plaintiff who has 'slept on his rights,' . . . are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. [Citation.]"

*Becker v. McMillin Constr. Co.* (1991) 226 Cal.App.3d 1493, 1498  quoting *Jolly*, 44 Cal.3d at 1121.

Most of the Supreme Court's discussion in *Jolly, supra,* 44 Cal.3d 1103, of the rationale in *American Pipe, supra,* 414 U.S. 538, focused on this requirement in the tolling doctrine, adequate notice to the defendant. The court pointed out a potential danger of abuse of the "generous" [*Crown, Cork & Seal Co., supra,* 462 U.S. 345, 354 [76 L.Ed.2d at pp. 636-637] (Powell, J., conc.)] rule of *American Pipe*: Class actions might be filed merely to evade limitations periods. ( *Jolly, supra,* 44 Cal.3d at p. 1124.) To avoid such abuse, tolling is to be allowed only where the class action and the later individual action or intervention are based on the same claims and subject matter and similar evidence. (*Ibid.*)

*Becker,* 226 Cal.App.3d at 1499.

Plaintiffs allege the *identical* claims made in the *Fayerweather* complaint for and are brought by persons in the identical job positions *i.e.,* Techs. In contrast is *Jolly,* for there the Court declined application of tolling because it concluded that the inconsistency of the claims meant there was no way that a defendant could have properly been on notice: "The discrepancies between the nature of the relief sought in *Sindell* and *Jolly* (declaratory relief and damages, respectively) and the factual and legal issues in the two actions (causation of injury and damages) were too great for any notice to be presumed. Considerations of protecting the class action device gave way to the stronger consideration under the circumstances: protecting the defendant from unfair claims." *Becker,* 226 Cal.App.3d at 1499. The *Jolly* Court also noted the potential for abuse where a class action is filed *purposely* to evade the statute of limitations (*Jolly,* 44 Cal.3d at 1124) and so held, "To avoid such abuse, tolling is to be allowed only where the class action and the later individual action or intervention are based on the same claims and subject matter and similar evidence." *Id.* Again, the claims in each of these related cases are identical and all brought by persons in the same job titles, an identity of claims and persons which Comcast admits.

As the Ninth Circuit has explained, statutes of limitation are intended to protect defendants by giving them notice of a claim before the evidence becomes stale. *In re Hanford,* 521 F.3d at 1053. Comcast has been on notice of the nature of the claims and the evidence and has preserved and produced much of the evidence for these plaintiffs in the *Fayerweather* action. In *In re Worldcom,* the Sixth Circuit also rejected the same argument made by Defendants here:

The district court may be correct that its conception of the *American Pipe* rule would reduce the number of individual suits filed by class members. But this is beside the point. While reduction in the number of suits may be an incidental benefit of the *American Pipe* doctrine, it was not the purpose of *American Pipe* either to reduce the number of suits filed, or to force individual plaintiffs to make an early decision whether to proceed by individual suit or rely on a class representative. Nor was the purpose of *American Pipe* to protect the desire of a defendant "not to defend against multiple actions in multiple forums." *Crown,* 462 U.S. at 353. The *American Pipe* tolling doctrine was created to protect class members from being forced to file individual suits in order to preserve their claims. It was not meant to induce class members to forgo their right to sue individually.

*In re Worldcom,* 496 F.3d at 256.

This latter point is precisely what Comcast wishes to accomplish, that is to both induce individuals to forgo their right to sue and then to cut off the rights of those that seek to enforce their rights by filing suit.

Having argued in *Fayerweather* that class treatment was not necessary because the employees could bring individual suits, Comcast should now be estopped from taking a contrary position by asking this Court to ignore that assertion *and* the settled law and instead bar the very individual claims which Comcast argued it would prefer.

"[I]t is axiomatic that one who seeks equity must be willing to do equity. (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal. App. 4th 445, 453 [61 Cal. Rptr. 2d 707].) . . . This maxim stems from the paramount principle that equity is, peculiarly, a forum of conscience. (*Couts v. Cornell* (1905) 147 Cal. 560, 563 [82 P. 194].)" (*In re Marriage of Plescia* (1997) 59 Cal. App. 4th 252, 257-258 [69 Cal. Rptr. 2d 120].)

*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal. 4th 163, 180.

## 1. **American Pipe Sets Forth The Two Criteria For The Court to Evaluate In Deciding Whether Tolling Applies.**

Underlying the tolling rule of *American Pipe, supra,* 414 U.S. 538 were two major policy considerations. The first was the protection of the class action device. In cases where class

certification is denied for what the high court characterized as "subtle factors," unforeseeable by class members, a rule that failed to protect putative class members from the statute of limitations after denial of certification would induce potential class members to "file protective motions to intervene or to join in the event that a class was later found unsuitable," depriving class actions "of the efficiency and economy of litigation which is a principal purpose of the procedure." (*American Pipe, supra,* 414 U.S. at p. 553; see also *Crown, Cork & Seal Co.* v. *Parker, supra,* 462 U.S. at pp. 350-351).

The second consideration involved the effectuation of the purposes of the statute of limitations. "The policies of ensuring essential fairness to defendants and of barring a plaintiff who has 'slept on his rights,' the high court stated, "are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." (414 U.S. at pp. 554-555]). In these circumstances, the court concluded, the purposes of the statute of limitations would not be violated by a decision to toll. (*Ibid.*; see, generally, Comment, *Class Actions and Statutes of Limitations* (1981) 48 U. Chi. L.Rev. 106, 108-109.)

Here, the two factors that the court must consider weigh in favor of tolling for the Named Plaintiffs. The *Fayerweather* case was filed to remedy the same rights that are now being adjudicated through these individual actions. Comcast concedes this fact in trying to strike allegations that mirror those contained in the *Fayerweather* complaint. The denial of tolling would undermine the primary purpose behind tolling (i.e., protecting putative class members from the statute of limitations to ensure the efficiency and economy of litigation which is a principal purpose of the class action procedure).

To recap, the individuals who have filed suit were class members of the certified *Fayerweather* class that remained certified for close to three (3) years. When the California Supreme Court rendered its decision in *Brinker*, Plaintiffs counsel were required to submit further briefing on certification. The trial court decertified the class following further briefing and Plaintiffs immediately appealed the decertification. This case was filed on the heels of the appellate decision affirming the finality of the decertification order. Requiring these putative class members of a previously certified class to file individual lawsuits when the issue of class status remained an open question – and before the decertification order became final -- would undermine the purpose behind the class action device. Comcast's motion fails to address the fact that for more than two (2) years, the class was certified. It is more than reasonable and in fact prudent for the plaintiffs, who were part of a certified class for more than two (2) years, to wait to see if the certification order would be reinstated. Had the appeal been successful, judicial economy would not have been served by having the plaintiffs lawsuit coexist with a separate class action covering their same rights pending in another forum. Avoiding multiplicity of lawsuits while preventing prejudice to defendants are the key public policies behind tolling.

### 2. Tolling Is Appropriate As Defendant Has Been On Notice Of The Individuals And Their Claims From The Inception of The *Fayerweather* Lawsuit.

Since Comcast must concede the existence of the doctrine of tolling, the crux of Comcast's argument is that the court should apply only *partial* tolling. In other words, Comcast concedes it was on notice of the claims and individuals involved. Yet for some unsupported reason, Comcast asks the court to ignore this factor and excuse Comcast from substantial liability for claims. This, without any suggestion that Comcast could otherwise be prejudiced. Comcast cannot assert prejudice since it has been on notice of these claims for years. Comcast was both on notice of the claims and knew the individuals involved.

### a. Not Only Is Comcast On Notice, Comcast Has Preserved And Produced To Plaintiffs Counsel All Evidence For All Class Members Including The Named Plaintiffs

Class actions promote "efficiency and economy of litigation" by consolidating numerous individual suits into a single suit. *Id.* Statutes of limitations "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories faded and witnesses disappeared." *Id.* at 554. The Court accommodated both purposes by formulating a "rule ... that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.*

*Catholic Soc. Services, Inc. v. I.N.S.*, 232 F.3d 1139, 1146-47 (9th Cir. 2000)

Where the class action complaint provided defendant with *notice* of the nature and number of all potential claims, the statute will be tolled. [*Jolly v. Eli Lilly & Co.* (1988) 44 C3d 1103, 1122]. Comcast has been on notice from "day one" of the claims and the putative class members (which include the claims encompassed in this litigation) on whose behalf the case has been brought.

As part of the extended class certification and decertification proceeding and preparations for trial (close to four years), massive amounts of data for all class members, including the plaintiffs, in the form of time sheets, time records, electronic data for each class member for each work day, payroll data, work days, lengths of shifts, jobs performed, etc. was produced by Comcast to Plaintiffs counsel in the *Fayerweather* action. All evidence that existed has been produced and thus the concern of surprise is non-existent.

Further, noticeably absent from Comcast's motion is any suggestion that it has been prejudiced in anyway by the filing of this action, that Plaintiff is alleging new and previously unknown claims or that Comcast was ignorant of the individuals whose claims were at issue in *Fayerweather*. Does Comcast seriously expect this court to accept that it was not on notice about the claims of these individuals? And, how is a court to make that adjudication based on the

pleadings alone?  The claims were laid out on numerous occasions and Comcast has known both the nature of the claims and who the individuals are. It was Comcast who actually identified them in the lawsuit. Comcast cannot suggest it has not been on notice of the claims in this lawsuit, or the individuals involved.

In summary, statutes of repose apply to those who have slept on their rights to the prejudice of the other side.  Plaintiffs neither slept on their rights nor was Comcast ignorant of the claims alleged or the individuals on whose behalf the *Fayerweather* class action was brought.

### E.  COMCAST'S RELIANCE ON THE HALL CASE IS DISTINGUISHABLE.

Comcast relies on a federal case from the 5th circuit to support its argument. In *Hall*, putative class members waited a whopping five (5) years to bring a subsequent class action lawsuit after the trial court struck class allegations due to trial counsel's violation of expert and fact witness disclosures. In light of the two policy considerations involved and a decertification based on trial counsel's inexcusable conduct, it is understandable why the court found no tolling. Unlike the Plaintiffs here, the *Hall* Plaintiffs were sleeping on their rights by not taking action in light of trial counsel's disclosure abuses and the court was understandably not willing to revive those claims – and certainly not on a class basis.

### CONCLUSION

Class actions promote efficiency and economy of litigation by consolidating numerous individual suits into a single suit.  Statutes of limitations promote justice by preventing surprises and demonstrable prejudice. "In order to both avoid needless multiplicity of actions and to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights, tolling is appropriate." See *Catholic Soc. Services, Inc. v. I.N.S* 232 F.3d 1139, 1147-48 (9th Cir.

2000). The benefits and purpose for tolling are present here.  In fact, Comcast does not even suggest, nor could it seriously contend, that it will be prejudiced if tolling is allowed because it has known full well about the existence and scope of these claims since inception of the *Fayerweather* case.  For the foregoing reasons, Comcast's motion to strike should be denied.

Respectfully submitted

Dated: January 15, 2015                    **RIGHETTI GLUGOSKI , P.C.**

John Glugoski, Esq.
Attorneys for Plaintiff

**EXHIBIT 1**

ELECTRONICALLY
FILED
04/12/2010

K. TORRE, CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA - MART
BY: L. BANDONA, DEPUTY CLERK

1    **Superior Court of the State of California**

2    **In and for the County of Contra Costa**

3

4

5    GABRIEL FAYERWEATHER, as an individual and on

6    behalf of others similarly situated, Plaintiff                   No. C-08-01470

7    v.                                                               ORDER

8    COMCAST CORPORATION, et al, Defendants

9

10    On March 10, 2010 plaintiff moved for class certification. Defendants opposed

11    the motion. The matter came on for hearing on April 7, 2010. Plaintiff was represented

12    by his attorneys, Jennifer Kramer and Arlo Garcia Uriarte; defendants were represented

13    by their attorneys, Fred W. Alvarez and Troy A. Valdez.

14    The Court has considered the arguments presented, the evidence properly before it

15    and the authorities cited by the parties.

16    <u>Evidentiary Rulings</u>

17    As an initial matter, the Court addresses the evidentiary issues raised by

18    defendants.

19    *The declaration of Arlo Uriarte:* Defendants objected to the declaration of Arlo

20    Uriarte. Their objections fall into two categories.

21    (1) The first category consists of those objections that are stated in the form

22    "Paragraph 11(_), Exhibit _", (*e.g.* "Paragraph 11(a), Exhibit B" or "Paragraph 11(b),

23    Exhibit C") on pages 1-25 of the "[Proposed] Order on Defendants' Objections to

1    Evidence Submitted by Plaintiff in Support of His Motion For Class Certification"

2    (referred to below as "the proposed order"). They are each overruled as being

3    insufficiently specific. The Court is unable to discern specifically what objection is being

4    made to what part of each of those (lengthy) paragraphs. Indeed, each is followed by a

5    more specific objection each of which is addressed next.

6        (2) The second category of objections are those that cite a specific conclusion by

7    Mr. Uriarte on pages 1-25 of the proposed order, such as on page 2 of the proposed order.

8    The objection as to each of the conclusionary statements quoted in the left hand column

9    is sustained. The Court does not receive it as evidence. Instead, the Court considers it

10    merely argument based on the business records as to which the objection is overruled.

11        *The declaration of Jennifer Kramer:*  Defendants' objections to the declaration of

12    Jennifer Kramer are overruled. The declaration avers that the attached documents are

13    business records produced by defendants. The Court does not receive them now for the

14    truth of the matter asserted; but only to assess the kind and quality of the records that

15    have been exchanged in discovery so it can assess how best to manage this case given the

16    issues raised by this motion.

17        *The declaration of Gabriel Fayerweather:* The Court sustains defendnats'

18    objections as to paragraph 14:20-21 and paragraph 19:19. All other objections are

19    overruled.

20        *Defendants' Request for Judicial Notice*:  Defendants' request is granted.

21        The Motion for Class Certification

22        The proper legal criterion for deciding whether to certify a class under CCP § 382

23    is whether plaintiff has established by a preponderance of the evidence that a class action

2

1    is superior to alternative means for a fair and efficient adjudication of the litigation. *Sav-*

2    *on Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 332. The certification

3    question is essentially a procedural one that does not ask whether an action is legally or

4    factually meritorious. *Id.* at p. 326; *Linder v. Thrifty Oil Co.* (2000) 23 Cal. 4th 429. (The

5    Court notes that a considerable amount of briefing seems directed towards the merits of

6    the claims.  As explained in *Linder*, this is not the time to determine "whether an action is

7    legally or factually meritorious." *Id.* At 439-440.)

8         The party seeking class certification under CCP § 382 has the burden of

9    establishing (1) the existence of an ascertainable class, (2) a well-defined community of

10   interest among the class members, and (3) that substantial benefit to litigants and the

11   court would result from class certification. *City of San Jose v. Superior Court* (1974) 12

12   Cal.3d 447, 458.

13        A. Ascertainable class

14         Whether a class is "ascertainable" within the meaning of CCP § 382 is determined

15   by examining (a) the class definition, (b) the size of the class, and (c) the means available

16   for identifying the class members. *Reyes v. San Diego County Board of Supervisors*

17   (1987) 196 Cal.App.3d 1263, 1271.

18         *The class definition:*  In this case, plaintiff proposes to define the class as "all

19   individuals who have been employed or are currently employed by defendants as

20   Communication Technicians Levels I, II, III and IV, Installer, Advanced Installer,

21   Service Technician, System Technician, Field Service Representatives Levels I, II, III,

22   IV, V, and VI, or in other similar positions who were employed by defendants from May

23   27, 2004 up to the time that class certification is granted."

1    With one exception, this class definition is precise, objective and ascertainable.

2    The exception is the phrase "or in other similar positions". At oral argument plaintiff

3    raised a concern about whether certain other job titles used in the declarations proffered

4    by defendants (such as "floater" and "lead tech" and "field technician") were included in

5    the precise job classifications identified in the proposed definition of the class.

6    Defendants said they were and plaintiff accepted that representation. Thus, the phrase

7    "or in other similar positions" will not be used.

8    The class is defined as "all individuals who have been employed or are currently

9    employed by defendants as Communication Technicians Levels I, II, III and IV, Installer,

10   Advanced Installer, Service Technician, System Technician, Field Service

11   Representatives Levels I, II, III, IV, V, and VI, who were employed by defendants from

12   May 27, 2004 to April 7, 2010."

13   *The size of the class:* The numerosity requirement is satisfied where the class

14   members are so numerous that it is impracticable to bring them all before the court. (CCP

15   § 382.) There is no predetermined minimum number of class members necessary as a

16   matter of law for the maintenance of a class action. See *Hebbard v. Colgrove* (1972) 28

17   Cal.App.3d 1017, 1030 (not inappropriate to certify class involving a minimum of 28

18   members). In this case, plaintiffs have established that there are at least 1,891 class

19   members, satisfying the numerosity requirement, as it would be impracticable to bring all

20   of these individuals before the court.

21   *Identification of class members:* Although the class must be ascertainable, its

22   members need not be identified to bind them by a class action judgment. See *Lazar v.*

23   *Hertz Corp.* (1983) 143 Cal.App.3d 128, 138 (all persons who rented cars from Hertz in

4

1    California during a 4-year period, held an ascertainable class).  In this case, plaintiffs

2    have established, and defendants do not dispute, that the class members are identifiable

3    from defendant's employment records.

4        B. Community of interest

5            Community of interest is comprised of three elements: (a) predominant common

6    questions of law or fact; (b) class representatives with claims or defenses typical of the

7    class; and (c) class representatives who can adequately represent the class. *Richmond v.*

8    *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470.

9            *Predominance of common questions:* means that each member must not be

10    required to litigate individually numerous and substantial questions to determine his or

11    her right to recover following the class judgment; and the issues which may be jointly

12    tried, when compared with those requiring separate adjudication, must be sufficiently

13    numerous and substantial to make the class action advantageous to the judicial process

14    and to the litigants. *Washington Mutual Bank, FA v. Superior Court* (2001) 24 Cal.4th

15    906, 913-914.

16            Here, the predominance question is the most critical one.  The parties have

17    sharply divergent views on that.  Defendants cite the federal cases that hold that common

18    questions do not predominate in this type of litigation and provide the report of an expert

19    that tends to support that position.  Plaintiff cites *Jaimez v. DAIOHS, USA* (2010) 181

20    Cal. App. 4th 1286 that holds to the contrary.

21            The Court believes this is a close case.  However, ultimately, it is required to

22    consider whether "the theory of recovery advanced by the plaintiff is likely to prove

23    amenable to class treatment." *Id.* At 1298 quoting *Ghazaryan v. Diva Limousine, Ltd.*

1 (2008) 169 Cal. App. 4th 1524, 1531. Here, it appears to be plaintiff's theory that

2 Comcast has adopted a policy of understaffing (or overscheduling) that makes it unlikely

3 that Com-Techs can have their required breaks each day. Given that theory of the case,

4 some of the common issues of fact and law include:

5   1. Whether Comcast's policies, practices and procedures provide Com-Techs

6     with lawful breaks.

7   2. Whether Comcast has a policy of not compensating Com-Techs under Labor

8     Code 226.7 for missed breaks.

9   3. Whether Comcast's policies, practices and procedures provide Com-Techs a

10    meal period for every 5 hours worked in compliance with Labor Code 512.

11   4. Whether Comcast has a policy of not compensating Com-Techs under Labor

12    Code 226.7 for missed breaks.

13   5. Whether Comcast's policies, practices and procedures result in keeping

14    accurate records as required by the Labor Code.

15   6. Whether Comcast has a policy of requiring Com-Techs to execute a statement

16    of hours worked during a pay period which Comcast knows to be false.

17   In phrasing the questions this way, the Court does not, of course, presume to

18 determine how the Supreme Court will rule in *Brinker Restaurant v. Superior Court*.

19 But regardless of how the Supreme Court rules, these questions (however phrased) raise

20 common issues about Comcast's policies, practices and procedures. See, *Bibo v. Federal*

21 *Express*, 2009 WL 1068880, 14 Wage & Hour Cas. 2d (BNA) 1360 (N.D.Cal. 2009).

22   Of course these common questions have to be weighed against the individual

23 questions. The individual questions of fact include:

1.    Whether and when each individual class member missed meal/rest breaks.

2.    Whether and when class members worked 'off-the clock'.

3.    Whether class members are owed unpaid wages for the time recorded as breaks when no break was provided and/or time worked off the clock at the start or end of shifts.

4.    Other individual class members' damages.

Defendants point to these issues and, to sharpen the point, argue that each Comcast region is different, each route may be different, each day may be different, and each supervisor may act differently.  Therefore, they argue, there can be *no* common questions.

Defendants submitted the declaration of John H. Johnson, IV, Ph.D.   He concludes:

"To determine whether any class member had adequate time to take meal or rest breaks, an individual review for each class member on each day would have to be conducted using the available time databases.

"The available data alone cannot be used to determine with a reasonable degree of certainty whether any individual in fact took a meal or rest break, and if so, for how long.  Ultimately, review of paper timesheets and individual recollection will be required as supplements to determine the fact of whether any individual actually took a meal or rest break.

"Mr. Fayerweather's experience at Comcast cannot be used to extrapolate the experiences of other class members for the purpose of calculating missed meal breaks, rest breaks, or damages." (Declaration of Troy A. Valdez In Support of

1    Defendants' Opposition to Plaintiff's Motion for Class Certification, Exhibit D,

2    paragraph 10.)

3    Dr. Johnson's report gives pause. But on analysis, it can be seen that it addresses

4    only part of the question. Dr. Johnson says he was "asked by counsel for Comcast to (1)

5    *review the available data sets* provided in discovery in this litigation, (2) to assess

6    whether a common methodology exists *using the available data* to determine whether

7    meal or rest breaks occurred or adequate time was given for mean or rest breaks, and (3)

8    to analyze, *based on available data,* the extent to which experiences of the named

9    plaintiff Mr. Gabriel Fayerweather with respect to his meal and rest breaks can be used to

10    extrapolate to the experiences of other putative class members." (*Id.* at paragraph 7.)

11    In other words, Dr. Johnson was asked to focuses on the *data* that has been

12    produced in discovery. Thus, he pursues what might be called a microanalysis of the

13    case. He posits one way in which plaintiff might seek to prove his case – by looking at

14    the data regarding each of the individual workers. From that view of the case, he reaches

15    the conclusions quoted above.

16    But that is not *plaintiff's* theory of the case. Plaintiff seeks to prove there are

17    systemic *policies and procedures* that result in violations of the law; they argue that the

18    *staffing levels* are fundamentally inadequate. They seek to prove their case by focusing

19    on staffing levels, time and motion studies conducted by defendants and other similar

20    macroanalyses.[1]

21    On that view of the case, the common issues do predominate; the individual issues

22    become a matter of individual damages. The Court acknowledges defendants' argument

---

[1] They also suggest that the data may usefully be sampled. That may or may not be possible given Dr. Johnson's declaration.

1   that plaintiff has not proved these claims. But, as noted above, a class certification

2   motion is not the time to test the validity of the claims; only to determine how best to

3   manage them.

4          Individualized proof of damages is not per se an obstacle to class treatment, so

5   long as the issues which may be jointly tried, when compared to those requiring separate

6   adjudication, justify the maintenance of the suit as a class action. *Sav-On Drug Stores v.*

7   *Superior Court* (2004) 34 Cal.4th 319, 334-335. If unanticipated or unmanageable

8   individual issues do arise, the trial court retains the option of decertification. *Id.* at p. 335.

9          *Typicality:* The "adequacy" and "typicality" test examines whether the class

10  representative's claims arise from the same nucleus of operative facts as those of class

11  members and whether the class representatives are free of irreconcilable conflicts. *La*

12  *Sala v. American Savings & Loan Assn.*, (1971) 5 Cal.3d 864, 871. The purported class

13  representative's claim must be typical but not necessarily identical to the claims of other

14  class members; it is sufficient that the representative is similarly situated so that he or she

15  will have the motive to litigate on behalf of all class members. *Classen v. Weller* (1983)

16  145 Cal.App.3d 27, 45. It is not necessary that the class representative have personally

17  incurred all of the damages suffered by each of the other class members. *Wershba v.*

18  *Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 228.

19         In this case, the named plaintiff's claims appear to be the same as the claims of the

20  absent members of the putative class. Here, the named plaintiff performed the same job

21  duties as the putative class members and alleges that he, like the other class members

22  worked through his meal and rest breaks and performed work 'off-the-clock.' As with

23  the other class members, plaintiff alleges that he was not compensated for all hours he

1   worked. Because plaintiff and the putative class members performed similar duties and

2   were subject to the same allegedly illegal employment policies, his claims are typical of

3   the class.

4          *Adequacy:* As for adequacy of the class representative, he or she must be capable,

5   through qualified counsel, of vigorously and tenaciously protecting the interests of the

6   class members. *Simons v. Horowitz* (1984) 151 Cal.App.3d 834, 846. If he or she seeks

7   only partial relief, the adequacy of representation requirement is not met, and a class

8   action therefore will not be allowed. *City of San Jose v. Superior Court* (1974) 12 Cal.3d

9   447, 464.

10          In this case, the named plaintiff has actively participated in the litigation thus far

11  including giving his deposition. He appears adequate to represent the interests of the

12  class members. Indeed, there seems to be little dispute about that.

13          The Court also has an obligation to scrutinize closely the qualifications of counsel

14  to assure that all interests, including those of as yet unnamed plaintiffs are adequately

15  represented, because in certifying a class action, the Court confers on absent persons the

16  status of litigants and creates an attorney-client relationship between those persons and a

17  lawyer or group of lawyers. *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997)

18  52 Cal.App.4th 1, 12. In this case, the qualifications of counsel are not disputed and the

19  adequacy of class counsel has been established. See Declarations of Jennifer Kramer and

20  Arlo Garcia Uriarte.

21          C. Substantial benefit

22          Certifying a class action requires demonstrated substantial benefits to litigants and

23  the court. *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 657. Also, plaintiff

10

1   must establish more than a reasonable probability that class action treatment is

2   appropriate. *Hamwi v. Citinational-Buckeye* (1977) 72 Cal.App.3d 462, 471-472.

3          Because a class should not be certified unless substantial benefits accrue both to

4   litigants and the courts, the question arises as to whether a class action would be superior

5   to individual lawsuits. *Basurco v. 21st Century Ins. Co.* (2003) 108 Cal.App.4th 110,

6   120.

7          In this case, class adjudication presents a substantial benefit to the class members.

8   Their individual claims are relatively small, making individual litigation more difficult

9   and less likely.  In general, a class action is proper where it provides small claimants with

10  a method of obtaining redress and when numerous parties suffer injury of insufficient

11  size to warrant individual action. *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435.

12         Defendants contend that this case presents too many individual issues to be the

13  superior method of adjudication. Defendants assert that a better method for adjudication

14  is for individuals to submit claims to the California Labor Commissioner. The Court

15  concludes that class adjudication presents a substantial benefit to the court, promoting the

16  efficient use of judicial resources, avoiding duplicative discovery and pretrial motions,

17  and multiple trials on predominantly common issues.

18         It appears that the common issues can be litigated in a manageable way and the

19  case need not be overwhelmed by individual issues.  The Court will be alert to managing

20  the case to promote that.

21         Accordingly, plaintiff's motion for class certification is granted.   A class is

22  certified as described above.

1    A case management conference will be held on June 17, 2010 at 9:00 a.m.  The

2    parties shall submit case management conference statements two weeks prior to that date.

3

4    Dated: April 12, 2010

5
Digitally signed by Barry Goode
Reason: I am the author of this
document
Location: Martinez, CA
Date: 2010.04.12 10:02:39
-07'00'

6    _____

7    Judge, Superior Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

12

1    **Matthew Righetti, SBN 121012**
   **John Glugoski, SBN 191551**

2    **RIGHETTI GLUGOSKI, P.C.**
   456 Montgomery Street, Suite 1400

3    San Francisco, CA 94104
   Telephone: (415) 983-0900

4    Facsimile: (415) 397-9005

5

6    Attorneys for Plaintiffs

7              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                 **FOR THE COUNTY OF STANISLAUS**

9

10   JOSEPH JOSHUA DAVIS, PENNY | **Case No.: 2011900**

11   SCHOONOVER, LEON GIBSON, DUSTIN
    WAYNE HAGENS, RAYMOND AGUNDEZ, | **PLAINTIFFS' REQUEST FOR**

12   RAFAEL BARAJAS, JR. | **JUDICIAL NOTICE IN OPPOSITION TO**
                                   | **DEFENDANT'S MOTION TO STRIKE**

13           Plaintiffs, | **PORTIONS OF THE COMPLAINT**

14        vs. | **Date: March 27, 2015**
                                     | **Time: 8:30 a.m.**

15   COMCAST CORPORATION, a Pennsylvania | **Dept.: 21**

16   Corporation; COMCAST OF CONTRA
    COSTA, INC., a Washington Corporation; and | *Hon. William A. Mayhew*

17   DOES 1 through 50, Inclusive,

18           Defendants. | **Complaint filed October 27, 2014**

19

20

21

22        Plaintiffs hereby submit the following Request for Judicial Notice in support of their

23   Opposition to Motion to Strike Portions of the Complaint pursuant to sections 452(d) and 453 of

24   the California Evidence Code and Rule 3.1306(c) of the California Rules of Court. Plaintiffs

25   respectfully request that the Court take judicial notice of the following documents in support of

26   its Opposition to Motion to Strike Portions of the Complaint:

27

28

**A. It is mandatory that the Court take judicial notice of Records of Any Court Of This State**

Evidence Code § 452(d) provides that the court shall take judicial notice of "records of (1) any court of this state or (20 any court of record of the United States or any state of the United States. Evidence Code § 452(h) provide the court shall take judicial notice of "facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Accordingly, Plaintiff requests this Court take judicial notice of the following:

1.      Attached as **Exhibit 1** to the Declaration of John Glugoski is a true and correct copy of the Order granting Plaintiff's Motion for Class Certification dated April 12, 2010 in *Fayerweather*.

2.      Attached as **Exhibit 2** to the Declaration of John Glugoski is the Order from the Honorable Joseph Scott of the San Mateo Superior Court, rejecting the tolling arguments and collateral estoppel arguments raised once again in this motion.

3.      Attached as **Exhibit 3** to the Declaration of John Glugoski is the Order from the Honorable Perry Parker of the Sutter County Superior Court, rejecting the tolling arguments and collateral estoppel arguments raised once again in this motion.

4.      Attached as **Exhibit 4** to the Declaration of John Glugoski is a true and correct copy of the identical Motion to Strike filed by Defendant in the San Mateo County Superior Court and the Opposition and Reply briefs that resulted in the Order from the Honorable Joseph Scott of the San Mateo Superior Court, rejecting the tolling arguments and collateral estoppel arguments raised once again in this motion.

5.      Attached as **Exhibit 5** to the Declaration of John Glugoski is a true and correct copy of the identical Motion to Strike filed by Defendant in the Sutter County Superior Court

and the Opposition and Reply briefs that resulted in the Order from the Honorable Perry Parker of the Sutter County Superior Court, rejecting the tolling arguments and collateral estoppel arguments raised once again in this motion.

Dated: March 10, 2015                    RIGHETTI GLUGOSKI, P.C.

John Glugoski
Attorneys for Plaintiffs

PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT

1  **Matthew Righetti, SBN 121012**
   **John Glugoski, SBN 191551**
2  **RIGHETTI GLUGOSKI, P.C.**
3  456 Montgomery Street, Suite 1400
   San Francisco, CA 94104
4  Telephone: (415) 983-0900
   Facsimile: (415) 397-9005
5

6

7                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                       **FOR THE COUNTY OF STANISLAUS**

9

10  JOSEPH    JOSHUA    DAVIS,    PENNY        **Case No.:  2011900**
    SCHOONOVER, LEON GIBSON, DUSTIN
11  WAYNE HAGENS, RAYMOND AGUNDEZ,           **PROOF OF SERVICE**
12  RAFAEL BARAJAS, JR.

13              Plaintiffs,

14
        vs.
15

16  COMCAST CORPORATION, a Pennsylvania
    Corporation; COMCAST OF CONTRA
17  COSTA, INC., a Washington Corporation; and
    DOES 1 through 50, Inclusive,
18

19              Defendants.

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

### STATE OF CALIFORNIA

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the action. My business address is Righetti Glugoski, P.C., 456 Montgomery Street, Suite 1400, San Francisco, California, 94104.

On Wednesday, March 11, 2015 I served the foregoing document described as:

- **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT**
- **PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT**
- **DECLARATION OF JOHN GLUGOSKI IN SUPPORT OF PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT**

on the interested parties by administering a true copy either by facsimile or in sealed envelopes addressed as follows:

**Troy A. Valdez**
**VALDEZ TODD & DOYLE LLP**
1901 Harrison Street, Suite 1450
Oakland, CA 94612

**Fred W. Alvarez**
**Allison B. Moser**
**JONES DAY**
1755 Embarcadero Road
Palo Alto, CA 94303

( X )    **VIA OVERNIGHT MAIL:**
By delivering such documents to an overnight mail service or an authorized courier in an envelope or package designated by the express service courier addressed to the persons on whom it is to be served.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct and was executed on Wednesday, March 11, 2015, at San Francisco, California.

Melissa Huston

**PROOF OF SERVICE**

1   FRED W. ALVAREZ, State Bar No. 68115
    ALLISON B. MOSER, State Bar No. 223065
2   JONES DAY
    Silicon Valley Office
3   1755 Embarcadero Rd.
    Palo Alto, CA 94303
4   Telephone: (650) 739-3939
    Facsimile: (650) 739-3900
5   Email: falvarez@jonesday.com
    Email: amoser@jonesday.com
6
    TROY A. VALDEZ, State Bar No. 191478
7   ERIN M. DOYLE, State Bar No. 233113
    VALDEZ TODD & DOYLE LLP
8   1901 Harrison Street, Suite 1450
    Oakland, California 94612
9   Telephone:  (415) 202-5950
    Facsimile:  (415) 202-5951
10  Email: tvaldez@vtdlaw.com
    Email: edoyle@vtdlaw.com
11
    Attorneys for Defendants
12  COMCAST CABLE COMMUNICATIONS
    MANAGEMENT, LLC, erroneously sued as
13  COMCAST CORPORATION and
    COMCAST OF CONTRA COSTA, INC.
14

15              SUPERIOR COURT OF THE STATE OF CALIFORNIA

16                        FOR THE COUNTY OF SUTTER

17

18  STEPHEN MCBRIDE, JEREMY              CASE NO. CVCS 14-1995
    WALKER, MARTIN PULIDO and
19  BRANDON GLAUNERT,
                                         DEFENDANT'S MEMORANDUM OF
20              Plaintiffs,              POINTS AND AUTHORITIES IN
                                         SUPPORT OF ITS MOTION TO STRIKE
21        v.                             PORTIONS OF THE COMPLAINT

22  COMCAST CORPORATION, a               Date:      February 2, 2015
    Pennsylvania Corporation; COMCAST OF Time:      9:00 AM
23  CONTRA COSTA, INC., a Washington
    Corporation; and DOES 1 through 50,  Complaint filed October 27, 2014
24  Inclusive,

25              Defendants.

26

27

28

# TABLE OF CONTENTS

P

I.      INTRODUCTION ...............................................................

II.     FACTUAL AND PROCEDURAL BACKGROUND .........................................

III.    ARGUMENT ...................................................................

        A.      Plaintiffs Misstate the Law Regarding Equitable Tolling and Meal Breaks.........

                1.      To the Extent Equitable Tolling Applies, the Statute of Limitations is Tolled Only to the Date of the Fayerweather Decertification Order ................................................................

                2.      Comcast Has No Affirmative Obligation to Ensure Employees Take Meal Breaks ...........................................................

        B.      Plaintiffs Cannot Relitigate the Issue of Whether Comcast has Unlawful Policies, Patterns, or Practices that Prevented Employees from Taking Off-Duty Meal and Rest Breaks and Required Employees to Work Off the Clock ................................................................

                1.      Plaintiffs' Policy, Pattern, and Practice Allegations Are Identical to Those at Issue in the Fayerweather Action ....................................

                2.      Plaintiffs' Policy, Pattern, and Practice Allegations were Actually Litigated in the Fayerweather Action ........................................

                3.      The Decertification Order Necessarily Decided that Comcast's Policies, Patterns, and Practices are Not Unlawful in a Final Decision on the Merits ........................................................

                4.      Plaintiffs are Bound by the Decision in the Fayerweather Decertification Order .......................................................

                5.      Applying Collateral Estoppel to Plaintiffs' Claims Promotes Public Policy ...............................................................

        C.      Plaintiffs' Understaffing Theory Is Also Precluded Because It Was Abandoned In The Prior Proceeding.........................................

IV.     CONCLUSION .................................................................

i

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF THE COMPLAINT - CASE NO. CVCS 14-1995

1

## TABLE OF AUTHORITIES

2

3  CASES

4  *Alvarez v. May Department Stores Co.*,
       143 Cal. App. 4th 1223 (2006)............................................................
5
   *American Pipe v. Utah*,
6      414 U.S. 538 (1974).....................................................................

7  *Brinker Restaurant Corp. v. Superior Court*,
       53 Cal. 4th 1004 (Cal. 2012)...........................................................
8
   *Castillo v. City of Los Angeles*,
9      92 Cal. App. 4th 477 (Cal. App. 2d Dist. 2001) ..................................

10 *Fayerweather v. Comcast Corp.*,
       No. S221245, Dkt No. 8 (Cal. Nov. 25, 2014)....................................
11
   *Fayerweather v. Comcast Corporation*,
12     Docket No. CIVMSC08-01470..................................................... pa

13 *Hall v. Variable Annuity Life Ins. Co.*,
       727 F.3d 372 (5th Cir. 2013).........................................................
14
   *Hernandez v. City of Pomona*,
15     46 Cal. 4th 501 (Cal. 2009)..........................................................

16 *Jolly v. Eli Lilly & Co.*,
       44 Cal. 3d 1103 (1988) .............................................................
17
   *Lucido v. Superior Court*,
18     51 Cal. 3d 335 (Cal. 1990)........................................................ pas

19 *Lumpkin v. Jordan*,
       49 Cal. App. 4th 1511 (1995)......................................................
20
   *Martin v. County of L.A.*,
21     51 Cal. App. 4th 688 (Cal. App. 2d Dist. 1996) ...............................10

22 *PH II, Inc. v. Superior Court*,
       33 Cal. App. 4th 1680 (Cal. Ct. App. 1995) ...................................
23
   *Rose v. Superior Court of Imperial County*,
24     80 Cal. App. 739 (Cal. Ct. App. 1927) ..........................................

25 *Younan v. Caruso*,
       51 Cal. App. 4th 401 (1996)........................................................8
26
   STATUTES
27
   California Code of Civil Procedure § 436........................................
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In their operative Complaint, filed on November 12, 2014 (the "Complaint"), Plaintiff Stephen McBride, Jeremy Walker, Martin Pulido and Brandon Glaunert (collectively, "Plaintiffs") allege virtually identical causes of action to those previously litigated in the class decertification proceedings before the Contra Costa Superior Court in a related lawsuit, captic as *Fayerweather v. Comcast Corporation*, Docket No. CIVMSC08-01470. The Plaintiffs her are represented by the same law firm that represented the purported class in *Fayerweather*. Inexplicably, Plaintiffs' counsel attempts to relitigate several key findings that the *Fayerweat* court squarely decided against them and that were affirmed by the Court of Appeals. Plaintiff counsel also makes several incorrect statements of the law, such as citing the wrong standard respect to meal breaks per the California Supreme Court's decision in *Brinker Restaurant Cor. v. Superior Court*, 53 Cal. 4th 1004, 1017 (Cal. 2012).

This motion seeks to strike specific allegations of the Complaint because Plaintiffs can proceed in this litigation as if the prior (and extensive) *Fayerweather* case never occurred or existed or as if *Brinker* was never decided. Accordingly, Comcast moves to strike the portion the Complaint that (1) purport to extend the tolling period of the statute of limitations beyond date Judge Goode ordered the *Fayerweather* class decertified, (2) are inconsistent with Califor law regarding meal breaks, and (3) attempt to relitigate the lawfulness of Comcast's policies, patterns, or practices. Such allegations must be stricken for the following reasons:

- A pending class action may toll the running of the statute of limitations for purported class members only until class certification is denied;

- Comcast need not ensure that employees are off duty during meal periods;

- The Class Decertification Order forecloses Plaintiffs' argument that Comcast h policy, pattern, or practice of failing to pay wages or denying employees meal a rest breaks; and

1

1       •    Plaintiffs are precluded from asserting the same "understaffing" theory that wa

2          abandoned in the Fayerweather class action when the Fayerweather class could

3          present an acceptable trial plan.

4   **II.**    **FACTUAL AND PROCEDURAL BACKGROUND**

5       On May 27, 2008, Gabriel Fayerweather filed a class action on behalf of himself and a

6 similarly situated current and former service technicians, communications technicians, and oth

7 non-exempt hourly employees ("CommTechs") of Defendant Comcast Cable Communication

8 Management, LLC, erroneously sued as Comcast Corporation and Comcast of Contra Costa, I

9 (hereinafter, "Comcast"). See Request for Judicial Notice ("RJN"), Exhibit A (hereinafter, the

10 "*Fayerweather* Complaint"). Fayerweather moved for and obtained class certification on Apr

11 2010 on the theory that Comcast maintained a corporate practice of understaffing with respect

12 the CommTech positions, which prevented them from being able to take meal and rest breaks.

13 certifying the class, Judge Goode noted that it was a "close case" and expressed concern over l

14 the case would be tried. In subsequent hearings, after being pressed for a trial plan, the

15 *Fayerweather* class abandoned the understaffing theory. Instead, the *Fayerweather* class alleg

16 that CommTechs were never truly off-duty because they were required to carry a handheld

17 communication tool. This changed theory drew concern from the court as to "whether there ha

18 been a bait and switch," but the court allowed the *Fayerweather* class to present a trial plan on

19 new theory. When the *Fayerweather* class could not produce a satisfactory trial plan, the court

20 issued an Order to Show Cause as to why the class should not be decertified. See RJN, Exhibi

21 at 38:6-11.

22       After substantial discovery and extensive briefing, a lengthy hearing on the Order to Sh

23 Cause took place on October 26, 2012. *See* RJN, Exhibit C. On December 15, 2012, Judge

24 Goode issued an order decertifying the class. *See* RJN, Exhibit D (hereinafter, the

25 "Decertification Order"). In concluding that the class must be decertified, Judge Goode made

26 several crucial factual findings that bear on the present case. First, the Decertification Order

27 notes that "plaintiff abandoned his claim that Comcast has a 'policy of understaffing or over-

28 scheduling.'" Decertification Order at 3:10-12. Judge Goode also considered the *Fayerweathe*

2

1    class's new allegations that Comcast has (i) a policy or practice that requires CommTechs to l

2    their phones on, preventing them from being relieved of all duty during their meal and rest

3    breaks, and (ii) a policy or practice that requires CommTechs to record 60 minute meal period

4    although other company records show shorter lunch periods, resulting in uncompensated off-t

5    clock time. Specifically, with regard to whether Comcast has a policy, pattern, or practice of

6    preventing employees from taking off-duty meal and rest breaks the trial court concluded:

7      •   It is clear that Comcast has not adopted a 'policy' of requiring Com-Techs to

8          remain on duty during their meal breaks. Decertification Order at 12:19-20.

9      •   Comcast's policy is clear. When Com-Techs are on break or at lunch, they are

10         be relieved of all duty. *Id.* at 14:5-6.

11      •   A careful analysis of the parties' positions shows there is really no dispute abou

12         Comcast's policy: Com-Techs are to do no work during their breaks. *Id.* at 18:

13      •   As discussed below, the practices engaged in by dispatchers and technicians are

14         from consistent. *Id.* at 21:13-16.

15      •   In short, there is not a consistent practice that violates the company's stated pol

16         *Id.* at 24:5.

17   Similarly, the Judge Goode found no unlawful policies, patterns, or practices in support of the

18   *Fayerweather* class's "off the clock" theory of liability. Instead, the court found:

19      •   Plaintiff says that employees are pressured into filling out what are, in effect,

20         fictitious timesheets. Plaintiff cites no common evidence of a central direction

21         this be done. Instead, plaintiff contrasts the time sheets with something called

22         CSG data. *Id.* at 26:10-12.

23      •   [Plaintiff's expert] relies on the CSG data as if they were more accurate than the

24         time records. But there are serious questions about their accuracy. *Id.* at 28:4-5

25      These findings in *Fayerweather* were appealed, and the Court of Appeals affirmed the

26   findings of the trial court. RJN, <u>Exhibit E.</u> Fayerweather then filed a Petition for Review with

27   the California Supreme Court, which was denied. *Fayerweather v. Comcast Corp.*, No. S2212

28   Dkt No. 8 (Cal. Nov. 25, 2014).

3

1   Despite the clear language in the Decertification Order finding no unlawful policies,

2   patterns, or practices, Plaintiffs included these same exact allegations in their Complaint. For

3   example, Plaintiffs' causes of action for failure to pay wages, failure to provide meal breaks,

4   failure to provide rest breaks allege that Plaintiffs are entitled to recovery as a result of Comc

5   *"**pattern, practice and uniform administration of corporate policy**."* Complaint at ¶¶ 35, 51

6   (emphasis added); *see also Fayerweather* Complaint at ¶¶ 48, 63, 71. Substantively, each of

7   these claims is plead in a nearly identical manner to those in the *Fayerweather* Complaint.[1]

8   **III.   ARGUMENT**

9   Under California Code of Civil Procedure section 436, a court may strike out any

10   "irrelevant, false, or improper matter inserted in any pleading." Cal. Code Civ. Proc. § 436.

11   includes "a substantive defect [that] is clear from the face of a complaint, such as . . . a purpo

12   claim of right which is legally invalid." *PH II, Inc. v. Superior Court*, 33 Cal. App. 4th 1680,

13   1682-83 (Cal. Ct. App. 1995); *see also Rose v. Superior Court of Imperial County*, 80 Cal. A

14   739, 745 (Cal. Ct. App. 1927) ("It has been the practice to raise the issues of law by a demur

15   motion to strike and we see nothing improper in this method of confining and defining the

16   issues.").

17   Here, the provisions of Plaintiffs' Complaint regarding equitable tolling and requireme

18   regarding meal and rest breaks should be stricken because they misstate the law. Further,

19   Plaintiffs' allegations that the purported violations are caused by Comcast's systematic unlaw

20   policies, patterns, or practices are also legally invalid and should be stricken because collatera

21   estoppel prevents Plaintiffs from relitigating these claims.

22

23

24

25

26

27   [1] In fact, the same attorneys who represented Fayerweather in the class case have filed

28   least 15 separate cases in 15 separate counties utilizing the exact same complaint that Plaintiffs
used to initiate this lawsuit.

4

A.      **Plaintiffs Misstate the Law Regarding Equitable Tolling and Meal Break**

     1.      **To the Extent Equitable Tolling Applies, the Statute of Limitations is Tolled Only to the Date of the *Fayerweather* Decertification Order.**

Under California law, the filing of a class action complaint may toll "the running of th statute of limitations for all members of the purported class until class certification [is] denied *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1120 (1988) (citing *American Pipe v. Utah*, 414 U.S 538 (1974)) (emphasis added). The purpose of the tolling doctrine is to protect a plaintiff wh both knew of and had been reasonably relying on the class action as a vehicle for their claims *Jolly*, 44 Cal. 3d at 1119. Such reasonable reliance ends when decertification is granted, even an appeal is pending. *Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 375-376 (5th Cir. 2013) (holding that the statute of limitations resumes running when a trial court decertifies a c and is not extended by an unsuccessful appeal).

In the Complaint, Plaintiffs misstate the law in an attempt to improperly extend the tol period. Plaintiffs assert that "[t]he filing of the *Fayerweather* class action complaint on May : 2008 tolled the statute of limitations for the named Plaintiffs from four years from the filing o *Fayerweather* class action complaint **to the present**." Complaint at ¶ 8 (emphasis added). On the trial court decertified the class in *Fayerweather*, it was no longer reasonable for plaintiffs rely on the class action as a vehicle for their claims. *See Hall*, 727 F.3d at 375-376. Therefor assuming equitable tolling applies, the statute of limitations is tolled only until December 15, 2012, the date the Decertification Order was filed. Accordingly, this Court should strike the phrase "to the present" at line 8 on page 3 of Plaintiffs' Complaint.

     2.      **Comcast Has No Affirmative Obligation to Ensure Employees Take Meal Breaks.**

Plaintiffs' Third Cause of Action alleging denial of meal periods relies on an incorrect statement of law. The California Supreme Court has made clear that "an employer's obligatio to relieve its employee of all duty, with the employee thereafter at liberty to use the meal perio for whatever purpose he or she desires, but the employer need not ensure that no work is done.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO STRIK PORTIONS OF THE COMPLAINT  CASE NO  CVCS 14 1895

1    *Brinker*, 53 Cal. 4th at 1017.  An employer is "not obligated to police meal breaks and ensure

2    work thereafter is performed." *Id.* at 1055.

3        Plaintiffs allege that Comcast "failed in [its] affirmative obligation to ensure that all o

4    their employees, including Plaintiffs, were actually relieved of all duties, not performing any

5    work, and free to leave the premises during meal periods." Complaint at ¶ 44.  As the trial co

6    noted in its Decertification Order, this "theory of liability is not consistent with the California

7    Supreme Court's decision in *Brinker*." Decertification Order at 30:23-24.  Because Comcast

8    no "affirmative obligation" beyond providing employees with an opportunity to take a meal

9    break, Plaintiffs' improper statement of law should be stricken from the Complaint.

10   **B.    Plaintiffs Cannot Relitigate the Issue of Whether Comcast has Unlawful
             Policies, Patterns, or Practices that Prevented Employees from Taking Of**
11   **Duty Meal and Rest Breaks and Required Employees to Work Off the Clo**

12       Issue preclusion prevents a party from relitigating an issue that has already been

13   adjudicated.  The doctrine applies when: (1) the issue sought to be precluded is identical to th

14   decided in a prior proceeding; (2) the issue is actually litigated in the prior proceeding; (3) the

15   issue was necessarily decided in the prior proceeding; (4) the decision in the prior proceeding

16   final and on the merits; and (5) the party against whom preclusion is sought is the same as, or

17   privity with, the party to the former proceeding. *Lucido v. Superior Court*, 51 Cal. 3d 335, 34

18   (Cal. 1990).

19       Here, Plaintiffs seek to relitigate <u>identical allegations</u> regarding unlawful policies, patte

20   and practices, against the same defendants, and that were considered and rejected in Judge

21   Goode's Decertification Order.  These findings were affirmed on appeal, and Plaintiffs are

22   represented by the same law firm involved in the *Fayerweather* case.  Accordingly, this Court

23   should strike language in the Complaint that is inconsistent with the findings in the

24   Decertification Order.

25   **1.    <u>Plaintiffs' Policy, Pattern, and Practice Allegations Are Identical to</u>
             <u>Those at Issue in the *Fayerweather* Action.</u>**
26

27       The Decertification Order considered identical issues to those alleged in Plaintiffs'

28   Complaint.  To determine whether the issues are identical, courts look to the factual allegations

6

1    stake, not whether the ultimate issues or dispositions are the same. *Lucido*, 51 Cal. 3d at 341;

2    *also Lumpkin v. Jordan*, 49 Cal. App. 4th 1511, 1516 (1995) ("[T]he doctrine of collateral

3    estoppel depends on what issues were adjudicated, not the nature of the proceeding or the reli

4    requested.").

5          The policy, pattern, and practice allegations at issue in Plaintiffs' Complaint are

6    substantively identical to those alleged in the *Fayerweather* Complaint. *Compare, e.g.*,

7    Complaint ¶¶ 32, 41, 46, 55 with *Fayerweather* Complaint ¶¶ 45, 54, 59, 67.[2] Further, Judge

8    Goode reiterated the issues that were litigated in the hearing preceding the Decertification Ord

9    "Now plaintiff's theories are: "Comcast has adopted a <u>policy or practice</u> that requires Com-Te

10   to (a) keep their phones on and (b) remain logged-on to the TechNet network, so that they are

11   relieved of all duty during their meal and rest breaks; [and] (2) Comcast has adopted a <u>policy (</u>

12   <u>practice</u> that requires Com-Techs to record a 60 minute meal period on their timecards even

13   though other company records show shorter lunch periods, making it likely that employees are

14   required to work off-the-clock." Decertification Order at 3:13-20 (emphasis added). In

15   determining that class treatment was not appropriate in *Fayerweather*, Judge Goode specifical

16   considered whether Comcast maintained unlawful policies, patterns, or practices regarding me

17   and rest breaks and off-the-clock work and concluded that it did not.

18         Judge Goode reached the following relevant findings and conclusions:

19    •    Comcast's policy is clear. When Com-Techs are on break or at lunch, they are

20         be relieved of all duty. Decertification Order at 14:5-6.

21    •    A careful analysis of the parties' positions shows there is really no dispute abou

22         Comcast's policy: Com-Techs are to do no work during their breaks. *Id.* at 18:5

23    •    Testimony submitted by Comcast shows that, while dispatchers may have sent

24         messages to Com-Techs during break periods, there was not necessarily an

25    _____

26    [2] This list is not exhaustive. All of the identical policy, pattern, and practice allegations
     from the *Fayerweather* Complaint that Comcast seeks to strike are articulated in Comcast's
     Notice of Motion to Strike filed concurrently herewith. Additionally, Comcast seeks to strike

27   policy, pattern, and practice allegations that are derivative of Plaintiffs' invalid claims, includin
     Paragraph 71 of the Complaint.

28

                                        7

1   expectation that a Com-Tech would read or respond to the message if he or she

2   were on a break. *Id.* at 18:21-19:2

3   •   As discussed below, the practices engaged in by dispatchers and technicians ar

4       from consistent. *Id.* at 21:15-16

5   •   In short, there is not a consistent practice that violates the company's stated po

6       *Id.* at 24:5

7   •   Plaintiff says that employees are pressured into filling out what are, in effect,

8       fictitious time sheets. Plaintiff cites no common evidence of a central directior

9       that this be done. *Id.* at 26:10-12

10  •   Accordingly, to succeed in showing the case should be litigated as a class actior

11      plaintiff must show there is a company-wide practice that undermines this form

12      policy. *Id.* at 32:15-17

13  These factual findings are directly at odds with the allegations in Plaintiffs' Complaint. *See, e*

14  Complaint at ¶¶ 30 ("As a pattern and practice, Defendants relied on punch data/time sheets ir

15  many instances filed [sic] out before the work day commenced . . ."); 46 ("As a pattern and

16  practice, Defendants regularly required employees to work through their meal periods without

17  proper compensation."); 56 ("As a pattern and practice, Defendants regularly required employe

18  to work through rest periods.").[3] Because Plaintiffs seek to re-litigate the precise issues that th

19  Decertification Order adjudicated, the first *Lucido* factor is met.

20          2.      **Plaintiffs' Policy, Pattern, and Practice Allegations were Actually**

21                  **Litigated in the *Fayerweather* Action.**

22          The second *Lucido* factor, that the issue be actually litigated, is satisfied when the issue

23  has been properly raised by the pleadings, is submitted for determination, and is actually

24  determined. *Younan v. Caruso*, 51 Cal. App. 4th 401, 407 (1996). A determination may be ba

25  on failure of proof. *Id.* Further, to determine what issues were actually litigated in the underly

26  _____

27          [3] A complete list of the language in Plaintiffs' Complaint that is inconsistent with Judg
    Goode's conclusions is included in Comcast's Notice of Motion to Strike filed concurrently

28  herewith.

8

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO STRIK**

1    action, a court should "look carefully at the entire record from the prior proceeding," includin

2    the evidence presented and the pleadings. *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 51

3    (Cal. 2009).

4          In addition to Judge Goode's specific determinations finding no unlawful policies,

5    patterns, or practices, discussed above, the briefing and hearing transcript in the *Fayerweathe*

6    decertification proceedings provide further confirmation that Comcast's policies, patterns, an

7    practices were thoroughly briefed and actually litigated in the prior case.  At the October 26, 2

8    hearing on the Order to Show Cause as to why the class should not be decertified, the parties

9    submitted 103 pages of briefing and 4556 pages of evidence and objections thereto.  The

10    predominant issue litigated at the hearing was whether the *Fayerweather* class could establish

11    Comcast had unlawful policies, patterns, or practices, as alleged in the *Fayerweather* Compla

12          Following Judge Goode's Decertification Order, these issues were appealed and re-arg

13    before the California Court of Appeal.  RJN, Exhibit E.  Affirming the Decertification Order,

14    Court of Appeal held that there was "no evidence suggesting a general policy or practice

15    precluding second breaks . . . or the assignment of so much work that technicians had no time

16    a break." *Id.* at 11-12.  Further, the Court of Appeal held that the *Fayerweather* class provide

17    "no direct proof" of a policy requiring technicians to report round-number lunch breaks of 30 c

18    60 minutes or of any "widespread pressure on technicians by their supervisors to underreport t

19    working hours." *Id.* at 15.  The policy, pattern, or practice issue was raised by the pleadings,

20    submitted for determination, and actually determined in the *Fayerweather* proceedings.

21          **3.**    **The Decertification Order Necessarily Decided that Comcast's**

22                    **Policies, Patterns, and Practices are Not Unlawful in a Final Decisio**
                         **on the Merits.**

23          The Decertification Order also satisfies the third and fourth *Lucido* factors, that an issu

24    be necessarily decided and that the prior decision is a final judgment on the merits.  An issue is

25    "necessarily decided" when it is not entirely unnecessary to the judgment in the prior proceedi

26    *Lucido*, 51 Cal. 3d at 342.  A judgment is final when it is not open to direct attack. *Id.*

27          The conclusions in the Decertification Order turned on whether the *Fayerweather* class

28    could establish that Comcast maintained unlawful policies, patterns, or practices.  The issue wa

1    necessarily decided on the merits by Judge Goode's conclusion that no such uniform policy,

2    pattern, or practice exists. Further, the *Fayerweather* class has exhausted the available direct

3    attacks to the Decertification Order. The Court of Appeal affirmed Judge Goode's opinion, a

4    the Supreme Court of California denied review. *See* RJN, Exhibit E; *Fayerweather v. Comca*

5    *Corp.*, No. S221245, Dkt No. 8. Thus, the Decertification Order is a final decision.

6               4.    **Plaintiffs are Bound by the Decision in the *Fayerweather***
                      **Decertification Order**
7

8               To meet the fifth *Lucido* factor, issue preclusion must be sought against a person who

9    a party or was in privity with a party in the earlier proceeding. *Lucido*, 51 Cal. 3d at 341. Pri

10    requires "some relationship or connection with the party which makes it proper to hold 'privi

11    bound with the actual parties." *Martin v. County of L.A.*, 51 Cal. App. 4th 688, 700 (Cal. App

12    Dist. 1996). Privity exists where a nonparty for whom the unsuccessful party in the first actio

13    acted in a representative capacity. For example, in *Alvarez v. May Department Stores Co.*, 14

14    Cal. App. 4th 1223, 1238 (2006), the court held that plaintiffs in a prior class action certificati

15    were "virtual representatives" of the plaintiffs (who were putative class members but not name

16    plaintiffs in the class action) in a subsequent individual action before the court. The court

17    considered the fact that the parties, claims, and counsel were the same in both actions and

18    concluded that denial of class certification in the first case precluded plaintiffs from certifying

19    class in the second case. *Id.* The *Alvarez* court concluded that denial of class certification can

20    establish collateral estoppel against absent putative class members on issues that were actually

21    decided in connection with the denial. *See id.* at 1236.

22               Here, Fayerweather acted as a "virtual representative" for Plaintiffs, who were member

23    of the certified *Fayerweather* class until the Decertification Order was issued. Like in *Alvarez*

24    both the claims asserted and the plaintiffs' counsel are identical in both the *Fayerweather* matt

25    and the present case. Through a representative, Plaintiffs had the opportunity and motive to fu

26    litigate the issue of whether Comcast has a policy, pattern, or practice that resulted in on-duty

27    meal and rest breaks and uncompensated off-the-clock work. Because Plaintiffs fall within the

28    scope of the *Fayerweather* class, Plaintiffs' interests were adequately represented in the prior

                                                10

1   proceeding. Further, the judgment in *Fayerweather* was based on the same arguments and

2   evidence presented by the same counsel that would be considered in the present case. There

3   Plaintiffs are in privity with the *Fayerweather* class and it is fair to bind Plaintiffs to the final

4   decision in that case.

5           **5.**    **Applying Collateral Estoppel to Plaintiffs' Claims Promotes Public**

6                 **Policy.**

7         In determining whether to apply collateral estoppel, courts also consider the public

8   policies of "preservation of the integrity of the judicial system, promotion of judicial economy

9   and protection of litigants from harassment by vexatious litigation." *See Castillo v. City of Lo*

10  *Angeles*, 92 Cal. App. 4th 477, 481 (Cal. App. 2d Dist. 2001); *Martin*, 51 Cal. App 4th at 701

11  All three policy considerations weigh in favor of precluding Plaintiffs' claims.

12        Following the decertification of the 1,800-member *Fayerweather* class, Comcast

13  acknowledges that each class member is entitled to assert individual claims alleging wage and

14  hour violations as applied to that individual. This Court, however, should not provide a

15  duplicative forum for plaintiffs to have a "redo" of allegations they made and lost. Further,

16  Comcast should not be forced to re-litigate the same class action allegations of company-wide

17  policies, patterns, and practices in each individual case. Rather, each individual plaintiff's cas

18  should rise or fall on the merits of each plaintiff's individual claims. First, applying collateral

19  estoppel will preserve the integrity of the judicial system by preventing inconsistent judgments

20  an identical issue. Second, application of collateral estoppel will promote judicial economy by

21  preventing Plaintiffs from relitigating the same issues that were previously adjudicated, follow

22  extensive discovery and briefing, in *Fayerweather*.[4] Finally, applying collateral estoppel prot

23  Comcast from vexatious litigation in which Comcast must repeatedly defend the same policies

24  patterns, and practices in each individual claim.

25

26      [4] Comcast has already participated in years of expensive and time consuming discovery
    regarding Fayerweather's allegations of systematic unlawful policies and practices, and as Judg
27  Goode found, Fayerweather and his counsel could not present any evidence to support their
    allegations. Comcast should not be made to relive this experience yet again.
28

11

**C.    Plaintiffs' Understaffing Theory Is Also Precluded Because It Was Abandoned In The Prior Proceeding.**

Plaintiffs are also collaterally estopped from bringing the same claims that the *Fayerweather* class abandoned after failing to provide adequate proof. The *Fayerweather* cl[...] was certified based on the same understaffing theory alleged in Plaintiffs' First and Second Causes of Action. Plaintiffs allege that "Defendants uniformly administered a corporate poli[...] concerning staffing levels, duties and responsibilities which required Plaintiffs to work witho[...] appropriate pay. This included a uniform corporate pattern and practice of allocating and authorizing inadequate staffing levels. The inadequate staffing levels were enforced and ensu[...] through the uniform and mandated corporate policy of a minimal labor budget." Complaint a[...] ¶ 31. Paragraph 44 of the *Fayerweather* Complaint contains identical language, substituting [...] "Plaintiff and the class members" for "Plaintiffs." *Fayerweather* Complaint at ¶ 44. The *Fayerweather* class abandoned this theory, however, because it was unable to produce an acceptable trial plan for how the matter could be tried.

Plaintiffs' understaffing theory should be precluded because it meets all five *Lucido* factors. First, as evidenced by the identical language in the complaints, Plaintiffs in the prese[...] case are asserting the exact same claim that was at issue in *Fayerweather*. Second, the understaffing issue was actually litigated in *Fayerweather*. After the trial court provided the *Fayerweather* class with an opportunity to provide support for their understaffing theory, the *Fayerweather* class abandoned the theory. In the Decertification Order, Judge Goode notes th[...] the plaintiffs "discarded" the understaffing theory. Decertification Order at 3:11. The *Fayerweather* class's inability to prove understaffing is sufficient to show a determination on [...] merits. *See Younan*, 51 Cal. App. 4th at 407 (holding that a determination may be based on failure of proof). As to the third factor, the understaffing theory was necessarily determined i[...] Judge Goode's Decertification Order. *See* Decertification Order at 3:10-11 ("Essentially, plai[...] abandoned his claim that Comcast has a "policy of understaffing or over-scheduling"). As discussed above, the fourth and fifth factors are also satisfied because the Decertification Orde[...] a final judgment, and Plaintiffs are in privity with Fayerweather and are therefore properly bou[...]

12

1  by the decision. Accordingly, Plaintiffs' understaffing theory should be stricken from the

2  Complaint.

3  **IV.    CONCLUSION**

4        For the foregoing reasons, Comcast requests that the Court strike (1) the portions of

5  Plaintiffs' Complaint that misstate the law regarding equitable tolling and Comcast's obligation

6  regarding meal breaks and (2) the portions of Plaintiffs' Complaint alleging violations caused

7  Comcast's unlawful policies, patterns, or practices that are subject to collateral estoppel.

8  Dated: December 23, 2014                         JONES DAY

9

10                                                  By: _____

11                                                      Fred W. Alvarez
                                                        Allison B. Moser

12                                                  Attorneys for Defendants
13                                                  COMCAST CABLE COMMUNICATIONS
                                                    MANAGEMENT, LLC, erroneously sued as
14                                                  COMCAST CORPORATION and
                                                    COMCAST OF CONTRA COSTA, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13