**EXHIBIT H**

1  **MATTHEW RIGHETTI, SBN 121012**
   **JOHN GLUGOSKI, SBN 191551**
2  **RIGHETTI GLUGOSKI, P.C.**
   456 Montgomery Street, Suite 1400
3  San Francisco, CA  94104
   Telephone:  (415) 983-0900
4  Facsimile:  (415) 397-9005
5
   Attorneys for Plaintiffs
6
7          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
8              **FOR THE COUNTY OF STANISLAUS**
9
10
11 | JOSEPH JOSHUA DAVIS, PENNY | **Case No.:  2011900** |
   | SCHOONOVER, LEON GIBSON, DUSTIN | |
12 | WAYNE HAGENS, RAYMOND AGUNDEZ, | **PLAINTIFF'S OPPOSITION TO** |
   | RAFAEL BARAJAS, JR., | **DEFENDANT'S MOTION TO STRIKE** |
13 | | **PORTIONS OF THE SECOND** |
   | | **AMENDED COMPLAINT** |
14 | | |
15 |              Plaintiffs, | |
   | | Date:   July 16, 2015 |
16 |   vs. | Time:   8:30 a.m. |
   | | Dept:   21 |
17 | | |
   | COMCAST CORPORATION, a Pennsylvania | Complaint filed October 27, 2014 |
18 | Corporation; COMCAST OF CONTRA | |
   | COSTA, INC., a Washington Corporation; and | |
19 | DOES 1 through 50, Inclusive, | |
20 | | |
21 |              Defendants. | |
22 | | |
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

*Table of Authorities* ............................................................................. *iii–v*

INTRODUCTION .................................................................................. 1

A.   PROCEDURAL HISTORY ........................................................... 3

B.   CLASS CERTIFYING PROCEEDINGS IS A PROCEDURAL
     DEVICE, NOT A RULING ON THE MERITS ................................. 3

     1.   The *Hollander* Order Lacks Clarity And Cannot Be
          Reconciled With *Fayerweather* ............................................ 4

C.   PLAINTIFFS PREVAILED ON THE ISSUE OF EQUITABLE
     TOLLING AND HAVE ONLY STRENGTHENED THE
     EXISTING ALLEGATIONS BY ADDING THE FACT
     THAT THE COURT SENT NOTICE TO THE CLASS
     CONFIRMING THEY COULD NOT BRING THEIR OWN
     LAWSUIT IF THEY REMAINED MEMBERS OF THE CLASS ................. 4

D.   DEFENDANT'S RELLIANCE ON *CROWN, CORK & SEAL v.
     PARKER, ETC…* IS MISPLACED AS THE CASES ARISE
     UNDER FEDERAL LAW WHERE DENIAL OF CERTIFICATION
     IS A FINAL NON-APPEALABLE ORDER, UNLIKE CALIFORNIA
     LAW WHERE ORDER DOES NOT BECOME FINAL UNTIL
     APPEAL HAS RUN ITS COURSE ................................................. 5

E.   THE UNITED STATES SUPREME COURT REJECTS
     DEFENDANT'S ARGUMENT THAT THERE IS NO TOLLING ................. 7

     1.   *American Pipe* Sets Forth The Two Criteria For The
          Court To Evaluate In Deciding Whether Tolling Applies ................. 10

          a.   *Fayerweather* Court Ordered Notice Telling Plaintiffs
               That If They Did Not Opt Out They Could Not Bring
               A Separate Suit ............................................................. 11

*i*

2. Tolling Is Appropriate As Defendant Has Been On Notice Of The Individuals And Their Claims From The Inception Of The Fayerweather Lawsuit..................................................12

    a. Not Only Is Comcast On Notice, Comcast Has Preserved And Produced To Plaintiff's Counsel All Evidence For All Class Members Including The Named Plaintiffs..................................12

F. *HOLLANDER* IS AN INTERIM ORDER AND THUS COMCAST CANNOT MEET THE FINAL ORDER REQUIREMENT FOR ISSUE PRECLUSION..................................................13

CONCLUSION..................................................14

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page(s)

*American Pipe & Constr. Co. v. Utah*
(1974) 414 U.S. 538 ...........................................................................................*Passim*

*Bernhard v. Bank of America Nat'l Trust & Sav. Ass'n*
(1942) 19 C2d 807 ........................................................................................... 14

*Catholic Soc. Services, Inc. v. I.N.S.*
(9th Cir. 2000) 232 F.3d 1139, 1146-47 ........................................................ 12

*Coopers & Lybrand v. Livesay*
(1978) 437 U.S. 463 ........................................................................................ 6

*Crown, Cork & Seal Co. v. Parker*
(1983) 462 U.S. 345 ...........................................................................*Passim*

*Deposit Guaranty Nat. Bank v. Roper*
(1980) 445 U.S. 326 ........................................................................................ 3

*In re Hanford*
(2007) 521 F.3d 1053 ...................................................................................... 9

*In re Worldcom*
(2007) 496 F.3d 256 ................................................................................... 9, 10

*Oshana v. Coca-Cola Bottling Co.*
(2005) 225 F.R.D. 575 .................................................................................... 4

*Smith v. Bayer Corp.*
(2011) 131 S.Ct. 2368 ..................................................................................... 4

## STATE CASES

*Alvarez v. May Dept. Stores Co.*
(2007) 143 Cal.App.1223 ................................................................................ 1

*Becker v. McMillan Constr. Co.*
(1991) 226 Cal.App.3d 1493 ....................................................................... 8, 9

*Belio v. Panorama Optics, Inc.*
(1995) 33 Cal.App.4th 1096 .................................................................. 13

*Cortez v. Purolator Air Filtration Products Co.*
(2000) 23 Cal. 4th 163 ....................................................................... 10

*Couts v. Cornell*
(1905) 147 Cal. 560 ........................................................................... 10

*Daar v. Yellow Cab Co.*
(1967) 67 Cal.2d 695 ....................................................................... 5, 6

*Doran v. Magan*
(1999) 76 Cal. App. 4th 1287 ............................................................ 13

*Duran v. US Bank Nat. Ass'n*
(2014) 59 Cal.4th 1 ............................................................................. 3

*Eldridge v. Burns*
(1978) 76 Cal.App.3d 396 .................................................................. 13

*Farmers Ins. Exchange v. Zerin*
(1997) 53 Cal. App. 4th 445 .............................................................. 10

*General Motors Corp. v. Superior Court*
(1988) 199 Cal.App.3d 247 ................................................................ 6

*Guenter v. Lomas & Nettleton Co.*
(1983) 140 Cal.App.3d 460 ................................................................ 6

*In re Marriage of Plescia*
(1997) 59 Cal. App. 4th 252 .............................................................. 10

*Jolly v. Eli Lilly & Co.*
(1988) 44 Cal.3d 1121 ................................................................ 8, 9, 12

*Long Beach Unified School Dist. v. State of Calif.*
(1990) 225 CA3d 155 .......................................................................... 6

*Lucido v. Superior Court*
(Cal. 1990) 51 Cal.3d 335 ................................................................. 14

*Morrissey v. City and County of San Francisco*
(1977) 75 Cal.App.3d 903 ................................................................... 6

*Richmond v. Dart Industries, Inc.*
(1981) 29 Cal.3d 462 .......................................................................... 6

*Sky Sports, Inc. Superior Court*
(2011) 201 Cal.App.4th 1363 ..................................................................... 3

*Stephen v. Rent-A-Car*
(Ct. App. 1991) 235 Cal. App. 3d 806 ..................................................... 5, 6

*Vasquez v. Superior Court*
(1971) 4 Cal.3d 800........................................................................................ 5

## **<u>RULES & STATUTES</u>**

*9 Witkin*
Cal.Procedure (3d ed. 1985) Appeal, § 43 ............................................ 5, 13

California Labor Code Section 203 ................................................................. 4

*Class Actions and Statutes of Limitations*
(1981) 48 U. Chi. L.Rev. 106.................................................................... 11

FRC Rule 23 ........................................................................................... 5-8

## **INTRODUCTION**

Comcast's motion to strike is an improper motion to reconsider the tolling and Collateral Estoppel issue well-after the 10-day limit to seek reconsideration (CCP Section 1008). On March 27, 2015, <u>this Court</u> rejected the same tolling and Collateral Estoppel argument raised again here. The Court held:

> "Defendant Comcast Cable Communications' Motion to Strike Portions of the Complaint is GRANTED as to the challenged section of Paragraph 44 with leave to amend, and DENIED as to all other requests. Plaintiffs shall file an amended complaint not later than April 10, 2015.
>
> Plaintiffs did not oppose Defendant's Motion to Strike with regard to Paragraph 44. With respect to the other challenged portions of the Complaint, the court notes initially that they are not precluded by collateral estoppel based on any findings made by the court in the decertification order issued in *Fayerweather v. Comcast,* Contra Costa County Superior Court, Case No. MSC-08-01470. The class decertification order in *Fayerweather* is not an order issued "on the merits". "The certification question is essentially a procedural one that does not ask whether an action is legally or factually meritorious." *Hall v. Rite Aid Corporation* (2014) 226 Cal.App.4th 278. Further, any allegation that the statute of limitations has been tolled "to the present" appears appropriate given the guidelines set forth in *American Pipe & Construction Co v. Utah* (1974) 414 U.S. 538 and *Crown, Cork & Seal Co., Inc. v. Parker* (1983) 462 U.S. 345. Plaintiffs filed the instant action promptly after their avenues of appeal were exhausted and tolling would serve the dual purposes of avoiding "needless multiplicity of actions" and "put(ting) Defendants on notice of adverse claims and … (preventing) Plaintiffs from sleeping on their rights." (*Crown, supra,* at 351-352)."

Minute Order Re: Motion To Strike p, 1 and 2.[1]

The Court's order is based on sound legal reasoning. Comcast does not even begin to challenge this Court's legal analysis on tolling but merely raises the same argument that failed on the first go around.  It is beyond cavil that the dual purposes of class actions and statute of limitations is to both avoid "needless multiplicity of actions" and "to put defendants on notice

---

[1] Comcast's citation to *Alvarez v. May Dept. Stores Co.*, 143 Cal.App.1223 is misplaced. *Alvarez* deals with the attempt to re-litigate the procedural issue of whether class certification is appropriate in a subsequent class action filed after a denial of class certification in a prior filed case concerning the same class.  This case is not a class action. This case does not seek to revisit class certification.  *Alvarez* does not deal with the issue of whether merits determinations can be made at class certification.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS
OF THE SECOND AMENDED COMPLAINT

of adverse claims and to prevent plaintiffs from sleeping on their rights." *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 351–52 (1983).

However, Comcast seeks to revive the Collateral Estoppel argument because now, twenty-seven (27) months later – in an <u>entirely different case</u> entitled *Hollander v. Comcast,* – Judge Goode has now back tracked from the express language he used in the *Fayerweather* Order.

In the *Fayerweather* Order, Judge Goode **stressed on three occasions** that he made no merits determinations.

Judge Goode set forth clearly in the *Fayerweather* Order Decertifying Class dated December 15, 2012 the following:

> Here, the parties' filings include argument on the merits of the claims. The Court has considered them, but only to understand the nature of the claims made by Mr. Fayerweather, the defenses asserted by Comcast and how the litigation could and would proceed as a practical matter. It has attempted to determine what the litigation involves, what proof would be proffered and how the Court's processes might be used to discover, refine and resolve the issues presented. **This ruling neither makes nor implies any decision on any question of the merits of the litigation. (Emphasis added).**

December 15, 2012, Order Decertifying Class at page 8 lines 8-14.

In fact, Judge Goode *reiterated* in a footnote that he made no merits determinations.

> **Though the Court did not consider the merits of the parties' claims in resolving the certification question, it is not precluded from doing so under certain circumstances....**

December 15, 2012, Order Decertifying Class at page 8 n.5.

At page 21:13-15, Judge Goode stated once again: "This evidence is only a sampling of far more that is in the record. The Court does not examine it to decide the merits of the case."

Comcast now argues that this Court should ignore the clear and unequivocal language of the *Fayerweather* Order because Judge Goode had issued a "non-appealable interim order" in *Hollander* – not *Fayerweather* – suggesting that he made merits determinations. Since the *Hollander* Order is a non-appealable interim, once we have entry of judgment, Judge Goode will have to answer to the Court of Appeal concerning his flip-flop.

Further, since the *Hollander* order is nothing more than an interim order, Comcast does not meet the "five elements" necessary to apply collateral estoppel.

As for the issue of tolling, it is beyond cavil that the dual purposes of class actions and statutes of limitations is to both avoid "needless multiplicity of actions" and "to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 351–52 (1983).

## A. PROCEDURAL HISTORY.

Plaintiffs Joseph Joshua Davis, Penny Schoonover, Leon Gibson, Dustin Wayne Hagens, Raymond Agundez and Rafael Barajas, Jr. filed this action on October 27, 2014. The class action, in which they were absent class members, was filed by Plaintiff Gabriel Fayerweather on May 27, 2008. The class action was filed in Contra Costa County and assigned to Judge Goode. Judge Goode issued an order certifying the *Fayerweather* class action on April 12, 2010. Exhibit 1.[2] Following the Supreme Court's decision in *Brinker*, Judge Goode decertified the *Fayerweather* case. On February 8, 2013, Mr. Fayerweather filed an appeal challenging the legal validity of the trial court's decertification order on the grounds that the decision is rooted in both legal error and an abuse of discretion. The First District Court of Appeal issued its decision on August 28, 2014, affirming the trial court's order decertifying the class. On October 7, 2014, Mr. Fayerweather filed a Petition for Review with the California Supreme Court. On November 25, 2014, the Supreme Court denied the petition. Until the appeal ran its course, the decertification order was not final or binding.

## B. CLASS CERTIFICATION PROCEEDINGS IS A PROCEDURAL DEVICE, NOT A RULING ON THE MERITS.

As this Court noted in its March 27, 2015 order, Class certification is a procedural device. (See *Deposit Guaranty Nat. Bank v. Roper* (1980) 445 U.S. 326, 331 [class certification is a "procedural device"]; *Duran v. U.S. Bank Nat. Assn.* (2014) 59 Cal.4th 1, 34–35; *Sky Sports, Inc. Superior Court* (2011) 201 Cal.App.4th 1363, 1369 ["[a] class action is a procedural device"].) There can be little question but that class certification decisions are procedural in nature.

---

[2]   All the *Fayerweather* information referenced herein is supported by the RJN provided by Comcast and/or the RJN supplied with this opposition.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS
OF THE SECOND AMENDED COMPLAINT

Comcast's false assumption that the doctrine of collateral estoppel precludes plaintiffs from making any allegation, on any theory, following rulings in *Fayerweather* due to the denial of certification in *Fayerweather*, is incorrect. See, *Smith v. Bayer Corp.* 131 S.Ct. 2368 (2011); *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 579 (N.D.Ill.2005). It is a well-settled principle of class action law that class certification is not a merits-based analysis.

### 1.    The *Hollander* Order Lacks Clarity And Cannot Be Reconciled With *Fayerweather*.

On three separate occasions in *Fayerweather*, Judge Goode confirmed "no merits determinations made." Plaintiffs have proceeded with the understanding that no merits determinations were made. *Hollander* simply makes no sense in light of the actual order in *Fayerweather*. More importantly, Judge Goode provides no guidance to any other Court concerning the impact his ruling has on any Plaintiff in any other case. Now that Judge Goode appears to flip-flop, by suggesting that he made merits determinations, what does that mean for this case, or *Fayerweather* for that matter? Is *Fayerweather* now going to be dismissed? Is *Hollander* now going to be dismissed? Is Judge Goode suggesting every individual must now have their case dismissed because he made merits determinations against them? Apparently, Comcast thinks that Judge Goode has ruled in their favor outright. Comcast is asking every reference to "policy, practice and pattern" be struck on the grounds that it has been adjudicated in favor of Comcast. Comcast is asking that this Court strike reference to willful behavior for purposes of waiting time penalties, etc... Did Judge Goode find that waiting time penalties under California Labor Code Section 203 are not warranted for the Plaintiffs in this case? Further, did Judge Goode hold that the Plaintiffs in this case did not work in excess of three and one-half hours per day (see proposed order paragraph 23)? Comcast seems to argue he did.

What is it that Judge Goode actually decided against the Plaintiffs in this case? In the end, the Hollander Order raises more questions than it answers.

### C.    PLAINTIFFS PREVAILED ON THE ISSUE OF EQUITABLE TOLLING AND HAVE ONLY STRENGTHENED THE EXISTING ALLEGATIONS BY ADDING THE FACT THAT THE COURT SENT NOTICE TO THE CLASS CONFIRMING THEY COULD NOT BRING THEIR OWN LAWSUIT IF THEY REMAINED MEMBERS OF THE CLASS.

Plaintiffs omitted from the complaint the fact that Judge Goode's Order instructed the class members that they could not file a separate case. This further strengthens the tolling argument that the Court has already ruled upon in favor of Plaintiffs. Paragraph 8 also added the specific language:

"By doing nothing, you remain in the Class and keep the possibility of getting money or benefits from this lawsuit. If you stay in and the Plaintiff obtains money or benefits, either as a result of the trial or a settlement, you will be notified about how to apply for a share (or how to ask to be excluded from any settlement). **Keep in mind that if you do nothing, you will not be able to sue, or continue to sue, Comcast - as part of any other lawsuit - about the meal period, rest period, or wage claims that are the subject of this lawsuit. You will also be legally bound by all of the Orders the Court issues and judgments the Court makes in this class action regarding the meal period, rest period, and wage claims."** (Emphasis Added).

See Ex. 3 to Request for Judicial Notice

**D.     DEFENDANT'S RELIANCE ON *CROWN, CORK & SEAL v. PARKER, ETC...* IS MISPLACED AS THE CASES ARISE UNDER FEDERAL LAW WHERE DENIAL OF CERTIFICATION IS A FINAL NON-APPEALABLE ORDER, UNLIKE CALIFORNIA LAW WHERE ORDER DOES NOT BECOME FINAL UNTIL APPEAL HAS RUN ITS COURSE.**

FRC Rule 23(f) confirms that a denial of class certification is not an immediately appealable order. A party must petition for and review permission by the reviewing court to appeal. See FRCP Rule 23.[3] This is the complete opposite of California law.

We hold, first, that no policy in the law allowed Stephen to "renew" a class certification motion which had been denied on the merits by a final, appealable order. The one-final-judgment rule generally precludes piecemeal litigation through appeals from orders which dispose of less than an entire action. (*9 Witkin*, Cal. Procedure (3d ed. 1985) Appeal, § 43, pp. 66–67; *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 806, 94 Cal.Rptr. 796, 484 P.2d 964 (*Vasquez* ).) An order denying class certification does not finally dispose of an action since it leaves it intact as to the *individual* plaintiff.

---

[3] Federal Law - FRCP Rule 23 applicable to federal cases states "A court of appeals **may permit** an appeal from an order granting or denying class-action certification under this rule if a petition for **permission** is filed with the circuit clerk

California law – A denial of class certification is the death-knell of the case and thus denials of class certification are immediately appealable. *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695. (No petition to appeal is required as in federal cases).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS
OF THE SECOND AMENDED COMPLAINT

However, the order is appealable if it effectively terminates the entire action as to the class, in legal effect being "tantamount to a dismissal of the action as to all members of the class other than plaintiff. [Citations.]" (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699, 63 Cal.Rptr. 724, 433 P.2d 732; *Richmond v. Dart Industries, Inc., supra,* 29 Cal.3d 462, 470, 174 Cal. Rptr. 515, 629 P.2d 23.) The appeal is allowed, as a matter of state law policy, because the order has "the 'death knell' effect of making further proceedings in the action impractical...." (*General Motors Corp. v. Superior Court* (1988) 199 Cal.App.3d 247, 251, 244 Cal. Rptr. 776.) Federal law, by contrast, while acknowledging death-knell consequences, denies a right of direct appeal in any circumstances. (*Ibid.; Coopers & Lybrand v. Livesay* (1978) 437 U.S. 463, 469–470, 98 S.Ct. 2454, 2458–2459, 57 L.Ed.2d 351.) Because California allows direct appeals of death-knell orders, a plaintiff who fails to appeal from one loses forever the right to attack it. The order becomes final and binding. Two cases from this district illustrate the concept, holding that plaintiffs could not, on appeal from final judgments on the merits of their cases, attack final orders denying class certification. (*Guenter v. Lomas & Nettleton Co.* (1983) 140 Cal.App.3d 460, 465, 189 Cal. Rptr. 470; *Morrissey v. City and County of San Francisco* (1977) 75 Cal.App.3d 903, 906–908, 142 Cal.Rptr. 527.) This, of course, is the reverse of federal law, which makes certification orders reviewable *only* on appeal *812 from the final judgment. (*General Motors Corp. v. Superior Court, supra,* 199 Cal.App.3d 247, 251, 244 Cal. Rptr. 776.)

*Stephen v. Enter. Rent-A-Car,* 235 Cal. App. 3d 806, 811-12 (Ct. App. 1991)

In support of its position, Comcast relies on principles of Federal law (denial of class certification are non-appealable final orders per FRCP Rule 23(f)) that are inconsistent with California state law (i.e., denials of class certification are automatically appealable and do not become final until the appeal process has run its course). Under Rule 23, at the time of denial of certification, the order became final and binding. Conversely, in state court the *decision is not final if the deadline for appeal has not passed.* [*Long Beach Unified School Dist. v. State of Calif.* (1990) 225 CA3d 155, 168-169, 275]. In California, until order becomes final, it is not binding and tolling applies. *Stephen v. Enter. Rent-A-Car,* 235 Cal. App. 3d 806, confirmed that the until the appeal runs its course, the order is not final nor binding. ["Because California allows direct appeals of death-knell orders, a plaintiff who fails to appeal from one loses forever the right to attack it. The order becomes final and binding"].

*Stephen v. Enter. Rent-A-Car*, 235 Cal. App. 3d 806, 811-12 (Ct. App. 1991)

Since Plaintiffs timely filed an appeal on February 8, 2013, the order did not become final nor binding until the appeal was resolved. The First District Court of Appeal issued its decision on August 28, 2014, affirming the trial court's order decertifying the class. On October

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS
OF THE SECOND AMENDED COMPLAINT

7, 2014, Mr. Fayerweather filed a Petition for Review with the California Supreme Court. On November 25, 2014, the Supreme Court denied the petition. This matter was filed on November 7, 2014. Accordingly, tolling applies to the entire period.[4]

Rather than focus on California law, Comcast seeks to import the reasoning of federal courts Circuit in inapposite circumstances. Comcast relies on federal cases involving FRCP Rule 23 -- a different appellate statutory scheme than the California appellate laws applicable here.

## E.   THE UNITED STATES SUPREME COURT REJECTS DEFENDANT'S ARGUMENT THAT THERE IS NO TOLLING.

In *American Pipe & Constr. Co. v. Utah* (1974) 414 U.S. 538, the United States Supreme Court held statutory limitation periods are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. . . .The policies of ensuring essential fairness to defendants and of barring a plaintiff who "has slept on his rights," are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.* at 554-55. Almost ten years after *American Pipe*, the Court handed down its decision in *Crown, Cork & Seal Co., Inc. v. Parker* (1983) 462 U.S. 345 holding that the extension of *American Pipe* to individuals who institute separate actions following denial of certification does not frustrate the policies behind a statute of limitations: "Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the

---

[4] Comcast's reliance on *Hall* is distinguishable. In *Hall*, the court, on the eve of trial, decertified the case because trial counsel failed to disclose experts, fact witnesses and disclose any expert reports pursuant to the federal court deadline that would address the issue of classwide damages. The court found counsel's conduct inexcusable and refused to allow trial counsel's attempt to remedy the matter with an untimely disclosure. After waiting five (5) years after the court dismissed the class allegations for counsel's inexcusable conduct, two members of the putative class filed a new class action. The *Hall* plaintiffs sought tolling after inexplicably waiting five (5) years to re-file their claims. Unlike the Plaintiffs here, the *Hall* Plaintiffs <u>were</u> sleeping on their rights by not taking action in light of trial counsel's disclosure abuses and the court was understandably not willing to revive those claims – and certainly not on a class basis. In contrast, Plaintiffs here have promptly filed their claims and have only pursued *individual* claims within days of the decertification order becoming final.

method class members choose to enforce their rights upon denial of class certification." *Id.* at 353.

> To hold to the contrary would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitations period would be to file earlier individual motions to join or intervene as parties – precisely the multiplicity of activity which Rule 23 was designed to avoid in those cases where a class action is found "superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3).

*American Pipe & Construction Co. v. Utah* 414 U.S. 538, 550-51.

In *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), the Court extended *American Pipe* to allow tolling not only where plaintiffs sought to intervene in a continuing action, but also where they sought to file an entirely new action. According to the Court, "[t]he filing of a class action tolls the statute of limitations as to all asserted members of the class ... not just as to interveners." *Id.* at 350, 103 S. Ct. 2392 (internal quotations omitted). Again, the Court relied upon the dual purposes of class actions and statutes of limitations. In order to both avoid "needless multiplicity of actions" and "to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights," tolling was appropriate. *Id.* at 351–52, "[T]olling the statute of limitations...creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification." *Id.* at 353.

Tolling under *American Pipe* is recognized in this State:

> "The policies of ensuring essential fairness to defendants and of barring a plaintiff who has 'slept on his rights,' . . . are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. [Citation.]"
> *Becker v. McMillan Constr. Co.* (1991) 226 Cal.App.3d 1493, 1498 quoting *Jolly*, 44 Cal.3d at 1121.

Most of the Supreme Court's discussion in *Jolly, supra*, 44 Cal.3d 1103, of the rationale in *American Pipe, supra*, 414 U.S. 538, focused on this requirement in the tolling doctrine, adequate notice to the defendant. The court pointed out a potential danger of abuse of the "generous" [*Crown, Cork & Seal Co., supra*, 462 U.S. 345, 354 [76 L.Ed.2d at pp. 636-637] (Powell, J., conc.)] rule of *American Pipe*: Class actions might be filed merely to evade limitations periods. (*Jolly, supra*, 44 Cal.3d at p. 1124.) To avoid such

abuse, tolling is to be allowed only where the class action and the later individual action or intervention are based on the same claims and subject matter and similar evidence. (*Ibid.*)

*Becker*, 226 Cal.App.3d at 1499.

Plaintiffs allege the *identical* claims made in the *Fayerweather* complaint for and are brought by persons in the identical job positions *i.e.*, Techs. In contrast is *Jolly*, for there the Court declined application of tolling because it concluded that the inconsistency of the claims meant there was no way that a defendant could have properly been on notice: "The discrepancies between the nature of the relief sought in *Sindell* and *Jolly* (declaratory relief and damages, respectively) and the factual and legal issues in the two actions (causation of injury and damages) were too great for any notice to be presumed. Considerations of protecting the class action device gave way to the stronger consideration under the circumstances: protecting the defendant from unfair claims." *cor*, 226 Cal.App.3d at 1499. The *Jolly* Court also noted the potential for abuse where a class action is filed *purposely* to evade the statute of limitations (*Jolly*, 44 Cal.3d at 1124) and so held, "To avoid such abuse, tolling is to be allowed only where the class action and the later individual action or intervention are based on the same claims and subject matter and similar evidence." *Id.* Again, the claims in each of these related cases are identical and all brought by persons in the same job titles, an identity of claims and persons which Comcast admits.

As the Ninth Circuit has explained, statutes of limitation are intended to protect defendants by giving them notice of a claim before the evidence becomes stale. *In re Hanford*, 521 F.3d at 1053. Comcast has been on notice of the nature of the claims and the evidence and has preserved and produced much of the evidence for these plaintiffs in the *Fayerweather* action. In *In re Worldcom*, the Sixth Circuit also rejected the same argument made by Defendants here:

> The district court may be correct that its conception of the *American Pipe* rule would reduce the number of individual suits filed by class members. But this is beside the point. While reduction in the number of suits may be an incidental benefit of the *American Pipe* doctrine, it was not the purpose of *American Pipe* either to reduce the number of suits filed, or to force individual plaintiffs to make an early decision whether to proceed by individual suit or rely on a class representative. Nor was the purpose of *American Pipe* to protect the desire of a defendant "not to defend against multiple actions in multiple forums." *Crown*, 462 U.S. at 353. The *American Pipe* tolling doctrine was created to protect class members from being forced to file individual suits

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE SECOND AMENDED COMPLAINT

in order to preserve their claims. It was not meant to induce class members to forgo their right to sue individually.

*In re Worldcom,* 496 F.3d at 256.

This latter point is precisely what Comcast wishes to accomplish, that is to both induce individuals to forego their right to sue and then to cut off the rights of those individuals that seek to enforce their rights by filing suit.

Having argued in *Fayerweather* that class treatment was not necessary because the employees could bring individual suits, Comcast should now be estopped from taking a contrary position by asking this Court to ignore that assertion *and* the settled law and instead bar the very individual claims which Comcast argued it would prefer.

"[I]t is axiomatic that one who seeks equity must be willing to do equity. (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal. App. 4th 445, 453 [61 Cal. Rptr. 2d 707].) . . . This maxim stems from the paramount principle that equity is, peculiarly, a forum of conscience. (*Couts v. Cornell* (1905) 147 Cal. 560, 563 [82 P. 194].)" (*In re Marriage of Plescia* (1997) 59 Cal. App. 4th 252, 257-258 [69 Cal. Rptr. 2d 120].)

*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal. 4th 163, 180.

### 1. *American Pipe* Sets Forth The Two Criteria For The Court To Evaluate In Deciding Whether Tolling Applies.

Underlying the tolling rule of *American Pipe, supra,* 414 U.S. 538 were two major policy considerations. The first was the protection of the class action device. In cases where class certification is denied for what the high court characterized as "subtle factors," unforeseeable by class members, a rule that failed to protect putative class members from the statute of limitations after denial of certification would induce potential class members to "file protective motions to intervene or to join in the event that a class was later found unsuitable," depriving class actions "of the efficiency and economy of litigation which is a principal purpose of the procedure." (*American Pipe, supra,* 414 U.S. at p. 553; see also *Crown, Cork & Seal Co.* v. *Parker, supra,* 462 U.S. at pp. 350-351).

The second consideration involved the effectuation of the purposes of the statute of limitations. "The policies of ensuring essential fairness to defendants and of barring a plaintiff who has 'slept on his rights,' the high court stated, "are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the

defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." (414 U.S. at pp. 554-555). In these circumstances, the court concluded, the purposes of the statute of limitations would not be violated by a decision to toll. (*Ibid.*; see, generally, Comment, *Class Actions and Statutes of Limitations* (1981) 48 U. Chi. L.Rev. 106, 108-109.)

Here, the two factors that the court must consider weigh in favor of tolling for the Named Plaintiffs. The *Fayerweather* case was filed to remedy the same rights that are now being adjudicated through these individual actions. Comcast concedes this fact in trying to strike allegations that mirror those contained in the *Fayerweather* complaint. The denial of tolling would undermine the primary purpose behind tolling (i.e., protecting putative class members from the statute of limitations to ensure the efficiency and economy of litigation which is a principal purpose of the class action procedure).

To recap, the individuals who have filed suit herein were class members of the certified *Fayerweather* class that remained certified for close to three (3) years. When the California Supreme Court rendered its decision in *Brinker*, Plaintiff's counsel was required to submit further briefing on certification. The trial court decertified the class following further briefing and Plaintiffs immediately appealed the decertification. This case was filed on the heels of the appellate decision affirming the finality of the decertification order. Requiring the putative class members of a previously certified class to file individual lawsuits when the issue of class status remained an open question – and before the decertification order became final – would undermine the purpose behind the class action device. Comcast's motion fails to address the fact that for more than two (2) years, the class was certified. It is more than reasonable and in fact prudent for the plaintiffs, who were part of a certified class for more than two (2) years, to wait to see if the certification order would be reinstated. Had the appeal been successful, judicial economy would not have been served by having the plaintiffs' lawsuit coexist with a separate class action covering their same rights pending in another forum. Avoiding multiplicity of lawsuits, while preventing prejudice to defendants, are the key public policies behind tolling.

### a. *Fayerweather* Court Ordered Notice Telling Plaintiffs That If They Did Not Opt Out They Could Not Bring A Separate Suit.

As explained above, the class notice sent to the Plaintiffs confirmed that they could not bring their own suit if they did not opt out of the class.  Plaintiffs did not opt out and reasonably

relied on the Class Notice ordered by the Judge in the *Fayerweather* action.  Is Defendant suggesting that Plaintiffs acted unreasonably by following the Court's order? Is Defendant suggesting that the Plaintiffs should have challenged the Court's order by filing a separate lawsuit and potentially subjecting themselves to sanctions for violating the Court's order? On the contrary, Plaintiffs reasonably relied on the Court's order not to bring their own case until the appellate process had run its course.

### 2.  Tolling Is Appropriate As Defendant Has Been On Notice Of The Individuals And Their Claims From The Inception of The *Fayerweather* Lawsuit.

Since Comcast must concede the existence of the doctrine of tolling, the crux of Comcast's argument is that the court should apply only *partial* tolling. In other words, Comcast concedes it was on notice of the claims and individuals involved. Yet for some unsupported reason, Comcast asks the court to ignore this factor and excuse Comcast from substantial liability for claims. This is without any suggestion that Comcast could otherwise be prejudiced. Comcast cannot assert prejudice since it has been on notice of these claims for years. Comcast was both on notice of the claims and knew the individuals involved.

### a.  Not Only Is Comcast On Notice, Comcast Has Preserved And Produced To Plaintiff's Counsel All Evidence For All Class Members, Including The Named Plaintiffs

Class actions promote "efficiency and economy of litigation" by consolidating numerous individual suits into a single suit. *Id.* Statutes of limitations "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories faded and witnesses disappeared." *Id.* at 554. The Court accommodated both purposes by formulating a "rule ... that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.*

*Catholic Soc. Services, Inc. v. I.N.S.*, 232 F.3d 1139, 1146-47 (9th Cir. 2000)

Where the class action complaint provided defendant with *notice* of the nature and the number of all potential claims, the statute will be tolled. [*Jolly v. Eli Lilly & Co.* (1988) 44 C3d 1103, 1122]. Comcast has been on notice from "day one" of the claims and the putative class members (which include the claims encompassed in this litigation) on whose behalf the case has been brought.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS
OF THE SECOND AMENDED COMPLAINT

As part of the extended class certification and decertification proceeding and preparations for trial (close to four years), massive amounts of data for all class members, including the plaintiffs, in the form of time sheets, time records, electronic data for each class member for each work day, payroll data, work days, lengths of shifts, jobs performed, etc. were produced by Comcast to Plaintiff's counsel in the *Fayerweather* action.  All evidence that existed has been produced and thus the concern of surprise is non-existent.

Further, noticeably absent from Comcast's motion is any suggestion that it has been prejudiced in anyway by the filing of this action, that Plaintiff is alleging new and previously unknown claims or that Comcast was ignorant of the individuals whose claims were at issue in *Fayerweather*. Does Comcast seriously expect this court to accept that it was not on notice about the claims of these individuals?  And, how is a court to make that adjudication based on the pleadings alone?  The claims were laid out on numerous occasions and Comcast has known both the nature of the claims and the identity of the individuals. It was Comcast who actually identified them in the lawsuit. Comcast cannot suggest it has not been on notice of the claims in this lawsuit, or that they did not have knowledge of the individuals involved. In summary, statutes of repose apply to those who have slept on their rights to the prejudice of the other side. Plaintiff's neither slept on their rights nor was Comcast ignorant of the claims alleged or the individuals on whose behalf the *Fayerweather* class action was brought.

## F.    *HOLLANDER* IS AN INTERIM ORDER AND THUS COMCAST CANNOT MEET THE FINAL ORDER REQUIREMENT FOR ISSUE PRECLUSION

It is the substance and effect of the adjudication, and not the form, which determines if the order is interlocutory and non-appealable, or final and appealable. (*Belio v. Panorama Optics, Inc.* (1995) 33 Cal.App.4th 1096, 1101, 39 Cal.Rptr.2d 737.) If no issues in the action remain for further consideration, the decree is final and appealable. But if further judicial action is required for a final determination of the rights of the parties, the decree is interlocutory. (*Ibid.*) The decree will not be appealable "unless it comes within the statutory classes of appealable interlocutory judgments." (*9 Witkin, Cal. Procedure* (4th ed. 1997) Appeal, § 94, p. 156; see also *Eldridge v. Burns* (1978) 76 Cal.App.3d 396, 403, 142 Cal.Rptr. 845.) *Doran v. Magan*, 76 Cal. App. 4th 1287, 1293, 91 Cal. Rptr. 2d 60, 64 (1999).

Collateral estoppel bars a party from re-litigating in a later lawsuit on a *different* cause of action *issues actually litigated* in an earlier proceeding that were *essential* to the earlier

1 adjudication. [*Bernhard v. Bank of America Nat'l Trust & Sav. Ass'n* (1942) 19 C2d 807, 813,].

2 Issue preclusion prevents a party from re-litigating an issue that has already been adjudicated.

3 The doctrine applies when: (1) the issue sought to be precluded is identical to that decided in a

prior proceeding; (2) the issue is actually litigated in the prior proceeding; (3) the issue was

4 necessarily decided in the prior proceeding; (4) the decision in the prior proceeding was final

5 and on the merits; and (5) the party against whom preclusion is sought is the same as, or in

6 privity with the party to the former proceeding. *Lucido v. Superior Court,* 51 Cal.3d 335, 341

7 (Cal. 1990).

8        The *Hollander* matter is not final. The case has not been dismissed nor has judgment

9 been entered. A final determination of the rights of the parties has not been made.

10                                    **CONCLUSION**

11        For the foregoing reasons, Comcast's motion to strike should be denied.

12

13                                         Respectfully submitted

14 Dated: July 1, 2015

15                                         **RIGHETTI GLUGOSKI , P.C.**

16

17                                         _____
                                           John Glugoski, Esq.
                                           Attorneys for Plaintiff

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS
OF THE SECOND AMENDED COMPLAINT

1  **MATTHEW RIGHETTI, SBN 121012**
**JOHN GLUGOSKI, SBN 191551**
2  **RIGHETTI GLUGOSKI, P.C.**
456 Montgomery Street, Suite 1400
3  San Francisco, CA  94104
Telephone:  (415) 983-0900
4  Facsimile:  (415) 397-9005
5
Attorneys for Plaintiffs
6

7

8
**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9
**FOR THE COUNTY OF STANISLAUS**
10

11  JOSEPH JOSHUA DAVIS, PENNY          **Case No.:  2011900**
SCHOONOVER, LEON GIBSON, DUSTIN
12  WAYNE HAGENS, RAYMOND
AGUNDEZ, RAFAEL BARAJAS, JR.,
13                                     **PLAINTIFFS' REQUEST FOR**
**JUDICIAL NOTICE IN OPPOSITION**
14                                     **TO DEFENDANT'S MOTION TO**
**STRIKE PORTIONS OF THE SECOND**
15           Plaintiffs,              **AMENDED COMPLAINT**
16     vs.
17                                     Date:    July 16, 2015
Time:    8:30 a.m.
18  COMCAST CORPORATION, a Pennsylvania  Dept:    21
Corporation;  COMCAST  OF  CONTRA
19  COSTA, INC., a Washington Corporation;  Complaint filed October 27, 2014
and DOES 1 through 50, Inclusive,
20
21           Defendants.
22

23

24

25

26

27

28

PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANT'S
MOTION TO STRIKE PORTIONS OF THE SECOND AMENDED COMPLAINT

Plaintiffs hereby submit the following Request for Judicial Notice in support of their Opposition to Motion to Strike Portions of the First Amended Complaint pursuant to sections 452(d) and 453 of the California Evidence Code and Rule 3.1306(c) of the California Rules of Court. Plaintiffs respectfully request that the Court take judicial notice of the following documents in support of its Opposition to Motion to Strike Portions of the First Amended Complaint:

1.    **Exhibit 1** is a true and correct copy of the Minute Order re: Defendant's Motion to Strike Portions of Complaint dated March 27, 2015

2.    **Exhibit 2** is a true and correct copy of the Order Decertifying Class dated December 15, 2012 in *Fayerweather*.

3.    **Exhibit 3** is a true and correct copy of the Class Notice Approved and Ordered to be sent to the class members. The content of the notice includes the following language:

"By doing nothing, you remain in the Class and keep the possibility of getting money or benefits from this lawsuit. If you stay in and the Plaintiff obtains money or benefits, either as a result of the trial or a settlement, you will be notified about how to apply for a share (or how to ask to be excluded from any settlement). Keep in mind that if you do nothing, you will not be able to sue, or continue to sue, Comcast - as part of any other lawsuit - about the meal period, rest period, or wage claims that are the subject of this lawsuit. You will also be legally bound by all of the Orders the Court issues and judgments the Court makes in this class action regarding the meal period, rest period, and wage claims."

Dated: July 1, 2015                              RIGHETTI GLUGOSKI, P.C.

John Glugoski
Attorneys for Plaintiffs

PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANT'S
MOTION TO STRIKE PORTIONS OF THE SECOND AMENDED COMPLAINT

# EXHIBIT 1

SUPERIOR COURT OF CALIFORNIA, COUNTY OF STANISLAUS

JOSEPH DAVIS, et al.         vs.        COMCAST CORPORATION, et al.
        Plaintiff                                           Defendants

**NATURE OF HEARING:** Defendant COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC'S Motion to Strike Portions of the Complaint.

                                                    Case No.:   2011900

**JUDGE: WILLIAM A. MAYHEW**      Bailiff: M. Emig        Date: Mar. 27, 2015
Clerk: J. Crawford              Reporter: S. Lauzon      Modesto, Calif.

Appearances:

Plaintiffs were present by Matthew Righetti, Esq.

Defendants COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC were present by Allison B. Moser, Esq.


Court finds that upon the posting of the tentative ruling, a hearing was requested by plaintiff and defendant's counsel.

**IT IS HEREBY ORDERED,**

After hearing oral argument and reviewing the moving and opposing papers, the Court affirms its tentative decision as follows:

Defendant Comcast Cable Communications' Motion to Strike Portions of the Complaint is **GRANTED as to the challenged section of Paragraph 44 with leave to amend, and DENIED as to all other requests.**  Plaintiffs shall filed an amended complaint not later than April 10, 2015.

Plaintiffs did not oppose Defendant's Motion to Strike with regard to Paragraph 44.  With respect to the other challenged portions of the Complaint, the Court notes initially that they are not precluded by collateral estoppel based on any findings made by the Court in the decertification order issued in *Fayerweather v. Comcast*, Contra Costa County Superior Court, Case No. MSC-08-01470.  The class decertification order in *Fayerweather* is not an order issued "on the merits".  "The certification question is essentially a procedural one that does not ask whether an action is legally or factually meritorious."  *Hall v. Rite Aid Corporation* (2014) 226 Cal.App. 4th 278.  Further, any allegation that the statute of limitations has been tolled "to the present" appears appropriate given the guidelines set forth in *American Pipe & Construction Co v. Utah* (1974) 414 U.S. 538 and *Crown, Cork & Seal Co., Inc. v. Parker*

_____
**MINUTE ORDER**

(1983) 462 U.S. 345. Plaintiffs filed the instant action promptly after their avenues for appeal were exhausted and tolling would serve the dual purposes of avoiding "needless multiplicity of actions" and "put(ting) Defendants on notice of adverse claims and … (preventing) Plaintiffs from sleeping on their rights." (*Crown, supra*, at 351-352).

Both parties' requests for judicial notice are **GRANTED**.

---

**MINUTE ORDER**

PROOF OF SERVICE BY MAIL
[1013a(3) C.C.P.]

**STATE OF CALIFORNIA** )
                        )  SS
**COUNTY OF STANISLAUS)**


I am over the age of 18 years and employed by the Superior Court of the State of California, County of Stanislaus, and not a party to the within action.  I certify that I served a copy of the attached **MINUTE ORDER** by placing said copy in an envelope addressed to the following:

Matthew Righetti, Esq.
Righetti Glugoski
456 Montgomery Street, Suite 1400
San Francisco, CA 94104

Allison B. Moser, Esq.
Jones Day
1755 Embarcadero Road
Palo Alto, CA 94303

Said envelope was then sealed and postage thereon fully prepaid, and thereafter was on March 27, 2015 deposited in the United States mail at Modesto, California.  That there is delivery service by United States mail at the place so addressed, or regular communication by United States mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 27, 2015 at Modesto, California


                SUPERIOR COURT OF THE STATE OF CALIFORNIA
                IN AND FOR THE COUNTY OF STANISLAUS



                By_____
                   Julie Crawford, Deputy Clerk

**EXHIBIT 2**

ELECTRONICALLY
FILED
12/17/2012
K. TORRE, CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA - MARTINEZ
BY: S. PASSOT, DEPUTY CLERK

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**CONTRA COSTA COUNTY**

| | |
|---|---|
| **GABRIEL FAYERWEATHER**, as an individual and on behalf of others similarly situated<br>**PLAINTIFF**<br>V.<br>**COMCAST CORPORATION**, a Pennsylvania Corporation; **COMCAST OF CONTRA COSTA, INC.**; a Washington Corporation; and DOES 1 through 50 Inclusive,<br>**DEFENDANTS** | MSC08-01470<br><br>ORDER DECERTIFYING CLASS |

This is a wage and hour class action. Plaintiff is a communications technician ("Com-Tech") employed by Comcast[1] and is responsible for installing cable, internet, telephone and related services in Comcast customers' homes and offices.

In his first amended complaint, plaintiff asserts causes of action for: (1) failure to pay for all hours worked, (2) breach of an implied-in-fact contract, (3) failure to provide proper meal breaks, (4) failure to provide proper rest breaks, (5) unfair business practices and (6) failure to provide accurate itemized wage statements.

Plaintiff sues on behalf of himself and others similarly situated. The parties have identified a class of more than 1,800 communications technicians.

[1] As used in this Order, "Comcast" refers to defendants Comcast Corporation and Comcast of Contra Costa, Inc.

On April 12, 2010, the Court granted plaintiff's motion for class certification. In its order granting class certification, the Court found the issue of commonality, specifically the predominance of common questions, presented a "close case." (Order Granting Class Certification, Apr. 12, 2010, p. 5.) However, the court granted the motion, finding that there was a predominance of common questions under "plaintiff's theory that Comcast has adopted a policy of understaffing (or over-scheduling) that makes it unlikely that Com-Techs can have their required breaks each day." (*Id.* at p. 6.)

The Court rejected defendants' argument that individualized inquiries would be needed to determine liability. In rejecting that argument, the Court expressly relied on plaintiff's theory of the case that defendants had a company-wide policy that created liability.

Once the class was certified, plaintiff sought to set a trial date. The Court asked the parties how long the trial would take. Plaintiff was unable to give a reasoned estimate because he had not sufficiently considered how he would present his case.

The Court asked plaintiff to prepare a workable plan for the trial of his case-in-chief. It also asked the parties to meet and confer about the trial plan and attempt to determine a realistic estimate for the length of the trial. The Court conducted case management conferences on April 21, 2011, July 18, 2011 and November 17, 2011. At none of those hearings was plaintiff able to present a workable plan for the management of the trial. Defendant asked the Court to decertify the class.

By the time of the November 17, 2011 hearing, the California Supreme Court had heard oral argument in *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal. 4th 1004. It was clear that the outcome of that case could have a significant bearing on this litigation.

After a discussion of these matters the Court ordered plaintiff to show cause why the class should not be decertified based on lack of predominance of common questions and lack of superiority and manageability. (Minute Order, Nov. 17, 2011.) It also asked the parties to address – in their decertification briefs – the effect of the California Supreme Court decision in *Brinker Restaurant Corp. v. Superior Court* on the issue of certification. (*Id.*) It ordered that plaintiff's opening brief be filed 45 days after the Supreme Court issued its ruling in *Brinker*.

Plaintiff filed his opening brief on May 29, 2012. In it he advanced new theories which he claimed support a finding that common questions dominate the litigation. Essentially, plaintiff abandoned his claim that Comcast has a "policy of understaffing or over-scheduling." In other words, plaintiff discarded the principal theory on which the Court had based its decision to certify a class.

Now plaintiff's theories are:

(1) Comcast has adopted a policy or practice that requires Com-Techs to (a) keep their phones on and (b) remain logged-on to the TechNet network[2], so that they are not relieved of all duty during their meal and rest breaks;

(2) Comcast has adopted a policy or practice that requires Com-Techs to record a 60 minute meal period on their timecards even though other company records show shorter lunch periods, making it likely that employees are required to work off-the-clock;

---

[2] TechNet is a component of a scheduling system developed for Comcast by CSG. The TechNet component is used by Com-Techs to log various status (*e.g.* "on job", "en route", "break", "lunch", etc.) that are reviewed by Comcast's dispatchers and supervisors for purposes of managing Com-Techs' schedules and work assignments. The component of the CSG system used by dispatchers and supervisors is called WorkForce Express. (See, Dutton Decl. ¶¶ 4-7.) Collectively, these components are sometimes referred to as the "CSG system."

(3) Comcast has failed to pay putative class members one hour of premium pay for missed or late meal periods;

(4) Comcast has adopted a policy that prohibits Com-Techs from waiving a second meal period for shifts greater than 12 hours, yet Comcast's records show that meal breaks for such shifts are often not taken; and

(5) Comcast has adopted a policy of not providing a third rest break for shifts greater than 10 hours in duration.[3]

In opposition, Comcast argues that plaintiff has not met his burden of showing these theories are susceptible to common proof. Comcast also argues that class treatment is not a superior means of litigating the case and that plaintiff's case would be unmanageable as a class action. Comcast adds that, under his new theories, plaintiff is no longer an adequate representative of the putative class.[4] Finally, Comcast moves to strike the declaration of plaintiff's expert, David Breshears.

On October 25, 2012, the court issued a tentative ruling with respect to the class certification motion and the motion to strike. As to the former, it wrote:

> The parties are to appear and be prepared to argue the merits of the
> class certification issues. The Court will allow each side an opening
> argument and asks that each side address at least: 1) whether there is
> a common issue with regard to an "on-duty lunch" and if so, what
> evidence supports the argument that Comcast has a policy of

---

[3] With his first motion for class certification, plaintiff presented theories similar to numbers two and three above. In its prior order granting class certification, these two theories were not separately addressed. Rather, the Court treated these two theories as derivative of plaintiff's theory that Comcast had a policy of understaffing and found that common issues predominated based on this overarching theory.

[4] Plaintiff testified in his deposition that the only basis for his meal and rest break claims was that Comcast was understaffed, which forced him to miss his breaks. (Alvarez Decl., Exh. 5, Depo. of Gabriel Fayerweather, p. 131:10-13.)

4

requiring Com Techs to remain on duty; 2) how there can be proof that comports with *Brinker* and *Wal-Mart* to establish liability with regard to alleged missed meal and rest breaks; 3) what weight, if any to give to the Breshears declaration – and if it is to be given any weight, how (if at all) it is helpful in deciding the issue before the Court.  [¶]  By identifying these issues, the Court does not mean to preclude counsel from addressing whatever else he or she thinks relevant to the issue before it.

As to the Breshears declaration, it wrote:

> Defendants' motion to strike the declaration of David Breshears is <u>denied</u>. This order is made without prejudice to defendants' ability to challenge the admissibility of Mr. Breshears' testimony at a later stage of the litigation. It is also without prejudice to any argument that may be made as to what weight that should be given to Mr. Breshears' conclusions about "potential violations" at this stage of the litigation.

A hearing was held on October 26, 2012 at which time the court heard oral argument from counsel for plaintiff and defendants.

The Court has read the extensive pleadings filed by the parties.  It has read the declarations, testimony and other supporting material submitted by them.  It has carefully considered the issues raised by both the motion to strike and the order to show cause.  It has determined that the motion to strike should be denied but that the class must be decertified.

/ / /

/ / /

5

## I.   EVIDENTIARY RULINGS

As a preliminary matter, the Court addresses the parties' evidentiary objections.

On October 25, 2012 the Court provided the parties with its tentative rulings on those objections. Neither party challenged the tentative rulings which, therefore, became final. Those rulings were (and are) as follows.

Defendants' Objections to Plaintiff's Opening Brief are <u>overruled</u> on all stated grounds. The objections are directed to the briefs as opposed to the underlying evidence, which goes to the weight of the argument and not the admissibility of the evidence.

Defendants' Objections to Dispatcher Declarations are <u>overruled</u> on all stated grounds, except as follows:

- Alcantar Declaration ¶ 4, last sentence, <u>sustained</u> for lack of foundation and lack of personal knowledge.

- Hodson Declaration ¶ 11, <u>sustained</u> for lack of personal knowledge and hearsay.

- Hodson Declaration ¶ 18, last sentence, <u>sustained</u> as improper opinion testimony.

- Hodson Declaration ¶ 21, first sentence, <u>sustained</u> for lack of personal knowledge.

- Douglas Declaration ¶ 13, last sentence, <u>sustained</u> as improper opinion testimony.

Plaintiff's Objections to Defendant's Evidence are <u>overruled</u>. Code of Civil Procedure § 436 is not a valid grounds for evidentiary objections; rather, it addresses the procedure for bringing a notice motion to strike an improper pleading. The objection to the declaration of Joshua Simes on relevance and foundational grounds is also <u>overruled</u>.

1    Defendants' Objections to Plaintiff's Evidence in Reply are <u>overruled</u> on all stated

2   grounds. Though the objections appear to be directed to particular evidence, the bases for

3   the objections are that plaintiff mischaracterized the evidence in his reply brief and his

4   statement of evidence. This goes to the weight of the argument, not the admissibility of

5   the evidence.

6    Defendants' unopposed request for judicial notice is <u>granted</u>. Evid. Code § 452,

7   subd. (b), (d).

8   **II.    MOTION TO STRIKE**

9    Comcast seeks to strike the declaration of Mr. Breshears on the grounds that (1) he

10   is not qualified to give an expert opinion on the matters asserted in his declaration; (2) his

11   testimony is based on an unreliable scientific method; and (3) his testimony is based on

12   unreliable data and does not concern issues that aid the trier of fact.

13    In his report, Mr. Breshears summarizes "potential" meal period violations based

14   on his analysis of both Comcast's electronic time keeping system ("ESS") as well as a

15   system developed CSG and used by Comcast to facilitate communications between Com-

16   Techs and Dispatchers regarding the scheduling of appointments ("CSG"). Mr.

17   Breshears opines that the CSG data is a more accurate representation of Com-Techs'

18   hours, including when meal breaks were taken and the duration of each meal break.

19    Comcast first argues Mr. Breshears is not a qualified expert because he is not a

20   statistical expert and no special training is required to report on employee pay data.

21   Comcast cites no authority in support of its contention that only a statistical expert is

22   qualified to testify on matters relating to an analysis of employee time records.

23    As a Certified Public Accountant (CPA) and Certified Financial Forensics

24   professional (CFF), Mr. Breshears is qualified to review financial and payroll records

25   from Comcast and prepare summary reports of those records. Indeed, Mr. Breshears

7

1    testified that he has performed such analyses in wage and hour matters, including class

2    actions, for over ten years. (Alvarez Decl., Exh. B, p. 11:6-12:15.)

3        The real concern, as discussed below, is not whether Mr. Breshears is qualified

4    but, rather, whether his testimony and reports will aid the court in determining common

5    questions of liability. In order to rely on this type of procedural tool, plaintiff "must

6    [first] explain how the procedure will effectively manage the issues in question." *Dunbar*

7    *v. Albertson's, Inc.* (2006) 141 Cal. App. 4th 1422, 1432.

8        Comcast next argues that Mr. Breshears' testimony does not satisfy the *Kelly/Frye*

9    standard because it is not based on generally accepted scientific techniques. The purpose

10   of the test set forth in the *Kelly* and *Frye* cases is to determine whether a new scientific

11   method or novel method of proof employed by an expert is sufficiently reliable. *People*

12   *v. Kelly* (1976) 17 Cal. 3d 24 (declining to admit expert testimony regarding voiceprint

13   identification because there was insufficient evidence the procedure had gained general

14   scientific acceptance); *Frye v. U.S.* (D.C. Cir. 1923) 293 F. 1013 (holding expert

15   testimony regarding lie detector results was not admissible because the new procedure

16   had not yet gained scientific recognition).

17       There is no evidence that Mr. Breshears has employed a new scientific method or

18   that preparing a summary of payroll records is a novel method of proof in wage and hour

19   class actions. To the contrary, analyses of payroll records have regularly been relied on

20   at various stages of wage and hour class actions. Although that kind of evidence has had

21   varying success on the merits, the evidence has been admitted by the courts. *See, e.g.,*

22   *Bell v. Farmers Ins. Exchange* (2004) 115 Cal. App. 4th 715, 746-7. Moreover,

23   Comcast's expert testified that Mr. Breshears' methods were appropriate for preparing a

24   summary report of the data he analyzed. (Righetti Decl., Exh. 1, Depo. of Dr. Johnson, p.

25   187:16-188:20.)

1    Comcast finally argues that Mr. Breshears' testimony does not satisfy the standard
2    set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) 509 U.S. 579 because
3    the testimony and declaration are based on unreliable data and do not aid the trier of fact.
4    In evaluating the admissibility of expert testimony, *Daubert* provides that a court must
5    consider whether the proposed expert is qualified to testify about the proposed scientific
6    knowledge and the testimony will aid the trier of fact. *Daubert*, 509 U.S. at 592-3.

7    With respect to the CSG data, there is evidence that Comcast has employed the
8    CSG system to provide visibility into what Com-Techs are doing throughout their work
9    shifts, including identifying when and for how long the Com-Techs are on meal and rest
10   breaks. There is also evidence that Comcast trains its employees to update the CSG
11   system in real time and to attempt to ensure the data is accurate.

12   However, Comcast has also offered ample, persuasive evidence that a number of
13   factors interfere with the Com-Techs accurately reporting break times including human
14   error, poor cellular reception and issues with the CSG system software.

15   With respect to the ESS data, Comcast does not argue that the data are unreliable;
16   however, as with the CSG data, there is evidence that some of the data may not be
17   accurate. For example, some employees testified that they recorded their lunch break at
18   noon even if they took an earlier or later lunch whereas others Com-Techs testified they
19   put the actual time of the lunch break in their ESS timesheet. (Alvarez Decl., Exh. 1,
20   Alega Depo., p. 167:12-168:4; Alvarez Decl., Exh. 2, Brennan Depo., p. 53:13-54:25;
21   Alvarez Decl., Exh. 3, Brodeur Depo., p. 108:23-109:5; Alvarez Decl., Exh. 8, Grimes
22   Depo., p. 88:8-15; Alvarez Decl., Exh. 21, Harrell Depo. p. 142:8-17.)

23   At this stage, the Court has serious concerns about Mr. Breshears' reliance on the
24   CSG data. However, those concerns appear to go to the weight, not the admissibility of
25   his opinion. Since his conclusions refer largely to "potential violations" it appears that

1   the opinion may be entitled to very limited weight and (more to the point) may not aid the

2   court in determining the class certification motion.

3        Thus, the court denies the motion to strike.  However, it will give Mr. Breshears'

4   declaration only the weight to which it is entitled.  In addition, the Court will consider

5   carefully Mr. Breshears' conclusions, noting the limitations on what he does say and

6   equally importantly, the absence of conclusions that would be more useful in determining

7   the class certification issue.

8   **III.   CLASS CERTIFICATION**

9        The standard for determining whether to decertify a class is "simply whether the

10  class meets the requirements for class certification." *Walsh v. IKON Office Solutions,*

11  *Inc.* (2007) 148 Cal. App. 4th 1440, 1451.

12       Code of Civil Procedure section 382 provides that a plaintiff may sue for the

13  benefit of a class of individuals "when the question is one of a common or general

14  interest, of many persons, or when the parties are numerous, and it is impracticable to

15  bring them all before the court."  Code Civ. Proc. § 382; *Sav-On Drug Stores, Inc. v.*

16  *Superior Court* (2004) 34 Cal.4th 319, 332.

17       The party seeking class certification has the burden of establishing by a

18  preponderance of evidence (1) the existence of an ascertainable class, (2) a well-defined

19  community of interest among the class members, and (3) that substantial benefit to

20  litigants and court would result from class certification. *Sav-On, supra,* 34 Cal. 4th at

21  326; *Brinker v. Superior Court* (2012) 53 Cal. 4th 1004, 1021.  Community of interest is

22  comprised of three elements: (a) predominant common questions of law or fact; (b) class

23  representatives with claims or defenses typical of the class; and (c) class representatives

24  who can adequately represent the class. *Id.*

25

The certification question is essentially a procedural one that does not ask whether an action is legally or factually meritorious. *Sav-On, supra,* 34 Cal. 4th at 326; *Linder v Thrifty Oil Co.* (2000) 23 Cal.4th 429, 439-440. The task of the court is to "examine the allegations of the complaint and supporting declarations and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible." *Brinker v. Superior Court* (2012) 53 Cal. 4th 1004, 1021-2 (internal citations omitted).

Here, the parties' filings include argument on the merits of the claims. The Court has considered them, but only to understand the nature of the claims made by Mr. Fayerweather, the defenses asserted by Comcast and how the litigation could and would proceed as a practical matter. It has attempted to determine what the litigation involves, what proof would be proffered and how the court's processes might be used to discover, refine and resolve the issues presented. This ruling neither makes nor implies any decision on any question of the merits of the litigation.[5]

A. Predominance of Common Questions of Law or Fact.

Common issues predominate if "'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.'" *Brinker, supra,* 53 Cal. 4th at 1021. Conversely, "the community of interest requirement is not satisfied if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover...." *City of San Jose v. Superior Court* (1974) 12 Cal. 3d 447, 459.

---

[5] Though the Court did not consider the merits of the parties' claims in resolving the certification question, it is not precluded from doing so under certain circumstances. "When evidence or legal issues germane to the certification question bear as well on aspects of the merits, a court may properly evaluate them." *Brinker, supra,* 53 Cal. 4th at 1023-4.

11

1   In wage and hour class actions, predominance of common issues may often be
2   found where the plaintiff claims "a uniform policy consistently applied to a group of
3   employees is in violation of wage and hour laws...." *Brinker, supra,* 53 Cal. 4th at 1033.
4   Even where there is a policy in place that complies with applicable law, common issues
5   may predominate where there is substantial evidence the policy is a sham – *i.e.* the
6   employer has a common practice that undermines the formal policy "'by pressuring
7   employees to perform their duties in ways that [violate the regulations].'" *Brown v. Wal-*
8   *Mart Stores, Inc.* (2012) 2012 U.S. Dist. LEXIS 120733 at * 12 (citing *Brinker, supra,* 53
9   Cal. 4th at 1040).

10          1.  *On Duty Breaks.*

11      Plaintiff argues Comcast has adopted a policy or practice that requires its
12  technicians to keep their phones on and to remain logged-on to the TechNet network.
13  This, they say, makes it unlikely that Com-Techs are relieved of all duty during their
14  meal and rest breaks.  Essentially, they argue the technicians get no breaks.

15      In determining whether to certify a class it is important to distinguish between a
16  "policy" and a "practice."  If a company has adopted a company-wide "policy," common
17  proof is more easily found.  If plaintiff relies on a "practice," then matters of proof may
18  be far more individualized and problematic.  That distinction is well-illustrated here.

19      It is clear that Comcast has not adopted a "policy" of requiring Com-Techs to
20  remain on-duty during their meal and rest breaks.  The evidence, as summarized below,
21  shows that Comcast's policy is to relieve the Com-Techs of duty during their meal
22  breaks.   Instead, plaintiff seeks to rely on establishing that there is a "practice" that is at
23  odds with the "policy."

24  / / /

25  / / /

12

a.   The Legal Standard For Meal and Rest Breaks.

The employer's duty to provide a meal break is satisfied "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute meal break, and does not impede or discourage them from doing so." *Brinker, supra*, 53 Cal. 4th at 1040. An employer must also permit employees to take a second meal period for workdays in excess of 10 hours, which may be waived under certain circumstances. *Id.* at 1037. For rest breaks, an employer must authorize and permit its non-exempt employees "10 minutes' rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours, and so on." *Id.* at 1029. Though the employer must provide the employee with an opportunity to take such breaks, the employer "need not ensure that the employee does no work." *Id.* at 1034.

Whether an employee is relieved of duty when he is required to carry a beeper or company telephone depends on several factors including:

"'1. Whether there are excessive geographic restrictions on the employee's movements[;] [¶] 2. Whether the frequency of calls is unduly restrictive[;] [¶] 3. Whether a fixed time limit for response is unduly restrictive[;] [¶] 4. Whether the on-call employee can easily trade his or her on-call responsibilities with another employee[;] and [¶] 5. Whether and to what extent the employee engages in personal activities during on-call periods.'" *Ghazaryan v. Diva Limousine, Ltd.* (2008) 169 Cal. App. 4th 1524, 1535.

1   The determinative factor is "the level of the employer's control over its
2   employees, rather than the mere fact that the employer requires the employees'
3   activity…." *Morillion v. Royal Packing Co.* (2000) 22 Cal. 4th 575, 587.[6]
4   b.   Comcast's Policy.
5   Comcast's policy is clear.  When Com-Techs are on break or at lunch, they are to
6   be relieved of all duty.  The relevant policy is stated in at least two places.  The first is in
7   Comcast's Northern California Pay Policy Manual:
8   POLICY STATEMENT:
9   • Rest (Break) Periods
10   Non-exempt employees scheduled to work at least 3 ½ hours in a
11   workday will be given a ten (10) minute paid rest period for every
12   four (4) hours (or major portion thereof) worked.  The Company may
13   require employees to remain on the premises during the rest (break)
14   period.  At the department manager's discretion, breaks may be
15   fifteen (15) minutes.
16   • Meal Period
17   Non-exempt employees who work a shift in excess of five hours are
18   provided at least a thirty (30) minute unpaid, duty free, meal period;
19   unless, the employee's total number of hours worked is not more
20   than six (6) hours and the Company and employee have agreed to
21   waive this meal period requirement.  When an employee works more
22   than ten hours per day, the second meal period may be waived if (1)
23   the employee works no more than twelve hours that day, (2) the

---

[6] This is discussed in more detail below.

14

employee and the employer agree in writing to waive the second

meal period, and (3) the first meal period has not been waived.

Employees may be allowed to leave the premises during unpaid meal

periods. Actual time the non-exempt employee spends on meal

period must be recorded on the employee time sheet. An 'on-duty'

meal period is permitted only when the nature of the work prevents

the employee from being relieved of all duty and when agreed to in

writing by both the employer and the employee. Time worked

during 'on-duty' meal periods is included for purposes of overtime

calculations, hence these types of arrangements should be kept to a

minimum.[7] (Glugowski Decl., Exh. 15 at p. 26.)

The other policy statement is found in the Field Technician Manual:

Comcast's Technician WFX policy indicates that you should change

your status to 'Break' or 'Lunch' as appropriate, during which you

should not perform any work-related tasks. You should change your

status back to 'Available' when the break period has been completed

and prior to beginning any work-related tasks. (Glugoski Decl., Exh.

1A at p. 22.)

This is supported by the testimony and declarations of numerous supervisors,

dispatchers and Com-Techs.[8] On the other hand, there was little or no testimony that

---

[7] Comcast University training materials also cited by plaintiff provides that if a Com-Tech performs any work during his meal break, he should record it as time worked on his timesheet. (Glugoski Decl., Exh. 21.)

[8] See, e.g., Benefield Decl. ¶ 4; Bratcher Decl. ¶ 7; Chambers Decl. ¶ 6; Darlin Decl. ¶ 4; Escobar Decl. ¶ 5; Goyer Decl. ¶ 4; Jones Decl. ¶ 7; King Decl. ¶¶ 12, 15; Kurzhals Decl. ¶¶ 11-13; Simes Decl. ¶ 5; Vargas Decl. ¶¶ 9-10; Walkover Decl. ¶ 3; Sears Decl. ¶¶ 12-13; Cabada Decl. ¶¶ 5, 16; Chong Decl. ¶¶ 8-9; Alvarez Decl., Exh. 6, Fiorino Depo., p. 44:9-45:6, 55:3-12, 190:10-19; Alvarez Decl., Exh. 1, Alega Depo., p. 64:12-65:11; Alvarez Decl., Exh. 2, Brennan Depo., p. 36:13-18; Alvarez Decl., Exh. 13, Sivell

15

1    there was a policy that Com-Techs respond to communications during meal and rest

2    breaks.[9]

3         Plaintiff seeks to show that there was a different policy.  He cites portions of the

4    Field Technician and Dispatcher manuals that say Com-Techs and Dispatchers should be

5    in communication throughout the work day via TechNet/Workforce Express.  For this he

6    cites, Exh. 1A (p.1) and Exh. 1B (p. 17) of the Glugoski Declaration.

7         The first says,

8              Increased communication amongst the team is a key element of

9              success.  Every team member must remain committed to updating

10             their status in real time and communicating continuously throughout

11             the day.

12        The second says,

13             Dispatch Messaging – continual communication with the field is a

14             critical component in a dynamic dispatch environment.  You should

15             utilize the Dispatch Messaging function in WFX to maintain

16             communication to individual or groups of technicians.

17        But those passages are simply general statements about the use of the CSG system.

18   They are clearly modified by the more specific policies regarding meal and rest breaks.

19   So, for example, the document quoted above (Glugoski Decl., Exh. 1A at p. 22), says that

---

21   Depo., p. 104:21-105:11; Alvarez Decl., Exh. 21, Harell Depo., p. 65:3-19; Alvarez Decl., Exh. 18,
22   Douglas Depo., p. 64:17-65:25; Alvarez Decl., Exh. 19, Mainville Depo., p. 88:1-89:12; Alvarez Decl.,
     Exh. 23, Burroughs Depo., p. 20:7-11;  Alvarez Decl., Exh. 25, Navarro Depo., p. 25:4-12; Alvarez Decl.,
     Exh. 26, Ng Depo., p. 34:12-35:2, 53:13-25; Alvarez Decl., Exh. 27, Salazar Depo., p. 39:17-40:3, 40:22-
23   41:3, 42:3-21; Righetti Reply Decl., Exh. 15, Cabada Depo., p. 49:3-21; Righetti Reply Decl., Exh. 15,
     Chong Depo,. p. 16:19-17:10; Righetti Decl., Exh. 9, Sears Depo., p. 25:21-26:25.
24
     [9] Though there were declarations and deposition testimony from Com-Techs who were told they had to
25   respond to calls and messages during meal breaks, the testimony is clear that it was at the request of a
     specific supervisor and not because of a company-wide policy.  (Alvarez Decl., Exh. 6, Fiorino Depo., p.
     48:17-49:17; Alvarez Decl., Exh. 7, Fore Depo., p. 155:18-22, 179:21-180:15.)

part of the "continual communication" process is having the technician use the system to indicate when he or she is at lunch or on a break, during which time he or she should do no work-related tasks.

Plaintiff also cites sections of the Field Technical manual as well as dispatcher deposition testimony that say the TechNet system will prompt Com-Techs if an assigned job has not been acknowledged by the Com-Tech. (See, e.g., Righetti Reply Decl., Exh. 31, p. 5.)

But "prompting Com-Techs" means that the system will automatically send an electronic message. It does not mean that the Com-Tech is required to respond to the message instantaneously.[10] It is more like the sending of an e-mail. Though a task message may be sent to a Com-Tech while he is on lunch, the evidence is there is no expectation or requirement that the message be read simultaneously (or near-simultaneously). Rather, the evidence shows that the expectation is it will be read when the recipient returns to duty and looks at his communication device.

Plaintiff argues, more generally, that the policy requires the technician to be "in communication" with the dispatchers at all times. But plaintiff has chosen the phrase "in communication" very carefully. A close review of the material submitted by plaintiff – as illuminated by colloquy during oral argument – shows that "in communication" is different from "speaking with." "In communication" means that some electronic device

---

[10] Alvarez Decl., Exh. 1, Alega Depo., p. 124:21-125:20 (if received message from dispatch his phone would beep but he could press the button to stop the reminder and then wait until after lunch to respond after lunch); Alvarez Decl., Exh. 2, Brennan Depo., p. 83:4-18; Alvarez Decl., Exh. 17, Alcantar Depo., p. 79:13-19; Alvarez Decl., Exh. 18, Douglas Depo., p. 93:12-94:1, 94:20-95:6; Alvarez Decl., Exh. 9, Hodson Depo., p. 96:15-20; Alvarez Decl., Exh. 19, Mainville Depo., p. 89:13-90:4, 90:13-91:23; Alvarez Decl., Exh. 26, Ng Depo. p. 151:-152:5; Alvarez Decl., Exh. 23, Burroughs Depo., p. 32:2-10, 54:4-17; Righetti Reply Decl., Exh. 15, Chong Depo,. p. 27:1-28:7; Righetti Reply Decl., Exh. 22, DeGuzman Depo., p. 43:3-44:25; Righetti Reply Decl., Exh. 8, Leon Depo., p. 92:4-25; Righetti Reply Decl., Exh. 10, Palma Depo., p. 32:23-33:24 (did not expect immediate response to task messages that were sent during Com-Techs meal break); Righetti Reply Decl., Exh. 9, Sears Depo., p. 41:9-15; Righetti Reply Decl., Exh. 8, Leon Depo., p. 11:-25.)

17

is capable of receiving messages while the Com-Tech has a meal or rest break regardless of whether the device is turned on or is available to the Com-Tech. That a machine remains capable of receiving messages even while the human is on break does not mean that the human is not relieved of all work during a break.

A careful analysis of the parties' positions shows there is really no dispute about Comcast's policy: Com-Techs are to do no work during their breaks. The Court finds that plaintiff's argument about a policy that the Com-Techs remain "in communication" does not come close to meeting the standards of *Ghazaryan* and *Morillion* discussed below. There is no common issue to be tried with respect to Comcast's policy.

c. Comcast's Practices.

Plaintiff also asserts there is a company-wide practice that undermines the company's meal and rest break policy.

i. Dispatchers' Declarations and Depositions.

In support of his argument, plaintiff submits declarations from dispatchers who stated that they send messages to Com-Techs through the CSG system throughout the work day and, to do their jobs, they need Com-Techs to be in "constant and continuous contact" with them. (See, *e.g.*, Declarations of Leticia Alcantar, Celeste Bartol (Marty), Marlene Charlie, Winifred Davey, Paulette Douglas, William Hodson, Shawn Mainville and Anthony Lee.) Many of these declarations are written in identical language.[11]

However, when Comcast deposed these declarants, their testimony was often quite different from the declaration. Testimony submitted by Comcast shows that, while dispatchers may have sent messages to Com-Techs during break periods, there was not

---

[11] At the hearing on the order to show cause, plaintiff also cited the deposition testimony of dispatcher Phoeun Chong who testified that if a Com-Tech does not timely acknowledge a job, she will try to reach him and, if she is unsuccessful, will call his supervisor. (Righetti Reply Decl., Exh. 11, Depo. of Phoeun Chong, p. 20:16-21:18.)

necessarily an expectation that a Com-Tech would read or respond to the message if he or she were on a break.

For example, several dispatchers testified that they did not expect Com-Techs to respond to dispatch calls or messages when they were on break. (See, e.g., Alvarez Decl., Exh. 20, Depo. of Celeste (Bartol) Marty, p. 68:4-24; Alvarez Decl., Exh. 18, Depo. of Paulette Douglas, p. 71:7-15, 86:4-19; Alvarez Decl., Exh. 9, Depo. of William Hodson, p. 131:18-21; Alvarez Decl., Exh. 19, Depo. of Shawn Mainville, p. 88:1-89:7, 90:13-91:2.)

Other dispatchers testified that when they knew a Com-Tech was at lunch, they would not actively attempt to contact the Com-Tech but might send updates on jobs for the Com-Tech to review after his break. (See, e.g., Alvarez Decl., Exh. 9, Depo. of William Hodson, p. 92:5-93:19; Alvarez Decl., Exh. 31, Depo. of Marlene Charlie, p. 149:7-151:9.) [12]

Dispatchers also testified they understood they would not be able to communicate with Com-Techs at all times and would simply move on to other technicians and other job assignments until the Com-Tech was available again. (See, e.g., Alvarez Decl., Exh. 31, Depo. of Marlene Charlie, p. 136:9-138:2, 147:10-148:17.)

ii.    Com-Tech Declarations and Depositions.

Plaintiff also offers declarations from several Com-Techs who state they were not relieved of duty at lunch because they were required to respond to calls and messages from dispatch and their supervisors. (See, e.g., Declarations of Michael Fiorino, Chris Fore, James Grimes, Craig McCullom, Dan Trujillo, Jason Williams and Gabriel Fayerweather.)

---

[12] Ms. Chong testified that when she knows the Com-Tech is on his lunch break, she will include in her message that he does not need to respond until after his break is over. . (Righetti Reply Decl., Exh. 11, Depo. of Phoeun Chong, p. 27:15-28:7.)

At the hearing, plaintiff also argued that data from the CSG system shows that Com-Techs regularly sent messages to dispatch during the time they posted in CSG that they were on lunch. For example, when Anthony Hayes was twenty-one minutes into the time he posted his lunch break status, he responded to a dispatch message regarding assignment of jobs. (Breshears Reply Decl., Exh. G, p. 31 of 56.)

In opposition, Comcast submitted deposition testimony from plaintiff's declarants as well as other Com-Techs. Many testified they did not need to respond to messages during their breaks. They said they understood that practice (of not responding to calls during their breaks) was consistent with Comcast policy. (See, e.g., Alvarez Decl., Exh. 1, Depo. of Ernani Alega, p. 64:12-65:11, 109:12-25, 110:22-111:5, 111:15-24; Alvarez Decl. Exh. 2, Depo. of Matthew Brennan, p. 36:13-18; 82:18-83:18; Alvarez Decl., Exh. 13, Depo. of Jason Sivell, p. 49:8-50:25 (received calls from other technicians).)

Others testified that whether and under what circumstances they were required to respond to calls at lunch varied greatly, depending on (among other things) the demands of their respective supervisor and the on-the-job training received by the Com-Tech. [See, e.g., Alvarez Exh. 6, Depo. of Michael Fiorino, p. 44:9-45:6, 190:10-19 (felt pressure from prior supervisor to respond to calls during lunch but current supervisor tells him to silence his phone during lunch); Alvarez Decl., Exh. 7, Depo. of Chris Fore, p. 114:16-115:17, 179:15-180:15 (told by previous supervisor that he could not turn off phone or ignore messages on his laptop during lunch but did not feel same pressure under his current supervisor); Alvarez Decl., Exh. 3, Depo. of Georges Brodeur, p. 152:2-24 (told during ride-along trainings that he should respond to all calls and messages immediately).]

There was also evidence that, in some cases, Com-Techs responded to calls voluntarily. (See, e.g., Alvarez Exh. 6, Depo. of Michael Fiorino, p. 46:15-47:14;

20

Alvarex Decl., Exh. 13, Depo. of Jason Sivell, p. 104:21-105:16.)  That would not be considered a meal break violation.  *Brinker, supra,* 53 Cal. 4th at 1040 (noting that "employees cannot manipulate the flexibility granted them by employers to use their breaks as they see fit to generate [liability for a missed meal break]").

Several Com-Techs also testified that, other than remaining within a reasonable range of their next appointment under certain circumstances, Comcast placed no restrictions on how Com-Techs used their break time.  (Alvarez Decl., Exh. 8, Depo. of James Grimes, p. 61:2-62:16; Alvarez Decl., Exh. 16, Depo. of Jason Williams, p. 171:14-23; Alvarez Decl., Exh. 1, Depo. of Ernani Alega, p. 107:15-108:25; Alvarez Decl., Exh. 13, Depo. of Jason Sivell, p. 48:18-49:7.)  In addition, at least one Com-Tech testified that, if he did respond to calls during lunch, he extended his lunch to make up for the interruption.  (See, *e.g.,* Alvarez Exh. 6, Depo. of Michael Fiorino, p. 46:18-47:6.)

This evidence is only a sampling of far more that is in the record.  The Court does not examine it to decide the merits of the case.  Rather, this evidence illustrates that there is no predominant common issue.  As discussed below, the practices engaged in by dispatchers and technicians are far from consistent.

d.  The Legal Precedent Regarding "On-Duty Breaks"

Plaintiff argues, essentially, that the law regarding on-duty breaks is such that class treatment is appropriate despite the disparities in the evidence outlined above.

He argues that *Morillion v. Royal Packing Co.* (2000) 22 Cal. 4th 575 supports his on-duty break argument.  In that case, the defendant Royal Packing Company required its agricultural employees to meet at designated departure points to be transported by Royal to and from the fields; employees were prohibited from using alternate transportation. *Morillon, supra,* 22 Cal. 4th at 579.  Royal did not compensate its employees for the time spent on travelling to the fields on Royal's buses.  *Id.*  The California Supreme Court

21

held that the travel time to and from the fields were compensable "hours worked" because Royal exercised significant control over the employees' use of that travel time, which "prohibit[ed] them from effectively using their travel time for their own purposes." *Id.* at 586.

Plaintiff also refers to a January 28, 1992 DLSE opinion letter regarding beepers and on-duty meal periods. (Alvarez Decl., Exh. 35, DLSE Opinion Letter 1992.01.28.) There, the DLSE discussed whether an employee who is required to wear a pager is sufficiently relieved of duty. The DLSE stated that

> [i]f the employee is simply required to wear a pager *or respond to an in-house pager* during the meal period there is no presumption that the employee is under the direction or control of the employer so long as no other condition is put upon the employee's conduct during the meal period.

(Alvarez Decl., Exh. 35, p. 3) (emphasis added). If, however, additional restrictions are placed on the employee's obligation to respond – *e.g.* the employee is required to stay within a certain distance of a telephone – then such increased level of employer control during the meal period would transform the break to an "on duty" break and the employee would be entitled to compensation for the entire meal period. (*Id.*)

Defendants cite *Ghazaryan v. Diva Limousine, Ltd.* (2008) 169 Cal. App. 4th 1524. There, the court ordered certification of a class of limousine drivers who were required to be available for dispatch calls at all times during their shifts and, accordingly, were unable to take meal and rest breaks. The court found there was a community of interest between the named plaintiff and putative class members where the official company policy expressly restricted what drivers could do during their shift, including significantly limiting attention to personal business, expressly requiring drivers to respond promptly to dispatch calls, and requiring drivers to clean and maintain their car while they are waiting.

22

for their next assignment. *Ghazaryan, supra,* 169 Cal. App. 4th at 1536. In light of this express company policy in which the company asserted significant control over its drivers at all times, the court found that evidence that drivers varied in what they did during their "on call" time did not defeat class certification. *Id.*

But there is a crucial distinction between this case and the precedent cited by the parties. In each of the cited cases, there was a company-wide policy that governed all employees' behavior. Thus, there was a common question that could be resolved efficiently in a class action. Here, there is no such policy. There are only practices that seem to vary among employees, supervisors, offices, and time frames.

*Practices have varied over time due to changing systems.* For example, prior to the introduction of the CSG system, the only way to know if a technician was on break was if he called to inform dispatch that he was going on break. (See, e.g., Alvarez Decl., Exh. 31, Charlie Depo., p. 78:12-79:8.) After CSG, the technician is supposed to change his or her "status" to "lunch" when on meal break.

*Practices have varied by supervisor.* Some of the testimony shows that certain technicians have had difficulty with a particularly harsh overseer. When freed from that supervisor's oversight, they have had little or no problems. (See, e.g., Alvarez Exh. 6, Depo. of Michael Fiorino, p. 44:9-45:6, 190:10-19; Alvarez Decl., Exh. 7, Depo. of Chris Fore, p. 114:16-115:17, 179:15-180:15.)

*Practices have varied by dispatcher.* Some dispatchers seem more insistent on communicating with their Com-Techs. Others say they are more "laid back." (Compare Righetti Reply Decl., Exh. 21, Alcantar Depo., p. 57:16-58:23 to Alvarez Decl., Exh. 9, Hodson Depo., p. 94:13-95:1.)

*Practices have varied by technician.* Some Com-Techs seem to feel that they must respond to every phone call. (See, e.g., Alvarez Decl., Exh. 10, Lines Depo., p.

126:15-24.) Most seem to understand that the company policy is to leave them alone for meals and rest breaks. (See, e.g., Alvarez Decl., Exh. 1, Depo. of Emani Alega, p. 64:12-65:11, 109:12-25, 110:22-111:5, 111:15-24; Alvarez Decl. Exh. 2, Depo. of Matthew Brennan, p. 36:13-18; 82:18-83:18.)

In short, there is not a consistent practice that violates the company's stated policy. Indeed, it appears far more likely that the general practice is to leave employees free to take their breaks. But, to the extent there is contrary evidence, it demonstrates that the variations tend to be idiosyncratic.

The Court need not determine whether that is or is not true. For purposes of determining whether a class should be certified, it is more useful to note only that there is no commonality; no evidence of a common practice that would make class treatment useful.

To determine if some Comcast technicians worked under company imposed circumstances in which they had only "on-duty" meals, would require highly individualized inquiry. And given the testimony, it appears the issue would not be whether a given technician was required to remain on-duty through break time; the issue would be how often that happened to that technician. This could be resolved only by particularized inquiry – not by class-wide proof.

Plaintiff has failed to meet his burden of showing there is a company-wide policy or practice pursuant to which Comcast exerts such control over its Com-Techs that renders all breaks "on-duty."

Accordingly, the court finds the question of whether plaintiff's breaks were "on-duty" is not an issue that is amenable to class treatment.

/ / /

/ / /

24

### 2.  *Off the Clock Work*

To show a common interest exists for an off-the-clock claim, plaintiff must present evidence of "a systematic company policy to pressure or require employees to work off-the-clock." *Brinker, supra,* 53 Cal. 4th at 1051.  An employer can only be held liable for such claims where the employer knew, or should have known, that work was being performed. *Morillion, supra,* 22 Cal. 4th at 585.  If employees were clocked out at the time plaintiff claims they were required to work, then there is "a presumption that they were doing no work…[and] liability is contingent on proof [defendant] knew or should have known the off-the-clock work was occurring." *Brinker* at 1051.

Plaintiff's off-the-clock claim relies on his contention that the company required that he record a lunch of exactly 60 minutes regardless of how much time he actually took.  Plaintiff does not argue that there is an express written policy on this issue.  The question then is whether there is a practice, amenable of common proof, that plaintiff offers as a way of litigating this matter as a class action.  There is not.

Essentially, plaintiff's off-the-clock theory rests on the contention that Comcast's time records must be unreliable because: (1) nearly all the meal breaks recorded by Com-Techs on their timesheets are exactly one hour; and (2) data from the CSG system shows meal periods of varying lengths of time.

Comcast employees submit weekly timesheets for purposes of getting paid.  Each is responsible for filling out a time sheet.  A sample is found at Plaintiff's Appendix of Evidence at Exhibit K to the Kramer Declaration.  When turning in the timesheet, the employee certifies:

> I certify that the time and hours recorded on this timesheet
> accurately and fully identify all time that I have worked during the
> designated pay period above.  I acknowledge that during that

1    designated pay period: (1) I have taken all rest breaks for which I am

2    entitled under the law including at least one 10 minute break for

3    every four hours of work or major portion thereof; (2) I have taken

4    all meal breaks for which I am entitled under the law including at

5    least one half-hour meal break whenever I worked more than five

6    hours and an additional half hour if I worked more than 10 hours;

7    and (3) I am relieved of all duty and free to leave Comcast's

8    premises during my meal breaks.  By signing this timesheet, I freely

9    and voluntarily certify that the statements above are true and correct.

10  Plaintiff says that employees are pressured into filling out what are, in effect,

11 fictitious timesheets.  Plaintiff cites no common evidence of a central direction that this

12 be done.  Instead, plaintiff contrasts the time sheets with something called CSG data.

13  The CSG data relied on by plaintiff are pulled from the CSG database, which

14 stores Comcast's customer records including jobs that are assigned to and completed by

15 Com-Techs.  (Glugowski Decl., Exh. 4, Miguel Depo., p. 24:10-25:12, 27:4-20.)  To

16 interface with the CSG database, Com-Techs use a system called TechNet to see what

17 jobs they are assigned each day and to report on the status of each job including: the

18 Com-Tech's estimated time of arrival; whether the Com-Tech has started the job; and

19 whether the job has been completed.  (Id. at p. 33:4-34:15, 37:19-38:9, 39:10-40:10,

20 42:7-16.)  The CSG database records both the status that was entered and the time it was

21 entered.  (Id.)  Com-Techs can also use TechNet to signify when they are on a lunch or

22 rest break, which information is communicated to dispatch and managers and is also

23 recorded in the CSG database.  (Id. at p. 47:11-48:7, 49:4-13.)  Comcast can and does run

24 reports summarizing the data captured by the CSG database.  (Id. at p. 45:18-46:10.)

25

1        Comcast argues that the CSG data are unreliable as time records for compensating

2    employees because a number of factors interfere with the Com-Techs accurately

3    reporting break times including human error, poor cellular reception and glitches with the

4    CSG system software. (Comcast Response Brief p. 30.)  In addition, Comcast argues that

5    the intent of the CSG system is not to track time for payroll; rather, it is a job

6    management system used to facilitate communication between its Com-Techs and its

7    Dispatchers in order to increase efficiency and productivity in responding to customer's

8    needs. (Id.)

9        The key question, however, is whether there is common proof that permits this

10   case to proceed as a class action.  Plaintiff says there is, and offers the testimony of its

11   expert, David Breshears.  Mr. Breshears is a Certified Public Accountant (CPA) and

12   Certified Financial Forensics professional (CFF) who analyzed data from both Comcast's

13   timekeeping system ("ESS") as well as the CSG system.

14       According to Mr. Breshears, the CSG status entry data show that the average

15   duration that Com-Techs were in the "lunch break status" was .77 hours.  (Breshears

16   Reply Decl., Exh. C, p. 19.)  Similarly, a daily timeline report prepared by Comcast based

17   on CSG data showed the average lunch status lasted for 49 minutes. (Glugoski Decl.,

18   Exh. 8.)  Plaintiff argues that this evidence tends to show that Comcast's payroll records

19   ("ESS" records) must be incorrect because those records show that the average lunch

20   duration was .99 hours. (Breshears Reply Decl., Exh. B, p. 43.)

21       There are significant problems with that offering.  Mr. Breshears does not opine

22   that there were actual violations of the wage and hour laws.  Instead he says these data

23   may be used to identify "potential violations."  Thus, even if the data were reliable

24   (which Comcast disputes) it would not go very far towards determining liability.  Plaintiff

25   does not explain how it would go from Mr. Breshears' opinion of a "potential violation"

to proof of an actual violation without calling individual Com-Techs to testify about their individual circumstances.  Thus, plaintiff has not shown that there is common proof of liability in order to support class treatment of the off-the-clock claim.

There is another problem.  Mr. Breshears relies on the CSG data as if they were more accurate than the time records.  But there are serious questions about their accuracy.

Comcast cites testimony from multiple witnesses who state that CSG is not a reliable indicator of an employee's hours worked or time spent on break.  For example, a representative of CSG, Scott Dutton, testified that CSG is not intended to be a timekeeping system.  (Dutton Decl. ¶ 4; Alvarez Decl., Exh 28, Dutton Depo., p. 10:6-11:6.)

In addition, several Com-Techs testified that CSG is not a good indication of the time they worked or were on break because there were glitches with the system or they mistakenly did not update the system.  (See, e.g., Alvarez Decl., Exh. 6, Depo. of Michael Fiorino, p. 101:1-102:18; Alvarez Decl., Exh. 3, Depo. of Georges Brodeur, p. 101:2-17; Alvarez Decl., Exh. 15, Depo. of Dan Trujillo, p. 89:10-18, 110:7-21; Alvarez Decl., Exh. 2, Depo. of Matthew Brennan, p. 63:9-64:16.)

A Comcast Report Analyst further testified that she has seen situations in which Com-Techs have entered lunch status in the CSG system multiple times in one day.  (Glugoski Decl., Exh. 4, Depo. of Shauntee Miguel, p. 106:10-19.)  Comcast managers similarly stated that Com-Techs often did not or could not enter a status in CSG in real time.  For example, Robert Benefield stated that if a Com-Tech chooses to check on his next job during his meal break, TechNet will automatically take him out of lunch status even though he has not completed his meal break.  (Benefield Decl. ¶ 6.)  Other managers stated that some Com-Techs have purposely entered incorrect statuses.  (See, e.g., Kurzhals Decl. ¶ 6, Exh. 2; Bratcher Decl. ¶ 5; King Decl. ¶ 7.)

28

In addition, in the records put in evidence by the parties, there were often large gaps of time in which no active status was recorded. [See, .e.g., Glugowski Decl., Exh. 5 (showing for Charles Anderson that there were several larges blocks of time where he was not on the job or en route to a job).]

Again, the Court does not review the evidence to find whether the CSG data are or are not reliable. But it finds that, were this to be certified as a class action, it would be likely that considerable trial time would be spent on the question of whether the CSG data are reliable.

If the jury found they were reliable, then it would be left with Mr. Breshears' testimony of "potential violations." Without more, the jury would not have sufficient evidence to find class-wide liability. If, on the other hand, the jury found the CSG data were not reliable, then it would have no basis for determining the off-the-clock claim absent individualized proof from each class member.

Given all of this, even if the CSG data were reliable, it does not offer a path to common proof of liability that makes this an appropriate class action. All Mr. Breshears can do is put the parties on inquiry notice; and the necessary inquiry then requires a descent into individual inquiry of each technician with respect to each instance on which the records show a discrepancy between the time reported on his or her time sheets and the CSG data.

Simply put, given the quality of the evidence offered by plaintiff, the off-the-clock claim is not susceptible of class treatment.

### 3. *Missed and Late Meal Periods*

Plaintiff argues that Comcast failed to pay the putative class members one hour of premium pay for meal breaks not taken or waived in the first six hours of work, meal breaks taken after the fifth hour of work and for meal breaks for durations shorter than 30

minutes. Plaintiff also asserts that Comcast failed to pay class members premium pay for meal breaks not taken or waived for shifts greater than 10 hours but less than 12 hours and for meal breaks not taken for shifts greater than 12 hours.

Plaintiff's theory relies, in part, on the assumption that if an employee's time records do not show either a 30-minute meal break (or, where appropriate, a waiver) then the wage and hour laws are violated. Comcast argues that its duty under *Brinker* is to *provide* a duty-free meal break and it does not have a duty to *ensure* that its employees take advantage of the meal break provided.

Here, to determine whether common issues predominate, the court must first resolve the parties' dispute regarding the applicable legal standard defining Comcast's duty with respect to meal breaks. Though a court generally should not resolve legal or factual disputes at the certification stage, "if the presence of an element necessary to certification, such as predominance, cannot be determined without resolving a particular legal issue, the trial court *must* resolve that issue at the certification stage." *Brinker, supra,* 53 Cal. 4th at 1025-6 (emphasis added); *Fireside Bank v. Superior Court* (2007) 40 Cal. 4th 1069, 1085-6; *Washington Mutual Bank v. Superior Court* (2001) 24 Cal. 4th 906, 915-6.

Plaintiff argues that an employer breaches its duty to provide a meal break if the employee does not take a meal break and the employer has not obtained a waiver. Plaintiff further argues that, since Labor Code section 512 prohibits an employer from obtaining a waiver of the second meal period for shifts greater than 12 hours, the employer has violated its duty if the second meal period is not taken.

Plaintiff's theory of liability is not consistent with the California Supreme Court's decision in *Brinker*. In *Brinker*, the court held that the employer's duty is to *provide* its non-exempt employees the *opportunity* to take a first meal period after no more than five

hours of work and a second meal period after no more than ten hours of work. *Brinker,*

*supra,* 53 Cal. 4th at 1049. The employer's duty to provide a meal break is satisfied if

> [the employer] relieves its employees of all duty, relinquishes
> control over their activities and permits them a reasonable
> opportunity to take an uninterrupted 30-minute meal break, and does
> not impede or discourage them from doing so.

*Brinker, supra,* 53 Cal. 4th at 1040.

The waiver language in Labor Code section 512 is not inconsistent with the holding in *Brinker.* Labor Code section 512 provides further protection for the employee by limiting the circumstances under which an employer can ask an employee to give up her right to a meal period. Specifically, with respect to the first meal period, section 512 states:

> [a]n employer may not employ an employee for a work period of
> more than five hours per day without providing the employee with a
> meal period of not less than 30 minutes, except that if the total work
> period per day of the employee is no more than six hours, the meal
> period may be waived by mutual consent of both the employer and
> employee.

Lab. Code § 512, subd.(a).

As to the second meal period, section 512 similarly limits the circumstances in which an employer can request a meal period waiver as follows:

> ...if the total hours worked is no more than 12 hours, the second
> meal period may be waived by mutual consent of the employer and
> the employee only if the first meal period was not waived.

*Id.*

The protections in section 512 restrict when *the employer* can make requests of the employee to waive a meal period. Nothing in section 512 limits *the employee's* ability to use her meal period as she chooses, including choosing to perform work. Accordingly, to maintain this matter as a class action, plaintiff must show there is substantial common evidence that Comcast failed to provide its Com-Techs with *the opportunity* to take a duty free meal break lasting at least 30 minutes.

The evidence submitted by the parties shows that Comcast had a company-wide meal break policy (quoted in full above) that is consistent with the applicable wage and hour regulations. Comcast's meal break policy provides for one meal period of at least thirty minutes for shifts in excess of five hours and a second meal period for shifts in excess of ten hours. (Glugoski Decl., Exh. 15, p. 26.) The policy further provides that Comcast and the employee can agree to waive the first meal period for shifts of six hours or less. (Id.) They can also agree to waive the second meal period if the employee works twelve hours or less, has not waived his first meal period and agrees to the waiver in writing. (Id.) Accordingly, to succeed in showing the case should be litigated as a class action, plaintiff must show there is a company-wide practice that undermines this formal policy. *Brown v. Wal-Mart Stores, Inc.* (2012) 2012 U.S. Dist. LEXIS 120733 at * 12 (citing *Brinker, supra,* 53 Cal. 4th at 1040).

To show there is a company-wide practice that violates applicable wage and hour regulations, plaintiff relies primarily on calculations performed by his expert, David Breshears, and asserts that Comcast time records show a number of missed meal breaks after the fifth and tenth hours of work that he opines are "potential violations" of applicable wage and hour regulations. (See, e.g., Breshears Reply Decl., Exh. B.) Mr. Breshears' testimony relies on the analysis of data from both Comcast's technician scheduling software, CSG, as well as Comcast's payroll timekeeping system, ESS. As

discussed above, Mr. Breshears' testimony is not sufficient common evidence of

Comcast's liability as it only identifies "potential violations."

Mr. Breshears testified that, in performing his calculations, he only took into

account whether a meal break fell within the four defined categories in his report and did

not consider any other factors (*e.g.* whether there was a valid waiver). (Alvarez Decl.,

Exh. 41, Depo. of David Breshears, p. 80:24-81:21.) He also testified that he did not

know what the employee was doing during the missed lunch break period. (Alvarez

Decl., Exh. 41, Depo. of David Breshears, p. 77:25-78:4.) As *Brinker* makes clear, an

employer must provide the employee with a reasonable opportunity to take her meal and

rest breaks; the employer "is not obligated to police meal breaks...." *Brinker, supra,* 53

Cal. App. 4th at 1040.

Here, Mr. Breshears has identified only "potential violations" and, in performing

his calculations, did not consider the reasons for the missed or late meal breaks.  In

addition, several ComTechs testified they would miss meal periods or work during their

meal periods for reasons that would not be violations.  (See, Alvarez Decl., Exh. 2, Depo.

of Matthew Brennan, p. 67:8-68:2; Alvarez Decl., Exh. 6, Depo. of Michael Fiorino, p.

46:18-47:6; Alvarez Decl. Exh. 7, Depo. of Chris Fore, p. 115:12-22.)

Absent an over-arching illegal company policy, indentifying "potential" violations

merely puts the court on inquiry notice.  Any inquiry into actual violations would require

individual inquiry into the reasons that a meal break was missed and/or not recorded in

Comcast time records.  Thus, since individual issues predominate, this issue is not

appropriate for resolution on a class-wide basis.

/ / /

/ / /

/ / /

### 4. *Third Rest Break For Shifts in Excess of 10 Hours*

Plaintiff devotes one paragraph to this issue and asserts that employee time records show that Com-Techs who worked in excess of 10 hours per day were not authorized or permitted a third rest break. This assertion is not supported by the evidence offered by plaintiff.

The corporate rest policy provides that Comcast employees are permitted a rest break of *at least* ten minutes "for every four (4) hours (or major portion thereof) worked." (Glugoski Decl. Exh. 15, p. 26.) Plaintiff cites to a copy of Comcast's paper timecard – though paper timecards have not been employed by Comcast for some time – as evidence of Comcast's policy prohibiting a third rest break. Plaintiff argues that because the timecard does not specifically include a third rest break set of columns. (See, e.g., Glugowski Decl., Exh. 2.)

The evidence does not support plaintiff's position for several reasons. First, the paper timecard includes an "other" column that could arguably be used to record a third rest break. (Glugowski Decl., Exh. 2.) Second, there is ample evidence from both parties that Comcast has not used the paper timecard system for a significant portion of the class period. (See, e.g., Glugowski Decl., Exh. 12, Walkover Depo., p. 39:3-14; Glugowski Decl., Exh. 14, Hemphill Depo., p. 45:17-46:6; Alvarez Decl., Exh. 1, Alega Depo., p. 81:13-20; Alvarez Decl., Exh. 12, Sivell Depo., p. 41:6-24.) Finally, there is no evidence in the record that shows how the current electronic timekeeping system deals with third rest breaks, much less that it shows non-compliance with the applicable laws and regulations.

Plaintiff also cites declarations of several current and former Com-Techs who claimed their work schedules prevented them from taking rest breaks; however, in deposition, many of these Com-Techs disavowed some or all of their statements or

testified that the missed meal and rest breaks were not the result of a company-wide

policy.  For example, several of these employees testified at deposition that the issue with

scheduling and breaks was the result of issues with a few bad supervisors.  (See, e.g.,

Alvarez Decl. Exh. 3, Depo. of Georges Brodeur, p. 47:14-24; Alvarez Decl. Exh. 7,

Depo. of Chris Fore, p. 179:21-180:15.)  Other deponents testified that they regularly

took rest breaks and that their rest breaks lasted 20 to 25 minutes.  (See, e.g., Alvarez

Decl., Exh. 1, Alega Depo., p. 128:25-129:7; Alvarez Decl., Exh. 11, Depo. of Craig

McCullom, p. 46:14-47:4.)

Finally, plaintiff offers no time records supporting his contention.  Indeed, the

extensive analysis performed by Mr. Breshears includes no discussion of rest break

violations.  Accordingly, plaintiff has not met his burden of showing a predominance of

common issues with respect to his claim of missed third rest breaks.

B.  Superiority and Manageability.

Plaintiff has the burden to show that a class action is "'superior to other available

methods for the fair and efficient adjudication of the controversy.'"  *Dean Witter
Reynolds v. Superior Court* (1989) 211 Cal. App. 3d 758, 773.  Courts should "allow

maintenance of the class action only where *substantial benefits* accrue *both* to litigants

and the courts.'"  *Linder v. Thrifty Oil Co.* (2000) 23 Cal. 4th 429, 435 (internal citation

omitted) (emphasis added).

Given the size of the proposed class and the number of individual issues that must

be resolved to determine issues of liability, the court finds that class treatment is not

superior because it would required hundreds, if not thousands, of mini-trials and would

prove wholly unmanageable.

/ / /

/ / /

C. Adequacy of Representation.

Since the court has determined that individual issues predominate and class treatment is an inferior means of adjudicating this case, it is unnecessary to reach defendant's argument regarding the adequacy of representation.

D. Conclusion.

For the reasons set forth above, the court orders the class decertified.

Date: December 15, 2012

Digitally signed by
Barry Goode
DN: cn=Barry
Goode, c=US,
o=Superior Court,
ou=Judge
Date: 2012.12.15
13:34:42 -08'00'

Barry P. Goode
Judge, Superior Court

36

**EXHIBIT 3**

## SUPERIOR COURT OF CALIFORNIA
## FOR THE COUNTY OF CONTRA COSTA

**A CLASS ACTION LAWSUIT MAY AFFECT YOUR RIGHTS.**

*A court authorized this notice. This is not a solicitation from a lawyer*

- A communications technician has sued Comcast alleging violations of California law.

- The Court has allowed the lawsuit to be a class action on behalf of Communication Technicians Levels I, II, III, and IV, Installer, Advanced Installer, Service Technician, System Technician, Field Service Representatives Levels I, II, III, IV, V, and VI, who were employed by Comcast in California from May 27, 2004 through April 7, 2010.

- The Court has not decided whether Comcast did anything wrong. There is no money available now, and no guarantees there ever will be. However, your legal rights are affected, and you have a choice to make now:

| Your Legal Rights and Options in this Lawsuit | |
|---|---|
| **DO NOTHING** | **Remain in this lawsuit. Await the outcome. Give up certain rights.**<br><br>By doing nothing, you will remain a part of the lawsuit against Comcast. By remaining in the lawsuit, you keep the possibility of getting money or benefits that may come from a trial or settlement. However, by doing nothing you give up any rights to sue Comcast on your own about the same legal claims in this lawsuit. If Comcast prevails in this lawsuit, you will not be permitted to raise the same claims again. |
| **ASK TO BE EXCLUDED** | **Get out of this lawsuit. Get no benefits from it. Keep rights.**<br><br>If you ask to be excluded, you will not be included in this lawsuit against Comcast. If the class action is successful and money or benefits are later awarded, you won't share in those. But, you keep any rights to sue Comcast separately about the same legal claims in this lawsuit. |

- Your options are explained in this notice. To ask to be excluded, you must act before May 26, 2011.

- Lawyers must prove the claims against Comcast at a trial that has not yet been scheduled to begin. If money or benefits are obtained from Comcast, you will be notified about how to ask for a share.

- **Any questions? Read on.**

1

**What This Notice Contains**

**Basic Information** ................................................................................................Page 3
    1.    Why did I get this notice?
    2.    What is this lawsuit about?
    3.    What is a class action and who is involved?
    4.    Why is this lawsuit a class action?

**The Claims in the Lawsuit** ...........................................................................Page 3–4
    5.    What does the lawsuit complain about?
    6.    How does Comcast answer?
    7.    Has the Court decided who is right?
    8.    What is the Plaintiff asking for?
    9.    Is there any money available now?

**Who is in the Class** ..............................................................................................Page 4
    10.    Am I part of the class?
    11.    I'm still not sure if I am included.

**Your Rights and Options** ..................................................................................Page 5
    12.    Do I need to do something now?
    13.    What happens if I do nothing at all?
    14.    Why would I elect to be excluded?
    15.    What happens if I exclude myself or opt-out?
    16.    How do I elect to exclude me from the Class?

**The Lawyers Who Will Be Representing You** ...........................................Page 6
    17.    Will I have a lawyer in this case?
    18.    Should I get my own lawyer?
    19.    How will the Class lawyers be paid?

**The Trial** ..............................................................................................................Page 7
    20.    How and when will the Court decide who is right?
    21.    Do I have to come to the trial?
    22.    Will I get money after the trial?

**Getting More Information** .................................................................................Page 7
    23.    Are more details available?

**1.      Why did I get this notice?**

Comcast records show that you were employed as a Communication Technician Level I, II, III, and IV, Installer, Advanced Installer, Service Technician, System Technician, and/or Field Service Representative Level I, II, III, IV, V, and VI, by Comcast in California sometime between May 27, 2004 and April 7, 2010. This notice explains that the Court has allowed, or "certified," a class action lawsuit that may affect you. You have legal rights and options that you may exercise before the Court holds a trial. The trial is to decide whether the claims being made against Comcast, on your behalf, are correct. Judge Barry Goode of the Contra Costa County Superior Court is overseeing this class action. The lawsuit is known as *Fayerweather v. Comcast Corporation, et al*, Case No. MSC-08-01470.

**2.      What is this lawsuit about?**

This lawsuit is about whether Comcast complied with California law regarding meal breaks and rest breaks, and whether Comcast properly compensated class members for all hours worked. Further details about the claims of this lawsuit, and Comcast's answer, are set forth below.

**3.      What is a class action and who is involved?**

In this lawsuit, a Communications Technician named Gabriel Fayerweather has sued Comcast, the Defendant in this case, on behalf of other people (all California Communications Technicians) he alleges have similar claims. Mr. Fayerweather is called the "Class Representative," and the people on whose behalf he has sued are called the "Class" or the "Class Members." In a class action, one court resolves the issues for everyone in the Class – except for those people who choose to exclude themselves from the Class.

**4.      Why is this lawsuit a class action?**

The Court decided that this lawsuit can be a class action because it meets the requirements of *California Code of Civil Procedure* Section 382, which governs class actions in California state courts. Specifically, the Court found that:

- There are numerous Class Members employed by Comcast;
- There are legal questions and facts that are common to each of them;
- The claims of the Class Representative are typical of the claims of the rest of the Class;
- The lawyers representing the Class will fairly and adequately represent the Class's interests;
- There are more common legal questions and facts than questions that affect only individuals; and
- This class action will be more efficient than having many individual lawsuits.

More information about why the Court is allowing this lawsuit to be a class action is in the Court's Order Certifying the Class, which is available by contacting the lawyers who represent the Class or through the Court's website at http://www.cc-courts.org/ Once you get to the Court's website you can follow the instructions under the answer to No. 23 below. You may also contact the lawyers who represent the Class.

**THE CLAIMS IN THE LAWSUIT**

**5.      What does the lawsuit complain about?**

In the lawsuit, the Plaintiff alleges that Comcast did not comply with California law regarding meal and rest breaks, and failed to compensate Class Members properly for all hours worked. The Plaintiff alleges that Comcast adopted a policy of understaffing (or overscheduling) that made it unlikely that Class Members had a meaningful opportunity to take their meal and rest breaks every day. The Plaintiff also alleges that Class Members often worked through breaks and worked off-the-clock to complete assignments in the morning, before their shifts began, and in the evening, after their shift ended. Further, Plaintiff alleges Comcast has a policy not to compensate employees for missed meal breaks and rest breaks.

3

**6.     How does Comcast answer?**

Comcast contends that it has complied in all respects with California law regarding meal and rest breaks, and that it has compensated Class Members properly for all hours worked and reported.

**7.     Has the Court decided who is right?**

No. The Court has not decided whether Comcast or Plaintiff is correct. By establishing the Class and issuing this Notice, the Court is not suggesting that the Plaintiff will win or lose the case. The Plaintiff must prove his claims at a trial that has not yet been scheduled to begin. (See "The Trial" on page 6, below.)

**8.     What is the Plaintiff asking for?**

If the Plaintiff wins the lawsuit, he will seek the following relief on behalf of the Class: (1) an additional hour of compensation pursuant to *Labor Code* § 226.7 for each shift a lawful meal break was required but not provided and each shift a lawful rest break was required but not authorized or permitted; (2) payment for any time worked off the clock with Comcast's knowledge; (3) restitution of all unpaid wages; (4) an injunction requiring Comcast to comply with all applicable California laws and regulations related to meal breaks, rest breaks, and record keeping; (5) penalties for failing to provide accurate wage statements; (6) interest on unpaid wages; and (7) attorney's fees and costs.

**9.     Is there any money available now?**

No. No money or benefits are available now because the Court has not even decided whether Comcast did anything wrong, and the two sides have not agreed to settle the case. In addition, there is no guarantee that money or benefits will ever be obtained.

## WHO IS IN THE CLASS

**10.     Am I part of the Class?**

We believe so. Judge Barry Goode decided that the Class shall include all Communication Technicians Levels I, II, III, and IV, Installers, Advanced Installers, Service Technicians, System Technicians, Field Service Representatives Levels I, II, III, IV, V, and VI, who were employed by Comcast in California from May 27, 2004 through April 7, 2010.

**11.     I'm still not sure if I am included.**

If you are still not sure whether you are included, you can get free help by calling or writing to the lawyers who represent the Class at the phone numbers or addresses listed in question 15.

4

## YOUR RIGHTS AND OPTIONS

You have to decide whether to stay in the Class or exclude yourself from the Class before the trial, and you have to decide this now.

| 12. | Do I need to do something now? |
|---|---|

No. But if you don't do anything you remain in the Class. See the next question.

| 13. | What happens if I do nothing at all? |
|---|---|

By doing nothing, you remain in the Class and keep the possibility of getting money or benefits from this lawsuit. If you stay in the Class and the Plaintiff obtains money or benefits, either as a result of the trial or a settlement, you will be notified about how to apply for a share (or how to ask to be excluded from any settlement). Keep in mind that if you do nothing, you will not be able to sue, or continue to sue, Comcast - as part of any other lawsuit - about the meal period, rest period, or wage claims that are the subject of this lawsuit. You will also be legally bound by all of the Orders the Court issues and judgments the Court makes in this class action regarding the meal period, rest period, and wage claims.

| 14. | Why would I elect to be excluded? |
|---|---|

That is a personal decision only you can make. Whether to participate in a lawsuit is a very important decision, and you might choose to exclude yourself from the Lawsuit for a variety reasons that are personal to you. For example, if you already have your own meal period, rest period, or unpaid wage lawsuit or if you don't believe in the case and don't want any part of it you need to ask to be excluded from the Class.

| 15. | What happens if I exclude myself or elect to opt-out? |
|---|---|

If you exclude yourself (excluding yourself from the class is sometimes referred to as opting-out of the class) from the Class - or "opt-out" of the Class - you won't get any money or benefits from this lawsuit even if the Plaintiff obtains them as a result of the trial or from any settlement (that may or may not be reached) with Comcast. However, you may then be able to sue or continue to sue Comcast for meal period, rest period, or unpaid wage claims that occurred or occurs at any time. If you exclude yourself, you will not be legally bound by the Court's judgments in this class action. If you do not exclude yourself, and the Plaintiff loses the Lawsuit, you will lose the right to sue Comcast on your own behalf.

If you start your own lawsuit against Comcast, you will have to represent yourself or retain your own lawyer for that lawsuit, and you'll have to prove your claims. If you do exclude yourself so you can start or continue your own lawsuit against Comcast, you should talk to your own lawyer soon, because your claims may be subject to a statute of limitations.

Note that if you exclude yourself from this lawsuit and you are currently working for Comcast, any changes made to Comcast's policies about the treatment of Class Members would still apply to you.

| 16. | How do I elect to exclude myself from the Class? |
|---|---|

To be excluded, you simply need to complete the "Exclusion Request" included with this Notice and drop it in the mail by May 26, 2011. There is no need to include postage as it is already prepaid on the Exclusion Request. Be sure to fill out the Exclusion Request completely.

**THE LAWYERS WHO WILL BE REPRESENTING YOU
IF YOU CHOOSE TO REMAIN IN THE LAWSUIT**

**17.     Will I have a lawyer in this case?**

Yes, if you choose to remain in the Lawsuit you will be represented by Class Counsel. The Court decided that the following law firms, which are acting as Class Counsel, are qualified to represent you and all Class Members:

| JENNIFER KRAMER LEGAL | LIBERATION LAW GROUP, P.C. |
|---|---|
| Jennifer Kramer, Bar No. 203385 | Arlo Garcia Uriarte, Bar No. 231764 |
| 601 S. Figueroa Street, Suite 2390 | 2760 Mission Street |
| Los Angeles, CA 90017 | San Francisco, CA 94110 |
| Tel: (213) 955-0200 ext. 113 | Tel.: (415) 695-1000 |
| Fax: (213) 226-4358 | Fax: (415) 695-1006 |
| Email: jennifer@laborlex.com | Email: arlo@liberationlawgroup.com |
| Website: www.laborlex.com | Website: www.liberationlawgroup.com |

These lawyers are called "Class Counsel." Class Counsel is experienced in handling similar cases.

**18.     Should I get my own lawyer to advise me about this lawsuit?**

You do not have to hire your own lawyer to assist you with this lawsuit because Class Counsel is working on your behalf. However, if you do choose to seek advice from a different lawyer, you will have to come to your own financial terms with that lawyer. For example, you can ask a different lawyer to appear in Court for you if you want someone other than Class Counsel to speak for you.

**19.     How will the Class lawyers be paid?**

If Class Counsel gets money or benefits for the Class, they will ask the Court for fees and expenses. If the Court grants Class Counsels' request, the fees and expenses would be either deducted from any money obtained for the Class or paid separately by Comcast.

6

## THE TRIAL

The Court has not yet scheduled a trial to decide who is right in this case.

**20.    How and when will the Court decide who is right?**

As long as the case isn't resolved by a settlement or otherwise, Class Counsel will have to prove the Plaintiff's claims at a trial. The trial has not yet been scheduled to begin. During the trial, a jury or the Judge will hear all of the evidence to help them reach a decision about whether the Plaintiff or Defendant are right about the claims in the lawsuit. There is no guarantee that the Plaintiff will win, or that he will get any money for the Class.

**21.    Do I have to come to the trial?**

You do not need to attend the trial. Class Counsel will present the case for the Plaintiff, and Wilson, Sonsini, Goodrich & Rosati and Valdez, Dunson & Doyle, LLP, will present the defenses on behalf of Comcast. You or your own lawyer are welcome to come at your own expense. There is a possibility that you might be subpoenaed and have to appear as a witness at the trial.

**22.    Will I get money after the trial?**

If the Plaintiff obtains money or benefits as a result of the trial or a settlement, you will be notified about how to participate. We do not know how long this will take.

## GETTING MORE INFORMATION

**23.    Are more details available?**

You may obtain more information by contacting Class Counsel at the telephone numbers and addresses set forth in answer to question no. 17.

You may also obtain case information from the Court's website as follows:

1.  Direct your browser to http://www.cc-courts.org/
2.  Select the link "Online Case Information"
3.  Select the link "Open Access"
3.  Select the link "Open Access – Civil"
5.  Choose "A-Martinez Civil" from the Court drop down menu.
6.  Select the link "Log On"
7.  Select the link "Case Number Search"
8.  Select "CIV-CIVIL" from the Case Type drop down menu.
9.  Type "MSC08-01470" in the Court Case Number field.
10. Click on CIVMSC08-01470 under Case Number to see a list of past and future actions in the case.

## IF YOU HAVE FURTHER QUESTIONS, CONTACT CLASS COUNSEL

## PLEASE DO NOT CONTACT THE COURT

7

«Barcode»    «BarcodeString»
             SIMID «SIMID»
             «FirstName» «LastName»
             «Address1» «Address2»
             «City» «Abbrev» «Zip»

1  **MATTHEW RIGHETTI, ESQ.**    {121012}
2  **JOHN GLUGOSKI, ESQ.**       {191551}
   **MICHAEL RIGHETTI, ESQ**     {258541}
3  **RIGHETTI · GLUGOSKI, P.C.**
   456 Montgomery Street, Suite 1400
4  San Francisco, CA 94104
   Telephone: (415) 983-0900
5  Facsimile: (415) 397-9005
6
7  Attorneys for Plaintiff
8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9               **FOR THE COUNTY OF STANISLAUS**
10
11  JOSEPH JOSHUA DAVIS, PENNY          **Case No.: 2011900**
12  SCHOONOVER, LEON GIBSON, DUSTIN
    WAYNE HAGENS, RAYMOND AGUNDEZ,      **PROOF OF SERVICE**
13  RAFAEL BARAJAS, JR.,
14          Plaintiffs,                 Date:   July 16, 2015
                                        Time:   8:30 a.m.
15                                      Dept:   21
16      vs.
                                        Complaint filed October 27, 2014
17  COMCAST CORPORATION, a Pennsylvania
    Corporation;  COMCAST  OF  CONTRA
18  COSTA, INC., a Washington Corporation; and
    DOES 1 through 50, Inclusive,
19
20          Defendants.
21
22
23
24
25
26
27
28

**PROOF OF SERVICE**

STATE OF CALIFORNIA

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the action. My business address is Righetti Glugoski, P.C., 456 Montgomery Street, Suite 1400, San Francisco, California, 94104.

On Wednesday, July 01, 2015 I served the foregoing document described as:

- **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE SECOND AMENDED COMPLAINT**

- **PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE SECOND AMENDED COMPLAINT**

on the interested parties by administering a true copy either by facsimile or in sealed envelopes addressed as follows:

**Troy A. Valdez**
**VALDEZ TODD & DOYLE LLP**
1901 Harrison Street, Suite 1450
Oakland, CA 94612

**Fred W. Alvarez**
**Allison B. Moser**
**Jones Day**
1755 Embarcadero Road
Palo Alto, CA 94303

( X )    **VIA OVERNIGHT MAIL:**
By delivering such documents to an overnight mail service or an authorized courier in an envelope or package designated by the express service courier addressed to the persons on whom it is to be served.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct and was executed on Wednesday, July 01, 2015, at San Francisco, California.

Stella Ma

**EXHIBIT I to NOTICE OF REMOVAL**

1  FRED W. ALVAREZ, State Bar No. 68115
   ALLISON B. MOSER, State Bar No. 223065
2  EMILIE O. REESLUND, State Bar No. 294204
   JONES DAY
3  Silicon Valley Office
   1755 Embarcadero Rd.
4  Palo Alto, CA 94303
   Telephone: (650) 739-3939
5  Facsimile: (650) 739-3900
   Email: falvarez@jonesday.com
6  Email: amoser@jonesday.com
   Email: ereeslund@jonesday.com
7
   TROY A. VALDEZ, State Bar No. 191478
8  ERIN M. DOYLE, State Bar No. 233113
   STEPHEN L. TAEUSCH, State Bar No. 247708
9  VALDEZ TODD & DOYLE LLP
   1901 Harrison Street, Suite 1450
10 Oakland, California 94612
   Telephone: (415) 202-5950
11 Facsimile: (415) 202-5951
   Email: tvaldez@vtdlaw.com
12 Email: edoyle@vtdlaw.com
   Email: staeusch@vtdlaw.com
13
   Attorneys for Defendants
14 COMCAST CABLE COMMUNICATIONS
   MANAGEMENT, LLC, erroneously sued as
15 COMCAST CORPORATION and
   COMCAST OF CONTRA COSTA, INC.
16
17           SUPERIOR COURT OF THE STATE OF CALIFORNIA
18                  FOR THE COUNTY OF STANISLAUS
19
20 JOSEPH JOSHUA DAVIS, PENNY            CASE NO. 2011900
   SCHOONOVER, LEON GIBSON,
21 DUSTIN WAYNE HAGENS, RAYMOND          Assigned for all purposes, including Trial
   AGUNDEZ, RAFAEL BARAJAS, JR.,        to Judge William A. Mayhew
22
                Plaintiffs,             Dept. 21
23
         v.                            **DEFENDANT'S REPLY MEMORANDUM
24                                      IN SUPPORT OF ITS MOTION TO
   COMCAST CORPORATION, a               STRIKE PORTIONS OF THE SECOND
25 Pennsylvania Corporation; COMCAST OF AMENDED COMPLAINT**
   CONTRA COSTA, INC., a Washington
26 Corporation; and DOES 1 through 50,  Date: July 16, 2015
   Inclusive,                           Time: 8:30 a.m.
27                                      Dept.: 21
                Defendants.
28                                      Complaint filed October 27, 2014

FILED

2015 JUL -9 PM 3: 26

CLERK OF THE SUPERIOR COURT
COUNTY OF STANISLAUS

BY_____

_____DEPUTY
HIKARI WILLIAMS

FILED BY FAX

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................................................. 1

II.   ARGUMENT ................................................................................................................... 2

   A.   Comcast's Motion To Strike Is Not An Improper Motion To Reconsider. ......................... 2

   B.   Plaintiffs Do Not Engage Comcast's Argument That The SAC's Lengthy Excerpt From
      *Stephen v. Enterprise Rent-A-Car* Is No Longer Accurate In Light Of Subsequent
      Amendment Of Federal Rule Of Civil Procedure 23. ......................................................... 3

   C.   Under Federal <u>And</u> California Law, Equitable Tolling Ends When The <u>Trial Court</u> Issues
      An Order Denying Class Status............................................................................................ 3

   D.   Plaintiffs Fail To Recognize The Distinction Between Issue Preclusion And Claim
      Preclusion, And They Ignore That The Supreme Court Has <u>Instructed</u> Trial Courts To
      Resolve Disputed Issues If Necessary To Determine The Propriety Of Class
      Certification........................................................................................................................... 6

III.   CONCLUSION................................................................................................................. 7

i

## I.    INTRODUCTION

Comcast's Motion to Strike is not, as Plaintiffs erroneously suggest, an improper motion to reconsider. Appellate courts have repeatedly instructed that a party may challenge an amended pleading despite unsuccessfully challenging an earlier pleading on the same grounds and that a trial court in such cases is free to re-examine the sufficiency of the pleading without being bound by its earlier rulings. Comcast respectfully urges that such re-examination is appropriate here, both with respect to the equitable tolling and the issue preclusion questions.

As to the equitable tolling question, Comcast has already pointed out that every federal circuit court to have considered the issue has held that equitable tolling applies only to the date of an order denying class action status and not through any appeal of such an order. Comcast has also pointed out that the California Supreme Court has instructed trial courts, in the class action context, to rely on federal authority in the absence of controlling California authority. However, Comcast was unaware of and thus had not previously brought to the Court's attention a California Court of Appeal opinion specifically endorsing the federal approach and holding that a class action tolls the statute of limitations only "until a final determination regarding the propriety of class certification [is] made by the trial court." *Bangert v. Narmco Materials, Inc.*, 163 Cal. App. 3d 207, 209 (1984), *disapproved of on other grounds by Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (Cal. 1988) (emphasis added); *see also id.* at 212 ("We are convinced that the federal rule [with respect to tolling] is the best approach to the [statute of limitations] problems posed by purported class members who seek to intervene following the denial of class action status."). Re-evaluation of the equitable tolling question is thus particularly warranted.

Re-evaluation of the issue preclusion question is appropriate in light of a recent order from Judge Goode applying issue preclusion to bar the plaintiffs in an identical *Fayerweather* spinoff case from re-litigating whether Comcast maintains corporate policies that unlawfully deprive technicians of meal and rest breaks. The Court should not be swayed by Plaintiffs' overheated rhetoric, in their Opposition, to the effect that barring Plaintiffs here (and in similar cases across California) from re-litigating the purported class issue in *Fayerweather* would bar them from asserting meal and rest break claims altogether. As Judge Goode clearly explained in

1

1    his recent order on Comcast's Motion to Strike in *Hollander*, he needed to resolve a threshold

2    issue in order to determine whether class treatment of Mr. Fayerweather's claims was appropriate

3    — whether Comcast maintains corporate policies that unlawfully deprive technicians of meal and

4    rest breaks. Judge Goode's decertification order was affirmed on appeal, and his resolution of a

5    disputed threshold issue is perfectly consistent with the Supreme Court's guidance in *Brinker*.

6    That Plaintiffs must pursue their claims based on allegations specific to themselves is not an

7    outrage, as Plaintiffs suggest; it is a logical consequence of the fact that technicians' meal and rest

8    break claims have been found not to be amenable to class treatment. Because Plaintiffs otherwise

9    do not dispute that the elements required for application of issue preclusion are satisfied, and

10   because appellate courts have held that preclusive effect may appropriately be given to class

11   certification orders (despite the fact that they are generally "procedural" in nature), the Court

12   should strike the SAC's allegations that Comcast maintained <u>policies</u> that deprived Plaintiffs of

13   meal and rest breaks.

14   **II.    ARGUMENT**

15       **A.    Comcast's Motion To Strike Is Not An Improper Motion To Reconsider.**

16       Plaintiffs are mistaken that the instant motion is "an improper motion to reconsider."

17   Courts of Appeal have repeatedly held that a party may challenge an amended pleading

18   notwithstanding a prior unsuccessful challenge on the same grounds. *See Carlton v. Dr. Pepper*

19   *Snapple Grp., Inc.*, 228 Cal. App. 4th 1200, 1210-11 (2014) ("Carlton cites the motion for

20   reconsideration statute (§ 1008) and asserts a motion for reconsideration was defendants'

21   exclusive path to have the trial court again consider a demurrer to the breach of contract cause of

22   action. We would agree with Carlton, if he had not filed the SAC. However, by filing the SAC,

23   Carlton opened the door to a demurrer to the entire SAC, including the breach of contract cause

24   of action."); *Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal. App. 4th 1020, 1036 (2009) ("[A]

25   party is within its rights to successively demur to a cause of action in an amended pleading

26   notwithstanding a prior unsuccessful demurrer to that same cause of action."); *Pavicich v.*

27   *Santucci*, 85 Cal. App. 4th 382, 389 n.3 (2000) (same). The Court thus has a renewed opportunity

28   to consider Comcast's arguments with respect to the equitable tolling and collateral estoppel

2

1   issues, and it is not bound by its prior rulings.

2       **B.    Plaintiffs Do Not Engage Comcast's Argument That The SAC's Lengthy**
        **Excerpt From *Stephen v. Enterprise Rent-A-Car* Is No Longer Accurate In**
3       **Light Of Subsequent Amendment Of Federal Rule Of Civil Procedure 23.**

4           In its opening brief, Comcast pointed out that Plaintiffs' SAC includes a lengthy excerpt

5   from *Stephen v. Enter. Rent-A-Car*, 235 Cal. App. 3d 806 (1991), that includes several statements

6   of law that are no longer correct as a result of a subsequent amendment of Federal Rule of Civil

7   Procedure 23.  In response, Plaintiffs have simply pasted the same excerpt into their Opposition

8   and reiterated the same incorrect statements of law.  *Compare* SAC ¶ 8 at 4:9-5:6 *with*

9   Opposition at 5:19-6:17.  Rule 23 now states that "[a] court of appeals may permit an appeal from

10  an order granting or denying class certification under this rule . . ." Fed. R. Civ. Proc. 23(f).  It is

11  simply not correct, as Plaintiffs continue to suggest, that an order denying class certification is,

12  under federal law, a "non-appealable final order" that is "reviewable only on appeal from final

13  judgment." At minimum, therefore, the Court should strike the no-longer-correct *Stephen* excerpt

14  from Plaintiffs' SAC.

15      **C.    Under Federal <u>And</u> California Law, Equitable Tolling Ends When The <u>Trial</u>**
        **<u>Court</u> Issues An Order Denying Class Status.**
16

17          Plaintiffs devote significant attention in their Opposition to an argument that the filing of a

18  class action generally tolls the statute of limitations on absent class members' claims.  But

19  Comcast does not dispute that equitable tolling applies between the filing of *Fayerweather* and

20  the date of the *Fayerweather* decertification order.  The relevant inquiry here is not whether

21  equitable tolling applies at all but whether it extends beyond an order denying class status and

22  through any appeal of such an order.  As discussed in Comcast's opening brief, federal courts

23  have definitively answered that question with a bright line rule: tolling ends when the <u>trial court</u>

24  denies class status.  *See, e.g., Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372 (5th Cir. 2013)

25  (decided after the 1998 amendment of Federal Rule 23(f) allowing for appeal of a denial of

26  certification, and holding that the statute of limitations resumes running when a trial court

27  decertifies a class and <u>is not extended</u> by an unsuccessful appeal); *Giovanniello v. ALM Media,*

28  *LLC*, 726 F.3d 106 (2nd Cir. 2013) (holding the same and citing cases from the First, Third,

3

1  Fourth, Fifth, Sixth, Seventh, Eleventh, and Federal Circuits); *Tosti v. Los Angeles*, 754 F.2d

2  1485 (9th Cir. 1985); *Stiller v. Costco Wholesale Corp.*, 2014 U.S. Dist. LEXIS 140435, 6 (S.D.

3  Cal. Oct. 1, 2014) (holding that tolling does not extend through an interlocutory appeal and that

4  "a bright-line rule with regard to *American Pipe* tolling is necessary to prevent abuse and reduce

5  uncertainty").

6      Plaintiffs suggest that Comcast places too much emphasis on federal law.  But in the class

7  action context, in the absence of controlling California authority, the California Supreme Court

8  has directed trial courts to rely on federal authority.  *Bangert v. Narmco Materials, Inc.*, 163 Cal.

9  App. 3d 207, 211 (1984), *disapproved of on other grounds by Jolly v. Eli Lilly & Co.*, 44 Cal. 3d

10  1103 (Cal. 1988) ("The California Supreme Court has directed us to utilize the class action

11  procedures of the federal rules to ensure fairness in class action suits in the event state authority

12  proves inadequate."); *Jolly*, 44 Cal. 3d at 1118 ("We have repeatedly directed that in the absence

13  of controlling state authority, California courts should utilize the procedures of rule 23 of the

14  Federal Rules of Civil Procedure (28 U.S.C.) to ensure fairness in the resolution of class action

15  suits.").

16      Moreover, in *Bangert*, a California Court of Appeal endorsed the federal approach and

17  held that, under California law as well, the statute of limitations is tolled only "until a final

18  determination regarding the propriety of class certification was made by the trial court." 163 Cal.

19  App. 3d 207, 209 (emphasis added); *see also id.* at 212 ("the federal rule [with respect to tolling]

20  is the best approach to the [statute of limitations] problems posed by purported class members

21  who seek to intervene following the denial of class action status.").  A federal district court

22  considering the application of *American Pipe* tolling to a California state court class action

23  likewise concluded that equitable tolling ends upon decertification and does not extend through

24  the state court appeals process.  *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, No.

25  2:11-CV-07166-MRP, 2012 WL 1097244, at *4 (C.D. Cal. Mar. 9, 2012) (relying on "the

26  language of *American Pipe*, the reasonable reliance interest of an individual plaintiff, and judicial

27  efficiency" in holding that equitable tolling does not extend through state court appeal).

28      Plaintiffs now also suggest that tolling should extend through the *Fayerweather* appeal

4

1    because they purportedly did not bring individual actions in reliance on boilerplate language in

2    the *Fayerweather* class notice to the effect that individuals who chose to remain in the class could

3    not also bring separate individual lawsuits and because the court never notified them of the

4    *Fayerweather* decertification order. This argument fails for two reasons. First, as discussed

5    above, every court interpreting the *American Pipe* doctrine (including the California Court of

6    Appeal in *Bangert*) has adopted a bright-line rule that tolling ends when the trial court denies

7    class action status. Second, Plaintiffs cannot point to any authority providing that an exception

8    should be made if a plaintiff simply alleges that he or she did not receive actual notice of an order

9    denying certification or granting decertification. Such an exception would make little sense here

10   because, under California Rule of Professional Conduct 3-500, class counsel themselves had an

11   obligation to keep their clients "reasonably informed about significant developments" regarding

12   the representation.[1]

13       In short, by filing the SAC, Plaintiffs have provided the Court with a renewed opportunity

14   to consider Comcast's argument that equitable tolling in the class action context ends when the

15   trial court issues an order denying class status, because reliance on the class action device beyond

16   that point is no longer reasonable. In support of its argument, Comcast has now presented the

17   Court with California appellate authority of which it was not aware at the time it first moved on

18   this issue or when it filed its opening brief in support of this motion. Comcast thus requests that

19   the Court rule that Plaintiffs' claims may only be tolled to the date of the *Fayerweather*

20   decertification order and strike contradictory allegations from Plaintiffs' SAC.

21

22

23

24

25       [1] In fact, within one month of the *Fayerweather* decertification order, Plaintiffs' counsel
     sent letters to members of the *Fayerweather* class informing them that they needed to act
26   promptly in order to protect their rights. Thus, in the event the Court again declines to rule as a
     matter of law that tolling could not continue beyond class decertification in *Fayerweather*,
27   Comcast requests that the Court deny its motion to strike on this issue without prejudice to
     revisiting the question if facts emerge showing that tolling would not be equitable under the
28   specific circumstances presented here.

**D.    Plaintiffs Fail To Recognize The Distinction Between Issue Preclusion And Claim Preclusion, And They Ignore That The Supreme Court Has Instructed Trial Courts To Resolve Disputed Issues If Necessary To Determine The Propriety Of Class Certification.**

Plaintiffs' overblown rhetoric regarding the consequences of Comcast's issue preclusion argument (and of Judge Goode's Motion to Strike order in *Hollander*) apparently stems from a failure to apprehend the distinction between issue preclusion and claim preclusion. Plaintiffs suggest that, if they are not permitted to argue that Comcast maintains corporate policies that deprive technicians of meal and rest breaks, they will be barred altogether from asserting meal and rest break claims against Comcast:

> Now that Judge Goode appears to flip-flop, by suggesting that he made merits determinations, what does that mean for this case, or *Fayerweather* for that matter? Is *Fayerweather* now going to be dismissed? Is *Hollander* now going to be dismissed? Is Judge Goode suggesting every individual must now have their case dismissed because he made merits determinations against them? Apparently, Comcast thinks that Judge Goode has ruled in their favor outright.

Pl. Opp. at 4:11-16. But Comcast's argument, which Judge Goode found persuasive based on his detailed knowledge of the *Fayerweather* litigation, is merely that the trial court and Court of Appeal have already resolved a discrete issue — whether Comcast maintains corporate policies that deprive technicians of meal and rest breaks. As Judge Goode explained in his order on Comcast's Motion to Strike in *Hollander*, he needed to resolve that threshold issue in order to determine whether class treatment of Mr. Fayerweather's claims was appropriate. *Brinker Restaurant Corp. v. Super. Court*, 53 Cal. 4th 1004, 1025 (2012) ("To the extent the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them."). In their Opposition, Plaintiffs point to language in the *Fayerweather* decertification order to the effect that the court was not adjudicating the merits of Mr. Fayerweather's claims under the Labor Code for meal and rest break violations, and they suggest that Judge Goode must therefore have "flip-flopped." There is no contradiction, however, because Plaintiffs here, plaintiffs in the other *Fayerweather* spinoff cases, and Mr. Fayerweather himself are of course still free to pursue meal and rest break claims based on facts specific to them. They may not do so, however, based on an allegation that Comcast's maintains policies

6

1   that deprive them of their meal and rest breaks. As Judge Goode clarified, he resolved this issue

2   conclusively in Comcast's favor in the *Fayerweather* decertification order. It would serve no

3   purpose to devote further time and resources re-litigating this distinct <u>issue</u> that the trial court, the

4   Court of Appeal, and the Supreme Court (by denying review) have put to rest.

5         Plaintiffs do not dispute that every other issue preclusion element is satisfied here.[2] The

6   Court should accordingly strike the portions of Plaintiffs' SAC that attempt to re-litigate whether

7   Comcast maintains <u>policies</u> that deprive technicians of meal and rest breaks. *See Johnson v.*

8   *GlaxoSmithKline, Inc.*, 166 Cal. App. 4th 1497, 1510 (2008) ("If all five elements required for

9   application of collateral estoppel are present, <u>the doctrine is fully applicable to preclude</u>

10   <u>relitigation of issues finally resolved as part of a class certification determination in a prior</u>

11   <u>proceeding.</u>") (emphasis added).

12   **III.   CONCLUSION**

13         For the foregoing reasons, Comcast requests that the Court grant its Motion to Strike.

14   Dated: July 9, 2015                        JONES DAY

15

16                                    By: *Emilie Reeslund*

17                                      Fred W. Alvarez
                                   Allison B. Moser

18                                      Emilie O. Reeslund

19                                    Attorneys for Defendants
                                 COMCAST CABLE COMMUNICATIONS

20                                    MANAGEMENT, LLC, erroneously sued as
                                 COMCAST CORPORATION and

21                                    COMCAST OF CONTRA COSTA, INC.

22

23

24

25

26        [2] Plaintiffs' argument that the *Hollander* Motion to Strike order cannot be given
preclusive effect because it is not final misses the mark completely. Comcast requests that the

27   final decertification order in *Fayerweather*, which has been affirmed on appeal, be given
preclusive effect. While Judge Goode's recent order on Comcast's Motion to Strike in *Hollander*

28   is illuminating, Comcast of course does not suggest that it is binding on this Court.

7

1     FRED W. ALVAREZ, State Bar No. 68115
ALLISON B. MOSER, State Bar No. 223065
2     JONES DAY
Silicon Valley Office
3     1755 Embarcadero Rd.
Palo Alto, CA 94303
4     Telephone: (650) 739-3939
Facsimile: (650) 739-3900
5     Email: falvarez@jonesday.com
Email: amoser@jonesday.com
6

7     TROY A. VALDEZ, State Bar No. 191478
ERIN M. DOYLE, State Bar No. 233113
8     VALDEZ TODD & DOYLE LLP
1901 Harrison Street, Suite 1450
Oakland, California 94612
9     Telephone: (415) 202-5950
Facsimile: (415) 202-5951
10    Email: tvaldez@vtdlaw.com
Email: edoyle@vtdlaw.com
11

12    Attorneys for Defendants
COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC, erroneously sued as
13    COMCAST CORPORATION and
COMCAST OF CONTRA COSTA, INC.
14

15         SUPERIOR COURT OF THE STATE OF CALIFORNIA

16             FOR THE COUNTY OF STANISLAUS

17

18    JOSEPH JOSHUA DAVIS, PENNY     CASE NO. 2011900
SCHOONOVER, LEON GIBSON,
DUSTIN WAYNE HAGENS, RAYMOND
19    AGUNDEZ, RAFAEL BARAJAS, JR.,     **PROOF OF SERVICE**

20          Plaintiffs,

21        v.

22    COMCAST CORPORATION, a
Pennsylvania Corporation; COMCAST OF
23    CONTRA COSTA, INC., a Washington
Corporation; and DOES 1 through 50,
24    Inclusive,

25          Defendants.

26

27

28

FILED
2015 JUL -9 PM 3: 26
CLERK OF THE SUPERIOR COURT
COUNTY OF STANISLAUS
BY _____ DEPUTY

FILED BY FAX

---

PROOF OF SERVICE - CASE NO. 2011900

**PROOF OF SERVICE**

I, Alex Grasso, declare:

I am a citizen of the United States and employed in Alameda County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1901 Harrison Street, Suite 1450 Oakland, California 94612. On July 9, 2015, I served a copy of the following document(s):

> **DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF THE SECOND AMENDED COMPLAINT**

☒ by placing the document(s) listed above in a sealed Fedex envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Fedex agent for delivery.

Matthew Righetti (SBN 121012)
John Glugoski (SBN 191551)
RIGHETTI GLUGOSKI, P.C.
456 Montgomery Street, Suite 1400
San Francisco, CA 94104

*Attorneys for Plaintiffs*

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 9, 2015, at Oakland, California.

_____
Alex Grasso